John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
Cary Chien, Bar No. 274078
cchien@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Plaintiff
NEO4J, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GRAPH FOUNDATION, INC., an Ohio corporation,<br><br>Defendant. | CASE NO.  5:19-cv-06226-EJD<br><br>**NEO4J'S NOTICE OF MOTION AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        May 7, 2020<br>Time:        9:00 a.m.<br>Location:    Courtroom 4, 5th Floor<br>Judge:       Hon. Edward J. Davila |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ..................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 2

I.     INTRODUCTION ................................................................................................ 2

II.    REQUESTED RELIEF ....................................................................................... 4

III.   STATEMENT OF ISSUES TO BE DECIDED ................................................. 4

IV.   PROCEDURAL AND FACTUAL BACKGROUND ......................................... 4

V.    APPLICABLE LEGAL STANDARDS FOR MOTIONS TO STRIKE ............ 7

VI.   LEGAL ARGUMENT ......................................................................................... 9

     A.    GFI's Fourth Affirmative Defense for Abandonment is Legally Deficient ............ 9

          1.    GFI's "Confusion" Theory Does Not Constitute Abandonment Under the Lanham Act ................................................................. 10

          2.    GFI's "Open Source Licensing" Theory Does Not Establish "Naked Licensing" Abandonment as a Matter of Law ......................... 11

     B.    GFI's Fifth Affirmative Defense Regarding "Right to Fork" Is Not A Legally Cognizable Defense .................................................................. 13

     C.    GFI's Fifth Affirmative Defense Regarding "Right to Fork" Constitutes Impertinent and Immaterial Matters ....................................................... 15

     D.    GFI's Sixth Affirmative Defense for Cancellation of the Registration for the NEO4J® Mark Fails to Establishing Any Purported Fraud in the Procurement Thereof and is Not a Legally Cognizable Defense ....................... 15

     E.    The Court Should Deny Leave to Amend .............................................. 18

VII.  CONCLUSION ................................................................................................... 20

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

*Accuride Int'l, Inc. v. Accuride Corp.*,
    871 F.2d 1531 (9th Cir. 1989) ........................................................................... 10

*AirWair Int'l Ltd.*,
    84 F.Supp.3d 943 (N.D. Cal. 2015) .................................................................. 16

*Albrecht v. Lund*,
    845 F.2d 193 (9th Cir. 1988) ............................................................................. 19

*Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*,
    522 F.3d 1200 (11th Cir. 2008) ......................................................................... 17

*In re Apple, AT & T iPad Unlimited Data Plan Litig.*,
    No. C-10-02553 RMW, 2012 WL 2428248 (N.D. Cal. June 26, 2012) ......... 9, 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... *passim*

*Aureflam Corp. v. Pho Hoa Phat I, Inc.*,
    375 F.Supp.2d 950 (N.D. Cal. 2005) ............................................................ 16, 17

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) ............................................................................... 9

*Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*,
    718 F.Supp.2d 1167 (N.D. Cal. 2010) ........................................................... 8, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... *passim*

*In re Bose Corp.*,
    580 F.3d 1240 (Fed. Cir. 2009) ........................................................................ 17

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ........................................................................... 18

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir.2010) .............................................................................. 18

*Cruz v. Bank of N.Y. Mellon*,
    2012 WL 2838957 (N.D. Cal. July 10, 2012) ..................................................... 8

*eCash Techs., Inc. v. Guagliardo*,
    127 F.Supp.2d 1069 (C.D. Cal. 2000) ............................................................... 16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

NOTICE OF MOTION AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*Fantasy, Inc. v. Fogerty,*
   984 F.2d 1524 (9th Cir. 1993).................................................................. 8

5

*G & G Closed Circuit Events, LLC v. Nguyen,*
   No. 10–168, 2010 WL 3749284 (N.D.Cal. Sept. 23, 2010) ................................. 14

6

7

*Hernandez v. County of Monterey,*
   306 F.R.D. 279 (N.D. Cal. 2015)........................................................ 7, 9, 14

8

9

*Hokto Kinoko Co. v. Concord Farms, Inc.,*
   738 F.3d 1085 (9th Cir. 2013)............................................................... 16

10

*Missouri ex rel. Koster v. Harris,*
   847 F.3d 646 (9th Cir. 2017)................................................................ 19

11

12

*Lopez v. Smith,*
   203 F.3d 1122 (9th Cir.200) (en banc)...................................................... 18

13

14

*Low v. LinkedIn Corp.,*
   900 F.Supp.2d 1010 (N.D. Cal. 2012) ...................................................... 19

15

*Minor v. FedEx Office & Print Servs., Inc.,*
   78 F.Supp.3d 1021 (N.D. Cal. 2015) ....................................................... 20

16

17

*In re New Century,*
   588 F.Supp.2d 1206 (C.D.Cal.2008) ...................................................... 9, 14

18

19

*Perez v. Gordon & Wong Law Group, P.C.,*
   No. 11-CV-03323-LHK, 2012 WL 1029425 (N.D. Cal. Mar. 26, 2012) ................... 7, 14

20

*Planetary Motion, Inc. v. Techsplosion, Inc.,*
   261 F.3d 1188 (11th Cir. 2001)......................................................... 12, 13

21

22

*Platte Anchor Bolt, Inc. v. IHI, Inc.,*
   352 F.Supp.2d 1048 (N.D. Cal. 2004) ..................................................... 8, 9

23

24

*Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.,*
   872 F.2d 317 (9th Cir. 1989)........................................................... 17, 18

25

*Semegen v. Weidner,*
   780 F.2d 727 (9th Cir. 1985)............................................................... 16

26

27

*SidneyVinstein v. A.H. Robins Co.,*
   697 F.2d 880 (9th Cir. 1983)................................................................ 8

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001)...................................................................... 14

4

5

*Standard Oil Co. of N. M. v. Standard Oil Co. of Cal.,*
    56 F.2d 973 (10th Cir. 1932)...................................................................... 11

6

7

*Teeter-Totter, LLC v. Palm Bay Int'l, Inc.,*
    344 F.Supp.3d 1100 (2018)................................................................... 17, 18

8

*Telesaurus VPC, LLC v. Power,*
    623 F.3d 998 (9th Cir. 2010)...................................................................... 19

9

10

*Weisbuch v. Cty. of L.A.,*
    119 F.3d 778 (9th Cir. 1997)...................................................................... 19

11

12

*Whittlestone, Inc. v. Handi–Craft Co.,*
    618 F.3d 970 (9th Cir. 2010)...................................................................... 15

