John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
Cary Chien, Bar No. 274078
cchien@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Plaintiff
NEO4J, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GRAPH FOUNDATION, INC., an Ohio corporation,<br><br>Defendant. | CASE NO.  5:19-cv-06226-EJD<br><br>**REPLY IN SUPPORT OF NEO4J INC.'S MOTION TO STRIKE**<br><br>Date:       May 7, 2020<br>Time:      9:00 a.m.<br>Location:  Courtroom 4, 5th Floor<br>Judge:     Hon. Edward J. Davila |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL ARGUMENT | 3 |
| | A. GFI's Fourth Affirmative Defense for Abandonment is Legally Deficient | 3 |
| |    1. The Allegations Supporting GFI's "Confusion" Theory Do Not Amount to Naked Licensing Under Applicable Legal Standards | 3 |
| |    2. GFI Cannot Establish Naked Licensing Based on the Open Source Licensing of NEO4J® Graph Database Source Code Under the GPL and AGPL | 6 |
| | B. GFI's Fifth Affirmative Defense Regarding "Right to Fork" is Not a Legally Cognizable Defense or Material to the Claims Asserted in Plaintiffs' Second Amended Complaint | 8 |
| | C. The Court Should Deny Leave to Amend | 11 |
| III. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Achal v. Gate Gourmet, Inc.*,
  114 F.Supp.3d 781 (N.D. Cal. 2015) .................................................................................... 11

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227, 57 S.Ct. 461 (1937) ........................................................................................ 10

*Albrecht v. Lund*,
  845 F.2d 193 (9th Cir. 1988) ................................................................................................. 12

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937 (2009) ..................................................................................... 1

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
  289 F.3d 589 (9th Cir. 2002) ......................................................................................... 3, 4, 7

*Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*,
  718 F.Supp.2d 1167 (N.D. Cal. 2010) ............................................................................ 1, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955 (2007) ..................................................................................... 1

*CTF Dev., *1172 Inc. v. Penta Hospitality, LLC*,
  No. C 09–02429, 2009 WL 3517617 (N.D.Cal. Oct. 26, 2009) .............................................. 1

*Exxon Corp. v. Oxxford Clothes, Inc.*,
  109 F.3d 1070 (5th Cir. 1997) ................................................................................................ 8

*FreecycleSunnyvale v. Freecycle Network*,
  626 F.3d 509 (9th Cir. 2010) .................................................................................................. 7

*Hernandez v. Cty. of Monterey*,
  306 F.R.D. 279 (N.D. Cal. 2015) .................................................................................... 1, 10

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  738 F.3d 1085 (9th Cir. 2013) ............................................................................................ 5, 7

*Holdings v. Miva, Inc.*,
  2016 WL 4943048 (S.D. Cal. Sept. 16, 2016) ..................................................................... 11

*K Mart Corp. v. Cartier, Inc.*,
  486 U.S. 281, 108 S. Ct. 1811, 100 L. Ed. 2d 313 (1988) ...................................................... 5

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Letica Corp. v. Sweetheart Cup Co.*,
  805 F.Supp. 482 (E.D. Mich. 1992) .................................................................................... 5

*Low v. LinkedIn Corp.*,
  900 F.Supp.2d 1010 (N.D. Cal. 2012) ................................................................................ 11

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270, 61 S.Ct. 510 (1941) ...................................................................................... 11

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118, 127 S.Ct. 764 (2007) .................................................................................... 10

*Monster, Inc. v. Dolby Labs. Licensing Corp.*,
  920 F.Supp.2d 1066 (N.D. Cal. 2013) ................................................................................. 3

*Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*,
  118 U.S.P.Q.2d 1413, 2016 WL 3357265 (T.T.A.B. 2016) ................................................. 5

*Perez v. Gordon & Wong Law Grp., P.C.*,
  No. 11-CV-03323-LHK, 2012 WL 1029425 (N.D. Cal. Mar. 26, 2012) ............................. 3

