John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Plaintiffs
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation, Plaintiffs, v. GRAPH FOUNDATION, INC., an Ohio corporation, GRAPHGRID, INC., an Ohio corporation, and ATOMRAIN INC., a Nevada corporation, Defendants. | CASE NO.  5:19-cv-06226-EJD **PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT** Date:        October 29, 2020 Time:        9:00 a.m. Dept.:        Courtroom 4, 5th Floor Judge:        Hon. Edward J. Davila **JURY TRIAL DEMANDED** |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................ 1
II.  ISSUES TO BE DECIDED ......................................................................................... 3
III. FACTUAL AND PROCEDURAL BACKGROUND .................................................. 3
     A.   NEO4J USA, NEO4J SWEDEN AND THE NEO4J® GRAPH
          PLATFORM SOFTWARE .............................................................................. 3
     B.   GFI AND ITS PIRATED ONGDB SOFTWARE ............................................ 6
     C.   DEFENDANTS' DISTRIBUTION OF GFI'S PIRATED ONGDB
          SOFTWARE VIOLATES THE DMCA AND NEO4J SWEDEN
          SOFTWARE LICENSE ................................................................................... 8
     D.   GFI'S PIRATED ONGDB SOFTWARE ALSO AMOUNTS TO A
          BREACH OF THE NEO4J SWEDEN SOFTWARE LICENSE ..................... 9
     E.   GFI, GRAPHGRID AND ATOMRAIN'S TAX FRAUD AND FALSE
          ADVERTISING SCHEME ............................................................................. 10
IV.  LEGAL ARGUMENT ............................................................................................... 11
     A.   LEGAL STANDARDS GOVERNING RULE 12(B)(6) MOTIONS TO
          DISMISS ....................................................................................................... 11
     B.   OBJECTIONS TO DEFENDANTS' REQUESTS FOR JUDICIAL
          NOTICE ......................................................................................................... 12
     C.   THE FAC STATES CLAIM FOR BREACH OF THE NEO4J SWEDEN
          SOFTWARE LICENSE ................................................................................. 13
          1.   SECTIONS 7 AND 10 OF THE NEO4J SWEDEN SOFTWARE
               LICENSE DO NOT GIVE A LICENSEE THE RIGHT TO
               REMOVE OR ALTER TERMS ADDED THE COPYRIGHT
               HOLDER AND LICENSOR ................................................................ 15
          2.   GFI'S REMOVAL OF THE NOTICE PROVISION FROM THE
               SOURCE CODE OF THE NEO4J® GRAPH DATABASE
               PLATFORM AND FROM THE NEO4J SWEDEN SOFTWARE
               LICENSE ALSO AMOUNT TO A BREACH OF THAT
               AGREEMENT ...................................................................................... 20
     D.   THE FAC STATES A CLAIM BASED ON GFI'S VIOLATION OF THE
          DMCA ............................................................................................................ 22
     E.   THE FAC SUFFICIENTLY STATES A DMCA CLAIM AGAINST ARI
          AND GRAPHGRID ....................................................................................... 25
     F.   THE FAC STATES A SECTION 17200 CLAIM BASED ON GFI
          FRAUDULENTLY OBTAINING AND HOLDING ITSELF OUT AS
          NOT FOR PROFIT ENTITY ......................................................................... 27
          1.   PLAINTIFFS SUFFICIENTLY ALLEGE FACTS
               ESTABLISHING THAT DEFENDANTS ENGAGED IN
               UNLAWFUL BUSINESS PRACTICES THAT VIOLATE THE
               UCL .................................................................................................... 27
          2.   PLAINTIFFS ALLEGE FACTS ESTABLISHING THAT
               DEFENDANTS ENGAGED IN FRAUDULENT AND UNFAIR
               BUSINESS PRACTICES THAT VIOLATE THE UCL ......................... 31
V.   CONCLUSION .......................................................................................................... 34

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11                              - i -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001)...........................................................................................26

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F.Supp.3d 868 (N.D. Cal. 2018) ................................................................................12

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005)......................................................................................18, 19

*Alvarez v. Hill*,
518 F3d 1152 (9th Cir. 2008)...........................................................................................11

*AngioScore, Inc. v. TriReme Med., LLC*,
70 F.Supp.3d 951 (N.D. Cal. 2014) ..................................................................................33

*Apple Inc. v. Psystar Corp.*,
658 F.3d 1150 (9th Cir. 2011)...........................................................................................16

*Artifex Software, Inc. v. Hancom, Inc.*,
2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) ..............................................................19, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................11

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
571 U.S. 49 (2013)............................................................................................................14

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)...........................................................................................12

*Bedrosian v. Tenet Healthcare Corp.*,
208 F.3d 220 (9th Cir. 2000)...........................................................................................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................11

*Ben–Zvi v. Edmar Co.*,
40 Cal.App.4th 468 (1995) ................................................................................................15

*Buschman v. Anesthesia Bus. Consultants, LLC*,
42 F.Supp.3d 1244 (N.D. Cal. 2014) ................................................................................14

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

**TABLE OF AUTHORITIES**
(continued)

Page

*Cel–Tech. Comm., Inc. v. Los Angeles Cellular Tele. Co.*,
    20 Cal.4th 163 (1999) ................................................................... 27, 31

*Church by Mail, Inc. v. CIR*,
    765 F.2d 1387 (9th Cir. 1985)............................................................ 30

*Citizens for a Better Env't-California v. Union Oil of Cal.*,
    996 F.Supp. 934 (N.D. Cal. 1997) ...................................................... 28

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
    398 F.Supp.3d 623 (N.D. Cal. 2019) ................................................... 33

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010)............................................................ 13

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012)............................................................ 27

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004)............................................................ 22

*Fahrner-Miller Assocs., Inc. v. Mars Antennas & RF Sys., Ltd.*,
    2014 WL 6871550 (N.D. Cal. Dec. 4, 2014) ........................................ 18

*Farmers Ins. Exch. v. Sup. Ct.*,
    2 Cal.4th 377 (1992) ........................................................................ 27

*Fields v. Banner Health*,
    2005 WL 4806305 (D. Ariz. Mar. 24, 2005) ........................................ 30

*Free Speech Sys., LLC v. Menzel*,
    390 F.Supp.3d 1162 (N.D. Cal. 2019) ............................................ 23, 26

*Friedman v. Live Nation Merch., Inc.*,
    833 F.3d 1180 (9th Cir. 2016)............................................................ 23

*Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*,
    345 F.3d 922 (6th Cir. 2003)............................................................. 23

*Hong v. REI*,
    2020 WL 4227388 (D. Idaho July 23, 2020) .................................... 24, 26

*ICONICS, Inc. v. Massaro*,
    192 F.Supp.3d 254 (D. Mass. 2016) ................................................... 24

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\3601434.11                                    - iii -

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Jacobsen v. Katzer*,
2009 WL 4823021 (N.D. Cal. Dec. 10, 2009) ........................................................................ 24

*Jacobsen v. Katzer*,
535 F.3d 1373 (Fed. Cir. 2008) .............................................................................................. 16

*Johnson v. City of Shelby, Miss.*,
574 U.S. 10 (2014) ................................................................................................................. 11

*JW Gaming Dev., LLC v. James*,
2020 WL 353536 (N.D. Cal. Jan. 21, 2020) .......................................................................... 15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........................................................................................... 12, 13

*Kowalsky v. Hewlett-Packard Co.*,
771 F.Supp.2d 1156 (N.D. Cal. 2011) ................................................................................... 31

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ................................................................................................ 12

*Los Angeles Mem'l Coliseum Com. v. Insomniac, Inc.*,
233 Cal.App.4th 803 (2015) ............................................................................................. 29, 30

*Lucas v. Dep't of Corrections*,
66 F.3d 245 (9th Cir. 1995) .................................................................................................... 12

*Manzarek v. St. Paul Fire & Mar. Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ................................................................................................ 11

*MedioStream, Inc. v. Microsoft Corp.*,
749 F.Supp.2d 507 (E.D. Tex. 2010) ..................................................................................... 19

*Micro Star v. Formgen Inc.*,
154 F.3d 1107 (9th Cir. 1998) ................................................................................................ 18

*Milenbach v. C.I.R.*,
318 F.3d 924 (9th Cir.2003) ................................................................................................... 19

*Miller v. Glenn Miller Prods.*,
318 F.Supp.2d 923 (C.D. Cal. 2004), *aff'd sub nom.*, 454 F.3d 975 (9th Cir.
2006) ....................................................................................................................................... 15

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
795 F.3d 997 (9th Cir. 2015) .................................................................................................. 14

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Motors, Inc. v. Times-Mirror Co.*
4
 102 Cal.App.3d 735 (1980) ........................................................................................ 27

5
*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
 2016 WL 6393503 (N.D. Cal. 2016) ......................................................................... 32
6

7
*Orange County Agric. Soc'y, Inc. v. CIR*,
 893 F.2d 529 (2d Cir. 1990) ...................................................................................... 30

8
*Perfect 10, Inc. v. Amazon.com, Inc.*,
 508 F.3d 1146 (9th Cir.2007) ..................................................................................... 22
9

10
*Pulaski & Middleman, LLC v. Google, Inc.*,
 802 F.3d 979 (9th Cir. 2015) ..................................................................................... 32

11
*Quigley v. Yelp, Inc.*,
12
 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) .......................................................... 30

13
*Ramachandran v. City of Los Altos*,
 359 F.Supp.3d 801 (N.D. Cal. 2019) ........................................................................ 12
14

15
*Robbins v. Oakley, Inc.*,
 2018 WL 5861416 (C.D. Cal. Sept. 27, 2018) ......................................................... 23

16
*Segal v. Silberstein*,
17
 156 Cal.App.4th 627 (2007) ..................................................................................... 16

18
*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
 40 F. Supp. 3d 1191 (N.D. Cal. 2014) ...................................................................... 14
19

20
*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*,
 720 F.Supp. 805 (N.D. Cal. 1989) ...................................................................... 27, 28

21
*SST Millennium LLC v. Mission St. Dev. LLC*,
22
 2019 WL 2342277 (N.D. Cal. June 3, 2019) ........................................................... 15

23
*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) ................................................................................... 11
24

25
*Stevens v. Corelogic, Inc.*,
 899 F.3d 666 (9th Cir. 2018) ..................................................................................... 23

26
*Storm Impact, Inc. v. Software of the Month Club*,
27
 44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) ......................................... 18

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11

- v -

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Strom v. United States*,
    641 F.3d 1051 (9th Cir. 2011) ............................................................................... 11

4

5

*Tanadgusix Corp. v. Huber*,
    404 F.3d 1201 (9th Cir. 2005) ............................................................................... 12

6

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) ............................................................................................ 31

7

8

*Turner v. Unification Church*,
    473 F.Supp. 367 (D.R.I. 1978) ............................................................................. 30

9

10

*United States Cellular Invest. Co. of Los Angeles v. GTE Mobilnet, Inc.*,
    281 F.3d 929 (9th Cir. 2002) ................................................................................. 15

11

*Universal Sales Corp. v. Cal., Press Mfg. Co.*,
    20 Cal.2d 751 (1942) ............................................................................................. 19

12

13

*Wapato Heritage, L.L.C. v. United States*,
    637 F.3d 1033 (9th Cir. 2011) ............................................................................... 16

14

15

*Zalkind v. Ceradyne, Inc.*,
    194 Cal.App.4th 1010 (2011) ........................................................................... 16, 17

16

*Zhang v. Sup. Ct*,
    57 Cal.4th 364 (2013) ............................................................................................ 28

