JOHN D. PERNICK, SBN 155468
jpernick@be-law.com
BERGESON, LLP
111 N. Market Street, Suite 600
San Jose, California 95113
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Defendant
GRAPH FOUNDATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NEO4J, INC., <br><br> Plaintiff, <br><br> v. <br><br> GRAPH FOUNDATION, INC., <br><br> Defendant. | Case No. 5:19-cv-06226-EJD <br><br> **GRAPH FOUNDATION, INC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Date: October 29, 2020 <br> Time: 9:00 a.m. <br> Judge: Hon. Edward H. Davila <br> Crtrm.: 4, 5th Fl. <br><br> Complaint Filed: October 1, 2019 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION...................................................................................................1

II.   ARGUMENT ........................................................................................................3

      A.    Neo4J Sweden's Breach of License Claim Fails Because the License
            Expressly Permits Removal of Further Restrictions Such as the Commons
            Clause Language. ........................................................................................3

      B.    Plaintiffs' Claim Under the DMCA Fails Because the Terms of the
            AGPLv3 License Defeat the Claim............................................................6

      C.    Plaintiffs' Section 17200 Claim Based On Alleged Misrepresentation of
            Non-Profit Status Fails. ..............................................................................8

            1.    Plaintiffs Cannot Base a Section 17200 Unlawful Claim on an
                  Alleged Violation of Section 501(c)(3)........................................9

            2.    Plaintiffs Have Not Alleged a Fraudulent Business Practice. .....10

            3.    Plaintiffs Have Not Alleged an Unfair Business Practice............12

III.  CONCLUSION ...................................................................................................13

i

GRAPH FOUNDATION, INC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS, Case No. 5:19-cv-06226-EJD

# TABLE OF AUTHORITIES

**Page**

<u>CASES</u>

*23andMe, Inc. v. Ancestry.com DNA, LLC,* 356 F. Supp. 3d 889, 911 (N.D. Cal. 2018).............. 10

*A White & Yellow Cab, Inc. v. Uber Techs., Inc.*, No. 15-cv-05163-JSW, 2017 U.S. Dist. LEXIS 49803, at *20-21 (N.D. Cal. Mar. 31, 2017)........................................................... 10

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) .................................... 4

*AlterG, Inc. v. Boast Treadmills, LLC,* 388 F. Supp. 3d 1133, 1156 (N.D. Cal. 2019) ........... 10, 12

*AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014).................... 12

*Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017)......................................................................... 4

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 186-187 (1999)............................................................................. 12

*Citizens for a Better Env't v. Union Oil.*, 996 F. Supp. 934, 938 (N.D. Cal. 1997) ........................ 9

*Clorox Co. v. Reckitt Benckeiser Grp. PLC¸* 398 F. Supp. 3d 623 (N.D. Cal. 2019) .................... 11

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ...................................................... 6

*Equinox Hotel Mgmt. v. Equinox Holdings, Inc.,* No. 17-cv-06393-YGR, 2018 U.S. Dist. LEXIS 16914, at *32-33 (N.D. Cal. Feb. 1, 2018) ........................................ 11

*Free Speech Sys., LLC v. Menzel,* 390 F. Supp. 3d 1162 (N.D. Cal. 2019)................................... 7

*Gordon v. Nextel Communs,* 345 F. 3d 922, 926-927 (6th Cir. 2003) ...................................... 7

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011)........................................... 10

*Los Angeles Mem'l Coliseum Com. v. Insomniac, Inc.*, 233 Cal.App.4th 803 (2015) .................... 9

*MedioStream, Inc. v. Microsoft Corp.*, 749 F. Supp. 2d 507, 519 (E.D. Tex. 2010) ...................... 4

*Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998)............................................... 4

*Newton v. Am. Debt. Servs.,* 75 F. Supp. 3d 1048 (N.D. Cal. 2014)........................................ 9

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-00253-WHO, 2016 U.S. Dist. LEXIS 150713 (N.D. Cal. Oct. 26, 2016) ........................................ 11

*Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146 (9th Cir. 2007)...................................... 6

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, (9th Cir. 2015)................................ 11

ii

1  *Southwest Marine, Inc. v. Triple a Machine Shop, Inc.,* 720 F. Supp. 805, 808 (N.D. Cal.
2           1989)......................................................................................................................... 9

