1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6                               SAN JOSE DIVISION

7

8    NEO4J, INC.,                          Case No.  5:19-cv-06226-EJD
                    Plaintiff,
9                                          **ORDER GRANTING IN PART AND**
     v.                                    **DENYING IN PART DEFENDANTS'**
10                                         **MOTIONS TO DISMISS**

11   GRAPH FOUNDATION, INC.,                Re: Dkt. Nos. 74, 75
                    Defendant.
12

13          Plaintiffs Neo4j, Inc. ("Neo4j USA") and Neo4j Sweden AB ("Neo4j Sweden" and

14   together with Neo4j USA "Plaintiffs") recently filed a First Amended Complaint (Dkt. No. 65,

15   "FAC") in this matter against Graph Foundation, Inc. ("GFI"), GraphGrid, Inc. ("GraphGrid"),

16   and AtomRain Inc. ("ARI" and altogether, "Defendants").  Pursuant to Rule 12(b)(6) of the

17   Federal Rules of Civil Procedure, GraphGrid and ARI seek to dismiss the fifth and seventh causes

18   of action in the FAC.  Dkt. No. 74 ("GraphGrid/ARI Motion")).  GFI separately seeks to dismiss

19   the fifth, sixth, and seventh causes of action.  Dkt. No. 78 ("GFI Motion").  The Court took the

20   motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b).

21   For the reasons below, the Court **GRANTS in part and DENIES in part** both motions.

22          **I.      Background**

23                    **A.  Allegations in the FAC**

24          Neo4j USA is a Delaware corporation with its principal place of business in San Mateo,

25   California, and is a global leader in graph database technology.  Dkt. No. 1, First Amended

26   Complaint ("FAC"), ¶ 2.  The Neo4j graph database platform natively stores and processes the

27
     Case No.: 5:19-cv-06226-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS
                                              1

*United States District Court*
*Northern District of California*

1    relationship between data points, which "helps organizations make sense of their data by revealing

2    how people, processes and digital systems are interrelated." *Id.* Neo4j Sweden is a wholly owned

3    subsidiary of Neo4j USA and owns all copyrights related to the Neo4j graph database platform,

4    including the source code. *Id.* ¶ 4.

5            Plaintiffs offer multiple products and services related to the Neo4j graph database

6    platform. They offer a free version of the software, known as the Neo4j Community Edition, on

7    an open source basis. The Community Edition is offered under a copyright license called the

8    GNU General Public License ("GPL") developed by the Free Software Foundation ("FSF") as a

9    form license for open source software. *Id.* ¶ 30. Plaintiffs also offer a more advanced commercial

10   version of the software known as the Neo4j Enterprise Edition ("Neo4j EE"), which includes

11   additional features and Neo4j USA's support services. *Id.* Plaintiffs originally offered the Neo4j

12   EE under both a paid-for commercial license and the free GNU Affero General Public License

13   version 3 ("AGPLv3"), a variant of the GPL also developed by FSF. *Id.* ¶ 31.

14           In May 2018, Plaintiffs released an updated version of Neo4j EE, version 3.4, which they

15   continued to offer under a proprietary commercial license. However, Neo4j Sweden replaced the

16   AGPLv3 with a stricter license ("Neo4j Sweden Software License"), which included the terms of

17   the AGPLv3 with additional restrictions provided by the Commons Clause. *Id.* ¶ 32. The

18   Commons Clause is a contractual rider that can be added to an existing open source license to

19   restrict the sale of the licensed software. In November 2018, Plaintiffs released version 3.5 of

20   Neo4j EE, which it offered exclusively under the paid-for commercial license. *Id.* ¶ 33. Thus, as

21   of November 2018, Plaintiffs no longer offered Neo4j EE on an open source basis.

22           Plaintiffs allege that Defendant GFI is a 501(c)(3) organization formed on or around June

23   21, 2018 in response to Plaintiffs' decision to cease offering the Neo4j EE on an open source

24   basis. *Id.* at ¶ 35. GFI offers a graph database software called "ONgDB," which it describes as

25   the "free and open source Neo4j Enterprise project" and "a non-restrictive fork of Neo4j, the

26   world's leading Graph Database." *Id.* ¶ 36. Defendant GraphGrid provides products and services

27

28

United States District Court
Northern District of California

related to ONgDB and is owned and operated by the same individuals who own and operate GFI. *Id.* ¶ 8. ARI is a holding company for GraphGrid. *Id.* ¶ 10. Plaintiffs allege that both GraphGrid and ARI are alter egos of GFI and abuse GFI's tax exempt status by making tax-deductible donations to alleviate the tax burden on their profits. *Id.* ¶¶ 15-21.