13

14

*Wyshak v. City Nat'l Bank,*
    607 F.2d 824 (9th Cir. 1979)........................................................................ 8

**Statutes**

15

16

15 U.S.C. § 1114 ................................................................................... 4, 15

17

15 U.S.C. § 1119 ...................................................................................... 15

18

15 U.S.C. § 1125(a) ................................................................................. 15

19

15 U.S.C. § 1127 ................................................................. 9, 10, 11, 17

20

15 U.S.C. § 1127(2) ................................................................................. 11

21

15 U.S.C. § 1055 ...................................................................................... 17

22

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ....................................... *passim*

23

Lanham Act, 15 U.S.C. §§ 1051 *et seq.*......................................... *passim*

24

Lanham Act, 15 U.S.C. § 1125 ................................................................. 4

25

**Other Authorities**

26

Fed. R. Civ. Proc. 8 .............................................................................. 7, 8

27

Fed. R. Civ. Proc. 8(b)(1) ......................................................................... 7

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

Fed. R. Civ. Proc. 8(c) ................................................................................................................. 7

Fed. R. Civ. Proc. 9(b) ......................................................................................................... *passim*

Fed. R. Civ. Proc. 12 .................................................................................................................... 5

Fed. R. Civ. Proc. 12(f) ..................................................................................................... 1, 4, 5, 8

Fed. R. Civ. Proc. 26(f) ................................................................................................................. 5

McCarthy on Trademarks and Unfair Competition (2d ed.1984), § 31:21 .................................. 17

Trademark Manual of Examining Procedure § 903.05 ................................................................ 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 7, 2020, at 9:00 a.m., Courtroom 4, 5th Floor, at the United States District Court located at 280 South First Street, San Jose, CA 95113 before the Honorable Edward J. Davila, Plaintiff Neo4j, Inc. ("Plaintiff" or "Neo4j USA") will, and hereby does, move to strike Defendant Graph Foundation Inc.'s ("Defendant" or "GFI") (a) Fourth Affirmative Defense for Naked License Abandonment of Trademark; (b) Fifth Affirmative Defense for "Right to Fork and Use Neo4J Open Source under GitHub Terms of Service;" and (c) Sixth Affirmative Defense for Cancellation of Trademark Procured by Fraud in its Amended Answer to Complaint (Dkt. No. 31).

This motion is made pursuant to Federal Rule of Civil Procedure 12(f) on the grounds that such defenses are insufficiently pleaded, not legally cognizable defenses, and/or are immaterial and impertinent.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Declaration, Request for Judicial Notice, all records and pleadings on file in this action, and all other matters that the court may consider.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Plaintiff Neo4j, Inc. ("Plaintiff or "Neo4j USA") is the industry leader in graph database solutions and software marketed and sold under the same registered trademark – NEO4J®. Defendant Graph Foundation Inc.'s ("Defendant" or "GFI") forked NEO4J®-branded software and began offering as its own, calling it ONgDB and deceptively marketing it as being the equivalent of Neo4j USA's current commercial-only version of the NEO4J® software.  Neo4j USA filed its Complaint —sounding in trademark infringement and other related claims brought under the Lanham Act and California's Unfair Competition Law—to stop the damage being done by GFI to Neo4j USA through these deceptive and illegal practices.

GFI's original answer to the Complaint consisted of defenses that were not legally cognizable defenses to trademark infringement and/or lack the factual support necessary under *Twombly/Iqbal* heightened pleading standard to give Neo4j fair notice of GFI's defenses.  After Neo4j USA detailed these deficiencies, GFI filed its Amended Answer which still asserts several legally deficient defenses.

In particular, GFI's Fourth Affirmative Defense asserts that Neo4j abandoned its NEO4J® trademark based on two theories that allegedly amount to "naked licensing" of that mark:  (1) the mark used both as a company name and as a product name is "confusing" and (2) because Neo4j distributed NEO4J®-branded software via open source licenses called GPL and AGPL.  Under the Lanham Act, a mark can only be deemed abandoned through discontinuation of use or through acts which cause the mark to lose its significance entirely as a function of indicator of origin.  Of course here, NEO4J®, as a coined term, ***only*** has significance as an indicator of origin. GFI's first theory is not legally viable because it not only fails to allege non-use or loss of significance, but it actually shows the mark's strength and significance because the mark is being used in multiple contexts (i.e. as a product name and as a company name) for its intended purpose (i.e. Neo4j software is made by Neo4j).  The second theory also fails as a matter of law because open source software licensing has been found to constitute an ***intent to control*** trademark rights, and not the relinquishment of rights that GFI asserts.  No plausible reading of GFI's allegations

1  under either theory would suggest that Neo4j USA's rights in its trademark has been totally

2  extinguished such that it ceases to function as an indicator of origin in the marketplace.

3      GFI's Fifth Affirmative Defense claims that it has a "right to fork" NEO4J®-branded

4  software because it was offered under an open source software distribution platform called

5  GitHub.  However, the vague allegations supporting are devoid of facts establishing how it would

6  absolve GFI from incurring liability for trademark infringement or acts of unfair competition,

7  rendering it insufficiently plead and immaterial and impertinent.  Even if GFI could allege more

8  specific facts – which it already had an opportunity to do so – a right to use open source software

9  is not a legally cognizable defense to Lanham Act or UCL claims.  Moreover, the very document

10  that GFI relies upon for its defense—the GitHub Terms of Service—explicitly prohibits users

11  who download software from GitHub from violating copyright and trademark laws.  Thus, GFI's

12  "right to fork" theory is not a legally cognizable defense even under its own erroneous theory.

13      Finally, GFI's Sixth Affirmative Defense seeks cancellation of Neo4j USA's federally

14  registered NEO4J® mark on the theory of fraud based on Neo4j allegedly claiming a date of first

15  use prior to the company's incorporation.[1]  This defense consists of conclusory statements

16  without pleading the requisite elements of knowledge, intent, reliance and damages required

17  under the Federal Rule of Civil Rule 9(b)'s heightened requirements for pleading the

18  circumstances of the fraud.   Equally fatal to the defense is the Ninth Circuit's finding that a

19  trademark applicant's claimed date of first use *cannot constitute a material representation so*

20  *long as the first use in fact preceded the application date.*  GFI has never alleged in either its

21  original answer or Amended Answer that Neo4j USA failed to use its trademark in commerce

22  before it filed the trademark application, nor could they because judicially noticeable facts make

23  clear that Neo4j USA was using the NEO4J® mark at least three years prior to such filing.