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
  261 F.3d 1188 (11th Cir. 2001) ............................................................................................ 8

*Principal Life Ins. Co. v. Robinson*,
  394 F.3d 665 (9th Cir. 2005) .............................................................................................. 10

*Ramachandran v. City of Los Altos*,
  359 F.Supp.3d 801 (N.D. Cal. 2019) ................................................................................... 6

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ................................................................................................ 6

*Sterling Drug Inc. v. Lincoln Laboratories, Inc.*,
  322 F.2d 968 (7th Cir. 1963) ................................................................................................ 5

*Telesaurus VPC, LLC v. Power*,
  623 F.3d 998 (9th Cir. 2010) .............................................................................................. 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 US 308, 127 S.Ct. 2499 (2007) ...................................................................................... 6

*United States v. Washington.*,
  759 F.2d 1353 (9th Cir. 1985) ............................................................................................ 11

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Whittlestone, Inc. v. Handi–Craft Co.*,
 618 F.3d 970 (9th Cir. 2010) .................................................................................................. 10

**Statutes**

15 U.S.C. § 1055 ........................................................................................................................ 4, 5

15 U.S.C. § 1114 ...................................................................................................................... 10, 11

15 U.S.C. § 1125 ........................................................................................................................... 11

15 U.S.C. § 1125(a) ...................................................................................................................... 10

15 U.S.C. § 1127 ........................................................................................................................ 4, 6

28 U.S.C. § 2201(a) ...................................................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Graph Foundation, Inc. ("GFI") concedes that its Sixth Affirmative Defense for cancellation of Neo4j USA's federally registered NEO4J® mark is not legally viable. *See* Dkt. No. 36 at 2:26-28. As such, the Court should enter an order striking that defense with prejudice.

As for its Fourth and Fifth Affirmative Defenses, GFI argues that the Court should not strike them because GFI has asserted more than "boilerplate recitations of legal conclusions." *See* Dkt. No. 36 at 2:26-28. GFI ignores that these defenses must also meet the plausibility standard articulated by the Supreme Court in *Twombly* and *Iqbal*. This means that "there must be enough factual matter so as to possess enough heft to sho[w] that the pleader is entitled to relief." *Hernandez v. Cty. of Monterey*, 306 F.R.D. 279, 284-85 (N.D. Cal. 2015) (internal quotes and citation omitted); *see also CTF Dev., *1172 Inc. v. Penta Hospitality, LLC*, No. C 09–02429, 2009 WL 3517617, at *7–8 (N.D.Cal. Oct. 26, 2009) ("[u]nder the *Iqbal* standard, the burden is on the defendant to proffer sufficient facts and law to support an affirmative defense"). "Applying the standard for heightened pleading to affirmative defenses serves a valid purpose in requiring at least some valid factual basis for pleading an affirmative defense and not adding it to the case simply upon some conjecture that it may somehow apply." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1172 (N.D. Cal. 2010) (internal quotations and citation omitted). Thus, these affirmative defenses should still be stricken due to the legal infirmities with the handful of "facts" supporting them. *Hernandez*, 306 F.R.D. at 284-85 ("[a]ffirmative defenses are insufficient as a matter of law where there are no questions of fact, any questions of law are clear and not in dispute, and under no set of circumstances could the defense succeed") (internal quotes and citation omitted).

In particular, GFI fails to reconcile that its Fourth Affirmative Defense is legally defective because does meet either statutory definition of "abandonment" under the Lanham Act. Instead, GFI argues that Neo4j USA engaged in the naked licensing of the NEO4J® mark by permitting its wholly-owned subsidiary, Neo4j Sweden AB, to also use that mark for its company name and for software owned by Neo4j Sweden. This argument ignores that the Lanham Act expressly

contemplates "related companies" using the NEOJ4® mark without affecting the mark's validity, and in particular, the Ninth Circuit has found that a subsidiary's authorized use of a mark owned by its parent corporation does not amount to naked licensing. It is also presumed that the parent who owns the mark exercises sufficient control over the nature and quality of goods sold under the mark by the subsidiary unless there is evidence to the contrary. Since GFI does not allege any material facts establishing *the public* has been deceived by the parent-subsidiary relationship between Neo4j USA and Neo4j Sweden, GFI's naked licensing defense fails as a matter of law.