17

18

**Statutes**

19

17 U.S.C.
    § 106 ....................................................................................................................... 14
    § 201(b) ................................................................................................................... 14
    § 1202(b) ............................................................................................................ *passim*

20

21

18 U.S.C.
    § 1956 ..................................................................................................................... 29
    § 1957 ..................................................................................................................... 29

22

23

26 U.S.C.
    § 501(c)(3) ......................................................................................................... *passim*
    § 3101 ................................................................................................................ 29, 30
    § 3102 ................................................................................................................ 29, 30
    § 7202 ..................................................................................................................... 30
    § 7623 ..................................................................................................................... 29

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Bus. & Prof. Code
§ 17200...............................................................................................................3, 27, 28
§ 17203.......................................................................................................................28
§ 17204.......................................................................................................................27

Cal. Civ. Code
§ 1636..........................................................................................................................15
§ 1638..........................................................................................................................15
§ 1639..........................................................................................................................15
§ 1641.............................................................................................................15, 16, 17
§ 1646..........................................................................................................................14

Cal. Penal Code
§ 186.10.......................................................................................................................29

Fed. R. Civ. P.
9(b)....................................................................................................3, 27, 31, 33
12(b)(6).............................................................................................................11, 12
15(a).........................................................................................................................12

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11

- vii -

## I.    INTRODUCTION

Defendants Graph Foundation, Inc. ("GFI"), AtomRain, Inc. ("ARI") and GraphGrid Inc. ("GraphGrid") are corporations that are owned, controlled and managed by Bradley Nussbaum and Benjamin Nussbaum ("the Nussbaums").  GFI was conceived of and formed by the Nussbaums and John Mark Suhy (named in the Related Case and the founder and owner of iGov, Inc., another Defendant in that case).  They formed GFI as an alleged non-profit foundation to provide cover for pirating NEO4J® Enterprise Edition called ONgDB, and to profit off providing support services for that software, which would normally be included with a paid license for NEO4J® Enterprise Edition software ("NEO4J® EE").  NEO4J® EE is a version of the NEO4J® graph database platform that was originally provided on an open-source basis under the GNU Affero General Public License, version 3 ("AGPL"), and later for commercial uses under the Neo4j Sweden Software License.  NEO4J® EE is now provided on a paid basis for commercial applications which includes certain hosting and support services and otherwise unavailable proprietary modules.

In order to accomplish their scheme, GFI, ARI and GraphGrid (collectively "Defendants") conspired with Suhy to engage in unauthorized self-help by removing copyright management from the Neo4j Sweden Software License terms that accompanied 28 separate source code files, and then making the software available on GFI's GitHub repository as a "free" and "a non-restrictive fork" of NEO4J® EE.  This information included notices that identify Neo4j Sweden AB as the copyright holder and licensor of NEO4J® EE, as well as terms and conditions for use of the work and other licensing information.  It also includes the Commons Clause, which specifically restricts the commercial usage and exploitation of NEO4J® EE obtained on a source-available basis.

The First Amended Complaint ("FAC") alleges that Defendants intentionally altered and removed Neo4j Sweden's copyright management information and knowingly distributed ONgDB in violation of 17 U.S.C. § 1202(b) of the Digital Millennium Copyright Act ("DMCA").  The FAC further alleges that GFI's actions breached the Neo4j Sweden Software License.  Defendants seek to dismiss these claims based on the flawed theory that Sections 7 and 10 of the Neo4j Sweden Software License permit a licensee to remove "further restrictions" imposed by the licensor.  In doing so, Defendants ignore the basic principle of reading this agreement as a whole, including

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11                                          - 1 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

defined terms, and offering an interpretation of Neo4j Sweden Software License that runs contrary to its express terms and California law.

Defendants go as far as to misrepresent that Section 10 states that "licensor" may not impose further restrictions beyond what the AGPL originally provided. This contradicts what both the Neo4j Sweden Software License and the AGPL actually state – that a *licensee* may not impose any further restrictions on the exercise of rights granted or affirmed under either license. Defendants' attempted sleight of hand also changes the meaning of Section 7, which they incorrectly claim allows a licensee to remove "further restrictions" as defined by Section 10. When Section 7 is read correctly with Section 10 and other defined terms, Section 7 only allows a downstream licensee to remove unauthorized restrictions when placed by an upstream licensee who redistributes the copyrightable program, not those placed by the copyright owner offering the terms to the licensees.

Defendants' argument also violates one of the most fundamental principles of copyright law that Neo4j Sweden as the owner of the copyright in NEO4J® EE has the exclusive right to license that software on the terms of its choosing. It is Neo4j Sweden's intent that controls, not Free Software Foundation, a third party who promulgated the AGPL and is a stranger to the actual Neo4j Sweden Software License. As a result, there is no legal or contractual basis that excuses Defendants' alteration of the Neo4j Sweden Software License.

Finally, Defendants seek to dismiss Plaintiffs' claim that Defendants have fraudulently maintained GFI as a non-profit under 26 U.S.C. § 501(c)(3) to evade payroll and income taxes associated with their commercial exploitation of a pirated version of Plaintiffs' software amounts to an unlawful, unfair and fraudulent business practices violation of California's Unfair Competition Law ("UCL"). GFI specifically argues that because there is no private right of action under § 501(c)(3), Plaintiffs cannot maintain a claim for an unlawful violation UCL. GFI is wrong because the crux of Plaintiffs' claim is not the enforcement of federal law itself, but that the violation thereof resulted in competitive injury. More importantly, at least one federal court has recognized that a violation of federal tax law may serve as a predicate for a violation of the UCL.

Defendants' arguments that Plaintiffs have failed to allege a viable claim based on the unfair and fraudulent prongs of the UCL also miss the mark. Plaintiffs allege sufficient facts establishing

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11                                        - 2 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1   that Defendants' scheme to lower their overhead through income tax fraud and duping people into

2   helping Defendants further develop ONgDB without paying them significantly harms competition

3   in the graph database software market.  Likewise, the FAC alleges specific facts identifying

4   Defendants' acts of false advertising and consumer deception that meet the fraud prong of the UCL.

5       Accordingly, the Court should deny Defendants' motions in their entirety.  Should the Court

6   determine that one or more challenged claims are subject to dismissal, however, Plaintiffs

7   respectfully request leave to amend.  Doing so would not be futile as Plaintiffs have discovered

8   additional evidence of Defendants' knowledge of the alleged violations of the DMCA, as well as

9   additional violations that go beyond the Neo4j Sweden Software License.  Plaintiffs also have

10  obtained further evidence establishing Defendants' acts of unfair competition.  While Plaintiffs

11  believe they have met the requirements of Rule 9(b), including identifying the false statements and

12  advertisements made by each Defendant, they can also allege more specific facts if need be.

13  **II.      ISSUES TO BE DECIDED**

14      1.      Whether Plaintiffs have sufficiently alleged a claim establishing that Defendants

15  violated § 1202(b) of the DMCA as set forth in the Fifth Cause of Action of the FAC.

16      2.      Whether Neo4j Sweden has sufficiently alleged a claim establishing GFI's breach

17  of the Neo4j Sweden Software License as set forth in the Sixth Cause of Action of the FAC.

18      3.      Whether Plaintiffs have sufficiently alleged a claim for Defendants' violation of Cal.

19  Bus. & Pro. Code § 17200 et seq. as set forth in the Seventh Cause of Action of the FAC.

20      4.      If the Court is inclined to grant Defendants' motions in whole, or in part, whether

21  the Court should grant Plaintiffs leave to amend the claims subject to dismissal.

22  **III.     FACTUAL AND PROCEDURAL BACKGROUND**

23      **A.      Neo4j USA, Neo4j Sweden and the Neo4j® Graph Platform Software**

24      Neo4j, Inc. ("Neo4j USA") is the company behind the number one graph platform for

25  connected data, marketed and sold under the trademark NEO4J®.  FAC, ¶ 2.  The NEO4J® graph

26  database platform helps organizations make sense of their data by revealing how people, processes

27  and digital systems are interrelated.  *Id.*  This connections-first approach powers intelligent

28  applications tackling challenges such as artificial intelligence, fraud detection, real-time

842\3601434.11                                          - 3 -

1  recommendations and master data. *Id.*

2      Neo4j USA boasts the world's largest dedicated investment in native graph technology.

3  FAC, ¶ 3. It has more than 400 commercial customers, including global enterprises like Comcast,

4  Cisco, eBay, and UBS use the Neo4j® graph database platform to create a competitive advantage

5  from connections in their data. *Id.* Neo4j USA also does substantial business with government

6  agencies, including a number of agencies within the United States Government. *Id.*

7      Neo4j Sweden AB ("Neo4j Sweden") is a wholly owned subsidiary of Neo4j USA. FAC,

8  ¶ 4. It is the owner of all copyrights related to the Neo4j® graph database platform, including the

9  source code, and has licensed said copyrights to Neo4j USA in connection with the making, use,

10  creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and

11  distribution of the copyrighted material, and the sublicensing of such rights in the United States.

12  *Id.* The NEO4J® graph database platform is published and distributed with copyright management

13  information ("CMI") that includes the copyright owner's name, the title of the work, terms and

14  conditions for use of the work, and other identifying information about the copyright owner, Neo4j

15  Sweden. *Id.*, ¶¶ 66-68, 114-115, Exh. 36. The use of "neo4j" through the source code and in library

16  file structures, file names, and other references within the NEO4J® graph database platform also

17  serve to identify Neo4j Sweden as the copyright owner. *See id.* These conspicuous displays

18  referencing the copyright owner present through the source code for the Neo4j® graph database

19  platform along with information about the terms and conditions for the use of these copyrighted

20  works constitute CMI. *See id*

21      Prior to November 2018, Plaintiffs' business model was to offer a free open source version

22  of the Neo4j® graph database platform, its primary software offering, NEO4J® Community

23  Edition ("Community Edition"), under the GNU General Public License version 3 ("GPL") license.

24  FAC, ¶ 30. This edition is limited in its feature set and offers no support. *Id.* Users requiring

25  additional features for more advanced commercial operation, together with support, licensed use of

26  the Neo4j® graph database platform through NEO4J® Enterprise Edition ("NEO4J® EE") under

27  commercial terms. NEO4J® EE is a full superset of Community Edition of the Neo4j® graph

28  database platform, containing significant additional functionality intended for commercial use. *Id.*

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\3601434.11                                   - 4 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

Plaintiffs originally offered NEO4J® EE under both a paid-for commercial license and the AGPL with the necessary copyright management information identifying Neo4j Sweden as the copyright owner and licensor of the underlying work, the title of the work.  FAC, ¶ 31; *see also* RJN, ¶ 1; Declaration of Jeffrey M. Ratinoff in Support of Consolidated Opposition ("Ratinoff Decl."), Exh. A.  This notice also provided terms of use for the copyrighted work and that a licensee must abide by the terms thereof or obtain a commercial license from Neo4j Sweden.  These same notices and terms of use were also included in the Neo4j Sweden Software License.  *Compare* Ratinoff Decl., ¶ 3, Exh. A *and* Dkt. No. 75-2, Exh. 2. A commercial license to NEO4J® EE entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance.  FAC, ¶ 31.  Purchasing a commercial license at a fair price supported the continued development and improvement of NEO4J® EE and the Neo4j® graph database platform, including the Community Edition software.  *Id.*

In May 2018, Plaintiffs released NEO4J® EE version 3.4, which they continued to offer under a proprietary commercial license.  FAC, ¶ 32.  However, Neo4j Sweden replaced the AGPLv3 with a stricter license, which included the terms of the AGPLv3 with additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License").  *See id.; see also* RJN, ¶ 2; Ratinoff Decl., ¶ 4, Exh. B; Dkt. No. 75-2, Exh 2.  This new license, while allowing code to be publicly viewable and used within a certain limited scope of usage, is generally recognized in the software industry not to qualify as open source, as it prohibits all third-party resale and certain services activity. *Id.*  Neo4j Sweden, as copyright holder of the Neo4j® graph database platform, exercised its right to amend the terms of further releases of NEO4J® EE from the AGPLv3 to the Neo4j Sweden Software License to prevent third parties, such as Defendants, from monetizing such software while not contributing back to the companies who are producers of the software.  *Id.*  The Neo4j Sweden Software License only applied to newly released source code, and not preexisting source code previously released under either the GPL or AGPL.