3  *Storm Impact, Inc. v. Software of the Month Club*, 44 U.S.P.Q.2d (BNA) 1441 (N.D. Ill.
           1997)......................................................................................................................... 4

4  *Zhang v. Superior Court,* 57 Cal. 4th 364, 384 (2013) ................................................. 2, 9

5

6  **<u>FEDERAL STATUTES</u>**

7  26 U.S.C. § 3101 .............................................................................................................. 9

8  26 U.S.C. § 7401 .............................................................................................................. 9

9  26 U.S.C. 401(c)(3) .......................................................................................................... 2

10  26 U.S.C.§ 3102 .............................................................................................................. 9

11  501(c)(3) .................................................................................................................. passim

12  Section 1202(b) of the Digital Millennium Copyright Act (the "DMCA") ............................. passim

13

14  **<u>STATE STATUTES</u>**

15  California Business & Professions Code section 17200 ............................................... 2, 9

16  Section 17200 ........................................................................................................... passim

17
18
19
20
21
22
23
24
25
26
27
28

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Opposition filed by Plaintiffs Neo4J Sweden AB ("Neo4J Sweden") and Neo4J, Inc. ("Neo4J USA") ignores the plain language of the license agreement governing Neo4J Sweden's software and fails to cite any case law that actually supports Plaintiffs' arguments.

As to Neo4J Sweden's breach of license claim, the GNU Affero General Public License, version 3 (the "AGPLv3 license") that Neo4J Sweden uses expressly permits a licensee, like defendant Graph Foundation, Inc. ("GFI"), to remove "further restrictions" that a licensor such as Neo4J Sweden adds to the AGPLv3 license.  Plaintiffs' argument that somehow the express language allowing for removal of further restrictions does not apply to the further restrictions added by Neo4J Sweden ignores the plain language of the Neo4J Sweden Software License.  The Neo4J Sweden Software License defines "this License" as the AGPLv3 license.  Therefore, any further restriction that Neo4J Sweden added to the AGPLv3 license in creating the Neo4J Sweden Software License may be removed by a licensee such as GFI.

Plaintiffs' citations to cases involving other types of licenses are irrelevant.  Neo4J Sweden could have issued the Neo4J software under any type of license.  But it chose the AGPLv3 license. Having made that choice, it cannot deprive GFI of the rights expressly granted under that license, including the right to remove the Commons Clause language and other further restrictions added by Neo4J Sweden.  Therefore, Neo4J Sweden's breach of license claim fails.

Further, because the Neo4J Sweden Software License expressly allows for the removal of the Commons Clause and other further restrictions added by Neo4J Sweden to the AGPLv3 license, GFI's distribution of Neo4J software with those further restrictions removed cannot be a violation of Section 1202(b) of the Digital Millennium Copyright Act (the "DMCA").  Section 1202(b) only prohibits the distribution of material with such "copyright management information" removed if the person doing the distribution *knows* that the information was removed "without authority of the copyright owner or the law" and also knows that distribution of the software without that information would aid copyright infringement.  17 U.S.C. § 1202(b)(3).  Here, the

very license under which the software was distributed expressly permits the removal of the language at issue. Moreover, to state a violation of Section 1202(b), Plaintiffs must show that GFI knew that its actions would aid copyright infringement. But Neo4J Sweden is identified as the copyright holder for the Neo4j software in other documentation that is on the same webpages as the license language about which Plaintiffs complaint. Consequently, Plaintiffs cannot establish that required element of wrongful intent.

As for Plaintiffs' claim under California Business & Professions Code section 17200, the Opposition ignores the fact that Section 17200 has three separate prongs, each with its own pleading requirements. Instead, Plaintiffs switch between discussions of fraudulent acts, unfair acts and unlawful acts without establishing that the First Amended Complaint ("FAC") alleges the necessary elements to state a claim under any one of those three prongs of Section 17200. When analyzed properly, the FAC falls far short. Plaintiffs cannot allege an unlawful act claim based on their allegation that GFI is in violation of 26 U.S.C. 401(c)(3) because there is no private right of action for violations of the Internal Revenue Code. Plaintiffs do not cite a single case in which a court specifically held that a plaintiff could base a claim under Section 17200's unlawful prong on a statute as to which there is no private right of action. To the contrary, in *Zhang v. Superior Court,* 57 Cal. 4th 364, 384 (2013), the California Supreme Court rejected just such an effort.