While Defendants market ONgDB as identical to the current version of the Neo4j EE, Plaintiffs allege that ONgDB is, in fact, compiled by GFI and includes source code authored by GFI. *Id.* ¶¶ 41-44. Plaintiffs allege that Defendants have made a number of false and misleading statements in connection with the distribution, offering, and promotion of the ONgDB software, which were intended to lead consumers to believe that ONgDB is a genuine version of Neo4j EE. *See e.g.*, *id.* ¶ 57. Defendants also regularly refer to ONgDB as the "Open Neo4j Enterprise project" (*see e.g. id.* ¶ 60), and copy from or provide hyperlinks to genuine content from the Neo4j operations manual or Neo4j website. *Id.* ¶¶ 51-56.

Plaintiffs further allege that one of the founders of GFI, John Mark Suhy, copied Neo4j EE source code and modified the Neo4j Sweden Software License by removing the Commons Clause, copyright owner information, and other terms and conditions for use of the copyrighted source code. *Id.* ¶ 67. With the knowledge and permission of GFI, Suhy republished these altered source code files on GFI's Github repository for ONgDB. *Id.* Defendants then actively solicited third parties to download ONgDB, ultimately distributing or causing to be distributed over 10,000 copies of ONgDB containing altered Neo4j EE source code files that no longer included Neo4j Sweden's copyright management information. *Id.* ¶¶ 69-70.

### B.  Procedural History

On October 1, 2019, Plaintiffs filed this action against Defendants, asserting (1) Trademark Infringement; (2) False Designation of Origin and False Advertising; and (4) Federal and State Unfair Competition. Dkt. No. 1. Over the months that followed the parties litigated motions relating to Defendants' affirmative defenses and counterclaims. On July 16, 2020, the Court grant the parties' joint stipulation for leave to file an amended complaint, and later that day, Plaintiffs

1   filed the FAC. Dkt. Nos. 64, 65. The FAC added three claims at issue in the present dispute: the

2   Fifth Cause of Action against all Defendants for Unauthorized Distribution of Altered Copyright

3   Management Information under the Digital Millennium Copyright Act ("DMCA"); the Sixth

4   Cause of Action against GFI for Breach of License Agreement; and the Seventh Cause of Action

5   against all Defendants for Unfair and Fraudulent Business Practices under California's Unfair

6   Competition Law ("UCL").

7          Defendants GraphGrid and ARI filed a joint motion to dismiss the Fifth and Seventh

8   Causes of Action (the "GraphGrid/ARI Motion"). Defendant GFI filed a separate motion to

9   dismiss the Fifth, Sixth, and Seventh Causes of Action (the "GFI Motion"). Defendants raise

10  similar arguments across both motions. Unless otherwise specified, the Court will consider the

11  motions and overlapping arguments together.

12         **II.    Legal Standard**

13         Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

14  specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

15  it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929

16  (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may

17  be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

18  To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual

19  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

20  556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp.*, 550

21  U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows

22  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

23  *Id.* Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient

24  facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

25  2001).

26

27
    Case No.: 5:19-cv-06226-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
    DISMISS

United States District Court
Northern District of California

4

### III.   Discussion

#### A.  Fifth Cause of Action – DMCA Violation

Plaintiffs bring a claim for unauthorized distribution of altered copyright management information pursuant to the DMCA.  17 U.S.C. § 1202(b).  Section 1202(b) states:

> **(b) . . .** No person shall, without the authority of the copyright owner or the law—
>
> > **(1)** intentionally remove or alter any copyright management information,
> >
> > **(2)** distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
> >
> > **(3)** distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).  Plaintiffs allege that the Neo4j EE software was published and distributed with copyright management information ("CMI") that includes the owner's name, a copyright notice, and a license providing the terms and conditions for the use of copyrighted work.  FAC ¶ 114.  Each source code file for the software conspicuously displays this Neo4j CMI, which is conveyed in a "LICENSE.txt" file connection with each source code file.  Plaintiffs claim that Defendants violated Section 1202(b) by intentionally distributing altered Neo4j source code knowing that the CMI in that source code had been removed.  FAC ¶ 115.