24  Consequently, GFI has not and cannot state a legally viable defense for cancellation of the

25  NEO4J® mark.

26  _____

27  [1] Neo4j USA denies that the use dates stated in the application for the NEO4J® Mark are inaccurate.  Defendants ignore that this application indicated that these dates were based on use

28  by Neo4j's predecessor-in-interest whose use inured to the benefit of Neo4j USA.

1    In granting this motion, the Court should deny leave to amend because it would be futile.

2    GFI was already put on notice through detailed written meet and confer of the deficiencies

3    addressed in this Motion and had an opportunity to correct them.  Despite adding additional

4    "facts" in support of these affirmative defenses, none of them changed GFI's foundational

5    theories and the deficiencies remain fatal to its defenses.  GFI simply has not (and cannot) allege

6    additional facts that would save these legally deficient defenses.  As such, the Court should strike

7    GFI's Fourth, Fifth and Sixth Affirmative Defenses with prejudice.

8    **II.    REQUESTED RELIEF**

9    Neo4j USA respectfully requests that the Court strike the Fourth through Sixth

10    Affirmative Defenses asserted in the Amended Answer filed by Defendant GFI pursuant to

11    Federal Rule of Civil Procedure 12(f) ("Rule 12(f)") and applicable case law, and deny leave to

12    amend because additional pleading will not result in sustainable defenses.

13    **III.    STATEMENT OF ISSUES TO BE DECIDED**

14    1.    Whether GFI's Fourth Affirmative Defense for Naked License Abandonment of

15    Trademark amounts to a legally viable defense.

16    2.    Whether GFI's Fifth Affirmative Defense for "Right to Fork and Use Neo4J Open

17    Source under GitHub Terms of Service," is (a) adequately plead to satisfy the *Iqbal/Twombly*

18    plausibility standard; (b) amount to legally cognizable defenses; and/or (c) consist of immaterial

19    and impertinent matters.

20    3.    Whether GFI's Sixth Affirmative Defense for Cancellation of Trademark Procured

21    by Fraud is adequately plead to satisfy Federal Rule of Civil Procedure 9(b)'s heighted

22    requirements for pleading the circumstances of the alleged fraud.

23    4.    Whether the Court should grant GFI leave to amend its Fourth through Sixth

24    Affirmative Defenses.

25    **IV.    PROCEDURAL AND FACTUAL BACKGROUND**

26    On October 1, 2019, Neo4j USA filed a complaint against GFI alleging infringement of

27    Neo4j USA's federally-registered trademark, NEO4J®, pursuant to 15 U.S.C. § 1114.  *See* Dkt.

28    No. 1 at ¶¶ 1, 38-50.  Neo4j USA also asserted claims for unfair competition, false advertising

1    and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and

2    for substantial and related claims of unfair competition under the State of California's Unfair

3    Competition Laws, all arising from GFI's unauthorized use of Plaintiff's NEO4J® trademark.

4    *See id.* at ¶¶ 51-71.  On December 5, 2019, the Court ordered that this case be related to *Neo4j,*

5    *Inc. and Neo4j Sweden, AB v. PureThink LLC, iGov Inc. and John Mark Suhy*, Case No. 5:18-cv-

6    07182-EJD ("Related Case").  The two actions concern substantially similar issues, some of the

7    same parties, software, and events and both of which arise from common trademark infringement

8    claims.

9        Neo4j USA's claims are based on GFI's improper use of the NEO4J® mark in

10   conjunction with the distribution, advertising, promotion, offering, and sale of its ONgDB

11   software products.  *See id.* at ¶¶ 18-37.  This includes falsely and misleadingly suggesting that

12   ONgDB is the equivalent of an authorized version of NEO4J®-branded software that is only

13   available via a commercial license or is otherwise endorsed by Neo4j USA.  *See id.*

14       On December 26, 2019, GFI filed its original answer to the complaint wherein it asserted

15   the following affirmative defenses: (1) failure to state a claim; (2) unclean hands; (3) fair use of

16   trademarks; (4) "Naked License Abandonment of Trademark;" (5) "Right to fork and use Neo4J

17   Open Source under GitHub Terms of Service;" (6) "The addition of the commons clause is

18   unlawful under the AGPL;" (7) "Plaintiff violated the AGPL;" and (8) "Cancellation of

19   Trademark procured by fraud;" and (9) waiver.  *See* Dkt. No. 25 at 5:14-7:12.  These affirmative

20   defenses either failed to meet the required pleading standards, did not constitute a legally

21   cognizable affirmative defenses to any of Neo4j USA's claims or failed as a matter of law.

22       On January 7, 2020, during a Rule 26(f) conference, counsel for the parties discussed the

23   deficiencies with the affirmative defenses in GFI's answer and Neo4j USA's intention to file a

24   Rule 12 motion to address those deficiencies.  *Declaration of Cary Chien in Support of Neo4j's*

25   *Motion to Strike* ("Chien Decl."), ¶ 3.   At counsel for GFI's request, Neo4j USA then sent a letter

26   detailing the deficiencies in the original answer.  *Id.* at ¶ 4.   On the same day, the parties filed,

27   and the Court granted, a stipulation extending the time for 14-days for Plaintiff to file a Rule 12(f)

28   motion in order to give GFI time to further discuss the issues raised by Neo4j USA, and to file an

1    Amended Answer.  *See* Dkt. No. 27.

2        On January 15, 2020, GFI confirmed that it would be amending its answer, and did so on

3    January 24, 2020 ("Amended Answer").  *See* Dkt. No. 31.  While GFI's Amended Answer

4    addressed some of the issues identified by Neo4j USA, and dropped several affirmative defenses,

5    significant factual and legal deficiencies remained on three affirmative defenses.   In particular,

6    while more words were added to the Fourth Affirmative Defense for Naked License Trademark

7    Abandonment, the amendments did not change the substance of the theory alleged, as the

8    following comparison shows.

9        Fourth Affirmative Defense from GFI's original answer:

10       Plaintiff claims it owns the Neo4j trademark but there is confusion whether that is
         a company name trademark or a product name trademark. This confusion is
11       exacerbated by the fact that Neo4j Sweden asserts they own the software, not
         plaintiff, and they use Neo4j as part of the company name and call the open source
12       software product Neo4j too. As Neo4j is licensed as open source software, there is
         no ability to maintain quality control of how licensees modify, use, distribute or
13       convey the software. As a result, plaintiff has abandoned the Neo4j trademark
         under the doctrine of Naked License.