Likewise, GFI's insistence that the Fourth Affirmative Defense alleges a plausible naked licensing theory based on the open source licensing of source code for NEO4J® graph database software is unavailing. Contrary to GFI, the two open source licenses it cites to require licensees to provide notice of any modifications they make to the source code to differentiate it from the original, unaltered versions offered by Neo4j USA and Neo4j Sweden. This establishes Neo4j USA's efforts to control the use of the NEO4J® mark in connection with its software, and directly contradicts GFI's allegation that there are no agreements in place allowing Neo4j USA to restrict or monitor the quality of software bearing the NEO4J® mark. Since GFI does not allege any material facts that purport to establish abandonment beyond this discredited open source licensing theory, GFI clearly cannot maintain a plausible naked licensing defense.

GFI's efforts to salvage its Fifth Affirmative Defense fairs no better. Its "right to fork" under GitHub's terms of service and create modified versions of its own software based on the underlying code of NEO4J® graph database software does not absolve GFI from incurring liability for trademark infringement or acts of unfair competition. GitHub's Terms of Service mandate that users who download the source code for NEO4J® graph database software comply with applicable copyright and trademark laws in the further modification and distribution thereof. This means while GFI may fork that software (subject to those Terms of Service and underlying software licenses), it may not infringe the NEO4J® trademark or engage in false or misleading statements about being the equivalent unmodified NEO4J® graph database software. Thus, GFI's reliance on these Terms of Service is neither legally viable nor material to Neo4j USA's Lanham Act and California Unfair Competition Law (UCL) claims. It also amounts to an

1  improper request for declaratory relief, which does not serve a useful purpose in settling any
2  controverted legal issues or afford relief from any uncertainty or actual controversy faced by the
3  parties. Thus, GFI's Fifth Affirmative Defense fails as a matter of law.
4      Finally, the foregoing defects are legal in nature, and cannot be cured via amendments.
5  GFI apparently recognizes this since it did not request leave to amend, and did not identify any
6  additional facts that would save its Fourth and Fifth Affirmative Defenses defense. Since
7  granting GFI further leave to amend would be futile, the Court should strike GFI's Fourth, Fifth
8  and Sixth Affirmative Defenses with prejudice.

## II.     LEGAL ARGUMENT

### A.     GFI's Fourth Affirmative Defense for Abandonment is Legally Deficient

GFI asserts that it has pled sufficient facts to establish two theories of abandonment. It then repeatedly argues that Neo4j USA "is free to present evidence" that it has not engaged in naked licensing. *See, e.g.*, Dkt. No. 36 at 5:8-13, 6:8-12. It is entirely improper for GFI to argue that Neo4j USA must disprove that it engaged in naked licensing when the Ninth Circuit has made clear "the proponent of a naked license theory faces a stringent standard of proof." *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th Cir. 2002) (internal quotes and citation omitted); *accord Monster, Inc. v. Dolby Labs. Licensing Corp.*, 920 F.Supp.2d 1066, 1076 (N.D. Cal. 2013) (the party asserting a naked licensing defense "bears the burden to prove naked licensing with evidence that meets that stringent standard"); *see also Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *7 (N.D. Cal. Mar. 26, 2012) ("The defendant bears the burden of proof on an affirmative defense, in the same way that the plaintiff bears the burden of proof on a claim for relief."). As discussed below, the handful of GFI's conclusory allegations supporting this defense do not come close to establishing any alleged naked licensing of the NEO4J® mark under this standard, let alone under the more forgiving plausibility standard under *Iqbal* and *Twombly*.