In November 2018, Plaintiffs officially released version 3.5 of NEO4J® EE solely under a commercial license, while they continued to offer the Community Edition under a version of the

GPL. FAC, ¶ 33; *see also* RJN ¶ 3; Ratinoff Decl., ¶ 5, Exh. C.  This meant that Plaintiffs were no longer publishing source code for NEO4J® EE under any open source license.  This was done to simplify its licensing model, as well as prevent bad actors, such as Defendants, from willfully misrepresenting the Neo4j Sweden Software License and profiting by providing commercial support services in closed, proprietary projects.

## B.    GFI and its Pirated ONgDB Software

Graph Foundation, Inc. ("GFI") purports to be a not-for-profit open source software development company that offers graph database platform software, ONgDB, which competes with the Neo4j® graph database platform.  FAC, ¶ 5.  GFI formed by the Nussbaums and John Mark Suhy in response to Plaintiffs' decision to only offer NEO4J® EE under a commercial license, to evade the restrictions imposed thereon and for the benefit of their respective for-profit companies GraphGrid, Inc. ("GraphGrid"), AtomRain, Inc. ("ARI"), and iGov Inc ("iGov").  *Id.*, ¶¶ 6, 35.  GFI admitted as much on a January 31, 2019 blog entry on its website.  *Id.*, ¶ 35, Exh. 16.

GFI offers ONgDB graph database software, which is compiled from a patchwork of source code from older versions of official Neo4j® graph database platform software, and includes source code authored by the Nussbaums and Suhy, while mischaracterized by GFI as identical to Plaintiffs' commercial-only releases of NEO4J® EE.  FAC, ¶¶ 42-43.  By compiling source code from the Neo4j® graph database platform in this manner, GFI created software that is not of the same quality as if it were compiled by Neo4j USA.  *Id.*, ¶ 44.  This is because GFI is not using Neo4j USA's build infrastructure, which carries out tens of thousands of functional, performance, load, stress, and other tests to ensure quality.  *Id.*  ONgDB also does not necessarily include critical fixes that are often automatically incorporated via ongoing improvements made by Plaintiffs to NEO4J® EE. *Id.*  Further, because GFI introduced its own modifications and patches to ONgDB from multiple and potentially outdated iterations of the official Neo4j® graph database platform software, the potential for stability and compatibility issues with ONgDB increases.  *Id.*  As a result, GFI is misleading consumers into believing they are downloading an exact copy of Plaintiffs' current commercial-only releases of NEO4J® EE from Graph Foundation's website, which in actuality they are receiving an inferior product that is not a true "drop in" replacement.  *Id.*

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3601434.11                                    - 6 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

GFI claims that ONgDB is "a non-restrictive fork of Neo4j, the world's leading Graph Database." FAC, ¶ 36. GFI misleads potential customers by claiming that "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition." *Id.*, ¶ 37. GFI statements are misleading because ONgDB is not entirely based on open source version of the Neo4j® graph database platform as it continues to claim. *Id.* This is because GFI knowingly permitted, encouraged and approved of Suhy's copying of 28 NEO4J® EE source code files and their associated LICENSE.txt files (consisting of the Neo4j Sweden Software License) to GFI's GitHub repository, and modifying or removing CMI associated therewith. *Id.*, ¶ 67.

Specifically, without Neo4j Sweden's authorization, Suhy removed the following licensing information and copyright attribution from the header of the Neo4j Sweden Software License (hereinafter the "Notice Provision"):

> NOTICE
>
> This package contains software licensed under different licenses, please refer to the NOTICE.txt file for further information and LICENSES.txt file for full license texts.
>
> Neo4j Enterprise object code can be licensed independently from the source code under separate commercial terms. Email inquiries can be directed to: licensing@neo4j.com. More information is also available at: https://neo4j.com/licensing/
>
> The software ("Software") is developed and owned by Neo4j Sweden AB (referred to in this notice as "Neo4j") and is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE, Version 3, with the Commons Clause as follows:

FAC, ¶¶ 67-68 and Exh. 36; *see also* Dkt. No. 75-2, Exh 2; Ratinoff Decl., ¶ 6 and Exh. D.

In addition, Suhy also removed the following provision from the end of the Neo4j Sweden Software License without Neo4j Sweden's authorization:

> "Commons Clause" License Condition
>
> The Software is provided to you by the Licensor under the License, as defined below, subject to the following condition. Without limiting other conditions in the License, the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software. For purposes of the foregoing, "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software. Any license notice or attribution required by the License must also include this Commons Cause License Condition notice.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3601434.11

- 7 -

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

FAC, ¶¶ 67-68 and Exh. 36; *see also* Dkt. No. 75-2, Exh 2.   Acting as agents of Defendants, the Nussbaums acted in concert with and encouraged Suhy to alter the terms of the Neo4j Sweden Software License by removing protections Neo4j Sweden as copyright owner included in licensing its work, and republishing these source code files on GFI's Github repository for ONgDB.  *Id.*

After Suhy's removal and alteration Neo4j Sweden's CMI, these 28 LICENSE.txt files and other such modifications became part of various versions of GFI's ONgDB software.  FAC, ¶ 69.  Thereafter, GFI distributed the files via GFI's Github repository for ONgDB, and actively encouraged and solicited third parties to download these 28 altered source code files from GFI's website.  *See, e.g.*, FAC, ¶ 69 *and* Exhs. 5-6, 10-11, 21-22, 25-26, 31.  ARI and GFI similarly encouraged third parties to download ONgDB, which contained the altered source code files. *See id.* at ¶ 8, Exhs. 5-6 (GraphGrid's website) and ¶ 13, Exhs. 10-11 (ARI's website).  As of the date of the FAC, GFI has distributed or caused to be distributed over 10,000 copies of ONgDB software, the code in which copyright management information referencing Plaintiffs as copyright owner has been altered or removed.  *See* FAC, ¶ 69 and Exh. 18; *see also* Ratinoff Decl., ¶ 6 and Exh. D.

## C.    Defendants' Distribution of GFI's Pirated ONgDB Software Violates the DMCA and Neo4j Sweden Software License

Plaintiffs' Fifth Cause of Action alleges that Defendants violated Section 1202(b) of the Digital Millennium Copyright Act (DMCA) by the Nussbaums (acting agents of Defendants) actively encouraging and approving Suhy's removal and alteration of Neo4j Sweden's CMI in at least 28 separate source code files via GFI's GitHub repository.  FAC, ¶¶ 112-115.  GFI further violated the DMCA by intentionally distributing these altered source code files as part of GFI's ONgDB software via its website and Github repository with the knowledge that the NEO4J® CMI has been removed therefrom without the authorization of Neo4j Sweden.  *Id., ¶¶ ** 115.  Likewise, GFI's alter egos, ARI and GraphGrid, intentionally promote and distribute these altered source code files as part of the GraphGrid Connected Data Platform, with the knowledge that the NEO4J® CMI has been removed therefrom without the authorization of Neo4j Sweden.  *Id., ¶¶* 8, 13-21, 35, 73-75, 112-116.  Defendants continue to promote and distribute altered versions of Neo4j® graph database platform with the knowledge that doing so would induce, enable, facilitate, or conceal an

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11                                                    - 8 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1    infringement of Neo4j Sweden's rights under the DMCA.  *See id.,* ¶ 116.

2        Based on these same facts, Neo4j Sweden asserts the Sixth Cause of Action for Breach of

3    License Agreement.  *See* FAC, ¶¶ 118-128.  This claim alleges that Neo4j Sweden provided GFI a

4    non-exclusive license under the Neo4j Sweden Software License, and that GFI's removal and

5    alteration of CMI, including the Commons Clause and Notice Provision, in the 28 source code files

6    violates the terms of that license. *See id.*, ¶¶ 120-122.  Aside from unauthorized removal of that

7    provision, GFI intentionally removed and/or approved of Suhy's removal or alteration of Plaintiffs'

8    CMI, including the Commons Clause and Notice Provision so that its alter egos, GraphGrid and

9    ARI, could distribute ONgDB software containing these altered files and charge fees for hosting,

10   consulting, support services related to the software that would otherwise be prohibited under the

11   terms of the Neo4j Sweden Software License.  *See id.*, ¶¶ 8, 11, 77, 123, 126.

### D.    GFI's Pirated ONgDB Software also Amounts to a Breach of the Neo4j Sweden Software License

14       Neo4j Sweden further alleges that GFI breached Sections 4 and 5 of the Neo4j Sweden

15   Software License, which requires that Neo4j Sweden's copyright notices be printed or displayed

16   when the code is run on any and all copies of the works subject to the Neo4j Sweden Software

17   License.  *See* FAC, ¶ 124.  GFI did so by removing copyright notices and attributions from the

18   same 28 source code files, including "The software ('Software') is developed and owned by Neo4j

19   Sweden AB (referred to in this notice as 'Neo4j') and is subject to the terms of the GNU AFFERO

20   GENERAL PUBLIC LICENSE Version 3, with the Commons Clause …"  and distributing those

21   files without them.  *See id.*, ¶¶ 125-126.

22       Finally, Neo4j Sweden alleges that it is entitled to an injunction requiring GFI to cease the

23   use, publication and distribution of its source code licensed under the Neo4j Sweden Software

24   License contained within ONgDB software.  *See* FAC, ¶ 127.  Neo4j Sweden further alleges that it

25   is entitled to recover from GFI and its alter egos the damages it has sustained, including loss of

26   licensing fees, which could exceed $19,900,000, and restitution for any unjust enrichment,

27   including any gains, profits, and advantages that GFI and its alter egos obtained as a result of its

28   breach of the Neo4j Sweden Software License.  *See id.*, ¶ 128.

Hopkins & Carley
Attorneys At Law
San Jose ◆Palo Alto

842\3601434.11                                              - 9 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

E.    **GFI, GraphGrid and AtomRain's Tax Fraud and False Advertising Scheme**

GFI holds itself out as "a nonprofit with 501(c)(3) status and its alleged mission is to further, at no charge, to further the development of so called "open source fork of Neo4j Enterprise." FAC, ¶ 130. GFI claims that it "created" ONgDB "to continue forward neo4j enterprise development from the point in time that Neo4j, Inc. decided to close source the original neo4j enterprise codebase." *Id.* GFI solicits and accepts monetary and in-kind donations on its website to cover its operating costs and to further the alleged development of ONgDB under the guise that GFI is "a 501(c)(3) which has nonprofit status from the IRS so any donations are tax deductible by any enterprise that makes a donation." *Id.,* ¶¶ 14, 130. It is no coincidence that GraphGrid and ARI are the primary financial donors to GFI (*id*. ¶¶ 9, 12, 15, 131), and that GFI, GraphGrid and ARI share the same offices and principle places of business in Wooster, Ohio (*id*. ¶¶ 5, 7, 11-12).