The FAC also fails to state a claim under either the fraudulent act prong or the unfair act prong. Plaintiffs identify no false statement made by GFI and fail to allege their reliance on any allegedly false statement. Plaintiffs' argument that reliance is not necessary for an "unfairness" claim does not eliminate reliance as a necessary element for a "fraudulent" claim. And, as to unfairness, Plaintiffs fail to show that the FAC alleges the requisite harm to "competition" as opposed to just alleging harm to Plaintiffs themselves.

The FAC's breach of license and DMCA claims fail under the language of the very license on which they are based. The Section 17200 claim fails because there is no fraud or unfair practice alleged in the Amended Complaint. The Fifth, Sixth and Seventh Causes of Action of the Amended Complaint should be dismissed.

1  II.    **ARGUMENT**

2
       A.    **Neo4J Sweden's Breach of License Claim Fails Because the License Expressly**
3            **Permits Removal of Further Restrictions Such as the Commons Clause**
             **Language.**
4

5        Neo4J Sweden argues that the Court should look to the plain language of the Neo4J

6  Sweden Software License to determine whether GFI acted within its rights under the license in

7  removing the Commons Clause restriction and other further restrictions from the license

8  accompanying the source code files.  But it is Neo4J Sweden that ignores the plain language of the

9  license.

10       The Neo4J Sweden Software License begins by stating that the software is "subject to the

11 terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3 . . ."  Declaration of

12 Jeffrey Ratinoff in Support of Plaintiffs' Consolidated Opposition to Defendants' Motions to

13 Dismiss the First Amended Complaint Exh. B, p. 1.  Although the Neo4J Sweden Software

14 License goes on to state "with the Commons Clause", it does not purport to remove or change any

15 of the provisions of the AGPLv3 itself.  *Id.*

16       The Neo4J Sweden Software License then recites the provision of the AGPL v3 license

17 stating that no change can be made.  "Everyone is permitted to copy and distribute verbatim copies

18 of this license document, but changing it is not allowed."  *Id.*

19       Then, Neo4J Sweden Software License defines "This License" as "Version 3 of the GNU

20 Affero General Public License".  *Id.* at 3.  In other words, when the Neo4J Sweden Software

21 License refers to "this License", it means the original AGPLv3 license, without any additional

22 language added.

23       Then, Section 7 of the Neo4J Sweden Software License states:  "If the Program as you

24 received it, or any part of it, contains a notice stating that it is governed by this License along with

25 a term that is a further restriction, you may remove that term."  *Id.* at 9.

26       Reading all these provisions together, in accordance with the cases cited by Neo4J

27 Sweden, the meaning of the Neo4J Sweden Software License is plain.  The Neo4J Sweden

28 Software License states that the "Software" is governed by the terms of the AGPLv3 license

3

which is "The License" as defined in the Neo4J Sweden Software License.  The Neo4J Sweden Software License contains a term, the Commons Clause, that is a further restriction not found in the AGPLv3 license.  GFI, as "you" under the Neo4J Sweden Software License, is given express permission, under Section 7 of the License, to remove the further restriction.  Therefore, GFI was entirely within its rights, under the express terms of the Neo4J Sweden Software License itself, to remove the Commons Clause.

Neo4J Sweden's arguments about its "intent" and its citation to cases involving licenses other than the AGPLv3 license are irrelevant.  The actual Neo4J Sweden Software License, with its incorporation of the AGPLv3 license and all its provisions, is the license at issue here.  If Neo4J had wanted to distribute its software under a license that provided for the restrictions of the Commons Clause, it could have done so.  The licenses in *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) and *Storm Impact, Inc. v. Software of the Month Club*, 44 U.S.P.Q.2d (BNA) 1441 (N.D. Ill. 1997) were drafted by the licensor to provide the specific protection sought by the licensor.[1]  But Neo4J Sweden did not draft its own license.  It used the AGPLv3 license which, expressly allows licensees like GFI to remove further restrictions added to the AGPLv3 license such as Neo4J Sweden's Commons Clause.

As for *MedioStream, Inc. v. Microsoft Corp.*, 749 F. Supp. 2d 507, 519 (E.D. Tex. 2010) and *Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 U.S. Dist. LEXIS 62815 (N.D. Cal. Apr. 25, 2017), they only stand for the proposition that the act of downloading software is an agreement to be bound by the terms of the license.  GFI does not dispute that it is bound by the terms of the AGPLv3 license that accompanied Neo4J Sweden's software.  It is Neo4J Sweden that is claiming that it is not bound by the license's provision that allows GFI to remove further restrictions such as the Commons Clause.