Defendants first argue that Neo4j's claim fails because their alleged removal of CMI was not "without the authority" of Neo4j.  Defendants assert that certain sections of the AGPLv3 expressly grant them the right to remove the CMI at issue.  In particular, Defendants argue that Section 7 of the AGPLv3 prohibits licensors like Neo4j Sweden from adding restrictions beyond

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

5

United States District Court
Northern District of California

1    those set out in the form AGPLv3 license itself.  They assert that the Commons Clause, which is

2    included in the Neo4j Sweden Software License, is a "further restriction" under the terms of the

3    form AGPLv3, and may be properly removed by a licensee in the licensee's distributions of the

4    source code.

5           As an initial matter, Defendants operate under the factual assumption that that Neo4j EE

6    was licensed under the form AGPLv3.  *See e.g.*, GraphGrid/ARI Motion at 5, citing FAC ¶ 31.

7    Although the FAC states that Neo4j Sweden initially licensed the Neo4j EE under the form

8    AGPLv3, Defendants ignore the allegation that beginning in May 2018 Neo4j Sweden replaced

9    the AGPLv3 with the stricter Neo4j Sweden Software License, which included the terms of the

10   AGPLv3 plus additional restrictions provided by the Commons Clause.  FAC ¶ 32.  Defendants

11   argue that Plaintiffs were not permitted to alter the form license agreement under the terms of the

12   Free Software Foundation's ("FSF") copyright over the form AGPLv3.  But whether Plaintiffs

13   acted in accordance with the copyright covering the AGPLv3 is not at issue before this Court, as

14   Defendants are not entitled to enforce the FSF's copyright.  *See Minden Pictures, Inc. v. John*

15   *Wiley & Sons, Inc.*, 795 F.3d 997, 1002 (9th Cir. 2015) ("Under § 501(b) of the Copyright Act,

16   only '[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to

17   institute an action for any infringement of that particular right committed while he or she is the

18   owner of it.'").

19          The issue before the Court is whether the Neo4j Sweden Software License permits the

20   alleged removal or alteration of CMI in the Neo4j EE source code, such that Defendants' alleged

21   distribution of that altered source code is not actionable.  The Court finds that it does not.  Neither

22   of the two provisions in the form AGPLv3 that Defendants point to give licensees the right to

23   remove the information at issue.  Section 10 of the AGPLv3, which is incorporated into the Neo4J

24   Sweden Software License, states: "You may not impose any further restrictions on the exercise of

25   rights granted or affirmed under this License."  Declaration of Jeffrey M. Ratinoff In Support of

26   Plaintiffs' Consolidated Opposition To Defendants' Motions To Dismiss The First Amended

27   Case No.: 5:19-cv-06226-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

1    Complaint (Dkt. No. 80-1, "Ratinoff Decl."), Exhibit B § 10 (the "Neo4j Sweden Software

2    License").[1]   Section 7 states: "[i]f the Program as you received it, or any part of it, contains a

3    notice stating that it is governed by this License along with a term that is a further restriction, you

4    may remove that term."  *Id.* § 7.   Defendants argue that these provisions mean that "there can be

5    no liability for removing the further licensing restrictions which Neo4j incorporated into the

6    license," namely the Commons Clause.  GraphGrid/ARI Motion at 6.  As Plaintiffs point out,

7    however, the AGPLv3 defines "you" as the licensee, not the licensor.  Ex. 1 at § 0 ("Each licensee

8    is addressed as 'you'").  Thus, read correctly, Sections 7 and 10 prohibit a *licensee* from imposing

9    further restrictions, but do not prohibit a *licensor* from doing so.

10         Indeed, it would be contrary to principles of contract and copyright law to interpret these

11    provisions as limiting Neo4J Sweden's exclusive right to license its copyrighted software under

12    terms of its choosing.  *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011)

13    ("copyright owners may choose to simply exclude others from their work" or "use their limited

14    monopoly to leverage the right to use their work on the acceptance of specific conditions").  Even

15    "[c]opyright holders who engage in open source licensing have the right to control the

16    modification and distribution of copyrighted material."  *Jacobsen v. Katzer*, 535 F.3d 1373, 1381

17    

18    _____

19    [1] The Court finds that the Neo4j Sweden Software License, attached as Exhibit B to the Ratinoff

20    Declaration, may be properly considered at the motion to dismiss stage because it is incorporated

21    by reference into the FAC. *See* Plaintiffs' Request For Judicial Notice In Support of Plaintiffs'

22    Consolidated Opposition To Defendants' Motions To Dismiss The First Amended Complaint

23    (Dkt. No. 81).  The Neo4j Sweden Software License is referenced extensively throughout the FAC

24    and forms the basis for Plaintiffs' Sixth Cause of Action for Breach of Licensing Agreement.  *See*

25    *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S .308, 322, 127 S.Ct. 2499 (2007) (court

26    ruling on motion to dismiss must consider entire complaint and other sources incorporated by

27    reference as well as judicially noticeable matters).