14

15   Dkt. No. 25 at 7:1-9.

16       Fourth Affirmative Defense from GFI's Amended Answer (new text bolded):

17       Plaintiff claims it owns the Neo4j trademark but there is confusion whether that is
         a company name trademark or a product name trademark. This confusion is
18       exacerbated by the fact that Neo4j Sweden asserts they own the software, not
         Plaintiff, and they use Neo4j as part of the company name and call the open source
19       software product Neo4j too.  As Neo4j is licensed as open source software, **and, to
         the knowledge of Defendant, Plaintiff has no right under the open source
20       license to inspect or supervise the quality of the open source licensees' work**,
         there is no ability to maintain quality control of how licensees modify, use,
21       distribute or convey the software.  As a result, plaintiff has abandoned the Neo4j
         trademark under the doctrine of Naked License.

22

23   Dkt. No. 31 at 7:3-10.

24       All that was added was a conclusory assertion and these allegations appear to be a

25   virtually verbatim copy of the same abandonment theory advanced by related defendants

26   PureThink, Inc., iGov, Inc. and John Mark Suhy in the related case.  *See* Related Case, Dkt. No.

27   55 at ¶¶ 85-86.

28       Similarly, GFI's amended Fifth Affirmative Defense also remains unchanged and merely

quoted from an excerpt from a provision in the GitHub Terms of Service, a document GFI had previously referenced in its original answer.  Nothing in the provision quoted can be reasonably read to absolve GFI from the trademark and unfair competition claims at issue:

> D. 5. If you set your pages and repositories to be viewed publicly, you grant each User of GitHub a nonexclusive, worldwide license to use, display, and perform Your Content through the GitHub Service and to reproduce Your Content solely on GitHub as permitted through GitHub's functionality (for example, through forking). You may grant further rights if you adopt a license. If you are uploading Content you did not create or own, you are responsible for ensuring that the Content you upload is licensed under terms that grant these permissions to other GitHub Users.

Dkt. No. 31 at 8:11-24; *compare* Dkt. No. 25 at 7:10-20.

GFI's amended Sixth Affirmative Defense—formerly its Eighth Affirmative Defense—also remained defective.  Despite being put on written notice of the stringent requirements for pleading allegations of fraud pursuant to Federal Rules of Civil Procedure 9(b), GFI's amended Sixth Affirmative Defense for trademark cancellation based on fraud on the United Statement Patent and Trademark Office merely added a bare allegation—copied nearly verbatim from related defendant's counterclaim and defenses—which as a matter of law cannot constitute fraud because it is not a material representation under the judicially noticeable facts in this Motion. *Compare* Dkt. No. 31 at 8:25-9:4 *and* Related Case Dkt. No. 55 at ¶¶ 88-92.

## V.    APPLICABLE LEGAL STANDARDS FOR MOTIONS TO STRIKE

Federal Rule of Civil Procedure 8(b)(1) requires a party to "state in short and plain terms its defenses to each claim asserted against it."  Federal Rule of Civil Procedure 8(c) similarly requires that a party "affirmatively state any avoidance or affirmative defense."  The United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), set a heightened "plausibility" pleading standard for complaints.

Courts in this District have held that the heightened pleading standard for complaints articulated in *Twombly* and *Iqbal* applies to affirmative defenses.  *See Perez v. Gordon & Wong Law Group, P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012) (collecting cases); *see also Hernandez v. County of Monterey*, 306 F.R.D. 279, 283 (N.D. Cal. 2015) (recognizing that "[m]ost district courts in this circuit agree that the heightened pleading

standard of *Twombly* and *Iqbal*...is now the correct standard to apply to affirmative defenses").
"This standard 'serve[s] to weed out the boilerplate listing of affirmative defenses which is
commonplace in most defendants' pleadings where many of the defenses alleged are irrelevant to
the claims asserted.'" *Perez*, 2012 WL 1029425 at *8. It "is also consistent with *Iqbal's*
admonition that fair notice pleading under Rule 8 is not intended to give parties free license to
engage in unfounded fishing expeditions on matters for which they bear the burden of proof at
trial." *Id*. (citing *Iqbal*, 556 U.S. at 678–79). Thus, "[w]hile a defense need not include extensive
factual allegations in order to give fair notice, bare statements reciting mere legal conclusions
may not be sufficient." *Id*. (internal quotation marks omitted). In order to satisfy Rule 8's
pleading requirements, "a defendant's pleading of affirmative defenses must put a plaintiff on
notice of the underlying factual bases of the defense." *Id*. (citing *Dion v. Fulton Friedman &
Gullace LLP*, No. 11-2727 SC, 2012 WL 160221, at *2 (N.D. Cal. Jan. 17, 2012)).

A motion to strike brought pursuant to Rule 12(f) serves "to avoid the expenditure of time
and money that must arise from litigating spurious issues by dispensing with those issues prior to
trial." *SidneyVinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also Fantasy,
Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517
(1994). Thus, a defense may be stricken pursuant to Rule 12(f) as insufficient if it fails to give
plaintiff "fair notice" of the defense. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir.
1979); *accord Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*, 718 F.Supp.2d
1167, 1170 (N.D. Cal. 2010) (holding "defense is insufficiently pled if it fails to give the plaintiff
fair notice of the nature of the defense").

Rule 12(f) also permits a court to strike from an answer matter that is immaterial, i.e.,
"that which has no essential or important relationship to the claim for relief or the defenses being
plead," or matter that is impertinent, i.e., that which does not pertain, and is not necessary, to the
issues in question. *Fantasy*, 984 F.2d at 1527; Fed. R. Civ. P. 12(f). Motions to strike made on
these grounds are generally disfavored and "should not be granted unless the matter to be stricken
clearly could have no possible bearing on the subject of the litigation" or "unless prejudice would
result to the moving party from denial of the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352

1   F.Supp.2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "Ultimately, whether to grant a

2   motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y.*

3   *Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi–*

4   *Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

5          For a court to grant a motion to strike, the grounds "must appear on the face of the

6   pleading under attack or from matters of which the court may take judicial notice. *In re Apple,*

7   *AT & T iPad Unlimited Data Plan Litig.*, No. C-10-02553 RMW, 2012 WL 2428248, at *2 (N.D.