#### 1.     The Allegations Supporting GFI's "Confusion" Theory Do Not Amount to Naked Licensing Under Applicable Legal Standards

As recognized by the Ninth Circuit, naked licensing occurs when the licensor "fails to

exercise adequate quality control over the licensee." *Barcamerica*, 289 F.3d at 596. Yet, there are no meaningful allegations in GFI's Amended Answer establishing that Neo4j USA failed to exert adequate control over Neo4j Sweden's use of the mark or that the public was somehow deceived by Neo4j Sweden's use of the NEO4J® mark. Rather, GFI vaguely alleges that there is "confusion" purportedly created by the use of the NEO4J® mark as a "product name trademark" and "company name trademark." *See* Dkt. No. 31 at 7:3-4. As detailed in Neo4j USA's moving papers, however, use of the NEO4J® mark as both a product name and a trade name constitutes a legitimate and protected use of that mark.[1] Dkt. No. 32 at 10:28-11:10.

In an attempt to save its "confusion theory" of trademark abandonment, GFI then argues that Neo4j Sweden's use of the NEO4J® mark in its name and its software "allegedly detracts from its significance as a trademark." *See* Dkt. No. 36 at 2:17-20, 4:23-5:13. This still does not amount to a plausible theory under the second definition under 15 U.S.C. § 1127.[2] To be sure, GFI cites no legal authority holding that such allegations are sufficient to establish abandonment of the NEO4J® mark via naked licensing. Nor can GFI do so because the Lanham Act expressly recognizes that a registered mark "may be used legitimately by related companies, such use shall inure to the benefit of the registrant … and such use shall not affect the validity of such mark or of its registration…." 15 U.S.C. § 1055; *see also* 15 U.S.C. § 1127 ("The term 'related company' means any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used.").

Notably, GFI does not allege that Neo4j Sweden's use of the NEO4J® mark in its company name and software is unlicensed or is not otherwise authorized by Neo4j USA. Likewise, there are no facts alleged in the Amended Answer that Neo4j Sweden is an unaffiliated company as suggested in GFI's opposition. *See* Dkt. No. 36 at 2:17-20. This is because it is publicly known that Neo4j Sweden is a subsidiary of Neo4j USA. *See* Reply Declaration of

---

[1] GFI's opposition fails to address that the use of the NEO4J® mark as both a company name and a product name is legally permissible and does not establish any alleged abandonment of that mark. Thus, GFI also concedes that it cannot establish abandonment based on such allegations.

[2] GFI does not address, and thus concedes that its naked licensing defense fails to meet the first definition of abandonment under 15 U.S.C. § 1127, which requires discontinuation of use with an intent not to resume such use. *See* Dkt. No. 32 at 10:10-19.

Jeffrey M. Ratinoff in Support of Neo4j, Inc.'s Motion to Strike ("Ratinoff Reply Decl."), Exh. A; Request for Judicial Notice re Neo4j, Inc.'s Reply ("Reply RJN"), ¶ 1.

GFI's omission of this fact is likely intentional because the inherent ability of a parent corporation to control the affairs of a subsidiary corporation is generally "sufficient to presume that the parent is adequately exercising control over the nature and quality of goods and services sold by the subsidiary under a mark owned by the parent…." *Noble House Home Furnishings, LLC v. Floorco Enterprises, LLC*, 118 U.S.P.Q.2d 1413, 1421, 2016 WL 3357265 (T.T.A.B. 2016); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 299, 108 S. Ct. 1811, 100 L. Ed. 2d 313 (1988) (observing that "the parent corporation—not the subsidiary whose every decision it controls—better fits the bill as the true owner of any [trademark] property that the subsidiary nominally possesses."). Indeed, a subsidiary's authorized use of a trademark owned by its parent corporation does not normally amount to abandonment. *See Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1098 (9th Cir. 2013) (finding that license of a mark from a Japanese parent to its wholly owned United States subsidiary was not a naked license even though the license contained no formal quality control provisions); *see also Sterling Drug Inc. v. Lincoln Laboratories, Inc.*, 322 F.2d 968 (7th Cir. 1963) (where products were manufactured by trademark owner and sold and distributed by its wholly owned marketing subsidiary under the latter's name, enforcement of trademark was not precluded on ground of lack of product quality control by trademark owner over its licensee); *Letica Corp. v. Sweetheart Cup Co.*, 805 F.Supp. 482, 487 (E.D. Mich. 1992) (recognizing that under 15 U.S.C. § 1055, "if two companies are related, use by one company of the other's trade dress rights does not constitute abandonment").