Contrary to Defendants' public statements, GFI does not operate exclusively for exempt purposes as required by 26 U.S.C. § 501(c)(3). FAC, ¶ 131. Rather, Defendants falsely holds GFI out to be a non-profit, when in fact it operates for the substantial non-exempt purpose of developing software for the Nussbaums' for-profit businesses, GraphGrid and ARI. *Id.* Defendants misuse GFI's nonprofit status to solicit and deceive third parties into contributing their time and expertise towards the development of ONgDB without compensating those individuals. *Id.* In turn, GraphGrid and ARI actively promote ONgDB as a no-cost alternative to the official Neo4j® graph database platform, and offer for-profit support and other services to users of ONgDB in conjunction therewith. *Id.,* ¶ 132

Defendants thus falsely promote GFI for the altruistic purpose of the continued open source development of NEO4J® EE, while in reality GFI is being used by the Nussbaums and GFI to divert customers from paying to license NEO4J® EE and receive support from Neo4j USA to paying Graph Grid and ARI for such support. FAC, ¶ 133. This enables GraphGrid and ARI to secretly profit from their affiliation with GFI without the costs associated with paying software developers to develop, improve and support ONgDB. *Id.,* ¶ 134. Moreover, since GFI's operating expenses are paid for by GraphGrid and ARI under the guise of tax-deductible donations, GraphGrid and ARI are able to reduce their tax burden on the profits they earn in promoting

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\3601434.11                                                    - 10 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1    ONgDB and related services they provide to users of ONgDB.  *Id.*

2         The foregoing fraudulent scheme allows GFI and its alter egos, GraphGrid and ARI, to

3    unfairly compete with Neo4j USA in the marketplace.  FAC, ¶ 135.  Defendants have misled and

4    deceived consumers as to the true nature of GFI's business, its affiliation with GraphGrid and ARI,

5    and fraudulently deterred them from purchasing a proper license for NEO4J® EE and using Neo4j

6    USA's support services.  *Id.,* ¶ 136.  This not only harms competition in the marketplace for graph

7    database software, but also harms Plaintiff's ability to fairly compete in that marketplace.  *Id.* As a

8    result, Defendants have violated California's UCL.  *See id.,* ¶¶ 129-136.

9    **IV.    LEGAL ARGUMENT**

10        **A.    Legal Standards Governing Rule 12(b)(6) Motions to Dismiss**

11        A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the

12   complaint.  *Strom v. United States,* 641 F.3d 1051, 1067 (9th Cir. 2011).  For purposes of Rule

13   12(b)(6), "claim" means a set of facts that, if established, entitle the pleader to relief.  *Bell Atlantic*

14   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court may dismiss a claim under Rule 12(b)(6)

15   only when it does not contain sufficient facts to state a plausible claim on its face.  *See Twombly*,

16   550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that

17   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

18   alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a

19   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

20   unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 557).

21        For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all

22   allegations in the complaint as true and construe "the pleadings in the light most favorable to the

23   non-moving party."  *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

24   2008).  When allegations are capable of more than one inference, the Court must adopt whichever

25   plausible inference supports a valid claim.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  A

26   complaint should not be dismissed because plaintiff relies on an incorrect or imperfectly stated

27   legal theory if the facts alleged support any valid theory.  *See Johnson v. City of Shelby, Miss*., 574

28   U.S. 10, 11-12 (2014) (per curiam); *see also Alvarez v. Hill,* 518 F3d 1152, 1158 (9th Cir. 2008).

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11                                          - 11 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

A court may resolve contractual claims on a motion to dismiss only where the terms of the contract are unambiguous. *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000). "However, what the parties intended by an ambiguous contract is a factual determination, and thus [w]here the language leaves doubt as to the parties intent, the motion to dismiss must be denied." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F.Supp.3d 868, 879 (N.D. Cal. 2018) (internal citations omitted); *see also Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005) ("[a] contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation").

Finally, the standard for leave to amend is generous and must be freely afforded. Fed. R. Civ. P. 15(a); *accord Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) ("standard for granting leave to amend is generous"). If any claim is dismissed, the Court should grant leave to amend "[u]nless it is absolutely clear that no amendment can cure the defects." *See Lucas v. Dep't of Corrections,* 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126, 1130 (9th Cir. 2000) (amendment permitted "unless . . . pleading could not possibly be cured by the allegation of other facts") (internal quotation marks and citation omitted); *Balistreri*, 901 F.2d at 701 (leave to amend should be granted when a court can "conceive of facts" that would render the plaintiff's equal protection claim viable).

## B.    Objections to Defendants' Requests for Judicial Notice

GFI has asked the Court to take judicial notice of what purports to be NOTICE.txt files allegedly corresponding to the LICENSE.txt files and related screen shots which are not referenced in the FAC. *See* Dkt. No. 75-1 at ¶¶ 3-5, Dkt. No. 75-2 at ¶¶ 4-32; Dkt. No. 75-3 at Exhs. 3-32. Generally, the Court may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *See Ramachandran v. City of Los Altos*, 359 F.Supp.3d 801, 810 (N.D. Cal. 2019). An exception to this rule is that the Court may take judicial notice of documents "where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance"). It may also consider a document via the doctrine of incorporation by reference "if the plaintiff refers extensively to the document." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018). However, "the mere mention of

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11
- 12 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1    the existence of a document is insufficient to incorporate the contents of a document." *Coto*

2    *Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

3        Plaintiffs object to GFI's request that the Court consider Exhibits 3 through 31 to the

4    Pernick Declaration because the FAC does not reference these documents, let alone extensively

5    refer to them.  In particular, these documents consist of NOTICE.txt files and screen shots of files

6    from GFI's ONgDB version 3.5.9 (dated September 19, 2019), while the changes made to the

7    LICENSE.txt files identified in Exhibit 36 to the FAC occurred on March 1, 2019 and were to

8    ONgDB version 3.5.3. *Compare* Dkt. No. 75-3, ¶¶ 4-32 *and* FAC, Exh. 36.  Even if these were the

9    correct NOTICE.txt files that corresponded with Defendants' modification Neo4j Sweden License

10   and alterations thereto as alleged in the FAC, their content does not form the basis of any of

11   Plaintiffs' claims and cannot be considered.  *See Khoja*, 899 F.3d at 1002 ("if the document merely

12   creates a defense to the well-pled allegations in the complaint, then that document did not

13   necessarily form the basis of the complaint").  Thus, the Court should ignore these documents.

14       Finally, ARI and GraphGrid incorrectly claim that "Neo4j concedes that it licensed its

15   software under the free [AGPL]" and thus the Court may take judicial notice of that license.  Dkt.

16   No. 74:17-19, fn 2.  GFI also requests that the Court take judicial notice of the same form version

17   of the AGPL available on the FSF's website, which was referenced in ***the defendants'*** pleadings

18   in the Related Case.  *See* Dkt. No.  75-1 at ¶ 1, 75-2 at ¶ 2; Dkt. No. 75-3 at Exh. 1.  In doing so,

19   Defendants misconstrue the allegations in the FAC.  The NEO4J® EE source code files subject to

20   Plaintiffs' DMCA claim were never released under the AGPL.  Rather, these files were first

21   released under the Neo4j Sweden Software License.  *See* FAC, ¶ 32; *see also* Dkt. No. 75-2, Exh

22   2.  Thus, Defendants' request that the Court take judicial notice of the form AGPL to argue what

23   the terms of the Neo4j Sweden Software License mean is improper.[1]

24       **C.    The FAC States Claim for Breach of the Neo4j Sweden Software License**

25       The elements of breach of contract under California law are: (1) the existence of a contract;

26

27   [1] As alleged in the FAC, prior versions of NEO4J® EE were release under a modified version of the AGPL, and not simply the form developed by the FSF. *See* FAC, ¶ 31.  Plaintiffs have requested that the Court take judicial notice thereof since that is a correct representation of the pre-Neo4j Sweden Software License referred to in the FAC  *See* RJN, ¶ 1; Ratinoff Decl., ¶ 3, Exh. A.

28

1   (2) plaintiff's performance under the contract; (3) defendant's breach of the contract; and (4) that

2   plaintiff was damaged as a result of the breach.[2]  *Buschman v. Anesthesia Bus. Consultants, LLC*,

3   42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014).  GFI moves to dismiss the Sixth Cause of Action on

4   the grounds that it has not breached the Neo4j Sweden Software License by removing and alerting

5   CMI and commercially redistributing NEO4J® EE as ONgDB because Sections 7 and 10 of that

6   license permit GFI to remove that provision as an alleged "further restriction."[3]  *See* Dkt. No. 75

7   11:20-12:25; *see also* Dkt. No. 74 at 5:8-7:4.  GFI does not contest that Neo4j Sweden sufficiently

8   alleged the other three elements.

9        Defendants attempt to justify Suhy's removal of CMI from Neo4j Sweden Software License

10  based on the erroneous assumption that the Free Software Foundation's ("FSF") copyright in the

11  original AGPL, a form agreement upon which the Neo4j Sweden Software License is based, and

12  allege intent in creating that license, somehow gives them the right to remove the Notice Provision

13  and the Commons Clause.  *See* Dkt. No. 75 at 3:13-14; *see also* Dkt. No. 74 at 5:15-6:1.  This is

14  legally untenable because third parties, such as Defendants or Suhy, do not have standing to enforce

15  FSF's copyright.  *See* 17 U.S.C. §§ 106, 201(b); *see also Minden Pictures, Inc. v. John Wiley &*

16

17  [2] The Neo4j Sweden Software License does not contain a choice of law provision.  Neo4j Sweden
    historically distributed NEO4J® EE via GitHub, which is based in San Francisco, California), and
18  users would effectively agree to the terms of that license when downloading software from GitHub.
    *See* FAC, ¶¶ 2-4, 47.  Neo4j Sweden also granted its parent corporation, Neo4j USA, headquartered
19  in San Mateo, California, the exclusive right to sell, distribute and commercially license NEO4J®
    EE to end users in the United States.  FAC, ¶¶ 2-4, 47.  As such, Neo4j Sweden submits that
20  California law should govern the Neo4j Sweden Software License.  *See Atl. Marine Const. Co. v.
    U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65 (2013) ("federal court sitting in diversity
21  ordinarily must follow the choice-of-law rules of the State in which it sits"); Cal. Civ. Code § 1646
    (absent an express provision of applicable law, "[a] contract is to be interpreted according to the
22  law and usage of the place where it is to be performed; or, if it does not indicate a place of
    performance, according to the law and usage of the place where it is made"); *see also Simulados
23  Software, Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp. 3d 1191, 1198 (N.D. Cal. 2014) ( foreign
    corporation's office in San Jose, California, which is its principal place of business in North
24  America, established a sufficient relationship with the state to uphold the California choice-of-law
    provision in the contract).  Finally, Defendants have not suggested otherwise.