Neo4J Sweden chose to use the AGPLv3 license, presumably to take advantage of the ability to claim that it was continuing to be part of the open source community.  Having chosen to

---

[1]  In *Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998), the question was whether there even was a license and the Ninth Circuit only held that if a license had been granted, it was extremely limited.

use the AGPLv3 license, Neo4J Sweden cannot pick and choose among the license's provisions. The entirety of the license, including the provision permitting GFI, as "you" under the license, to remove further restrictions, must be enforced.  Neo4J Sweden's argument that this operates as a forfeiture of its "right to license the Neo4j [R] graph database platform as it sees fit" misses the point.  Opposition, at 20.  Neo4J Sweden could have used any license.  It chose to use the AGPLv3 license.  Having done so, it is bound by the terms of that license as much as GFI is.

The entirety of the AGPLv3 license also shows the irrelevance of Neo4J Sweden's argument that only the Free Software Foundation has standing to claim copyright infringement. That standing limitation is presumably why the Free Software Foundation gave licensees, in Section 7 of the AGPLv3 license, the power to remove improperly added further restrictions.

Beyond the removal of the Commons Clause, Neo4J Sweden also complains that language identifying Neo4J Sweden as the copyright holder of the software was removed from the License.txt files.  But, as set forth in the moving papers, all of the copyright information that Neo4J Sweden complains was removed is actually present in the Notice.txt files that accompany the License.txt files pointed to by Neo4J Sweden.  *See,* Declaration of John D. Pernick, Exhs. 4 through 30.  Neo4J Sweden objects to GFI's Request for Judicial Notice of these pages, all of which are freely available and verifiable on GFI's GitHub repository pages.  Neo4J Sweden does not present anything indicating that the Notice.txt files attached to the Pernick Declaration are somehow different than the Notice.txt files that accompany the License.txt files attached to the FAC.  The FAC itself alleges breaches of contract as to all iterations of ONgDB versions 3.5. FAC, ¶ 122 (referring to "ONgDB software version 3.5.x and 3.6.x releases").  And the FAC alleges breaches of contract in connection with the removal of provisions from the "license accompanying these source code files."  *Id.*  Consequently, the materials accompanying the referenced source code files are referenced in and incorporated in the FAC and judicial notice of the Notice,txt files that accompany these source code files is proper.

Consequently, GFI has not breached any obligation that it has under the Neo4j Sweden Software License.  The Neo4j Sweden Software License expressly permits GFI, or any licensee, to remove the Commons Clause restriction and other further restrictions improperly added to the

AGPLv3 license by Neo4J Sweden.  To the extent the language that was removed other than the Commons Clause restriction is not considered further restrictions, there is still no breach because that language still accompanies every one of the source code files as part of the Notice.txt file. Neo4J Sweden's Sixth Cause of Action for Breach of License Agreement should be dismissed.

**B.      Plaintiffs' Claim Under the DMCA Fails Because the Terms of the AGPLv3 License Defeat the Claim.**

Section 1202(b) identifies three types of violation:

(1)      Intentional removal or alteration of copyright management information;

(2)      Distribution of copyright management information knowing that the copyright management information has been removed or altered without the authority of the copyright owner or the law; or

(3)      Distribution of a work or a copy of a work knowing that copyright management information has been removed or altered without the authority of the copyright owner or the law.

Further, to establish any of these violations, a plaintiff must also establish that the defendant took the action knowing or having reasonable grounds to know that the action will induce, enable, facilitate or conceal the infringement of a copyright holder's rights under the Copyright Act.  17 U.S.C. § 1202(b).