     Case No.: 5:19-cv-06226-EJD
28    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

1    (Fed. Cir. 2008).  The Court, therefore, rejects the notion that the terms drawn from the AGPLv3,

2    on which the Neo4j Sweden Software License is based, somehow limit the rights of Neo4j

3    Sweden to include the Commons Clause or any other additional restriction in its own copyright

4    license.

5           Defendants next argue that Plaintiffs do not allege the requisite knowledge or intent to

6    state a claim under 1202(b).  *See* GraphGrid/ARI Motion at 6; GFI Motion at 13-14.  The statute

7    requires that Defendants "possess the mental state of knowing, or having a reasonable basis to

8    know, that [their] actions 'will induce, enable, facilitate, or conceal' infringement."  *Stevens v.*

9    *Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018).  Defendants argue that it is not possible for a

10   "contractually permitted action" to have been "taken with knowledge that it would aid

11   infringement."  GFI Motion at 14.  For the reasons stated above, the Court does not agree with the

12   premise that Defendants' alleged actions were contractually permitted and, therefore, rejects this

13   argument as to Defendants' lack of knowledge.

14          Defendants further argue that Plaintiffs' knowledge allegations are conclusory.  Plaintiffs

15   allege that the Neo4j Sweden Software License "is generally recognized in the software industry

16   not to qualify as open source, as it prohibits all third-party resale and services activity."  FAC ¶ 32.

17   Plaintiffs further allege that GFI was formed specifically "to evade the restrictions imposed [on the

18   Neo4j EE software] and for the benefit of their respective for-profit companies GraphGrid, ARI

19   and iGov Inc."  *Id.* ¶ 35.  Plaintiffs allege that "Defendants knowingly copied source code from

20   the Neo4j graph database platform that is subject to [the] Neo4j Sweden Software License and

21   stripped out [the CMI] governing that source code," then published the altered files on its Github

22   repository for ONgDB.  *Id.* ¶ 74.  Defendants advertised ONgDB as a "free and open source Neo4j

23   Enterprise project," and "a non-restrictive fork of Neo4j."  *Id.* ¶ 36, 66-68.  Drawing all inferences

24   in favor of Plaintiffs, these allegations plausibly suggest that Defendants distributed Neo4j EE

25   source code in which the CMI was removed or modified with the specific intent of providing an

26   open-source, restriction-free version of the software in violation of the New4j Sweden Software

United States District Court
Northern District of California

1
2
3
4
5

License.  Moreover, Plaintiffs allege that Defendants marketed ONgDB in order to profit off of support and development services offered by GraphGrid and ARI.  *See, e.g.*, FAC ¶ 77.  Given that the Neo4j Sweden Software License prohibits third parties from offering support services, it is reasonable to conclude that Defendants acted with knowledge that their actions would "induce, enable, facilitate, or conceal infringement."  *Stevens*, 899 F.3d at 673.

6
7
8
9
10
11
12
13
14
15
16

Finally, Defendants argue that the removal of CMI from the Neo4j Sweden Software License does not violate Section 1202(b) because the CMI was not removed entirely, but rather, was moved to separate text files (the "NOTICE.txt" files).  Whereas the Neo4j EE source code is accompanied by a LICENSE.txt file, which contains the Neo4j Sweden Software License and other CMI discussed above, Defendants conveyed Neo4j source code with both a LICENSE.txt and NOTICE.txt file.  Defendants assert that "other than the Commons Clause language itself, all of the language removed from the Neo4j Sweden Software License from the LICENSE.txt file is included in the NOTICES.txt file for each of the source code files copied from Neo4J EE along with the copyright attribution language."  GFI Motion at 9.  Defendants argue that because the CMI was included in a NOTICE.txt file—with the exception of the Commons Clause, which was removed entirely—they cannot be liable under Section 1202(b).