8   Cal. June 26, 2012); *accord In re New Century*, 588 F.Supp.2d 1206, 1220 (C.D.Cal.2008). "With

9   a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light

10  most favorable to the nonmoving party." *Platte Anchor Bolt*, 352 F.Supp.2d at 1057.

11  Affirmative defenses are insufficient as a matter of law where there are no questions of fact, any

12  questions of law are clear and not in dispute, and under no set of circumstances could the defense

13  succeed." *Hernandez v. Cty. of Monterey*, 306 F.R.D. 279, 284-85 (N.D. Cal. 2015).

14  **VI.    LEGAL ARGUMENT**

15         **A.    GFI's Fourth Affirmative Defense for Abandonment is Legally Deficient**

16         Under the Lanham Act, a mark can only be deemed "abandoned" when either of the

17  following occurs: "(1) When its use has been discontinued with intent not to resume such use," or

18  "(2) When any course of conduct of the owner, including acts of omission as well as commission,

19  causes the mark to become the generic name for the goods or services on or in connection with

20  which it is used or otherwise to lose its significance as a mark." 15 U.S.C. § 1127.  Naked

21  licensing falls under the second definition of abandonment because it is an "uncontrolled" license

22  where the licensor "fails to exercise adequate quality control over the licensee." *Barcamerica*

23  *Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th Cir. 2002).  The proponent

24  of a naked license theory "faces a stringent standard" of proof.  *Id*. at 596.

25         GFI's Fourth Affirmative Defense appears to consist of two theories of alleged

26  abandonment of the NEO4J® mark.  As discussed below, the first theory based on "confusion" is

27  not a legally cognizable abandonment defense under 15 U.S.C. § 1127.  The second based on

28  open source licensing of NEO4J® branded products fails to set forth facts that meet "plausibility"

1  pleading standard under *Twombly* and *Iqbal*.  Neither of these theories have changed

2  substantively from GFI's original answer and neither satisfy the statutory requirement for

3  abandonment under 15 U.S.C. § 1127.  *Compare* Dkt. No. 25, 7:1-9 to Dkt. No. 31 at 7:3-10.

4  The only words GFI added to this defense in its Amended Answer were "*and, to the knowledge of*

5  *Defendant, Plaintiff has no right under the open source license to inspect or supervise the quality*

6  *of the open source licensees' work*," which is merely a conclusory legal assertion which adds no

7  new facts to make the claim a cognizable one.  Thus, granting leaving to amend would be futile.

8          **1.      GFI's "Confusion" Theory Does Not Constitute Abandonment Under**
            **the Lanham Act**

9

10         GFI's first abandonment theory is that the use of "Neo4j" in multiple contexts—as a

11 "product name trademark" and "company name trademark"—has confused **them** (and not the

12 general public), and is allegedly "exacerbated" by Neo4j Sweden (Neo4j USA's Swedish

13 subsidiary) being the owner of the copyright for the NEO4J® branded software.  Dkt. No. 31 at

14 7:3-6.  GFI's "confusion" is not a legally cognizable defense under the Lanham Act because it

15 does not even suggest, let alone establish, any act of abandonment.  The allegation shows use of

16 the NEO4J® mark by Neo4j USA, not non-use, and therefore does not fit the first definition of 15

17 U.S.C. § 1127 which requires discontinuation of use with an intent not to resume such use.

18 Confusion is not discontinuation and notably, GFI does not alleged discontinuation at all.  GFI's

19 "confusion" theory simply is not a factually or legally viable basis to support the defense.

20         The "confusion" allegation also does not fit the second statutory definition of

21 abandonment because it has nothing to do with naked licensing, or even licensing in general.

22 Critically, there is no allegation that the use of the NEO4J® mark as a company name and as a

23 product name has caused the mark to become generic or otherwise lose its trade significance, the

24 key requirement under the second prong of the statutory abandonment defense.  To the contrary,

25 GFI concedes that the mark is being used in at least one of the registered classes of goods.  Dkt.

26 No. 31 at 6:23-24 ("Defendant's use of the trademarks was and is a nominative fair use to 1)

27 identify a software product called Neo4j...").

28         Moreover, that the NEO4J® mark is used as a product name and a company name

demonstrates its strength and significance because the mark is functioning as its intended purpose as an indicator of origin.  The Ninth Circuit recognizes that corporate trade names are legitimate, legally protected uses. *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1535 (9th Cir. 1989) ("[w]hether the name of a corporation is to be regarded as a trade-mark, a trade name, or both, is not entirely clear under the decisions. To some extent, the two terms overlap.... But the precise difference is not often material, since the law affords protection against its appropriation in either view upon the same fundamental principles."); *see also Standard Oil Co. of N. M. v. Standard Oil Co. of Cal.*, 56 F.2d 973, 979 (10th Cir. 1932) (recognizing that a "corporate name or trade name identifies a corporation; it also identifies its business and the goods or services which it sells or renders").

The "confusion" allegation simply does not amount to abandonment under any reasonable inferences drawn from the allegations.  No plausible reading of GFI's allegations would suggest the Neo4j mark has been abandoned and ceased to function as an indicator of origin.  Instead, GFI's sparse allegations show multiple uses of the NEO4J® mark and demonstrate the marks' strength, not its diminution, let alone loss of the significance as a mark.  Accordingly, GFI's abandonment claim based on "confusion" fail as a matter of law.

### 2.    GFI's "Open Source Licensing" Theory Does Not Establish "Naked Licensing" Abandonment as a Matter of Law

Defendant's second abandonment theory appears to be that that the distribution of software through open-source software licenses *ipso facto* means the licensor has abandoned its trademark.  *See* Dkt. No. 31 at 7:6-10.

The open-source license that is the subject of GFI's abandonment theory is the GNU General Public License ("GPL") and the Affero General Public License ("AGPL"):

> Because the open source software is under a GPL or AGPL license, and has over 100 contributors, Plaintiff may not be able to actually convert the GPL or AGPL license to proprietary software.

Dkt. No. 31 t 5:18-6:20.

The crux of GFI's "open source licensing" theory—that there is "no ability to maintain quality control" because the software is licensed as open-source software—does not establish

1  abandonment under either definition of abandonment under the Lanham Act.  It does not meet the

2  first definition under 15 U.S.C. § 1127 because there are no facts alleged establishing that Neo4j

3  USA discontinued use of the NEO4J® mark at any time.  The allegation also fails to meet the

4  second statutory definition because there is no allegation that this open source license has resulted

5  in any loss of significance of the NEO4J® mark, the key requirement of abandonment under 15

6  U.S.C. § 1127(2).   Abandonment requires that the trademark cease to function but that is not

7  what GFI has plead, nor can it.