In sum, GFI's allegations that "there is confusion whether Neo4j is a company name trademark or product name trademark," and more specifically, that Neo4j Sweden uses "Neo4j as part of the company and call the open source software product Neo4j too" are legally insufficient to plead a viable naked licensing defense. *See* Dkt. No. 31 at 31:3-10. GFI's Fourth Affirmative Defense thus fails as a matter of law to the extent that it is based on its "confusion theory."

///

///

### 2. GFI Cannot Establish Naked Licensing Based on the Open Source Licensing of NEO4J® Graph Database Source Code Under the GPL and AGPL

GFI argues that it has also established a viable naked licensing defense based on allegations that certain versions of NEO4J® graph database software is licensed as open source, and that Neo4j USA "has no right under the open source license to inspect or supervise the quality of the open source licensees' work, there is no ability to maintain quality control of how licensees modify, use, distribute or convey the software." *See* Dkt. No. 31 at 7:6-10; *see also* Dkt. No. 36 at 5:14-23. GFI further suggests that there is no agreement in place that allows Neo4j USA to restrict or monitor the quality of certain versions of open-source licensed NEO4J® graph database software.[3] *See* Dkt. No. 36 at 5:14-23.

Not only does GFI's position ignore the parent-subsidiary relationship of Neo4j USA and Neo4j Sweden as noted above, but it is also undermined by the applicable open source licensing agreements, the GNU General Public License (GPL) and the GNU Affero General Public License version 3 (AGPL). *See* Dkt. No. 32 at 13:6-19. In this regard, it is well-establish that the Court may consider documents that are attached to the complaint, incorporated by reference when their authenticity is not contested, or are otherwise properly the subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 US 308, 322, 127 S.Ct. 2499 (2007) (court ruling on motion to dismiss must consider entire complaint and other sources incorporated by reference as well as judicially noticeable matters); *see also Ramachandran v. City of Los Altos*, 359 F.Supp.3d 801, 810 (N.D. Cal. 2019). And, the Court need not accept as true allegations contradicted by judicially noticeable facts, or by exhibits attached to or incorporated in the pleading. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Under the Section 5(a) of the referenced GPL, a licensee may "convey a work based on the Program, or the modifications to produce it from the Program, in the form of source code under the terms of section 4, provided that… [t]he work must carry prominent notices stating that

---

[3] GFI does not refute Neo4j USA's argument that it fails to allege facts establishing that Neo4j USA discontinued use of the NEO4J® mark at any time under its open source naked licensing theory. *See* Dkt. No. 32 at 12:1-7. Thus, GFI concedes that this theory does not meet the first definition under 15 U.S.C. § 1127.