25  [3] ARI and GraphGrid seek to dismiss Plaintiffs' DMCA claim on that same grounds that GFI is
26  seeking a dismissal of the Fifth Cause of Action based on GFI's breach of the Neo4j Sweden
    Software License and Sixth Cause of Action for GFI's violation of the DMCA.  *Compare* Dkt. No.
27  74 at 5:8-7:4 *and* Dkt. No. 75 at 11:20-15:2.  Since ARI and GraphGrid make virtually identical
    arguments concerning the meaning of Sections 7 and 10 and their belief Suhy was justified in
28  removing CMI, Plaintiffs will address their arguments here.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11                                    - 14 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

*Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) (only the copyright owner, assignee or an exclusive licensee of a right enumerated by §106 has standing to bring an infringement action based on that right). Moreover, the terms of the Neo4j Sweden Software License and their intent are not determined by FSF because it is not the actual licensor of NEO4J® EE, and not a party to the Neo4j Sweden Software License.  *See* Cal. Civ. Code §§ 1636, 1639; *see also Ben–Zvi v. Edmar Co.*, 40 Cal.App.4th 468, 475 (1995) ("contract must be interpreted to give effect to the mutual, expressed intention of the parties… [and] their mutual intention is to be determined, whenever possible, from the language of the writing alone").  Thus, GFI's efforts to enforce a copyright in a form open source license it does not own is not only misguided, but contrary to controlling law.

Irrespective of Suhy and GFI engaging in improper self-help, Defendants' interpretation of Sections 7 and 10 is simply wrong.  As discussed below, their analysis of the Neo4j Sweden Software License foul with the basic principles of contractual interpretation under California law. *See Miller v. Glenn Miller Prods.*, 318 F.Supp.2d 923, 934 (C.D. Cal. 2004), *aff'd sub nom.*, 454 F.3d 975 (9th Cir. 2006) ("[c]ourts apply general principles of contract interpretation when interpreting the terms and scope of a licensing agreement").

### 1.    Sections 7 and 10 of the Neo4j Sweden Software License Do Not Give a Licensee the Right to Remove or Alter Terms Added the Copyright Holder and Licensor

Under California law, "the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *See United States Cellular Invest. Co. of Los Angeles v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002); *accord SST Millennium LLC v. Mission St. Dev. LLC*, 2019 WL 2342277, at *3 (N.D. Cal. June 3, 2019). Where "the language [of a contract] is clear and explicit, and does not involve an absurdity," the language must govern the contract's interpretation.  Cal. Civ.Code § 1638; *see JW Gaming Dev., LLC v. James*, 2020 WL 353536, at *4 (N.D. Cal. Jan. 21, 2020) ("[i]nterpretation of a contract must be fair and reasonable, not leading to absurd conclusions").  Moreover, when a contract is written, "the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639. "[I]f reasonably practicable" a contract must be interpreted as a whole, "so as to give effect to every part, ... each clause helping to interpret the other."  Cal. Civ. Code § 1641.

Rather than viewing the Neo4j Sweden Software License as a whole as required by California law, Defendants isolate a single sentence within Section 10 and misrepresent it as stating "that ***the licensor*** 'may not impose any further restrictions on the exercise of rights granted or affirmed under this license….'" Dkt. No. 74 at 12:4-9, Dkt. No. 75 at 12:4-9 (emphasis added). Read ***correctly*** and in its ***entirety***, however, this sentence states: "***You*** may not impose any further restrictions on the exercise of the rights granted or affirmed under this License." *See* Dkt. No. 75-2, Exh. 2 at § 10 (emphasis added). This is a critical distinction because the Neo4j Sweden Software License – and the AGPL – defines "you" as the ***licensee***, not the ***licensor***. *See id.* at § 0 ("Each licensee is addressed as 'you'"). In other words, Section 10 expressly prohibits a ***licensee*** from imposing further restrictions, but does not prohibit Neo4j Sweden as the ***licensor*** of the ***Program***, not the license itself, from doing so. *See id.* at § 0.

Defendants' interpretation of Section 10 thus runs contrary to the express definition of "you" in the agreement. It also results in the absurdity of "you" meaning both the licensor (Neo4j Sweden) and the licensee (GFI), which is impermissible. *See Zalkind v. Ceradyne, Inc.*, 194 Cal.App.4th 1010, 1027 (2011) ("the meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless"); *accord Wapato Heritage, L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011). Indeed, it would nullify the entire purpose of a license agreement by negating Neo4j Sweden's exclusive right to license its copyrighted source code files under the terms of its choosing. *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) ("copyright owners may choose to simply exclude others from their work" or "use their limited monopoly to leverage the right to use their work on the acceptance of specific conditions"); *see also Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material"). As such, the Court should deny GFI's motion to dismiss on that ground alone. *See* Cal. Civ. Code. § 1641; *see also Segal v. Silberstein*, 156 Cal.App.4th 627, 633 (2007) ("[w]hen interpreting contracts, the language used controls if it is clear and explicit").

Defendants' claim that Section 7 explicitly grants a licensee permission to remove

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11                                                    - 16 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1    additional restrictions added by the original licensor, i.e. copyright holder, fares no better. *See* Dkt.

2    No. 74 at 6:1-8; Dkt. No. 75 at 12:9-15. In making that claim, the cite to the clause "If the Program

3    as you received it, or any part of it, contains a notice stating that it is governed by this License along

4    with a term that is a further restriction, you may remove that term." *Id.* This clause, however,

5    cannot be read in isolation. Rather, it must be put in context within the surrounding clauses in

6    Section 7 and the Neo4j Sweden Software License. *See* Cal. Civ. Code. § 1641; *Zalkind*, 194

7    Cal.App.4th at 1027. Notably, the excerpt cited by GFI is preceded by the following in Section 7:

> Notwithstanding any other provision of this License, *for material you add to a covered work*, *you* may (if authorized by the copyright holders of that material) supplement the terms of this License with terms
>
> a) Disclaiming warranty or limiting liability differently from the terms of sections 15 and 16 of this License; or
>
> b) Requiring preservation of specified reasonable legal notices or author attributions in that material or in the Appropriate Legal Notices displayed by works containing it; or
>
> c) Prohibiting misrepresentation of the origin of that material, or requiring that modified versions of such material be marked in reasonable ways as different from the original version; or
>
> d) Limiting the use for publicity purposes of names of licensors or authors of the material; or
>
> e) Declining to grant rights under trademark law for use of some trade names, trademarks, or service marks; or
>
> f) Requiring indemnification of licensors and authors of that material by anyone who conveys the material (or modified versions of it) with contractual assumptions of liability to the recipient, for any liability that these contractual assumptions directly impose on those licensors and authors.
>
> All other non-permissive additional terms are considered "*further restrictions*" within the meaning of section 10. If the Program as *you* received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a *further restriction*, you may remove that term.

24    *See* Dkt. No. 75-2, Exh. 2 at § 7 (emphasis added).

25        When read in full, Section 7 clearly governs the actions of *licensees* alone, ergo the repeated

26    use of the defined term "you" and the fact that subject matter of Section 7 pertains to what additional

27    permissions and restrictions *licensees* may place on a covered work when adding source code and

28    redistributing it as required by the license. In particular, the sentence relied upon by Defendants is

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3601434.11                                     - 17 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

immediately proceeded by a sentence stating that a licensee who adds material to the original work may add any of the six enumerated "additional restrictions" and that any other terms "non-permissive additional terms" are "further restrictions" *as defined by Section 10*. The clause relied upon by GFI also uses the term "further restriction," and must be read in a consistent matter with this term as defined by the license. *See Fahrner-Miller Assocs., Inc. v. Mars Antennas & RF Sys., Ltd.*, 2014 WL 6871550, at *1 (N.D. Cal. Dec. 4, 2014) (the "cardinal principle" of contract interpretation is that "a document should be read to give effect to all its provisions and to render them consistent with each other"). As noted above, Section 10 makes clear that only **licensees** are precluded from adding further restrictions. Thus, reading these provisions together, makes clear that Section 7 only allows a downstream licensees to remove "further restrictions" placed by an upstream licensee that has added to the original work, which do not fall within the six enumerated additional terms.

Further, Defendants' strained interpretation that licensees may alter or remove terms from the Neo4j Sweden Software License goes against Neo4j Sweden's express intent of precluding others from commercially benefiting from the software and the express language of terms such as the Commons Clause. *See* FAC, ¶ 121 ("the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software"); *see also* FAC, ¶ 32 ("Neo4j Sweden added the Commons Clause to the license for NEO4J® EE to prevent third parties… from monetizing such software while not contributing back to the companies who are producers of the software"). A licensor's intent to limit the commercialization of its software generally should be given effect as intended by the **licensor**, not the licensee. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1091 (9th Cir. 2005); *see also Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998) (term in a license allowing users of a computer game to develop enhancements, but barring the resale of the enhancements for a profit, was enforceable); *Storm Impact, Inc. v. Software of the Month Club*, 44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) (distribution for commercial purposes was infringement where terms of license limited use to non-commercial purposes).

The Ninth Circuit's holding in *Altera* is instructive. In that case, Altera distributed programmable logic devices (PLDs) and licensed software to program the chips. *Id.* at 1081. The

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\3601434.11

- 18 -

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1   accompanying license provided that customers may use "Programs for programming logic devices

2   manufactured by Altera and sold by Altera." *Id.*   Clear Logic encouraged Altera's customers to

3   develop their designs with Altera's software and then to send the bitstream files to Clear Logic. *Id.*

4   at 1082.   Whether Clear Logic could be held liable for intentionally interfering with the Altera

5   license by inducing customers to breach the license terms turned on what the word "use" meant.

6   *Id.* at 1090-91.  Clear Logic argued that the term "use" referred to the use of the software itself, not

7   the bitstream output. *Id.*   The Ninth Circuit rejected defendant's narrow interpretation, finding that

8   Altera's intent was clear from the language in the license agreement, and that the "use" clause

9   "sought to prevent competitors from benefitting from its software." *Id.* at 1091.

10        Here, Neo4j Sweden made its post-May 2018 NEO4J® EE software available on the

11   condition that licensees abided by ***all*** the terms of the Neo4j Sweden Software License.  When GFI

12   downloaded NEO4J® EE software and made copies thereof available via its website and own

13   GitHub repository, it agreed to be bound by the ***entirety*** of Neo4j Sweden Software License,

14   including the commercial restrictions imposed by the Commons Clause.  *See* FAC, ¶¶ 30-32, 43-

15   44, 67, 115, 118-120.   As a result, GFI cannot unilaterally alter the terms of the Neo4j Sweden

16   Software License without breaching it.  *See MedioStream, Inc. v. Microsoft Corp.*, 749 F.Supp.2d

17   507, 519 (E.D. Tex. 2010) (plaintiff adequately pled a claim for breach of the GLP by alleging,

18   *inter alia*, that defendant had accepted all of its terms and conditions for copying, distributing, and

19   modifying the covered software by downloading copies and incorporating it in commercially

20   distributed products); *accord Artifex Software, Inc. v. Hancom, Inc.*, 2017 WL 1477373, at *3 (N.D.