The FAC does not allege that GFI removed or altered any copyright management information ("CMI").  Plaintiffs argue in their opposition that the allegation that John Suhy is a co-founder of GFI and the allegations of the approval of Suhy's actions by the Nussbaums is sufficient to make GFI responsible for Suhy's action such that a violation of Section 1202(b)(1) for "intentional removal or alteration" of CMI is alleged.  But the two cases cited by Plaintiffs to support such a vicarious liability theory are copyright infringement cases, not cases alleging violation of Section 1202(b)(1).  *See, Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) (providing for vicarious liability for copyright infringement); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) (same).  Plaintiffs do not cite to any case in which a court used a

1   vicarious liability theory to find that a person who did not actually remove CMI had violated

2   Section 1202(b)(1).  Further, the statute, through Sections 1202(b)(2) and 1202(b)(3), provides for

3   separate liability for those who distribute a work or a copy knowing that CMI has been altered or

4   removed without authorization.  Thus, the statute itself establishes the elements necessary for

5   liability and there is no basis for reading vicarious liability into the statute.

6       Consequently, Plaintiffs are left with claims under Sections 1202(b)(2) or 1202(b)(3).  For

7   each of these, Plaintiffs must allege facts showing that GFI knew the CMI was removed ***without***

8   ***the authority of the copyright owner or the law***.  Plaintiffs' argument that they have alleged this

9   necessary element is based, entirely, on Plaintiffs' contention that GFI was not authorized under

10  Section 7 of the AGPL v3 license used by Neo4j Sweden to remove the Commons Clause and

11  other further restrictions.  As set out above, Plaintiffs' argument ignores the plain language of the

12  license.  Section 7 of the Neo4J Sweden Software License permitted GFI (the "you" under the

13  license) to remove any further restrictions that Neo4J Sweden had added to the AGPLv3 license

14  (the "License" under the license).  Given the express permission under the Neo4J Sweden

15  Software License to remove further restrictions, Plaintiffs cannot establish that the removal of the

16  Commons Clause was unauthorized.

17      Given that, under the very license agreement governing the software at issue, the

18  Commons Clause and other further restrictions language could be removed, Plaintiffs cannot

19  establish that GFI knew that the Commons Clause and other further restrictions language was

20  removed without the authority of the copyright owner or the law.  *See, e.g., Gordon v. Nextel*

21  *Communs,* 345 F. 3d 922, 926-927 (6th Cir. 2003) (granting defendants' motion for summary

22  judgment on claim under 17 U.S.C. § 1202(b)(3) where evidence showed defendants believed that

23  poster with copyright information removed had been cleared for use).

24      Additionally, to establish any violation of Section 1202(b), Plaintiffs must establish that

25  GFI acted with ***knowledge*** that its actions would ***induce, enable, facilitate or conceal*** the

26  infringement of a copyright holder's rights under the Copyright Act.  17 U.S.C. § 1202(b).  As set

27  out in *Free Speech Sys., LLC v. Menzel,* 390 F. Supp. 3d 1162 (N.D. Cal. 2019), which Plaintiffs

28  cite, this requires that a complaint allege facts plausibly showing that the alleged infringer had this

7

1    required mental state.  Here, it is not plausible to conclude that GFI acted with knowledge that

2    actions would induce, enable, facilitate or conceal infringement when the source code files it

3    distributed were accompanied by the Notice.txt files expressly stating that Neo4J Sweden is the

4    copyright holder.  Neo4J Sweden's only response is to ask the Court to ignore the Notice.txt files.

5    But the contents of those files are easily verifiable and cannot be reasonably disputed.  Therefore,

6    judicial notice of them is entirely proper.

7        Based on the allegations of the FAC and the facts subject to judicial notice with respect to

8    Notice.txt files distributed by GFI with the source code files at issue, Plaintiffs cannot establish the

9    necessary knowledge elements to prevail on a claim under Section 1202(b).  The Fifth Cause of

10   Action fails to state a claim under 17 U.S.C. § 1202(b) should be dismissed.

11

12       **C.    Plaintiffs' Section 17200 Claim Based On Alleged Misrepresentation of Non-Profit Status Fails.**

13       Plaintiffs' Seventh Cause of Action alleges that GFI describes itself as a 501(c)(3)

14   nonprofit.  Plaintiffs concede that GFI been given 501(c)(3) nonprofit status by the IRS.  FAC, ¶ 5,

15   Exh. 1.  But they allege that they are "informed and believe" that GFI does not operate as required

16   by 26 U.S.C. § 501(c)(3).  *Id.*, ¶ 131.  Based on that allegation, Plaintiffs purport to state a claim

17   under Section 17200 for "unfair and fraudulent business practices."  *Id.*, ¶¶ 129-136.