17
18
19
20
21
22
23
24
25
26
27

As an initial matter, the parties dispute whether the Court may consider these NOTICE.txt files at this stage of the proceedings.  The files were not referenced in the FAC, but GFI argues that they are subject to judicial notice because they "currently exist on the internet, are not subject to reasonable dispute, and are from the same exact source as the pages attached as Exhibit 36 to the Amended Complaint."  GFI Motion at 8; *see also* Dkt. No. 75-1, Request for Judicial Notice In Support of Graph Foundation, Inc.'s Motion To Dismiss, ¶ 4.  Because these files were not referenced or relied on in the FAC, the Court finds that they have not been incorporated by reference.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint").  Moreover, the Court declines to

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  exercise judicial notice over the documents merely because they are found on the same website as

2  exhibits that are attached to the FAC.  In any event, Section 1202(b) prohibits distributing a work

3  "knowing that [CMI] has been removed *or altered*."  17 U.S.C. § 1202(b)(3).  The Court finds that

4  moving the CMI into separate NOTICE.txt files constitutes altering the CMI, and conveying the

5  Neo4j Sweden Software License without the Commons Clause constitutes removing CMI.  Thus,

6  the fact that Defendants conveyed most of the removed CMI in NOTICE.txt files does not insulate

7  them from potential liability under Section 1202(b).

8      Because Plaintiffs adequately plead knowledge as required under Section 1202(b), and

9  because Defendants have not demonstrated that their actions were expressly permitted by licensing

10  agreement, the Court finds that the FAC states a claim under Section 1202(b).  Defendants'

11  Motions are DENIED as to the Fifth Cause of Action.

12              **B.  Sixth Cause of Action – Breach of License Agreement**

13      Plaintiffs bring a claim against GFI for breach of the Neo4j Sweden Software License,

14  alleging that GFI's removal of the Commons Clause, copyright notices, and ownership attributions

15  from the licenses accompanying the Neo4j source code violates Sections 4 and 5 of the License.

16  FAC ¶¶ 120-125.  The elements of breach of contract under California law are: (1) the existence of

17  a contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract;

18  and (4) that plaintiff was damaged as a result of the breach.  *Buschman v. Anesthesia Bus.*

19  *Consultants, LLC*, 42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014).

20      As with the DMCA claim above, GFI moves to dismiss the Sixth Cause of Action on the

21  grounds that they cannot have breached the Neo4j Sweden Software License by distributing Neo4j

22  source code with the CMI removed or altered because Sections 7 and 10 of that license permit GFI

23  to remove the information at issue.  GFI Motion at 11-12.  For the same reasons discussed with

24  respect to the DMCA claim above, the Court rejects the argument that the terms of the Neo4j

25  Sweden Software License permitted licensees to remove any CMI, including the Commons

26  Clause, from the source code or from the license itself.  Thus, Plaintiffs' allegations that

27  Case No.: 5:19-cv-06226-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS

1    Defendants distributed altered Neo4j source code as ONgDB, and offered commercial services to

2    support that software, are sufficient to allege that Defendants breached the license agreement.

3        GFI does not contest that Neo4j Sweden sufficiently alleged the other three elements of a

4    breach claim.  Thus, the Court finds that Plaintiffs have sufficiently stated a claim for breach of

5    the license agreement.  GFI's Motion is DENIED as to the Sixth Cause of Action.

6                    **C.  Seventh Cause of Action – UCL Violation**

7        Plaintiffs' Seventh Cause of Action is for violation of California's Unfair Competition

8    Law (the "UCL").  Cal. Bus. & Prof. Code § 17200.  The UCL broadly prohibits "any unlawful,

9    unfair, or fraudulent business act or practice."  *Id.*  "Because each prong—fraudulent, unfair, and

10   unlawful—is independently actionable, a UCL claim survives if a plaintiff pleads either unlawful,

11   unfair, or fraudulent business acts."  *Forsyth v. HP Inc.*, No. 5:16-CV-04775-EJD, 2020 WL

12   6081719, at *7 (N.D. Cal. Oct. 15, 2020) (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d

13   718, 731 (9th Cir. 2007)).  Plaintiffs raise allegations under all three prongs.