8        GFI erroneously presumes that software distributed via open-source software licenses

9  must mean the licensor has abandoned its trademark.  This is not the law.  Rather, open source

10  software licensing has been found to constitute an ***intent to control*** trademark rights, not the

11  relinquishment of rights.  *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1198

12  (11th Cir. 2001) ("[t]hat the Software had been distributed pursuant to a GNU General Public

13  License does not defeat trademark ownership, nor does this in any way compel a finding that

14  [trademark owner] abandoned his rights in trademark.").

15        *Planetary Motion* is particular instructive in evaluating GFI's naked licensing theory.  In

16  that case, Byron Darrah developed "Coolmail," which was a software that provides email users

17  with notice of new email.  *Planetary Motion*, 261 F.3d at 1191.  He distributed the software

18  online under the same GPL open source license at issue here.  *Id.*  Several years later, defendant

19  began offering an email service under the mark "CoolMail."  *Id*.  In 1999, Darrah sold the rights

20  in the software to Planetary Motion, who had in 1998 registered the mark "Coolmail" for its own

21  email service.  *Id.* at 1192. Planetary Motion then sued defendant for infringement of the

22  Coolmail mark, as well as for infringement of the trademark rights it had been assigned by

23  Darrah.  *Id.*  The district court granted summary judgment and permanent injunctive relief to

24  plaintiff.  *Id.*

25        On appeal, defendant argued it could not have infringed the Coolmail mark because

26  Darrah had initially distributed it via the GPL, which divested him of any ownership rights in the

27  mark.  *See Planetary Motion*, 261 F.3d at 1198.  The Eleventh Circuit disagreed, holding "[t]hat

28  the Software had been distributed pursuant to a GNU General Public License does not defeat

842\3425603.13                          - 12 -

trademark ownership, nor does this in any way compel a finding that Darrah abandoned his rights in trademark." *Id*. Rather, defendant "misconstrue[d] the function of a GNU General Public License" and that "[s]oftware distributed pursuant to such a license is not necessarily ceded to the public domain." *Id*. The fact that Darrah licensed the software under the GPL was instead ***evidence of a desire to retain ownership rights***. *Id*. at 1198, fn 16.

Here, Defendants' open-source licensing abandonment theory is also predicated on the same failed arguments regarding GNU GPL license that the *Planetary Motion* court found had not resulted in naked licensing. As in that case, the fact that NEO4J®-branded software was licensed under the GPL and AGPL itself is evidence of Neo4j USA's efforts to control the quality of the mark in connection with the licensed products. This is because both the GPL and AGPL requires licensees who wish to copy, distribute, or modify the software to include a copyright notice and clearly identify the correct origin of any added code. *Planetary Motion, Inc.*, 261 F.3d at 1191 at fn. 16. Both licenses were drafted and published by the same organization—Free Software Foundation—and the AGPL is merely a modified variant of the GPL with all of the protections of the GPL plus an added requirement of for open-source software running on servers. Chien Decl., ¶ 11, RJN, ¶ 2. Consequently, the use of both the GPL and AGPL shows an ***intent to control*** trademark rights, not the relinquishment of rights. There is no automatic abandonment rule as GFI contends. And, of course, Neo4j USA's trademark claims in this lawsuit are further evidence of its vigilant protection of the hard earned goodwill in its mark.

Abandonment is not an appropriate defense here because neither GFI's "confusion" nor "open source" theories are legally cognizable defenses. Consequently, the Fourth Affirmative Defense for abandonment based on the doctrine of naked licensing fails as a matter of law.

**B.** **GFI's Fifth Affirmative Defense Regarding "Right to Fork" Is Not A Legally Cognizable Defense**

For its Fifth Affirmative Defense entitled "[r]ight to fork and use Neo4J Open Source under GitHub Terms of Service," GFI alleges in relevant part "By using a public repository at GitHub, the open source versions of Neo4j are subject to the GitHub Terms of Service which allow any user to use and fork the software…." Dkt. No. 31 at 7:13-14. The allegation then cites

1  to an excerpt from the GitHub Terms of Service concerning the rights associated with "forking"

2  of open source software on GitHub.  *See* Dkt. No. 31, 8:15-19.

3        GFI's defense appears to be a declaratory relief claim, however, it is not a legally

4  cognizable defense.  Generally, "[a]ffirmative defenses plead matters extraneous to the plaintiff's

5  prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint

6  are true."  *G & G Closed Circuit Events, LLC v. Nguyen*, No. 10–168, 2010 WL 3749284, at *5

7  (N.D.Cal. Sept. 23, 2010) (internal quotation marks omitted).  GFI fails to allege facts that

8  provide Neo4j with fair notice as to how this "affirmative defense" would deny Neo4j USA's

9  right to recover.  GFI's bare allegations do not allow Neo4j USA to pinpoint how the "right to

10  fork" would absolve GFI from incurring liability for infringing the NEO4J® mark or engaging in

11  unfair competition in violation of the Lanham Act or the California's UCL.  Thus, they fail to

12  meet the *Twombly/Iqbal* pleading standard and should be stricken on that basis.  *See Perez*, 2012

13  WL 1029425, at *8; *Hernandez*, 306 F.R.D. at 283.

14        Additionally, GFI's "right to fork" is not a legally cognizable defense because the GitHub

15  Terms of Service that GFI references and relies upon ***contradicts*** this theory.  Specifically,

16  Section C, which is judicially noticeable, entitled the "Acceptable Use" policy of the Terms of

17  Services states in relevant part:

18        **Your use of the Website and Service must not violate any applicable
19        laws, including copyright or trademark laws**, export control or sanctions
      laws, or other laws in your jurisdiction. You are responsible for making sure
20        that your use of the Service is in compliance with laws and any applicable
      regulations.

21  *See* Chien Decl., ¶ 5, RJN, ¶ 1 (emphasis added).[2]

22        GFI's omission of Section C cited above is fatal to this defense because it expressly

23  ***prohibits*** GitHub users who access software through GitHub from violating applicable laws

24  "including copyright or trademark laws."  *Id.*  In other words, while GFI may have forked Neo4j

25

26  [2] GFI cannot dispute that its Fifth Affirmative Defense cites to and is clearly dependent on the
   contents of the GitHub Terms of Service.  The Court may therefore take judicial notice of the
27  entire GitHub Terms of Service as it were incorporated by reference to GFI's Amended Answer.
   *See In re Apple*, No. C-10-02553 RMW, 2012 WL 2428248, at *2; *In re New Century*, 588
28  F.Supp.2d at 1220.