[the licensee] modified it, and giving a relevant date." Ratinoff Decl., Exh. B; Reply RJN at ¶ 2. Section 5(a) of the AGPL similarly provides that a licensee "may convey a work based on the Program, or the modifications to produce it from the Program, in the form of source code under the terms of section 4, provided that… [t]he work must carry prominent notices stating that the licensee modified it, and giving a relevant date." *See* Dkt. No. 32-1, Exh. 9; Dkt. No. 33 at ¶ 2.[4]

These provisions clearly contradict GFI's allegation that Neo4j USA does not exercise any control over "the open source licensees' work" and "how licensees modify, use, distribute or convey the software." *See* Dkt. No. 31 at 7:9. These provisions expressly require licensees to identify any and all modifications they make to the software to ensure that such modifications (and any related quality issues associated therewith) are ***not attributed*** to any goodwill associated with the NEO4J® mark.[5] This is more than legally sufficient to ensure that the public will not be deceived as to the source or quality of modified versions of the source code for NEO4J® open source software, and thus negate GFI's naked licensing defense as a matter of law – especially since there are ***no other facts alleged*** in the Amended Answer establishing a lack of quality control by either Neo4j USA or Neo4j Sweden. *See Barcamerica*, 289 F.3d at 596 (recognizing that "[t]he lack of an express contract right to inspect and supervise a licensee's operations is not conclusive evidence of lack of control"); *Hokto Kinoko Co.,* 738 F.3d at 1098 ("[e]ven absent formal quality control provisions, a trademark owner does not abandon its trademark where 'the particular circumstances of the licensing arrangement suggests that the public will not be deceived'") (internal quotes and citation omitted).

Moreover, no formal quality control requirements are necessary where the agreement

---

[4] GFI did not oppose Neo4j USA's request that the Court take judicial notice of the AGPL or incorporate it by reference in GFI's Amended Answer, as one of the two licenses governing the distribution of open source versions of NEO4J® graph database software.

[5] For this same reason, GFI's reliance on *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010) for the proposition that the "absence of an agreement with provisions restricting or monitoring the quality of goods or services produced under a trademark supports a finding of naked licensing" is misplaced. In *FreecycleSunnyvale*, the trademark owner allowed anyone to use their registered mark, as long as it was not used for commercial purposes and kept all online content that they associated with the mark "Free, legal, and appropriate for all ages." *Id.* at 513. In sharp contrast, the provisions of the AGPL and GPL operate to outwardly distinguish original, unaltered source code of Neo4j® graph database software from licensee-modified versions thereof.

between a licensor and licensee is not considered an actual trademark license. *See Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997) (recognizing that courts will not find existence of trademark license when authorization of trademark use is structured in such way as to avoid misleading or confusing consumer as to origin and/or nature of respective parties' goods). Arguably, the GPL and AGPL are not trademark licenses requiring express quality control provisions because they mandate that licensees provide "prominent notice" for any modified code or versions based on the underlying code of NEO4J® graph database software released under the AGPL and GPL to ensure there is no confusion as to origin of the modified software that may still nominally bare the NEO4J® mark.

Finally, GFI's argument that *Planetary Motion* is inapplicable because it "did not address abandonment resulting from failure to control" is equally without merit. *See* Dkt. No. 36 at 24-6:7. This is a distinction without a difference. The licensing of the source code for certain NEO4J® graph database software under the GPL and the AGPL – whether in the context of trademark ownership or the intent to control the mark in the context of open source licensing – does not "in any way compel a finding" that a trademark owner abandons its trademark rights. *See Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1198 (11th Cir. 2001) & fn. 16 (recognizing that the GPL allows users to copy, distribute and/or modify the software under certain restrictions, *e.g.,* users modifying licensed files must carry prominent notices stating that the user changed the files and the date of any change). GFI's bare allegations that Neo4j USA has no right to maintain control over how licensees redistribute modified versions of the source code for NEO4J® graph database software released under the AGPL and GPL are contradicted by those agreements and simply do not amount to a plausible naked licensing defense. Accordingly, GFI's Fourth Affirmative Defense based on its open source naked licensing theory fails as a matter of law.