21   Cal. Apr. 25, 2017) (citing same).

22        Finally, the Commons Clause should be harmonized with the balance of the Neo4j Sweden

23   Software License.  Aside from its obligation to ascertain whether a contract is clear or ambiguous,

24   a Court has a duty to construe a contract to avoid a forfeiture, if at all possible. *Milenbach v. C.I.R.*,

25   318 F.3d 924, 936 (9th Cir.2003) ("[w]here there are two possible interpretations of a contract, one

26   that leads to a forfeiture and one that avoids it, California law requires the adoption of the

27   interpretation that avoids forfeiture, if at all possible"); *accord Universal Sales Corp. v. Cal., Press

28   Mfg. Co.*, 20 Cal.2d 751, 771 (1942).  As detailed above, accepting Defendants' interpretation of

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11                                    - 19 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1    Sections 7 and 10 would result in a forfeiture of Neo4j Sweden's right to license the Neo4j® graph

2    database platform as it sees fit.  Accordingly, the Court should reject Defendants' unsupported and

3    erroneous interpretation of these sections and deny GFI's motion to dismiss the Sixth Cause of

4    Action for Breach of License Agreement.

5    **2.    GFI's Removal of the Notice Provision From the Source Code of the Neo4j® Graph Database Platform and From the Neo4j Sweden Software License also Amount to a Breach of that Agreement**

6

7    Neo4j Sweden also specifically alleges that GFI removed the aforementioned copyright

8    notices, and information identifying Neo4j Sweden as the copyright owner, the title of the work,

9    terms and conditions for use of the copyrighted work and other conspicuous displays identifying

10   the owner or title of these copyrighted works including such use of "Neo4j" in the source code and

11   Notice Provision with terms and conditions from the source code files distributed under the Neo4j

12   Sweden Software License.[4]  FAC, ¶¶ 68, 118, 124-125.  GFI's motion fails to adequately address

13   this as the second breach of that Neo4j Sweden Software License alleged in the Sixth Cause of

14   Action.  Likewise, ARI and GraphGrid do not even attempt to address the removal of this CMI in

15   seeking to dismiss the Fifth Cause of Action.

16   Section 4 of the Neo4j Sweden Software License permits the licensee to "convey verbatim

17   copies of the Program's source code as [the licensee] receive it, in any medium, ***provided that [the***

18   ***licensee] conspicuously and appropriately publish on each copy an appropriate copyright notice;***

19   ***keep intact all notices stating that this License*** … and give all recipients a copy of this License

20   along with the Program."  Dkt. No. 75-2, Exh. 2 at § 4 (emphasis added).  Similarly, Section 5

21   permits a licensee "to convey a work based on the Program, or the modifications to produce it from

22   the Program, in the form of source code under the terms of section 4, provided that (a) "[t]he work

23   must carry prominent notices stating that [the licensee] modified it, and giving a relevant date," and

24   (b) "[t]he work must carry prominent notices stating that it is released under this License and any

25   conditions added under section 7. This requirement modifies the requirement in section 4 to 'keep

26   intact all notices'." *Id.* at § 5.

27   _____

28   [4] Plaintiffs have uncovered additional instances through discovery in which GFI altered or removed CMI from the source code of the Neo4j® graph database platform.

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11                                                          - 20 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

In GFI's statement of facts, it attempts to downplay the significance of its removal of the copyright notices, licensing information and ownership attributions from the Neo4j Sweden Software Licenses by suggesting it did nothing wrong by "moving" this information from the LICENSE.txt files to separate NOTICE.txt files.  *See* Dkt. No. 75 at 7:24-9:6.  Putting aside GFI's improper request for judicial notice of the incorrect version of the NOTICE.txt files, this still amounts to a breach of the Neo4j Sweden Software License for at least three reasons.

First, as detailed in Section B.1. above, the Neo4j Sweden Software License does not grant a licensee the right to alter the license terms as drafted by the licensor of "The Program," which refers to "the copyrightable work licensed under this License."  *See* Dkt. No. 75-2, Exh. 2 at § 0. Second, the NOTICE.txt files are *separate* from the altered LICENSE.txt file used for ONgDB. *See* Dkt. No. 75-2 at ¶¶ 4, 32 and Dkt. No. 75-3, Exhs. 3, 32.  In one example cited by GFI, there is *no* NOTICE.txt file associated with the altered LICENSE.txt file used for ONgDB.  Dkt. No. 75-3, Exh. 31.  Consequently, GFI is wrong to rely upon the modified contents of the NOTICE.txt files to excuse its breach when it made other unauthorized modifications and removal of CMI identifying Neo4j Sweden as owner of the copyrighted work in the LICENSE.txt file.

Third and most importantly, this information is a critical part of the Neo4j Sweden Software License because it provides the licensee with notice of (1) the identity of the owner and licensor; (2) the existence of additional terms and conditions for use of the copyrighted work, such as the Commons Clause, which precludes the commercial use; and (3) that NEO4J® EE is available via a commercial license for such use with a link to more information.  By removing this information from the Neo4j Sweden Software License, and then using the modified license with ONgDB, it appears that the software is owned by GFI, or FSF - a nonparty to the operative agreement.  Indeed, what is clear from the altered LICENSE.txt file for ONgDB, is that there is *no* hyperlink, web address, reference to the NOTICE.txt file or any attribution showing that Neo4j Sweden is the original copyright owner and licensor.  *Compare* Ratinoff Decl., Exh. B *and* Exh. D.

One court in this District previously recognized that a licensor may assert a breach of contract claim where that licensor uses a dual-licensing model based on the GPL and APGL, and includes a notice provision in those licenses where the a licensee must abide by the terms thereof

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11

or obtain a commercial license from the licensor.  *See Artifex*, 2017 WL 1477373, at *3.  GFI went one step further by removing the Notice Provision and other copyright management information identifying the copyright owner as Neo4j Sweden, the title of the work, terms and conditions for use of the copyrighted work, and then commercially exploiting the software under its ONgDB brand.  Indeed, if GFI were truly acting in good faith rather than in Defendants' commercial self-interests, GFI would have left the Notice Provision alone since it had previously been included in the prior version of the AGPL that Neo4j Sweden had been using with NEO4J® EE since at least 2015.  *See* Ratinoff Decl., ¶ 3, Exh. A. These facts are sufficient to state a claim for breach of Sections 4 and 5 Neo4j Sweden Software License.  Accordingly, the Court should deny GFI's motion to dismiss the Sixth Cause of Action for Breach of License Agreement.

**D.    The FAC States a Claim Based on GFI's Violation of the DMCA**

In seeking to dismiss Plaintiffs' Fifth Cause of Action, GFI does not contest that the Notice Provision and the Commons Clause constitute copyright management information that is subject to 17 U.S.C. § 1202(b).  Rather, it first argues that the FAC does not allege that GFI removed or altered any copyright management information in violation of 17 U.S.C. § 1202(b)(1).  *See* Dkt. No. 75 at 13:24-13:27.  GFI ignores the totality of the allegations in the FAC, including that that Suhy is a co-founder of GFI.  FAC, ¶ 6.  Plaintiffs further allege that GFI via the Nussbaums "knowingly permitted, encouraged and approved of John Mark Suhy's copying of these NEO4J® EE source code files and their associated license.txt files to GFI's GitHub repository" and Suhy removed the CMI with GFI's "knowledge, encouragement and approval" via GFI's GitHub repository.  FAC, ¶¶ 43-44, 67-69, 115.  Such allegations are sufficient to raise a plausible inference that GFI was either directly responsible, or responsible through its agents, i.e. Suhy, for the removal of Neo4j Sweden's CMI in violation of § 1202(b)(1).  *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and "has the right and ability to supervise" the infringing activity); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir.2007) ("a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so").

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3601434.11                                - 22 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

GFI next argues that the FAC fails to allege a violation § 1202(b)(2) because Plaintiffs cannot show that GFI knew that the CMI was removed without the authority of Neo4j Sweden. *See* Dkt. No. 75 at 13:22-14:9.   GFI does not contest that Plaintiffs sufficiently allege GFI's actual knowledge of Suhy removing the CMI.[5]   Rather, GFI relies upon on its erroneous view that the Neo4j Sweden Software License gave Suhy the right to remove the Notice Provision and the Commons Clause since those terms were not within a license prior versions of the work was previously released under, the AGPL, upon which the Neo4j Sweden Software License is based. This is not even a good faith, reasonable interpretation of that license because GFI is attempting to rewrite the removal clause in Section 10 by replacing "licensee" with "licensor."

GFI then asserts that Plaintiffs cannot establish the third element for a violation of § 1202(b) – that GFI acted with knowledge or having reasonable grounds to know that its actions would "induce, enable, facilitate or conceal" infringement of any right under the Copyright Act. *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018).   GFI does not argue that Plaintiffs failed to allege facts establishing scienter. *See* Dkt. No. 75 at 14:10-17.   Instead, GFI again relies upon its debunked interpretation of the Neo4j Sweden Software License.   The fact that they flipped the meaning of Section 10 on its head to justify the commercial distribution of ONgDB under the terms of the standard form AGPL that does not identify Neo4j Sweden as the copyright holder of "the Program" is more than enough to establish GFI had reasonable grounds to know the consequences of its actions.[6] *See Free Speech Sys., LLC v. Menzel*, 390 F.Supp.3d 1162, 1175 (N.D. Cal. 2019) (plaintiff need only plead facts plausibly showing that defendant had the required

---

[5] GFI's reliance on *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922 (6th Cir. 2003) is misplaced.   In that case, the court found that plaintiff failed to offer evidence in opposition to a motion for summary judgment that the defendants "possessed actual knowledge of the unauthorized change to the copyright management information." *See id.* at 926.   Here, the allegations that Defendants had actual knowledge that the removal of the CMI in the Neo4j Sweden Software License was without Neo4j Sweden's authorization must be taken as true at the pleadings stage.   The fact that Defendants are relying an untenable interpretation of that license does not absolve them from liability under § 1202(b)(2).   More importantly, Plaintiffs' burden of establishing the knowledge "at the pleading stage is not so exacting." *Robbins v. Oakley, Inc.*, 2018 WL 5861416, at *3 (C.D. Cal. Sept. 27, 2018).

[6] The issue of whether GFI distributed the software in question with the knowledge that Neo4j Sweden's CMI had been removed is a question of fact that is more for a jury to decide. *See Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1187 (9th Cir. 2016).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11                                                    - 23 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1   mental state under § 1202(b) at the pleading stage); *see also Hong v. REI*, 2020 WL 4227388, at

2   *3 (D. Idaho July 23, 2020) (allegations that defendants removed CMI with the intent to conceal

3   the infringement and profit from the concealment were sufficient to defeated a motion to dismiss).

4          Finally, GFI claims that the removal of the Notice Provision from the Neo4j Sweden

5   Software License does not violate the DMCA because that CMI was moved to NOTICE.txt files.

6   *See* Dkt. No. 75 at 14:18-20.  Aside from the NOTICE.txt files not being properly subject of judicial

7   notice, moving the CMI to those files does not insulate Defendants from liability.  The DMCA

8   prohibits both the ***removal and the alteration*** of copyright management information without

9   authority of the copyright owner.  17 U.S.C. § 1202(b).  As discussed above in Section C.2., the

10  Notice Provision does not just contain copyright attribution, but also references to applicable

11  licenses and identifies Neo4j Sweden as the licensor.  Any such obscuration of the title of the work,

12  terms and conditions for use of the copyrighted work and other conspicuous displays identifying

13  the owner or title of these copyrighted works as Neo4j Sweden is an unauthorized removal of

14  alteration of CMI. *See ICONICS, Inc. v. Massaro*, 192 F.Supp.3d 254 (D. Mass. 2016) (copyright

15  headers of individual source code files constituted CMI because they conveyed information about

16  copyright owner, author, and certain terms of use for the file, and were conveyed along with source

17  code files precisely to keep identifying information together with the code); *Jacobsen v. Katzer*,

18  2009 WL 4823021, at *7 (N.D. Cal. Dec. 10, 2009) (allegations that defendants downloaded the

19  files and removed the names of the authors and copyright holder, title, reference to license, where

20  to find the license and the copyright notices constituted CMI and was sufficient to state a DMCA

21  claim).  Thus, the actions of Suhy on behalf of GFI in ***altering*** the license, even by moving this

22  information to NOTICE.txt files, still amounts to a violation of the DMCA.