18       To state a claim under Section 17200, a complaint must allege facts sufficient to state a

19   claim under one of Section 17200's three separate prongs, *i.e.* that the defendant has engaged in a

20   business act or practice that is unlawful, unfair, or fraudulent.  Plaintiffs' Opposition conflates

21   these three separate prongs in an attempt to conceal the FAC's failure to allege the necessary

22   elements of any one of them.  But Plaintiffs' attempts at obfuscation are insufficient to show that

23   the FAC has alleged the facts necessary to state a claim under any one of the three prongs of

24   Section 17200.

25

26

27

28

8

1

2

### 1. Plaintiffs Cannot Base a Section 17200 Unlawful Claim on an Alleged Violation of Section 501(c)(3).

Plaintiffs do not dispute that there is no private right of action under Section 501(c)(3). Nevertheless, they argue that Section 17200 allows them to evade the Internal Revenue Code's express prohibition on anyone bringing an action to enforce the Code without the authorization of the Secretary of the Treasury and the United States Attorney General. 26 U.S.C. § 7401. But Plaintiffs provide no legal support for their position. The court in *Los Angeles Mem'l Coliseum Com. v. Insomniac, Inc.*, 233 Cal.App.4th 803 (2015) allowed a Section 17200 unlawful act claim based on an alleged violation of 26 U.S.C. §§ 3101 and 3102, but did so without considering whether a private right of action existed under either statute, presumably because defendants did not raise it. *Id.* at 835-836. Nor was the question of a private right of action at issue in *Citizens for a Better Env't v. Union Oil.*, 996 F. Supp. 934, 938 (N.D. Cal. 1997) or *Southwest Marine, Inc. v. Triple a Machine Shop, Inc.,* 720 F. Supp. 805, 808 (N.D. Cal. 1989).

In contrast, in *Zhang v. Superior Court,* 57 Cal. 4th 364 (2013) the California Supreme Court did consider whether a claim could be brought under Section 17200's unlawful prong based on a statute as to which there is no private right of action and answered, unequivocally, "No." *Id.* at 384. The court in *Newton v. Am. Debt. Servs.,* 75 F. Supp. 3d 1048 (N.D. Cal. 2014) came to the same conclusion. *Id.* at 1048. (where private enforcement of FDIC order is absolutely barred as a matter of federal law, plaintiff cannot use a claim of violation of the order as the basis of a Section 17200 claim). Plaintiffs argue that *Zhang* does not prohibit them from basing their Section 17200 claim on an alleged violation of Section 501(c)(3) because it stated that when conduct violated "both the UIPA and obligations imposed by other statutes or common law, a UCL action may lie." Opposition at 28 (quoting *Zhang*, 57 Cal. 4th 384). But Plaintiffs do not allege violation of any other statute or common law as the basis of their "unlawful" claim under Section 17200. They cite only to Section 501(c)(3). Under *Zhang,* because there is no private right of action under Section 501(c)(3), an alleged violation of Section 501(c)(3) cannot be the basis of an unlawful claim under Section 17200.

1

**2.     Plaintiffs Have Not Alleged a Fraudulent Business Practice.**

2      As a starting point, to allege a fraudulent business practice under Section 17200, the

3   complaint must allege an actual false statement.  The only statement alleged as the basis of

4   Plaintiffs' Section 17200 claim is GFI's statement that it is a non-profit with 501(c)(3) status.

5   FAC, ¶ 130.  That was, and remains, a true statement.  Therefore, there is no fraud.

6      Plaintiffs allege that the statement is false because GFI does not operate "exclusively for

7   exempt purposes as required under 26 U.S.C. § 501(c)(3)" (FAC, ¶ 131) and therefore falsely

8   holds itself out as a non-profit.  But Plaintiffs' beliefs as to whether GFI's non-profit status is

9   subject to attack does not demonstrate that GFI's statement that it is a non-profit with 501(c)(3)

10  status was false, let alone knowingly false.  Therefore, Plaintiffs have not alleged any false

11  statement.