14       Plaintiffs allege that GFI falsely holds itself out as a 501(c)(3) nonprofit organization as

15   part of a fraudulent scheme to defray the costs of operating their for-profit alter egos, GraphGrid

16   and ARI.  *See* FAC ¶¶ 129-36.  Plaintiffs concede that GFI has been given 501(c)(3) nonprofit

17   status by the IRS but allege that GFI actually operates for the substantial non-exempt purpose of

18   developing software for GraphGrid and ARI.  *See id.* ¶ 5, Ex. 1.  GraphGrid and ARI, in turn,

19   allegedly support GFI through tax-deductible donations, which offset the tax burdens for the

20   profits they make through software support services.  *Id.* ¶ 132-34.  Plaintiffs allege that this

21   scheme gives Defendants an unfair competitive advantage over Plaintiffs in the marketplace and

22   constitutes an unfair or fraudulent business practice.

23       ARI and GraphGrid move to dismiss on the basis that Plaintiffs failed to allege an "unfair"

24   act amounting to an antitrust violation and that the allegations fail to meet Rule 9(b)'s particularity

25   requirements with respect to the fraud prong.  GraphGrid/ARI Motion at 7-8.  GFI also moves to

26   dismiss arguing that Plaintiffs fail to state a claim against it based on any of the three prongs.  GFI

27   Case No.: 5:19-cv-06226-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
     DISMISS

United States District Court
Northern District of California

1    Motion at 15-17.

2        First, GFI argues that Plaintiffs failed to allege a fraudulent practice by Defendants.  The

3    term "fraudulent" in section 17200 "requires a showing members of the public 'are likely to be

4    deceived.'"  *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839 (1994) (quoting *Bank of W. v.*

5    *Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992)).  Claims sounding in fraud under California's Unfair

6    Competition Law must be pleaded with particularity and satisfy Federal Rule of Civil Procedure

7    9(b).  *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003)), aff'd sub

8    nom., 632 F. App'x 429 (9th Cir. 2016); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th

9    Cir. 2007) (per curiam) ("[W]here a complaint includes allegations of fraud, Federal Rule of Civil

10   Procedure 9(b) requires more specificity including an account of the time, place, and specific

11   content of the false representations as well as the identities of the parties to the

12   misrepresentations." (internal quotation marks omitted)).

13       GFI asserts that none of the statements that Plaintiffs take issue with can be the basis of a

14   fraud claim because they are undisputedly true.  *See e.g.*, FAC ¶ 130 (alleging that GFI accepts

15   donations "under the guises that it is 'a 501(c)(3) which has nonprofit status from the IRS so any

16   donations are tax deductible by any enterprise that makes a donation.'").  Plaintiffs concede that

17   GFI has been determined by the IRS to be a 501(c)(3) tax exempt organization but allege that GFI

18   is not deserving of that status.  Given that Defendants statements are true, the Court finds that

19   Plaintiffs have failed to allege how such statements are likely to deceive the public.

20       Moreover, Plaintiffs fail to allege that they relied on Defendants statements, as required to

21   plead a UCL claim based on "fraudulent" conduct.  *See, e.g., 23andMe, Inc. v. Ancestry.com DNA,*

22   *LLC*, 356 F. Supp. 3d 889, 911 (N.D. Cal. 2018) (dismissing UCL claim brought by competitor

23   based on alleged fraudulent statements relied on by customers, not the competitor).  Plaintiffs

24   allege that "Defendants misuse GFI's alleged nonprofit status to solicit and *deceive third parties*

25   into contributing their time and expertise towards the development of ONgDB without

26   compensating those individuals" (FAC ¶ 132, (emphasis added)) and that "that *customers and*

27   Case No.: 5:19-cv-06226-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
28   DISMISS

United States District Court
Northern District of California

*prospective customers* have been confused and misled, deceived and mistaken as to the nature of Graph Foundation's business."  FAC ¶ 136 (emphasis added).  "[C]ourts have recognized that UCL fraud plaintiffs must allege their *own* reliance—not the reliance of third parties—to have standing under the UCL."  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1156 (N.D. Cal. 2019) (citing *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) (emphasis in original)).  Thus, the Court finds that Plaintiffs fail to state a claim under the fraudulent prong of the UCL.

Defendants next argue that Plaintiffs fail to state a claim under the unfair or unlawful prongs as well.  "[T]he word 'unfair' in [the UCL] means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  By proscribing "any unlawful" business act or practice, the UCL "borrows" rules set out in other laws and makes violations of those rules independently actionable.  *Id.* at 180.