USA's software pursuant to the cited portion of the Terms of Service, the omitted portion of the

GitHub Terms of Service makes clear that it is not absolved from liability for trademark

infringement.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

(recognizing in determining whether a party has sufficiently pled a claim entitling it to relief, a

court "need not… accept as true allegations that contradict matters properly subject to judicial

notice or by exhibit").   When the Terms of Service is considered in its entirety, there is no

reasonable interpretation of GFI's "right to fork" theory that can absolve it from Neo4j USA's

claims for trademark infringement and unfair competition.  Thus, it fails as a matter of law.

### C.      GFI's Fifth Affirmative Defense Regarding "Right to Fork" Constitutes Impertinent and Immaterial Matters

Aside from not being legally viable, GFI's Fifth Affirmative Defense also constitutes

impertinent and immaterial matters.  A matter is immaterial if it "has no essential or important

relationship to the claim for relief or the defenses being plead."  *Whittlestone*, 618 F.3d at 974

(quoting *Fantasy, Inc*., 984 F.2d at 1527); *accord Barnes*, 718 F. Supp. 2d at 1170.  A matter is

impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in

question." *Id*.  In this regard, it is unclear from the bare allegations in the Amended Answer how

this defense is relevant, let alone have an essential or important relationship to Neo4j USA's

claims that GFI's unauthorized use of the NEO4J® mark in conjunction with the sale and

advertising of its ONgDB software has caused consumer confusion in violation of 15 U.S.C. §

1114, or that GFI's improper use of the NEO4J® mark in the promotion of its ONgDB software

constitute a false designation of origin and false advertising in violation of 15 U.S.C. § 1125(a).

Consequently, the Fifth Affirmative Defense may also be stricken as impertinent and immaterial.

### D.      GFI's Sixth Affirmative Defense for Cancellation of the Registration for the NEO4J® Mark Fails to Establishing Any Purported Fraud in the Procurement Thereof and is Not a Legally Cognizable Defense

GFI's original answer merely alleged in conclusory fashion that "[t]he Registered

Trademark for NEO4J, Reg. No. 4,784,280, was procured by fraud. Because the registration was

procured by fraud, the registration should be cancelled pursuant to 15 U.S.C. §1119."  Dkt. No. 25 at

8:5-9 (previous alleged as its Eight Affirmative Defense).  The only new allegation that GFI

added to its Amended Answer to what is now its Sixth Affirmative defense is an allegedly false

first use and use in commerce dates:

> "The Registered Trademark for NEO4J, Reg. No. 4,784,280 was procured by fraud as the representation was that Neo Technology (a Delaware Corporation) (changed to Neo4J, Inc.) first used the trademark in 6-4-2006 and in commerce in 5-28-2007. These statements are false as Neo Technology did not exist on those dates represented as the company was formed 7-7-2011 in Delaware under File Number 5007564. Because the registration was procured by fraud, the registration should be cancelled pursuant to 15 U.S.C. § 1119."

Dkt. No. 31 at 7:27-8:4.

 "Fraud in procurement of a trademark registration may be raised as a ground for

cancellation in civil litigation, in which case it may function as a 'defense' to a claim of

trademark infringement." *eCash Techs., Inc. v. Guagliardo*, 127 F.Supp.2d 1069, 1079 (C.D. Cal.

2000); *accord AirWair Int'l Ltd.*, 84 F.Supp.3d 943, 951–52 (N.D. Cal. 2015) (quoting same). In

asserting a defense based on fraud in the procurement, however, GFI "bears heavy burden of

demonstrating that a trademark should be cancelled." *Hokto Kinoko Co. v. Concord Farms, Inc.*,

738 F.3d 1085, 1097 (9th Cir. 2013). Thus, GFI must meet the heightened pleading requirements

imposed by Federal Rule of Civil Procedure 9(b), which requires that allegations be "specific

enough to give defendants notice of the particular misconduct which is alleged to constitute the

fraud charged." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Aureflam Corp. v. Pho

Hoa Phat I, Inc.*, 375 F.Supp.2d 950, 953 (N.D. Cal. 2005) (recognizing that Rule 9(b)'s

heightened pleading requirement applies to claims of fraud in the procurement of trademarks).

To allege a claim of cancellation based on fraud in the procurement, GFI must allege with

particularity: "(1) a false representation regarding a material fact; (2) the registrant's knowledge

or belief that the representation is false; (3) the registrant's intent to induce reliance upon the

misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages

proximately caused by that reliance." *Hokto Kinoko*, 738 F.3d at 1097 (citing *Robi v. Five

Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)); *accord AirWair Int'l Ltd.*, 84 F.Supp.3d at

952 (quoting same). A false representation in the original trademark application may be grounds

for cancellation ***only*** if all five of the above requirements are met. *Id.*

GFI's additional allegation still do not meet this heightened standard.  GFI alleges no facts establishing any knowing and intentional act by Neo4j USA to deceive the USPTO.  Simply alleging an inconsistency between the date of Neo4j USA's incorporation and the date of first use stated do not pinpoint Neo4j USA's knowledge, intent, or reliance that underlie GFI's theory of fraud.  There are also no allegations of any damage suffered by GFI that gave rise to the alleged fraud defense.  *See Aureflam*, 375 F.Supp.2d at 953 (recognizing that to "demonstrate fraud, a pleading must identify the 'time, place and nature of the alleged fraudulent activities'") (quoting *Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 540 (9th Cir. 1989)); *see also In re Bose Corp*., 580 F.3d 1240, 1243-45 (Fed. Cir. 2009) (holding that party seeking to cancel a trademark registration based on fraud must allege that defendant "knowingly [made] false, material representations of fact in connection with his application" and finding that "there is a material legal distinction between a 'false' representation and a 'fraudulent' one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like.").  Accordingly, the GFI's allegations do not allow Neo4j USA to defend these charges of fraud with any particularity and fall short of both the basic pleading standard under *Twombly/Iqbal* and Rule 9(b)'s heighted requirements for claims and defenses sounding in fraud.[3]

Even if the allegations were sufficiently plead (which they are not), GFI's Sixth Affirmative Defense remains legally unviable.  The Ninth Circuit has held that in order "to prove fraud that would result in the cancellation of [a federally registered] mark, there would have to be a material misrepresentation in the affidavit on the basis of which the mark was registered."  *Pony*

---

[3] Albeit unnecessary for this Court finding that Defendant's cancellation claim is not legally viable, it is worth noting that the claimed dates of first use for the NEO4J® mark are accurate because they were based on use by Neo4j USA's predecessor-in-interest whose use properly inured to the benefit of Neo4j USA.  *See* 15 U.S. Code § 1127 ("The term 'related company' means any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used."); 15 U.S.C. § 1055 ("Where a [] mark sought to be registered is [] used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration…."); *see also* Trademark Manual of Examining Procedure § 903.05 ("If the first use anywhere or the first use in commerce was by a predecessor in title to the applicant, or by a related company of the applicant [] and the use inures to the benefit of the applicant….").