**B.  GFI's Fifth Affirmative Defense Regarding "Right to Fork" is Not a Legally Cognizable Defense or Material to the Claims Asserted in Plaintiffs' Second Amended Complaint**

GFI's attempt to save its Fifth Affirmative Defense purposefully misconstrues Neo4j USA's Lanham Act and California UCL claims against GFI. Neo4j USA has not asserted a

copyright claim against GFI or otherwise indicated that GFI was not entitled to create its own "fork" based on the underlying source code for NEO4J® graph database software. Rather, Neo4j USA asserts claims for trademark infringement, false advertising and unfair competition claims based on GFI's infringement of the NEO4J® mark and the various false representations made in conjunction with its ONgDB software, which are not based on ONgDB being a forked from the source code of official NEO4J® graph database software. *See*, *generally*, Dkt. No. 1 at ¶¶ 18-37.

The GitHub Terms of Service do not give GFI the right to make false representations about the nature, quality or origin of its "forked" version of software based on the underlying source code for NEO4J® graph database software. Indeed, GFI fails to reconcile that the very terms of service it relies upon expressly states that it "***must not violate any applicable laws, including copyright or trademark laws***, export control or sanctions laws, or other laws in your jurisdiction." *See* Dkt. No. 32-1, ¶ 5 and Dkt. No. 33 at ¶ 1 (emphasis added).[6] Thus, while GFI may have a "[r]ight to fork and use Neo4J Open Source under GitHub Terms of Service" (Dkt. No. 31 at 7:13-14), it does not have a legal or contractual right to violate the Lanham Act or the California UCL under the very terms of service that its Fifth Affirmative defense relies upon.

GFI's argument that this provision requiring compliance with copyright and trademark laws "must be interpreted in connection with what is expressly permitted under the rest of the Terms of Service and with [GFI]'s actual conduct" is also meritless. Dkt. No. 36 at 7:8-11. As an initial matter, there are no allegations in the Amended Answer to support this argument. Even if there were any such allegations, GFI fails to identify any ambiguity in Section C of GitHub's Terms of Service or otherwise articulate why GFI's accused conduct might somehow be permissible thereunder. To be sure, GFI cannot do so because there is nothing within Section C requiring "interpretation" since it *expressly* prohibits users who access software through GitHub from violating applicable trademark and unfair competition laws. The real question thus is whether GFI's conduct violates the Lanham Act or the California UCL, not whether it is permissible under GitHub's terms of service to do so. As a result, GFI's "right to fork" defense

---

[6] GFI did not oppose Neo4j USA's request that the Court take judicial notice of the entire GitHub Terms of Service, which is incorporated by reference in GFI's Amended Answer.

1  cannot absolve it from Neo4j USA's claims for trademark infringement and unfair competition
2  under those laws, and should be stricken on that basis. *See Hernandez*, 306 F.R.D. at 283.

3  For these same reasons, GFI's suggestion that its "right to fork" defense is material to Neo4j USA's trademark and unfair competition claims is untenable. *See* Dkt. No. 36 at 6:18-7:8. This defense has no essential or important relationship to claims that GFI's unauthorized use of the NEO4J® mark in conjunction with the sale and advertising of its ONgDB software has caused consumer confusion in violation of 15 U.S.C. § 1114, or that GFI's improper use of the NEO4J® mark in the promotion of its ONgDB software constitute a false designation of origin and false advertising in violation of 15 U.S.C. § 1125(a). Consequently, the Fifth Affirmative Defense should be stricken for the additional reason that it is impertinent and immaterial. *See Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (an affirmative defense is subject to being stricken if it "has no essential or important relationship to the claim for relief or the defenses being plead" or if it "consists of statements that do not pertain, and are not necessary, to the issues in question.") (internal citation and quotes omitted); *accord Barnes*, 718 F.Supp.2d at 1170.