23         Based on the foregoing, the Court should deny GFI's motion to dismiss the Fifth Cause of

24  Action.  Should the Court find that the FAC does not sufficiently allege a DMCA violation,

25  however, Plaintiffs can allege further violations of the DMCA that go beyond the disputed

26  LICENSE.txt files if granted leave to amend.  Plaintiffs recently discovered multiple source code

27  files contained within ONgDB that are nearly identical to those found in the Neo4j® graph database

28  platform, but Neo4j Sweden's CMI has been replaced with information identifying GFI as owner

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11                    - 24 -

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

of the copyright, author of the work, and ONgDB as name of the work, along with licensing terms different than those offered by Plaintiffs.  Further, evidence obtained during discovery shows that Suhy, or other employees or agents of GFI and GFI conspired to remove the CMI from the Neo4j Sweden Software License and to offer the underlying software as ONgDB, and that Suhy, or others on behalf of GFI were acting as agents of GFI when they altered and removed the CMI.

**E.    The FAC Sufficiently States a DMCA Claim Against ARI and GraphGrid**

ARI and GraphGrid's primary argument supporting their motion to dismiss Plaintiffs' Fifth Cause of Action depends on the aforementioned interpretation of Sections 7 and 10 discussed in Section B above.  *See* Dkt. No. 74:5:15-6:15.  For the same reasons detailed therein, their analysis of the Neo4j Sweden Software License are untenable under California law governing contractual interpretation and federal copyright law.  As a result, Suhy's removal of CMI from the Neo4j Sweden Software License, i.e. Commons Clause and the Notice Provisions, without Neo4j Sweden's authorization amounts to a violation of the DMCA.

Their second argument is that Plaintiffs merely allege in conclusory fashion that ARI and GraphGrid possessed "the mental state of knowing, or having a reasonable basis to know" that their distribution of altered versions of Neo4j® graph database platform with the knowledge "would induce, enable, facilitate, or conceal an infringement of NEO4J Sweden's rights under the Copyright Act." *See* Dkt No. 74 at 6:16-7:4.  This argument is entirely based on Paragraph 116 of the FAC, and completely ignores the wealth of factual allegations establishing the requisite knowledge proceeding that paragraph which are incorporated by reference via Paragraph 112.

Such allegations make clear that the Nussbaums, who are agents of ARI, GraphGrid and GFI, acted in concert with Suhy in removing and altering the CMI from the Neo4j Sweden Software License.  FAC, ¶¶ 6-7, 10. The FAC also alleges "that GraphGrid, ARI, AtomRain LLC and GFI are related corporate and business entities that are owned, controlled and managed by the Nussbaums for their personal financial benefit." FAC, ¶ 14.  Plaintiffs then allege specific facts establishing ARI and GraphGrid's alter ego liability, which they do not argue are insufficient pled. *Id.,* ¶¶ 15-21.  Plaintiffs further allege that "GFI is operated for the benefit of the Nussbaum's non-economic and economic private interests and those of GraphGrid and ARI." *Id.,* ¶ 131; *see also*

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11
- 25 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1    *id.,* ¶ 35 ("the Nussbaums and John Mark Suhy formed GFI on or about June 21, 2018 in response

2    to Plaintiffs' decision to only offer NEO4J® EE under a commercial license, to evade the

3    restrictions imposed thereon and for the benefit of their respective for-profit companies GraphGrid,

4    ARI and iGov Inc"); ¶ 77 ("Defendants are illicitly profiting from their misrepresentations about

5    the validity of the Neo4j Sweden Software License").  Thus, Plaintiffs plausibly allege that the

6    Nussbaums' actual knowledge of and participation in Suhy's removal of CMI from the Neo4j®

7    graph database platform should be imputed on ARI and GraphGrid.  *See A&M Records, Inc. v.*

8    *Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) ("in the context of copyright law, vicarious

9    liability extends beyond an employer/employee relationship to cases in which a defendant 'has the

10   right and ability to supervise the infringing activity and also has a direct financial interest in such

11   activities'") (internal citation omitted); *see also Free Speech Sys.*, 390 F.Supp.3d at 1175; *Hong*,

12   2020 WL 4227388, at *3.

13        The FAC also alleges that ARI and GraphGrid offers "a Platform-as-a-Service (PaaS)

14   offering, GraphGrid Connected Data Platform, built around GFI's ONgDB software, and openly

15   promotes ONgDB over official Neo4j® graph platform software to actual and potential customers."

16   FAC, ¶¶ 8, 13.  As demonstrated by the snapshots of their respective websites, ARI and GraphGrid

17   provide source code files in which Neo4j Sweden's CMI has been altered or removed to customers

18   in conjunction with GraphGrid Connected Data Platform built on ONgDB.  *See id.* at ¶ 8

19   ("GraphGrid offers products and services relating to ONgDB… and openly promotes ONgDB over

20   official Neo4j® graph platform software to actual and potential customers"), Exhs. 5-6

21   (GraphGrid's website) and ¶ 13 ("ARI now holds itself out to be 'a leading solution provider of

22   ONgDB (open source fork of Neo4j Enterprise)' and openly promotes ONgDB over the official

23   Neo4j® graph platform"), Exhs. 5-6 (GraphGrid's website), Exhs. 10-11 (ARI's website).  These

24   allegations are more than sufficient to plausibly establish that ARI and GraphGrid knew or had

25   reason to know that they were distributing copyrighted works "knowing that copyright management

26   information has been removed or altered."  *See* 17 U.S.C. § 1202(b)(2).  Accordingly, the Court

27   should deny ARI and GraphGrid's motion to dismiss Plaintiffs' Fifth Cause of Action.

28   / / /

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto

842\3601434.11                                    - 26 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

**F.     The FAC States a Section 17200 Claim Based on GFI Fraudulently Obtaining and Holding Itself Out as Not For Profit Entity**

The UCL broadly prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel–Tech. Comm., Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal.4th 163, 180 (1999) (quotations omitted). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). A complaint should also be liberally construed to uphold a UCL claim whenever possible. *See Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,* 720 F.Supp. 805, 808 (N.D. Cal. 1989); *accord Motors, Inc. v. Times-Mirror Co.* 102 Cal.App.3d 735, 740 (1980).

Defendants seek to dismiss Plaintiffs' Seventh Cause of Action for Unfair and Fraudulent Business Practices based on California's UCL. ARI and GraphGrid only move to dismiss on the basis that Plaintiffs failed to allege an "unfair" act amounting to an antitrust violation and summarily argue that the allegations fail to meet Rule 9(b)'s particularity requirements with respect to the fraud prong. Dkt. No. 74 at 7:8-8:15. GFI moves to dismiss the Seventh Cause of Action on more substantive grounds, arguing that Plaintiffs fail to state a claim against it based on any of the three prongs. Dkt. No. 75 at 15:15-18:18. As discussed below, the FAC alleges that Defendants' misconduct amounts to a violation of the unfair, unlawful and fraudulent prongs of the UCL.

**1.     Plaintiffs Sufficiently Allege Facts Establishing that Defendants Engaged in Unlawful Business Practices that Violate the UCL**

It is well established that virtually any law or regulation can serve as predicate for an "unlawful" violation of the UCL. *Farmers Ins. Exch. v. Sup. Ct.,* 2 Cal.4th 377, 383 (1992) (recognizing that Section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under Section 17200). The UCL provides that "[actions] for injunctions [for unfair business practices] may be prosecuted ... by any person acting for itself, its members or the general public." Cal. Bus. & Prof. Code § 17204. The statute also provides that

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11

- 27 -

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

"[t]he court may make such orders or judgments ... as may be necessary to prevent the use or employment ... of any practice which constitutes unfair competition, ... or as may be necessary to restore any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

GFI does not contend that Plaintiffs fail to allege facts establishing GFI's violation of § 501(c)(3). *See* Dkt. No. 75 at 15:17-17:7. Rather, GFI relies primarily on *Zhang v. Sup. Ct*, 57 Cal.4th 364 (2013) to argue that such a violation cannot form the basis of a UCL claim. *Id.* GFI's reliance on *Zhang* is misplaced. GFI overstates the holding in *Zhang*, which simply held that because the Unfair Insurance Practices Act (UIPA) barred private actions for unfair insurance practices, plaintiff could not assert a UCL claim solely based on the violation of the UIPA. *Id.* at 384. What GFI ignores is that *Zhang* also held that when conduct violates "both the UIPA and obligations imposed by other statutes or the common law, a UCL action may lie." *Id.*

This is consistent with courts in this District holding that a plaintiff may base a UCL claim on violations of federal law where the crux of the claim is not the enforcement of federal law itself, but that the violation thereof resulted in competitive injury. *See, e.g., Citizens for a Better Env't-California v. Union Oil of Cal.*, 996 F.Supp. 934, 938 (N.D. Cal. 1997) (Section 17200 liability can be predicated on a violation of the federal Clean Water Act); *Southwest Marine*, 720 F.Supp. at 808 (violation of the Federal Resource Conservation and Recovery Act, Clean Water Act, Clean Air Act and federal contracting laws and regulations). In *Southwest Marine*, plaintiff sued defendant after losing to defendant on a Navy contract. 720 F.Supp., at 807-808. Plaintiff asserted a UCL claim, alleging that defendant had been able to underbid plaintiff only because of defendant's practice of improperly disposing of hazardous wastes thereby reducing defendant's overhead costs. *Id.* This was alleged to be a violation of several federal environmental laws, as well as a Navy procurement regulation which required bidders to certify their compliance with all existing laws. *Id.* at 808. The Court held that this stated a claim for relief under the UCL because the alleged misconduct, obtaining Navy contracts through low bids and costs achieved by improper disposal of hazardous wastes, amounted to wrongful conduct that resulted in a business loss to another, *i.e.* drawing away customers from a competitor. *Id.*

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11
- 28 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

More specifically, a violation of federal tax law may serve as a predicate for a violation of the UCL's unlawful prong. *See, e.g., Los Angeles Mem'l Coliseum Com. v. Insomniac, Inc.*, 233 Cal.App.4th 803 (2015). In *Insomniac,* plaintiff alleged that defendants made cash payments of wages without paying the payroll taxes associated with those wages in violation of federal tax laws, *i.e.* 26 U.S.C. §§ 3101 & 3102, which resulted in defendants paying approximately 29% less for employee-related costs. *Insomniac,* 233 Cal.App.4th at 834-35. As a result of the effect of all payroll taxes and federal and state withholding taxes, plaintiffs were exposed to liability in an amount of 60% more than the cash paid. Plaintiffs asserted a UCL claim seeking restitution of the amount of unpaid tax liability to which plaintiffs were exposed. *Id.* at 835-36. The appellate court reversed the trial court's dismissal of the UCL claim, finding plaintiffs sufficiently stated a violation of the unlawful prong of the UCL. *Id.*

Here, Plaintiffs allege that GFI is a shell instrumentality maintained to protect the Nussbaums' for-profit entities, ARI and GraphGrid, from income tax liability and to allow GraphGrid and ARI to launder their profits through GFI and obtain unearned tax deductions under the guise of phony charitable contributions.[7] FAC, ¶¶ 15-21, 129-136. Defendants also abuse GFI's nonprofit status by soliciting and deceiving third parties into contributing their time and expertise towards the development of ONgDB without paying wages to those developers. *Id.*, ¶¶ 132, 134. As a result, ARI and GraphGrid obtain software development services without having to compensate software engineers or incurring any related payroll tax liability. *Id.*, ¶ 15. This scheme allows GraphGrid and ARI to promote ONgDB as a free open source "alternative" to a paid commercial license to NEO4J® EE and the included support services from Plaintiffs, and then position themselves for providing paid consulting and support services for ONgDB at a substantial discount since there are no accompanying software licensing fees and no software development overhead. *Id.*, ¶¶ 15, 132-134.