12     Nor have Plaintiffs alleged facts demonstrating reliance.  To state a claim under Section

13  17200 predicated on fraud, a plaintiff must allege that it relied on the allegedly fraudulent

14  statements.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011).  As set out in the

15  moving papers, when a plaintiff alleges only that third-parties have relied on the allegedly

16  fraudulent statements, and fails to allege its own reliance, the plaintiff has failed to allege the

17  necessary reliance element of a Section 17200 fraudulent conduct claim.  *See, e.g., 23andMe, Inc.*

18  *v. Ancestry.com DNA, LLC,* 356 F. Supp. 3d 889, 911 (N.D. Cal. 2018) (dismissing 17200 claim

19  brought by competitor based on alleged fraudulent statements relied on by customers, not the

20  competitor); *A White & Yellow Cab, Inc. v. Uber Techs., Inc.*, No. 15-cv-05163-JSW, 2017 U.S.

21  Dist. LEXIS 49803, at *20-21 (N.D. Cal. Mar. 31, 2017) (dismissing 17200 claim brought by cab

22  company alleging that Uber made false statements to consumers about its safety practices and

23  background checks); *AlterG, Inc. v. Boast Treadmills, LLC,* 388 F. Supp. 3d 1133, 1156 (N.D.

24  Cal. 2019) (allegation that plaintiff was harmed because customers relied on defendant's

25  representations but does not allege plaintiff itself relied on defendant's representations to its

26  detriment, plaintiff does not have standing to pursue Section 17200 claim under the fraudulent

27

28

1   prong).[2]  Plaintiffs themselves cite *Clorox Co. v. Reckitt Benckeiser Grp. PLC*¸ 398 F. Supp. 3d

2   623 (N.D. Cal. 2019), which says the exact same thing.  "[M]ost courts, including this one, have

3   determined that where UCL claims are predicated on fraud . . . the plaintiff must demonstrate

4   actual reliance on the misleading advertisements."  *Id.* at 646.

5          Plaintiffs do not address, let alone distinguish, any of these cases.  And neither of the cases

6   cited by Plaintiffs eliminate the requirement that Plaintiffs allege their own reliance in order to

7   state a claim under Section 17200 for fraudulent conduct.  In *Pulaski & Middleman, LLC v.*

8   *Google, Inc.*, 802 F.3d 979, (9th Cir. 2015), the plaintiffs were advertisers who alleged that

9   Google misled them as to the types of websites on which their advertisements would appear.  *Id.* at

10  981.  Thus, the plaintiffs alleged their reliance on Google's allegedly fraudulent statements.  In

11  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-00253-WHO, 2016 U.S. Dist.

12  LEXIS 150713 (N.D. Cal. Oct. 26, 2016), the court did not address the issue as to whether, in a

13  competitor case, the plaintiff must allege its own reliance on the allegedly fraudulent statements.

14  As set out above, the cases that have addressed the question have, overwhelmingly, concluded that

15  a plaintiff must allege its own reliance to state a Section 17200 claim under the fraudulent prong.

16         Moreover, even as to consumer reliance, the allegations of the FAC fall far short of what is

17  required.  Plaintiffs do not allege any facts relating to any person viewing that statement on the

18  GFI website or taking any action in reliance on that statement.  Instead, Plaintiffs allege only that

19  "GFI openly solicits and accepts monetary and in-kind donations under the guises" that it is a

20  501(c)(3) nonprofit (AC, ¶ 130) and that GFI's nonprofit status has been used to "solicit and

21  deceive third parties into contributing their time and expertise toward the development of ONgDB

22  . . .".  AC, ¶ 132.  But the FAC does not contain any specific allegations of Plaintiffs, or anyone

---

[2]  There are some cases that can be read as not requiring a competitor plaintiff to allege its own reliance to state a Section 17200 claim under the fraudulent prong.  *See, Equinox Hotel Mgmt. v. Equinox Holdings, Inc.,* No. 17-cv-06393-YGR, 2018 U.S. Dist. LEXIS 16914, at *32-33 (N.D. Cal. Feb. 1, 2018) (discussing cases).  However, as the court stated in *Equinox,* the majority approach requires that a plaintiff allege that it personally relied on the alleged misstatement.  *Id.* at *32.

1  else, seeing or hearing any statement with respect to GFI's nonprofit status and then, in reliance on

2  that statement, taking any action. Plaintiffs' Section 17200 claim fails for this reason as well.

3       Plaintiffs' only response is to argue that such specificity is not required to state a claim

4  under Section 17200's unfairness prong. Opposition at 32-33. But Plaintiffs' attempt to allege an

5  unfair business practice under Section 17200 fails for other reasons as set out in the moving papers

6  and below.