Defendants argue that Plaintiffs' theory of this claim—that Defendants misrepresented GFI's nonprofit status because it does not actually operate under the requirements of a 501(c)(3)— cannot stand because there is no private right of action under Section 501(c)(3).  District courts generally do not have jurisdiction to determine "initial or continuing qualification of an organization described in section 501(c)(3)."  26 U.S.C. § 7428(a)(1)(A) (conferring jurisdiction for declaratory judgments regarding § 503(c)(1) status on "the United States Tax Court, the United States Court of Federal Claims, or the district court of the United States for the District of Columbia"); *see also* 28 U.S.C. § 2201(a) (providing district courts with jurisdiction to grant declaratory judgments "[i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes").  "It is inarguably the province of the Internal Revenue Service ("IRS") and the tax courts to determine, in the first instance, whether an organization qualifies as tax-exempt under § 501(c)(3)."  *Shinde v. Nithyananda Found.*, No. EDCV 13-363, 2015 WL 12732434, at *11–12

United States District Court
Northern District of California

1    (C.D. Cal. Feb. 23, 2015); *see also Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d

2    473, 477 (1st Cir. 2005) (citing *Bob Jones Univ. v. United States*, 461 U.S. 574, 596–97 (1983)).

3    Thus, Courts have held that there is no private right of action under section 501(c)(3) to enforce

4    the requirements for obtaining or maintaining tax-exempt status.  *Quigley v. Yelp, Inc.,* No. 17- cv-

5    03771-RS, 2018 U.S. Dist. LEXIS 230967 (N.D. Cal. Jan. 22, 2018) (dismissing a claim against a

6    501(c)(3) nonprofit which sought an order removing that entity's non-profit status based on

7    allegations that the nonprofit did not act appropriately for a 501(c)(3)).

8           Because there is no private right of action under 501(c)(3) and because this Court does not

9    have jurisdiction to determine whether GFI meets the requirements for obtaining or maintaining

10    tax-exempt status, Plaintiffs allegations may not serve as the basis for a claim under either the

11    unlawful or unfair prongs of the UCL.  *Zhang v. Superior Court*, 57 Cal. 4th 364, 379–80, 304

12    P.3d 163, 173–74 (2013) (UCL claims are barred where a private cause of action is absolutely

13    precluded under another statute) (citing *Stop Youth Addiction*, 17 Cal.4th at pp. 565–566, 71

14    Cal.Rptr.2d 731, 950 P.2d 1086); *see also Cel–Tech*, 20 Cal.4th at pp. 182–183, 83 Cal.Rptr.2d

15    548, 973 P.2d 527) ("A plaintiff may thus not plead around an absolute bar to relief simply by

16    recasting the cause of action as one for unfair competition") (internal quotations omitted); *Shinde*

17    *v. Nithyananda Found.*, No. EDCV 13-363, 2015 WL 12732434, at *12 (C.D. Cal. Feb. 23, 2015)

18    (finding that a Court lacks jurisdiction "[t]o the extent the [plaintiff's] claims seek a determination

19    from the Court any [defendant] did in fact 'violate' the tax code").  Any holding as to whether

20    GFI's practices are unlawful or unfair would necessarily involve this Court improperly

21    determining that GFI violated the tax code.  This Court declines to make such a determination,

22    even in the context of a UCL claim.

23           The Court, therefore, finds that Plaintiffs' allegations regarding Defendants' failure to

24    operate under the requirements of 501(c)(3) are insufficient to show an unlawful, unfair, or

25    fraudulent business practice as required to state a claim under the UCL.  Moreover, because

26    Plaintiffs concede that Defendants have, in fact, been granted tax exempt status by the IRS, the

27

28

United States District Court
Northern District of California

1    Court finds that further amendment on this claim would be futile.  Defendants' Motions to dismiss

2    the Seventh Cause of Action are GRANTED with prejudice.

3        **IV.    Conclusion**

4        For the reasons stated above, Defendants' Motions to Dismiss are **GRANTED** as to the

5    Seventh Cause of Action and **DENIED** as to the Fifth and Sixth Causes of Action.  The Seventh

6    Cause of Action is hereby **DISMISSED** with prejudice.

7        **IT IS SO ORDERED.**

8    Dated:  November 13, 2020

9    _____

10                               EDWARD J. DAVILA
                               United States District Judge

United States District Court
Northern District of California

Case No.: 5:19-cv-06226-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
DISMISS