1   *Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*, 872 F.2d 317, 319 (9th Cir. 1989);

2   *Teeter-Totter, LLC v. Palm Bay Int'l, Inc.*, 344 F.Supp.3d 1100 (2018).  In this regard, a

3   trademark applicant's claimed date of first use cannot constitute a material misrepresentation ***so***

4   ***long as the first use in fact preceded the application date***.  *Pony Exp.,* 872 F.2d at 319; *accord*

5   *McCarthy on Trademarks and Unfair Competition* (2d ed.1984), 2, § 31:21 (citing same); *Angel*

6   *Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1210 (11th Cir. 2008)

7   ("misstatement of the date of first use in the application is not fatal to the securing of a valid

8   registration as long as there has been valid use of the mark prior to the filing date").

9          Here, GFI does not allege that Neo4j USA failed to use the mark ***prior to the filing date*** of

10  the application for that mark.  Nor can GFI because there is no dispute, and it is a judicially

11  noticeable fact, that Neo4j USA was using its mark long before its April 2014 application date.

12  *See* Chien Decl., ¶¶ 6-10, 12; *RJN*, ¶¶ 3-5.  Even accepting GFI's own allegations as true, the date

13  of Neo4j USA's incorporation in Delaware was July 7, 2011, three years prior to the application

14  date.  Additionally, the Neo4j name was also used to offer NEO4J® branded software by the

15  company on its publicly facing website after incorporating in 2011.  *Id.*  Neo4j was also doing so

16  immediately before it filed the application for trademark.  *Id.*  These dates indisputably precede

17  the NEO4J® mark's April 2014 application date and consequently, pursuant to *Pony Exp.*

18  *Courier Corp. of Am* and *Teeter-Totter*, the alleged misrepresentation is immaterial and cannot be

19  a basis to support GFI's fraud theory.  Accordingly, even if GFI's allegations were true, the

20  misstatement of the date of first use cannot amount to fraud under the circumstances here.

21  Accordingly, the Court should strike GFI's Sixth Affirmative Defense as it fails as a matter of

22  law.

23          **E.      The Court Should Deny Leave to Amend**

24          When dismissing a claim or defense, "a district court should grant leave to amend even if

25  no request to amend the pleading was made, unless it determines that the pleading could not

26  possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

27  Cir.200) (en banc) (internal quotes and citation omitted).  Nonetheless, a court "may exercise its

28  discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the

1    movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

2    to the opposing party ..., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*,

3    629 F.3d 876, 892–93 (9th Cir.2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227,

4    9 L.Ed.2d 222 (1962)) (alterations in original).

5         The Court's "discretion to deny leave to amend is particularly broad where plaintiff has

6    previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637

7    F.3d 1047, 1058 (9th Cir. 2011) (quotation marks omitted). The Court also should not grant leave

8    to amend "where doing so would be an exercise in futility." *Low v. LinkedIn Corp.*, 900

9    F.Supp.2d 1010, 1033 (N.D. Cal. 2012).  The Court may deny leave to amend "if it determines

10   that allegation of other facts consistent with the challenged pleading could not possibly cure the

11   deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010); *accord*

12   *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (holding that an "amendment

13   is futile when 'no set of facts can be proved under the amendment to the pleadings that would

14   constitute a valid and sufficient claim or defense'") (citation omitted).  Likewise, the Court

15   should deny leave to amend where the facts are not in dispute, and the sole issue is a matter of

16   substantive law.  *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

17        Even though it was given an opportunity to do so, GFI's Fourth Affirmative Defense for

18   abandonment via naked licensing added no new facts and the a bare legal assertion it did add did

19   not change the underpinning theory.  GFI's "confusion" and "open-source license" theory simply

20   do not fit the theory abandonment and further amendments would be futile because no set of facts

21   can be proved that would constitute a valid and sufficient defense under the Lanham Act's

22   statutory and case law rules for trademark abandonment.

23        Similarly, GFI's Fifth Affirmative Defense based on "right to fork" also remained

24   unchanged in substance and the Amended Answer merely quoted an excerpt from the Terms of

25   Service that GFI had already cited in its original Answer.  Nothing was added to this defense that

26   could be reasonably read to support a theory that would absolve GFI from Neo4j USA's

27   trademark infringement and UCL claims despite being put on written notice of these deficiencies

28   in the detailed January 8, 2020 meet and confer correspondence.

For its Sixth Affirmative Defense for fraud, GFI was also put on written notice of the stringent requirements for pleading allegations of fraud pursuant to Federal Rules of Civil Procedure 9(b).  The allegation that GFI added—which it merely copied nearly verbatim from related defendants in the Related Case—concerned allegations that as a matter of law cannot sustain a theory of fraud on the USPTO because the statement is not a material representation. Thus, the theory cannot be cured and granting leave would be futile. *See Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (recognizing that a party may plead itself out of court where that party alleges facts establishing that it cannot prevail on its claim); *accord Minor v. FedEx Office & Print Servs., Inc.*, 78 F.Supp.3d 1021, 1026 (N.D. Cal. 2015) (citing same).

Accordingly, the Court should strike GFI's Fourth, Fifth, and Sixth Affirmative Defenses with prejudice and deny GFI leave to amend those defenses.

## VII.    CONCLUSION

For the reasons explained in this Motion, Neo4j USA respectfully requests that the Court grant this Motion to Strike GFI's Fourth, Fifth, and Sixth Affirmative Defenses, and to deny leave to amend as to each of these defenses.

Dated:  February 7, 2020

HOPKINS & CARLEY
A Law Corporation


By:*/s/ Cary Chien*
    John V. Picone
    Jeffrey M. Ratinoff
    Cary Chien
    Attorneys for Plaintiff
    NEO4J, INC.