16  Finally, GFI fails to reconcile that its Fifth Affirmative Defense is improperly seeking declaratory relief on a copyright matter, *i.e.* its right to fork under GitHub's terms of service. *See* Dkt. No. 32 at 14:3-13. The Declaratory Judgment Act requires the existence of an actual case or controversy in order for a district court to exercise its subject matter jurisdiction. *See* 28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

21  An actual controversy is one that is (1) appropriate for judicial determination; (2) definite and concrete, touching the legal relations of parties having adverse interest; and (3) real and substantial, admitting of specific relief through a decree of conclusive character. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461 (1937); *accord MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764 (2007). The Supreme Court has stated that the question is essentially "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal &*

*Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510 (1941). Declaratory relief is not available, however, "when it will neither clarify or settle the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy that the parties face." *Achal v. Gate Gourmet, Inc.*, 114 F.Supp.3d 781, 819 (N.D. Cal. 2015).

Even if GFI could seek declaratory relief via an affirmative defense, which it cannot, the sparse allegations supporting its Fifth Affirmative Defense do not establish an actual case or controversy between the parties. There are no facts alleged in the Amended Answer establishing a dispute over the GitHub Terms of Service or that Neo4j USA has asserted that GFI does not have a right to create a fork based on the underlying source code of NEO4J® graph database software under those terms. *See* Dkt. No. 31 at 7:13-24. Rather, as detailed above, the case and controversy between the parties is whether GFI has violated the Lanham Act and the California UCL by using the NEO4J® mark in connection with GFI's ONgDB software in a manner that causes confusion in the marketplace and by misrepresenting the nature of its software in a manner likely to deceive consumers as to the affiliation or, connection between ONgDB and official NEO4J® graph database software. *See* 15 U.S.C. §§ 1114, 1125. Accordingly, the Court should also strike GFI's Fifth Affirmative on the grounds that it does not actually seek relief from any uncertainty or controversy between the parties. *See United States v. Washington.,* 759 F.2d 1353, 1357 (9th Cir. 1985) ("[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties"); *Holdings v. Miva, Inc.*, 2016 WL 4943048, at *4 (S.D. Cal. Sept. 16, 2016) (granting Rule 12(b)(6) motion because there was insufficient factual allegations establishing a plausible inference that declaratory judgment would afford relief from any uncertainty or controversy).

### C. The Court Should Deny Leave to Amend

As discussed in Neo4j USA's moving papers, the Court should deny leave to amend "where doing so would be an exercise in futility." *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1033 (N.D. Cal. 2012). The Court should also deny leave to amend "if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the

1  deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). Likewise, the
2  Court should deny leave to amend where the sole issue presented is a matter of substantive law.
3  *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

4  As detailed above, the defects in GFI's Fourth Affirmative Defense are legal in nature and
5  thus cannot be cured by further amendment. GFI's Fifth Affirmative Defense also does not set
6  forth a legally viable defense that would absolve GFI from Neo4j USA's Lanham Acts and UCL
7  claims, and instead constitutes an improper request for a declaratory judgment on a non-
8  controversial issue. More importantly, GFI neither requests leave to amend to address any of the
9  deficiencies identified by Neo4j USA, nor does offer any new material facts that would cure these
10 otherwise fatal defects. After having two opportunities to adequately allege sufficient facts
11 establish plausible naked licensing and "right to fork" defenses, it is clear that granting GFI a
12 third opportunity would be futile.

13 Accordingly, the Court should deny GFI leave to amend its Fourth and Fifth Affirmative
14 Defenses and strike with prejudice. Likewise, because GFI concedes that its Sixth Affirmative
15 Defense is not legally viable, the Court should strike that defense with prejudice.

16 **III.   CONCLUSION**

17 For the foregoing reasons and those set forth in Neo4j USA's moving papers, Neo4j USA
18 respectfully requests that the Court grant its Motion to Strike GFI's Fourth, Fifth, and Sixth
19 Affirmative Defenses, and to deny leave to amend as to each of these defenses.

20 Dated: March 3, 2020                                HOPKINS & CARLEY
                                                        A Law Corporation

                                                        By:*/s/ Jeffrey M. Ratinoff*
                                                           John V. Picone
                                                           Jeffrey M. Ratinoff
                                                           Cary Chien
                                                           Attorneys for Plaintiff
                                                           NEO4J, INC.