---

[7] While ARI and GraphGrid do not challenge the unlawful prong, it is worth noting that money laundering is a federal and state crime, which can also serve as a predicate unlawful act upon which Plaintiffs base their UCL claim. *See* 18 U.S.C. §§ 1956, 1957; Cal. Penal Code § 186.10. Moreover, the whistleblower provisions of the Internal Revenue Code ("IRC") allow members of the public to challenge the tax-exempt status of a non-profit organization and provides an award from the proceeds that the IRS collects based upon the public complaint. *See* 26 U.S.C. § 7623.

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11

- 29 -

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

Defendants are thus abusing GFI's non-profit tax status for the financial benefit of GraphGrid and ARI. This type of profiting of other businesses by founders through the use of the non-profit entity has been found to be not exempt use under 26 U.S.C. § 501(c)(3). *See, e.g., Church by Mail, Inc. v. CIR*, 765 F.2d 1387 (9th Cir. 1985), *cert. denied*, 497 U.S. 1005 (1990) *Orange County Agric. Soc'y, Inc. v. CIR*, 893 F.2d 529 (2d Cir. 1990). When fairly construed, the FAC also describes a violation of federal parole tax laws, *i.e.* 26 U.S.C. §§ 3101 & 3102, which the *Insomniac* court found could serve as a predicate for a UCL claim. *Id.* at 835. What GFI fails to recognize is that Plaintiffs are not seeking the civil enforcement of these tax code provisions. Rather, Plaintiffs are seeking to rectify the competitive harm it has suffered as a result of Defendants using GFI's sham non-profit status and ill-gotten tax write-offs to unfairly draw customers away from Plaintiffs.

Conversely, none of the cases cited by GFI actual address whether a violation of federal tax law can serve as the basis for a violation of the UCL. For instance, GFI overstates the holding in *Quigley v. Yelp, Inc.*, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018). The question of whether falsely maintaining § 501(c)(3) status could be a predicate for a UCL claim was not before Judge Seeborg. Rather, the issue presented was whether the plaintiff could directly assert a claim pursuant to § 501(c)(3) alleging that defendant is not entitled to nonprofit status because it engage in partisan political activities. *Id.* at *3. As a result, Judge Seeborg merely held that § 501(c)(3) does not provide for a private right of action and he did not make any findings in relation to the UCL. Here Plaintiffs are not directly challenging GFI's status under § 501(c)(3). Rather, Plaintiffs allege that ARI and GraphGrid conspired with GFI to violate federal tax laws to compete unfairly with Plaintiffs. Defendants thus compete unfairly by using revenue from government and private contracts to create tax-deductible "donations" to what is essentially the research and development arm of the commercial entities.[8]

---

[8] GFI's reliance on *Turner v. Unification Church*, 473 F.Supp. 367, 376 (D.R.I. 1978) is similarly misplaced. *Turner* does not stand for the broad proposition that Plaintiffs cannot allege a violation of the tax code as predicate for a UCL claim. Rather, the court in that case found plaintiff could not imply civil causes of action from specific criminal tax enforcement provisions in 26 U.S.C. § 7202. GFI's citation to *Fields v. Banner Health*, 2005 WL 4806305, *7 (D. Ariz. Mar. 24, 2005) is also not instructive. In that case, the court simply held that § 501(c)(3) lists organizations that

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11                                    - 30 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1    **2.    Plaintiffs Allege Facts Establishing that Defendants Engaged in**
        **Fraudulent and Unfair Business Practices that Violate the UCL**

2

3    Defendants argue that Plaintiffs' Seventh Cause of Action fails to allege an unfair business

4    practice on the grounds that the FAC fails to allege an unfair business practice that injures

5    competition rather than Neo4j as a competitor.  Dkt. No. 74 at 7:8-20; Dkt. No. 75 at 17:9-23.  GFI

6    further argues that Plaintiffs fail to allege their reliance on any fraudulent statement made by GFI,

7    and the balance of the allegations supporting the UCL claim do not meet the heightened pleading

8    standard imposed by Rule 9(b).  Dkt. No. 75 at 17:26-19:18.  ARI and GraphGrid merely argue the

9    latter in almost conclusory fashion.  Dkt. No. 74 at 7:23-8:15.  Defendants misconstrue Plaintiffs'

10   UCL claim and that the facts alleged establish both the unfair and fraud prongs of that statute.

11   Notably, false advertising is included in the "fraudulent" category of prohibited practices.

12   *In re Tobacco II Cases*, 46 Cal.4th 298, 311–312 (2009); *accord Kowalsky v. Hewlett-Packard Co.*,

13   771 F.Supp.2d 1156, 1159 (N.D. Cal. 2011) (for UCL claims brought under the "fraud prong" a

14   plaintiff need only "'show that members of the public are likely to be deceived' by the business

15   practice or advertising at issue") (quoting same).  As to unfairness, in the competitor context

16   applicable here, the statutory term unfair "means conduct that threatens an incipient violation of an

17   antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable

18   to or the same as a violation of the law, ***or otherwise significantly threatens or harms competition***."

19   *Cel–Tech*, 20 Cal.4th at 187 (emphasis added).

20   In the FAC, Plaintiffs allege that Defendants falsely advertise and fraudulently mislead

21   consumers and code-contributors as to the true nature of GFI's business and its affiliation with

22   GraphGrid and ARI.  FAC, ¶¶ 129-136.  Defendants' false statements and advertising has induced

23   third parties to forgo purchasing a paid license for NEO4J® EE and using Neo4j USA's support

24   services, and instead to using GFI's pirated ONgDB for free and paying GraphGrid and ARI for

25   such support. *See id.,* ¶¶ 64, 72-77, 132-133.  It has also induced software developers to develop,

26

27   ——————————
     may apply for tax-exempt status, and does not give a private right of action individuals who are
28   expected to benefit from those organizations' charitable efforts.  Here, Plaintiffs do not allege they
     are the beneficiaries of GFI's "charitable" work.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3601434.11                                            - 31 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

improve and support ONgDB under the false assumption that they were furthering a not-for-profit organization, when in reality they were providing uncompensated labor for GraphGrid and ARI's commercial endeavors. *See id.,* ¶¶ 134. This not only harms Plaintiffs' ability to fairly compete, but also significantly harms competition in the marketplace for graph database software and qualified software engineers. *See id.,* ¶¶ 134-135. As a result, this is sufficient to establish a UCL claim under the fraud prong. *See Openwave Messaging, Inc. v. Open-Xchange, Inc*., 2016 WL 6393503 (N.D. Cal. 2016). These facts support Plaintiffs' claims under the fraud, false advertising and unfair prongs of the UCL claims.

In *Openwave Messaging*, plaintiff alleged it suffered harm since prospective buyers were being misled by fraudulent statements and were drawn to defendant's application wrongly thinking it was obtaining plaintiffs goods and services. 2016 WL 6393503 at *7. The court noted that the parties' dispute on whether competitor (as opposed to consumer) cases required "actual reliance" by the affected consumers. The material point is that the *Openwave Messaging* court found that pleading actual reliance by the affected consumers was sufficient to provide standing. This finding rebuts Defendants' position that a plaintiff-competitor needs to plead its own reliance on the fraudulent statements. *See id*; *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985-86 (9th Cir. 2015) ("To state a claim under UCL … based on false advertising ... it is necessary only to show that members of the public are likely to be deceived ... [t]his inquiry does not require individualized proof of deception, reliance and injury").

Here, the FAC adequately pleads that Defendants' false advertisements and fraudulent statements regarding GFI's status as a nonprofit misleads the consuming public and directly harms Plaintiffs by diverting sales and other business opportunities. *See* FAC, ¶¶ 133-135. Plaintiffs adequately connect the allegedly false advertising and fraudulent statements to (1) the actual detriment to Plaintiffs resulting from Defendants' unlawfully obtaining an ill-gotten competitive advantage from GFI falsely holding itself out as an altruistic non-profit; and (2) deceiving members of the public and inducing them to contribute donations and code to the ONgDB "project."

In contrast to the alleged reliance required for fraudulent misrepresentations, where the UCL claim argues *unfair* acts or practices, "a plaintiff need not demonstrate that he or she was

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11                                                                 - 32 -

PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

deceived by the alleged misrepresentation." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F.Supp.3d 623, 646 (N.D. Cal. 2019) (citing *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F.Supp.3d 889, 911 (N.D. Cal. 2018)).  This is because "a defendant's unfair business practices can threaten or harm competition even without deceiving competitors." *Id*. (Citations omitted).[9]  Based on this rationale, the *Clorox* court found that plaintiff had adequately pled the likelihood of the consuming public being misled by the alleged false advertisements and denied the motion to dismiss.  *Id.* at 647.  As detailed above, the FAC alleges that GFI's misrepresentations have actually and potentially mislead consumers, as well as resulted in lost market share and harmed its ability to compete.  This is sufficient at the pleading stage.  *See AngioScore, Inc. v. TriReme Med., LLC*, 70 F.Supp.3d 951, 962 (N.D. Cal. 2014) (allegation of lost business in conjunction with harm to market share was sufficient to allege a claim under the unfair prong of the UCL).

Lastly, Plaintiffs believe that they have provided the requisite specificity regarding the allegations of fraudulent misrepresentations pursuant to Rule 9(b).  *See Clorox*, 398 F.Supp.3d at 646.  The FAC sufficiently alleges the who (GFI, ARI and GraphGrid), as well as the what, when and where (the false statements on their respective websites and on GitHub regarding GFI's purpose and non-profit status, as well as falsely promoting ONgDB as a no-cost alternative to the official NEO4J® EE).  *See, e.g.*, FAC, ¶ 35, Exh. 16; ¶ 76, Exhs. 17-18, 31; ¶¶ 130-132.  Similarly, the FAC alleges that ARI and GraphGrid have concealed from consumers and Plaintiffs their true affiliation and for-profit business arrangement with GFI.  *See id.; see also* FAC, ¶¶ 15, 130.  While Defendants do not provide any detailed explanation as to how Plaintiffs failed to provide sufficient notice as to the alleged fraud, the Court should grant Plaintiffs leave to amend to add further details, such as additional examples of Defendants using social media to falsely promote GFI as a non-profit and if it is inclined to agree with Defendants.

/ / /

---

[9] GFI will likely argue in its reply that the UCL protects competition not competitors. However, the policy behind the antitrust statutes, the violation of which support a UCL claim, is to prevent competitors gaining an unlawful and unfair advantage so as to disadvantage competitors and the marketplace.  Here, Defendants' ongoing maintenance of a scheme to avoid taxes, launder what otherwise would be taxable income and obtain free research and development creates an uneven playing field in the market for graph database software.

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3601434.11                                                    - 33 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD

1

## V.   CONCLUSION

2          For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

3   motions to dismiss in their entirety.   Should the Court grant Defendants' motions, however,

4   Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend.

5   Dated:  September 21, 2020                    HOPKINS & CARLEY
                                                  A Law Corporation
6

7                                                 By:  _/s/ Jeffrey M. Ratinoff_____
                                                     Jeffrey M. Ratinoff
8                                                    Attorneys for Plaintiffs
                                                     NEO4J, INC. and NEO4J SWEDEN AB
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

842\3601434.11                                   - 34 -
PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. 5:19-CV-06226-EJD