7                    **3.      Plaintiffs Have Not Alleged an Unfair Business Practice.**

8       Under Section 17200, an "unfair" business practice is one that threatens an incipient

9  violation of an antitrust law, or violates the policy or spirit of such a law because its effects are

10  comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

11  competition. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th

12  163, 186-187 (1999). Importantly, what must be alleged to state a claim under the unfairness

13  prong is injury to ***competition*** not just injury to a ***competitor***. *Id*. at 187 (emphasis added). *See*

14  *also, AlterG, Inc. v. Boost Treadmills LLC,* 388 F. Supp. 3d 1133, 1155-1156 (N.D. Cal. 2019)

15  (where complaint contains no allegation of violation of antitrust law or effects comparable to

16  violation of antitrust law, no unfair business practice is alleged).

17       Plaintiffs do not address these cases either. Instead, they cite *AngioScore, Inc. v. TriReme*

18  *Med., LLC*, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014) and claim that it holds that an allegation of

19  lost business and harm to market share is sufficient to state a claim under the "unfair" prong of

20  Section 17200. Opposition at 33. But that description of *AngioScore* is just wrong. *AngioScore*

21  found that harm to market share was sufficient to state a claim under the "unlawful" prong of

22  Section 17200 based on an alleged violation of the Lanham Act. *AngioScore,* 70 F. Supp. 3d at

23  962. *AngioScore* does not address what type of harm is necessary to state a claim under the

24  "unfair" prong of Section 17200.

25       Plaintiffs also argue, in a footnote, that the alleged actions of GFI "creates an uneven

26  playing field in the market for graph database software." Opposition at 33, n. 9. Plaintiffs'

27  footnote does not cite to any such allegation in the FAC because there is none. The FAC only

28  alleges that Plaintiffs are unfairly competing "with Neo4j USA in the marketplace" (FAC, ¶ 135)

                                                        12

and that consumers have been deterred from purchasing "Plaintiff's software and services." *Id.*, ¶136.  No injury to competition is alleged.  Therefore, the FAC fails to state a claim under Section 17200's unfairness prong.

## III.    CONCLUSION

Neo4j Sweden used the AGPLv3 license to distribute NEO4J Enterprise Edition software. The AGPLv3 expressly prohibits the addition of further restrictions such as the Common Clause and other language added to the license by Neo4J Sweden. The AGPLv3 license expressly permits GFI, as the licensee, to remove the Commons Clause and other further restrictions Neo4J Sweden improperly added.  Consequently, there has been no breach of any license agreement and no violation of Section 1202(b) of the DMCA.  And, because GFI is a 501(c)(3) nonprofit and Plaintiffs do not have standing to argue otherwise and have failed to allege any fraudulent or unfair business practice, the Amended Complaint fails to allege a violation of Section 17200. Therefore, the Fifth, Sixth, and Seventh Causes of Action of the Amended Complaint should be dismissed.

Dated:  October 6, 2020                    BERGESON LLP


By:    */s/ John D. Pernick*
                                                          John D. Pernick

Attorneys for Defendant
GRAPH FOUNDATION, INC.

GRAPH FOUNDATION, INC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, Case No. 5:19-cv-06226-EJD

1

## <u>PROOF OF SERVICE</u>

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

      At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 9350 Wilshire Boulevard, Suite 206, Beverly Hills, CA 90212.

4

5

      On October 6, 2020, I served true copies of the following document(s) described as **GRAPH FOUNDATION, INC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** on the interested parties in this action as follows:

6

7

8

| *Attorneys for Plaintiff:* | *Attorneys for Defendants:* |
| *NEO4J, INC.* | *GRAPHGRID, INC.* |
| | *and ATOMRAIN INC.* |

9

10

11

John V. Picone III, Esq.
Jeffrey M. Ratinoff, Esq
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA 95113-2406
jpicone@hopkinscarley.com
jratinoff@hopkinscarley.com

Jeffrey E. Faucette
SKAGGS FAUCETTE LLP
Four Embarcadero Center
Suite 1400
San Francisco, California 94111
jeff@skaggsfaucette.com

12

13

14

15

16

17

      **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address abilson@be-law.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

18

19

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

20

21

      Executed on October 6, 2020, at Beverly Hills, California.

22

23

                /s/ Andrew Bilson

24

                Andrew Bilson

25

26

27

28

GRAPH FOUNDATION, INC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, Case No. 5:19-cv-06226-EJD