1  John V. Picone III, Bar No. 187226
   jpicone@hopkinscarley.com
2  Jeffrey M. Ratinoff, Bar No. 197241
   jratinoff@hopkinscarley.com
3  HOPKINS & CARLEY
   A Law Corporation
4  The Letitia Building
   70 South First Street
5  San Jose, CA  95113-2406

6  *mailing address:*
   P.O. Box 1469
7  San Jose, CA 95109-1469
   Telephone:    (408) 286-9800
8  Facsimile:    (408) 998-4790

9  Attorneys for Plaintiffs and Counter-Defendants
   NEO4J, INC. and NEO4J SWEDEN AB

10

                   UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12

13 | NEO4J, INC., a Delaware corporation, and | CASE NO. 5:18-cv-07182-EJD
   | NEO4J SWEDEN AB, a Swedish |
   | corporation, | **PLAINTIFFS' CONSOLIDATED NOTICE**
14 | | **OF MOTION AND MOTION FOR**
   | Plaintiffs, | **SUMMARY JUDGMENT;**
15 | | **MEMORANDUM OF POINTS AND**
   | v. | **AUTHORITIES IN SUPPORT THEREOF**
16 | |
   | PURETHINK LLC, a Delaware limited | Date:      March 25, 2021
17 | liability company, IGOV INC., a Virginia | Time:      9:00 a.m.
   | corporation, and JOHN MARK SUHY, an | Dept.:     Courtroom 4, 5th Floor
18 | individual, | Judge:     Hon. Edward J. Davila
   | |
19 | Defendants. |

20   AND RELATED COUNTERCLAIM.

21 | NEO4J, INC., a Delaware corporation, and | CASE NO. 5:19-CV-06226-EJD
   | NEO4J SWEDEN AB, a Swedish |
22 | corporation, |

23 |         Plaintiffs, |

24 | v. |

25 | GRAPH FOUNDATION, INC., an Ohio | **REDACTED VERSION OF DOCUMENT**
   | corporation, GRAPHGRID, INC., an Ohio | **PROPOSED TO BE FILED UNDER SEAL**
26 | corporation, and ATOMRAIN INC., a |
   | Nevada corporation, |
27 |
   |         Defendants. |

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 25, 2021, at 9:00 a.m., before the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, 280 South First Street, San Jose, CA 95113, Plaintiffs and Counter-Defendants Neo4j, Inc., and Neo4j Sweden AB ("Plaintiffs") will and hereby do move the Court for an order granting partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Neo4j USA's Lanham Act and related California Unfair Competition Law ("UCL") claims against Defendants PureThink LLC, iGov Inc. and John Mark Suhy in CASE NO. 5:18-cv-07182-EJD (the "PT Action") and Defendant Graph Foundation Inc. in CASE NO. 5:19-CV-06226-EJD (the "GFI Action") for: (1) trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin and false advertising, 15 U.S.C. § 1125(a); (3) federal unfair competition, 15 U.S.C. § 1125(a); and (4) state unfair competition in violation of Cal. Bus. Prof. Code §§ 17200 et seq. *See* PT Dkt. No. 68 at ¶ 3 and No. 90; GFI Dkt. No. 45 at ¶ 3 and No. 65. Plaintiffs further move for summary judgment on Defendants' nominative fair use defenses to Neo4j USA's Lanham Act and UCL claims. *See* PT Dkt. No. 91 at 21:4-9 and GFI Dkt. No. 91 at 12:19-23.

The Court previously dismissed and struck the PT Defendants' trademark cancellation and abandonment counterclaims and defenses, respectively, with prejudice. *See* PT Dkt. Nos. 70, 85. The Court also struck GFI's cancellation defense with prejudice, and GFI agreed to be bound by the Court's ruling dismissing/striking Defendants' trademark abandonment counterclaim and defense when it stipulated to the filing of Plaintiff's First Amended Complaint in the GFI Action. *See* GFI Dkt. Nos. 63, 64 at 3:3-27. The PT Defendants then impermissibly re-pled their cancellation and abandonment defenses in their Answer to Neo4j's Third Amended Complaint. PT Dkt. No. 91. Plaintiffs filed a motion to strike those affirmative defenses on the grounds that they violated the Court's orders and the local rules, as well as still fail as a matter of law, which is fully briefed and currently set to be heard on February 11, 2021. *See* Dkt. No. 93. As such, Plaintiffs will not address those defenses in this motion in the interest of judicial economy and to avoid duplication.

This motion ("Motion") is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Separate Statement of Undisputed Facts attached hereto as

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9
- 1 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  **Exhibit A**, the Declarations of Jeffrey M. Ratinoff, Philip Rathle and John Broad, all pleadings,

2  records and papers on file in the two related actions, and upon such further oral and documentary

3  evidence as may be presented at the hearing on this Motion.

4  ## REQUESTED RELIEF

5  Plaintiffs respectfully request that the Court grant partial summary judgment in favor of

6  Neo4j USA on its Lanham Act and UCL claims asserted against Defendants, and in favor of Plaintiffs

7  on Defendants' nominative fair use and "right to fork" affirmative defenses.  The undisputed material

8  facts establish that Defendants have infringed Neo4j USA's federally registered "Neo4j" trademark

9  (Neo4j® Mark) and have not engaged in fair use in promoting their ONgDB software.   The

10  undisputed material facts further establish that Defendants have engaged in false advertising in

11  promoting their ONgDB software as free and open source drop-in replacement for Plaintiffs'

12  commercially licensed Neo4j® Enterprise Edition graph database software.

13  Plaintiffs are seeking partial summary judgment on these claims as Neo4j USA intends to

14  separately seek to prove-up its actual damages suffered once it obtains discovery from GraphGrid

15  and AtomRain about their support of customers using ONgDB, and also seek a finding of willful

16  infringement, the trebling of those damages and recovery of its attorneys' fees pursuant to 15 U.S.C.

17  § 1117.  Neo4j USA further intends to seek an accounting of Defendants' profits and seek trebling

18  of those damages and its attorneys' fees, which normally occurs after a finding of liability for

19  trademark infringement.  *See* 15 U.S.C. § 1117(a)

20  Finally, Plaintiffs respectfully request that the Court enter the proposed injunction

21  concurrently filed herewith.  Neo4j USA has already suffered a reputational loss to its Neo4j® brand

22  and associated goodwill as result of Defendants' unauthorized "relicensing" of Neoj4® EE under the

23  AGPL and falsely calling ONgDB a free and unrestricted drop-in replacement for official Neo4j®

24  EE.  It is also clear that Defendants will continue to do so unless enjoined by the Court.

25  ## STATEMENT OF ISSUES TO BE DECIDED

26  1.    Whether the undisputed material facts establish that Defendants infringed the

27  Neo4j® Mark in violation of 15 U.S.C. §§ 1114, 1125(a) and Cal. Bus. Prof. Code §§ 17200 et seq.

28  2.    Whether the undisputed material facts establish that Defendants cannot succeed on

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                     - 2 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

their nominative fair use defenses.

       3.      Whether the undisputed material facts establish that Defendants engaged in false designation of origin and false advertising in violation of 15 U.S.C. § 1125(a) and Cal. Bus. Prof. Code §§ 17200 et seq.

       4.      Whether the Court should enjoin Defendants from further infringement of the Neo4j® Mark and engaging in further false advertising and false designation of origin in relation to the Neo4j® Mark and their promotion of graph database software, including ONgDB software.

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9

- 3 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................................... 2

    A.    The Neo4j® Brand and Mark ...................................................................... 2

    B.    The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform................. 3

    C.    PureThink Enters Into the Partner Agreement with Neo4j USA ............................ 5

    D.    Suhy and PureThink Form iGov to Evade the Partner Agreement........................ 6

    E.    iGov and Suhy Infringe the Neo4j® Mark after iGov's Formation....................... 7

    F.    Defendants Form GFI and Improperly Remove the Commercial Restrictions in the Neo4j Sweden Software License in Order to Launch ONgDB as a "Free and Open Source" Neo4j® EE ................................................. 8

    G.    Defendants Promote ONgDB over Neo4j® EE Based on the False Premise that No Paid Commercial License from Plaintiffs is Necessary to Use ONgDB ...................................................................................................... 11

    H.    GFI Falsely Promotes ONgDB 3.5 as a "Drop In" Replacement for Neo4j® EE................................................................................................................ 12

    I.    iGov Uses the Neo4j® Mark to Promote ONgDB on its Websites and Falsely Claims that ONgDB is a "Drop In" Replacement for Neo4j® EE........... 14

    J.    Defendants Impermissibly Rely Upon Official Neo4j® Support Documentation ........................................................................................... 15

    K.    Defendants Improperly Use the Neo4j® Mark to Promote ONgDB on Twitter ...................................................................................................... 16

    L.    Defendants' Misuse of the Neo4j® Mark and False Statements about ONgDB Have Diverted Customers to Defendants and Caused Actual Confusion .................................................................................................. 17

III.  THE CLAIMS AND DEFENSES SUBJECT TO PLAINTIFFS' MOTION................... 19

IV.   APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS ................... 19

V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF NEO4J USA ON ITS TRADEMARK INFRINGEMENT CLAIMS AND AGAINST DEFENDANTS ON THEIR NOMINATIVE FAIR USE DEFENSE........... 20

    A.    Legal Standards for Trademark Infringement and Nominative Fair Use ............. 20

    B.    The PT Defendants' Non-ONgDB Related Infringement of the Neo4j® Mark ....................................................................................................... 21

    C.    Defendants Did Not Fairly Use the Neo4j® Mark in Promoting ONgDB .......... 25

VI.   NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON ITS FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN CLAIMS........................ 28

    A.    Applicable Legal Standards for False Advertising Claims Under the Lanham Act and California's UCL ................................................................ 28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

- i -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**TABLE OF CONTENTS**
(continued)

Page

B.    Defendants' Engaged in False Advertising in the Promotion of ONgDB ............ 29

C.    Defendants Engaged in the False Designation of Origin in Promoting
ONgDB ..................................................................................................... 33

VII.    PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF .......................................... 34

VIII.    CONCLUSION ............................................................................................. 35

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

# TABLE OF AUTHORITIES

**Page**

**Cases**

*2Die4Kourt v. Hillair Capital Mgmt., LLC,*
2016 WL 4487895 (C.D. Cal. Aug. 23, 2016),
*aff'd*, 692 F. App'x 366 (9th Cir. 2017) ............................................................................... 21

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.,*
944 F.2d 1446 (9th Cir. 1991) ............................................................................................ 20

*Addisu v. Fred Meyer, Inc.,*
198 F.3d 1130 (9th Cir. 2000) ............................................................................................ 19

*Adobe Sys. Inc. v. A & S Elecs., Inc.,*
153 F.Supp.3d 1136 (N.D. Cal. 2015) ............................................................................... 23

*AECOM Energy & Constr., Inc. v. Ripley,*
348 F.Supp.3d 1038 (C.D. Cal. 2018) ........................................................................... 33, 34

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.,*
2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ......................................................... 25, 27, 28

*AMF Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir.1979) ........................................................................................ 21, 28, 33

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...................................................................................................... 19, 20

*Apple Inc. v. Psystar Corp.,*
658 F.3d 1150 (9th Cir. 2011) ............................................................................................ 31

*Automotriz Del Golfo De California S.A. de C.V. v. Resnick,*
47 Cal.2d 792 (1957) .......................................................................................................... 23

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,*
174 F.3d 1036 (9th Cir. 1999) ............................................................................... 20, 24, 25

*Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.,*
88 F.Supp.2d 914 (C.D. Ill. 2000) ...................................................................................... 22

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................................................ 19

*Century 21 Real Estate Corp. v. Sandlin,*
846 F.2d 1175 (9th Cir. 1988) ............................................................................................ 20

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

- iii -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Century 21 Real Estate LLC v. Ed/Var Inc.*,

4
2014 WL 3378278 (N.D. Cal. July 10, 2014) .......................................................................... 34

5

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*,
2020 WL 5199434 (N.D. Cal. Aug. 17, 2020) ............................................................ 33, 34, 35

6

*Cleary v. News Corp.*,

7
30 F.3d 1255 (9th Cir. 1994) .................................................................................................... 29

8

*Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) .................................................................................................... 29

9

*Creative Labs, Inc. v. Cyrix Corp.*,

10
1997 WL 337553 (N.D. Cal. 1997) .......................................................................................... 31

11

*Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*,

12
2014 WL 4679001 (C.D. Cal. Sept. 18, 2014) ........................................................................ 35

13

*Diller v. Barry Driller, Inc.*,
2012 WL 4044732 (C.D. Cal. Sept. 10, 2012) ........................................................................ 35

14

*Downing v. Abercrombie & Fitch*,

15
265 F.3d 994 (9th Cir. 2001) .................................................................................................... 27

16

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,

17
142 F.3d 1127 (9th Cir. 1998) .................................................................................................. 33

18

*EFCO Corp. v. Symons Corp.*,
219 F.3d 734 (8th Cir. 2000) .................................................................................................... 31

19

*Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*,

20
2010 WL 2104239 (W.D. Wash. May 19, 2010) ........................................................... 24, 25, 26

21

*Hal Roach Studios, Inc. v. Feiner & Co., Inc.*,

22
896 F.2d 1542 (9th Cir. 1990) .................................................................................................. 20

23

*Healthport Corp. v. Tanita Corp. of Am.*,
563 F.Supp.2d 1169 (D. Or. 2008), *aff'd*, 324 F.App'x 921 (Fed. Cir. 2009) ........................ 29

24

*Herb Reed Enters., LLC v. Florida Entertainment Management*,

25
736 F.3d 1239 (9th Cir. 2013) .................................................................................................. 34

26

*Hinojos v. Kohl's Corp.*,

27
718 F.3d 1098 (9th Cir. 2013) .................................................................................................. 32

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

- iv -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Hollywood Athletic Club v. GHAC–CityWalk*,
  938 F.Supp. 612 (C.D.Cal.1996) ........................................................................... 21

*Horphag Research Ltd. v. Garcia*,
  475 F.3d 1029 (9th Cir. 2007)................................................................. 24, 25, 26

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*,
  559 F.3d 985 (9th Cir. 2009)................................................................................ 35

*Jacobsen v. Katzer*,
  535 F.3d 1373 (Fed. Cir. 2008)............................................................................ 31

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
  762 F.3d 867 (9th Cir. 2014) ............................................................................... 34

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S.Ct. 1377 (2014) ......................................................................................... 32

*Lujan v. National Wildlife Fed'n*,
  497 U.S. 871 (1990)............................................................................................. 19

*Luxul Tech. Inc. v. Nectarlux, LLC*,
  78 F.Supp.3d 1156 (N.D. Cal. 2015) ................................................................... 28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................................. 20

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011).............................................................................. 20

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992)........................................................................... 21, 25

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
  165 F. Supp. 3d 937 (S.D. Cal. 2016) .................................................................. 33

*Online Glob., Inc. v. Google LLC*,
  387 F.Supp.3d 980 (N.D. Cal. 2019) .............................................................. 19, 20

*Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*,
  354 F.3d 1020 (9th Cir. 2004)........................................................................ 24, 26

*Pom Wonderful LLC v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) ....................................................................... 20, 21

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- v -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Public Impact, LLC v. Boston Consulting Group, Inc.*,
169 F. Supp. 3d 278 (D. Mass 2016) .................................................................................. 28

*SEC v. Rose Fund, LLC*,
2013 WL 1345 (N.D. Cal. Apr. 2, 2013) ............................................................................. 24

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997)............................................................................ 28, 29, 31, 32

*Stark v. Diageo Chateau & Estate Wines Co.*,
907 F.Supp.2d 1042 (N.D. Cal. 2012) ................................................................................ 35

*State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*,
425 F.3d 708 (9th Cir. 2005)............................................................................................... 21

*SuccessFactors, Inc. v. Softscape, Inc.*,
544 F.Supp.2d 975 (N.D. Cal. 2008) .................................................................................. 29

*Sun Microsystems v. Microsoft Corp.*,
999 F.Supp. 1301 (N.D.Cal.1998) .......................................................................... 22, 31, 34

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
610 F.3d 1171 (9th Cir. 2010).................................................................................. 21, 24, 28

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
653 F.3d 820 (9th Cir. 2011)............................................................................................... 32

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
108 F.Supp.3d 816 (N.D. Cal. 2015) .................................................................................. 23

*Wetzel's Pretzels, LLC v. Johnson*,
797 F.Supp.2d 1020 (C.D. Cal. 2011) ................................................................................ 23

**Statutes**

15 U.S.C.
§ 1114..................................................................................................................... 1, 19, 20
§ 1115(a) ........................................................................................................................ 20
§ 1116(a) ........................................................................................................................ 34
§ 1125(a) ................................................................................................................... 1, 19
§ 1125(a)(1)..................................................................................................................... 20
§ 1125(a)(1)(A) ......................................................................................................... 28, 33
§ 1125(a)(1)(B) ......................................................................................................... 28, 33

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

- vi -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2
Page

3
Cal. Bus. Prof. Code
4
§ 17200 ..................................................................................................................... 20
§§ 17200 et seq. ......................................................................................................... 19

5
**Other Authorities**

6
Fed. R. Civ. P.
7
56(a) ......................................................................................................................... 19
56(c) ..................................................................................................................... 19, 20

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Neo4j Inc. ("Neo4j USA") seeks summary judgment on its claims for trademark infringement, false advertising, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and California's Unfair Competition Law ("UCL") asserted against Defendants PureThink LLC, iGov Inc. and John Mark Suhy (collectively "PT Defendants") and Graph Foundation, Inc. ("GFI").   The undisputed facts establish that the PT Defendants and GFI (collectively "Defendants") have unfairly abused Neo4j Sweden AB (Neo4j Sweden") and Neo4j USA's prior licensing model for its Neo4j® Enterprise Edition graph database software ("Neo4j® EE") and unlawfully used the registered Neo4j® Mark to falsely promote Defendants' pirated-hybrid software (first called "Neo4j Enterprise" and later renamed "ONgDB") as being a free and open source drop-in replacement for Plaintiffs' commercially licensed Neo4j® EE.

The undisputed facts establish that Defendants extensively used the NEO4J® Mark on their respective websites and Twitter accounts, in domain names and email addresses, and other forms of advertising and solicitations to promote ONgDB.   They also have plagiarized Plaintiffs' GitHub repository landing page, impermissibly linked to Neo4j USA's website and support documentation in their effort to mislead customers into believing that ONgDB is identical to Neo4j® EE in every way except it is free.   No reasonable finder of fact would consider this nominative or fair use because Defendants did not minimally use the Neo4j® trademark to differentiate ONgDB as a *divergent* fork of Neo4j® EE.   Rather, they intentionally misappropriated the goodwill associated with Neo4j® Mark to promote ONgDB and capitalized on consumer confusion resulting from that use.

Defendants have also engaged in a false advertising campaign in promoting ONgDB.   This includes matching the version numbers of ONgDB to official Neo4j® EE releases of the same number, while falsely claiming that ONgDB is a free and open source drop-in replacement for commercially licensed Neo4j® EE.   These statements are demonstratively false because Defendants admittedly copied Neo4j Sweden's source code from a pre-release version of Neo4j® EE that was subject to a restricted commercial license and replaced it with the AGPL in contravention of Neo4j Sweden's exclusive right as a copyright holder to license Neo4j® EE as it sees fit.

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9                                                          - 1 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Defendants' claims that ONgDB was a drop-in replacement for Neo4j® EE were also false and misleading because that software that is not subject to the same stringent quality control and assurances provided via official Neo4j® EE commercial releases. Rather, ONgDB is compiled from a patchwork of source code that is held together by "glue source code" authored by Defendants. ONgDB also does not include every feature that is included in commercial releases of Neo4j® EE. As a result, Defendants are misleading consumers into believing that when they download ONgDB, they are receiving an exact copy of Plaintiffs' current commercial-only releases of Neo4j® EE, which in actuality is an inferior product that is not a true "drop-in" replacement.

The undisputed evidence shows that Defendants' misappropriation of the goodwill associated with the Neo4j® Mark and their false advertising of ONgDB as a free and open source drop-in replacement for commercially licensed Neo4j® EE not only are likely to cause confusion, but have caused actual confusion. Plaintiffs have lost customers as a direct result, choosing ONgDB over Neo4j® EE based on price alone. Defendants profit from this costs savings because they pitch their paid support services that would otherwise violate the commercial restrictions they removed from the license governing Neo4j® EE that they replaced with the AGPL. Despite this lawsuit, Defendants remain undeterred in misleading consumers. They also continue to cause grave harm to the Neo4j® brand and Plaintiffs' ability to compete in the marketplace. Thus, not only should the Court grant summary judgment in Plaintiffs' favor, but also issue an injunction against Defendants.

## II. STATEMENT OF FACTS

### A. The Neo4j® Brand and Mark

Neo4j USA is the company behind the number one graph platform for connected data, marketed and sold under the Neo4j® trademark. Neo4j Sweden is the owner of all copyrights related to the Neo4j® graph database platform, including the source code and has licensed said copyrights to Neo4j USA. Declaration of Philip Rathle ("Rathle Decl."), ¶¶ 3-4. After its incorporation, Neo4j USA became the parent company to Neo4j Sweden, and obtained the rights to the Neo4j® Mark in the United States from Neo4j Sweden. *See* Declaration of Jeffrey M. Ratinoff ("Ratinoff Decl."), Exh. 1; Declaration of John Broad ("Broad Decl."), ¶¶ 2-3; *see also* PT Dkt. No. 72 at 24:19-20.

Plaintiffs' business was formed after its founders encountered performance problems with

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                    - 2 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

relational database management systems (RDMS). Plaintiffs then developed a graph database management system developed under the Neo4j® brand and quickly became the industry leader in graph database solutions and software. *See* Broad Decl., ¶¶ 2, 4-18, Exhs. 1-11. The Neo4j® graph database platform ("Neo4j® Platform") helps organizations make sense of their data by revealing how people, processes and digital systems are interrelated. *Id.*, ¶ 2. This connections-first approach powers intelligent applications tackling challenges such as artificial intelligence, fraud detection, real-time recommendations and master data. *Id.*

Since the creation of the Neo4j® graph database platform, Neo4j USA has made considerable efforts and investment in the Neo4j® brand. Broad Decl., ¶ 17. As a results, the Neo4j® brand and Neo4j® Platform have become widely known and closely identified with Neo4j USA and represents its substantial and valuable goodwill. *Id.*, ¶¶ 4-16, 18. In particular, it boast the world's largest dedicated investment in native graph technology. *Id.* Neo4j USA has more than 300 commercial customers, including global enterprises like Comcast, Cisco, and UBS use the Neo4j® Platform to create a competitive advantage from connections in their data. *Id.* Neo4j USA also does substantial business with state and federal government agencies. *Id.*

In conjunction with their business, Neo4j USA filed for and obtained several federally registered trademarks. Specifically, Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark"). Ratinoff Decl., Exh. 1. The first use of the Neo4j® Mark was claimed in June 2006 and first use in commerce in May 2007 based on the use of that mark by Neo4j USA's predecessor-in-interest and related company, Neo4j Sweden, whose use properly inured to the benefit of Neo4j USA. *See id.*

**B.     The Evolution of Plaintiffs' Licensing Model for the Neo4j® Platform**

Prior to November 2018, Plaintiffs offered a free open source version of the Neo4j® Platform, Neo4j® Community Edition ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license. Rathle Decl., ¶¶ 4-5. Neo4j® CE is limited in its feature set and offers no technical or administrative support. *Id.*, ¶¶ 5-6 Users requiring additional features for more advanced commercial operation, together with support, licensed use of the Neo4j® Platform through

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                                    - 3 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   Neo4j® Enterprise Edition ("Neo4j® EE") under commercial terms. *Id*., ¶¶ 7-8. Neo4j® EE is a

2   full superset of Community Edition, containing significant additional functionality intended for

3   commercial use. *Id*.

4           Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and the

5   free GNU Affero General Public License, version 3 ("AGPL"), which was originally made available

6   by the Free Software Foundation ("FSF"). Rathle Decl., ¶¶ 8-10, Exh. 1. A commercial license to

7   Neo4j® EE entitled the purchaser to use it in a proprietary, commercial setting with industry standard

8   terms, receive support or professional services from Neo4j USA, the right to receive software

9   updates, including feature updates, bug fixes and technical assistance. *Id*. It also supported the

10  continued development and improvement of Neo4j® CE and Neo4j® EE. *Id*.

11          In May 2018, Plaintiffs released Neo4j® EE v3.4, which they continued to offer under a

12  proprietary commercial license. Rathle Decl., ¶ 11, Exh. 2. However, they replaced the AGPLv3

13  with a stricter license, which included the terms from the AGPLv3 and additional restrictions

14  provided by the Commons Clause ("Neo4j Sweden Software License"). *Id.,* ¶ 11, Exh. 3. This new

15  license, while still allowing code to be publicly viewable and used within a certain licensed scope,

16  prohibits commercial resale and certain commercial support services. *Id.,* ¶ 12. Plaintiffs added the

17  Commons Clause to prevent third parties from monetizing the Neo4j® Platform and "free riding,"

18  while not contributing back to the open source community. *Id*.

19          In November 2018, Plaintiffs officially released Neo4j® EE v.3.5 solely under a commercial

20  license, while they continued to offer Neo4j® CE under an open source license, which is also referred

21  to as Neo4j® Open Core. Rathle Decl., ¶ 13 Exh. 4. This meant that Plaintiffs were no longer

22  publishing source code for Neo4j® EE on GitHub under any open source license. *Id*. This was done

23  to simplify its licensing model, as well as prevent bad actors from misrepresenting the Neo4j Sweden

24  Software License and profiting by providing commercial support services in closed, proprietary

25  projects. *Id*. Prior to its official release, Plaintiffs published several beta versions of Neo4j® EE v3.5

26  via their GitHub repository subject to the Neo4j Sweden Software License. *Id.,* ¶ 14. They did so in

27  order to obtain user input and to identify potential bugs that could be fixed prior to its official release.

28  *Id*. Neo4j® v3.5.0-RC1 was the last pre-release version available to Defendants via GitHub. *Id*.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                    - 4 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    Thereafter, only Neo4j® CE was publicly available under the GPL via Github.  *Id.*

2         Both Neo4j® EE and Neo4j® CE have been subject to trademark policies and guidelines

3    published on Plaintiffs' website.  Rathle Decl., ¶ 15. The first iteration of these policies and guidelines

4    relevant to this motion was updated by Plaintiffs on October 13, 2015, and the second iteration

5    replaced that version on April 3, 2019 and continues to remain in effect.  *Id.*, ¶¶ 16-18, Exhs. 5-7.

6    These policies along with the terms of the GPL, AGPL and Neo4j Sweden Software License made

7    clear, *inter alia*, that to the extent any authorized modifications are made to Neo4j® software, such

8    modified software should indicate so and no longer bear the Neo4j® Mark. *Id.,* ¶ 15.  This was to

9    ensure that consumers knew when they were receiving genuine Neo4j® software that was quality

10   assured by Plaintiffs rather than third-party modified open source versions thereof.  *Id.*

11        **C.    PureThink Enters Into the Partner Agreement with Neo4j USA**

12        PureThink is a software and information technology consulting company founded by Suhy,

13   which purports to specialize in supporting agencies within the U.S. Government.  *See* Ratinoff Decl.,

14   Exh. 2.  On September 30, 2014, PureThink and Neo4j USA entered into the Neo4j Solution Partner

15   Agreement ("Partner Agreement").  Ratinoff Decl., ¶ 6, Exh. 4.   Under this agreement, PureThink

16   had a non-exclusive, non-transferable limited license to, *inter alia*, use the Neo4j® Mark solely to

17   market and resell commercial licenses to Neo4j® EE and related support services in exchange for

18   shared revenue for the licenses that it resold.  *Id.*, Exh. 4 at § 4.1; Exh. 3 at 60:10-61:17, 67:25-69:11.

19   PureThink agreed to the terms of this license and to use the Neo4j® Mark in accordance with Neo4j

20   USA's "then-current trademark usage guidelines."[1]  *Id.*  The Partner Agreement was subject to a 1-

21   year term, and would automatically renew at additional 1-year periods subject to the notice and

22   termination provision therein, thereby incorporating whatever was the operative trademark guidelines

23   at that time.  *Id.*, Exh. 4 at §7.1; Exh. 3 at 67:18-24.

24        All rights and licenses to the Neo4j® Platform and the Neo4j® mark would terminate upon

25   the expiration or termination, and upon such an event, PureThink agreed to "cease using any

26   trademarks, service marks and other designations of Plaintiffs."   Ratinoff Decl., Exh. 4 at §7.3.

27   _____

28   [1] As a result of the renewal provision, PureThink became bound by the October 13, 2015 version of
     Neo4j USA's trademark guidelines as of September 30, 2016.  *See* Rathle Decl., ¶ 16, Exh. 5.

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                        - 5 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

PureThink further agreed that for a period of 36 months after termination of the Partner Agreement, it would not "develop, market, distribute or offer any services related to any [Neo4j® CE] Products, derivative works of such products, or any [Purethink] software code made to work with [Neo4j® CE] Products (including, without limitation, hosting services, training, technical support, configuration and customization services, etc.)."[2]  *Id.*, Exh. 4 at § 4.3.2; Exh. 3 at 70:5-19.

**D.      Suhy and PureThink Form iGov to Evade the Partner Agreement**

In the hope of increasing sales, Suhy came up with the idea of rebranding Neo4j® EE as Neo4j® Government Edition ("Gov't Edition").  *See* Ratinoff Decl., Exhs. 5-6. Suhy knew that if PureThink could create ██████████████████████████████████████████████████████████████████████████████████████████ *See id.*   Nonetheless, PureThink had limited success in convincing government agencies to pay for licenses to Gov't Edition and support services from PureThink.

By September 2016, the only promising lead PureThink had was the IRS. Ratinoff Decl., Exh. 7. However, ████████████████████████████████████████████████████████████████ *Id.*  To make that deal happen, Suhy falsely told the IRS they could use Neo4j® EE under the AGPL for free and pay PureThink for its consulting services.  *Id.*, Exh. 8.  In early 2017, Suhy revealed to Neo4j USA that PureThink had compiled its own modified version of the Neo4j® EE software under the AGPL, which the IRS had already installed.  *Id.*

On May 30, 2017, Neo4j USA sent PureThink notice that Suhy's actions constituted a material breach of the Partner Agreement.  Ratinoff Decl., Exh. 9.  PureThink made no effort to cure its breaches, and instead formed iGov on or about June 23, 2017 to evade the restrictions in Section 4.3.1 of the Partner Agreement.  Ratinoff Decl., Exh. 10 and Exh. 11 ("I would think your legal team understands that since everything is open source and that someone can start a new company to get around this would make this simple negotiating point that does no harm dropping.").  The PT Defendants also admitted as much in their pleadings.  *See* PT Dkt. No. 72 at 8:22-25, 9:15-23.

---

[2] The parties agreed to resolve the enforceability of this provision in Phase 2.  *See* PT Dkt. No. 68.

Hopkins & Carley
Attorneys At Law
San Jose ● Palo Alto

842\3639184.9

- 6 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**E.    iGov and Suhy Infringe the Neo4j® Mark after iGov's Formation**

On July 11, 2017, Neo4j terminated the Partner Agreement.  In providing notice, Neo4j USA demanded PureThink "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement.  Ratinoff Decl., Exh. 12.  Shortly thereafter, Suhy and iGov targeted same federal agencies that PureThink previously solicited, and pushed them to adopt the "Government Package for Neo4j" from the same "principle" behind PureThink and Gov't Edition.  *See id.*, Exhs. 14-15.

For example, Suhy emailed the National Geospatial-Intelligence Agency ("NGA") admitting that there was no difference between PureThink and iGov: "Until we broke away from Neo4j Inc last month, we sold every Neo4j subscription to the US federal government under our other company PureThink. I am the core developer who created the Neo4j Government Edition which was retired by Neo last month."  Ratinoff Decl., Exh. 19.  Suhy also referenced iGov's newly created website at https://igovsol.com/neo4j.html, and attached a printout of that webpage which contained multiple unauthorized uses of the Neo4j® Mark, including references to "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *Compare id.*, Exh. 17 *and* Exh. 19.

Around this same time, both PureThink and iGov put this identical content on their websites:

> The principle [sic] behind PureThink and the Government Package has created a new corporate entity called iGov Inc, which is not a Neo4j Solution Partner. ***Because iGov Inc is not a solution partner, it can offer packages at great cost savings to US Government Agencies as it has no restrictions on working with Neo4j Enterprise open source licenses***!
>
> * * *
>
> iGov Inc's new ***Government Package for Neo4j*** can be added to any Neo4j instance making it a "Government Edition".  By default, ***all Government Packages for Neo4j now comes with Neo4j Enterprise*** included under it's [sic] open source license!

Ratinoff Decl., Exhs. 14-15. Purethink even redirected potential customers wanting to "Learn More" about iGov and the "Government Package for Neo4j" to iGov's website. *Id.,* Exh. 14.

The PT Defendants also used iGov's website to misleadingly market "Neo4j Enterprise" (cobbled together from various sources by Suhy) as genuine Neo4j® EE v3.3: "iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's free Open Source

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9                                    - 7 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

license!" *See* Ratinoff Decl., 18; *see also* Exh. 17 ("iGov Inc's Government Development Package with Neo4j Enterprise… Comes with same physical Neo4j Enterprise software").  Aside from iGov's "Neo4j Enterprise" being virtually identical in name to Plaintiffs' official "Neo4j® Enterprise Edition," the version distributed by iGov was not of the same quality as the official one compiled by Neo4j Sweden, and did not include several closed-sourced features. *See* Rathle Decl., ¶¶ 10, 19-26. When Suhy cobbled together "Neo4j Enterprise", he was actually creating software and introducing modifications that result in a version of Neo4j® EE that is not of the same quality as if were compiled by Neo4j Sweden. *Id.* Suhy admitted this in a blog he wrote circumventing Neo4j Sweden's commercial licensing restrictions in place at that time.  Ratinoff Decl., Exh. 20.

Other unauthorized uses of the Neo4j® Mark on iGov's website included: (1) using "https://igovsol.com/**neo4j**.html" as a URL to promote "Government Development Packages for **Neo4j**"; (2) prominently displaying a "Request Procurement Document Package" link with "**mailto:neo4j@igovsol.com**" embedded which creates an email addressed thereto upon activation; (3) encouraging consumers to obtain more information by sending an email to "**neo4j@igovsol.com**;" and (4) gratuitously using "Government Packages for Neo4j"  and "Neo4j Enterprise" to describe iGov's patchwork versions of Neo4J® EE.  *Id.*, Exhs. 15-18.

### F.    Defendants Form GFI and Improperly Remove the Commercial  Restrictions in the Neo4j Sweden Software License in Order to Launch ONgDB as a "Free and Open Source" Neo4j® EE

Neo4j Sweden released NEO4J® EE v3.4 under the Neo4j Sweden Software License in May 2018. Rathle Decl., ¶ 11.  After that release, the PT Defendants copied the source code, removed the commercial restrictions imposed by the Neo4j Sweden Software License, and began promoting it "free and open source" Neo4j® EE and offering commercial support services.  *See* Ratinoff Decl., Exh. 3 at 171:23-172:23, 199:22-200:20; Exh. 21.  Suhy then told Plaintiffs that he was forming a non-profit "for a community fork of Neo4j to get things started, and to ensure it's [sic] long term success…" and that "if we do launch this community fork and re-brand, it won't be something [he] can stop once the legal entity is place and launched…."  *Id.*, Exh. 27.  This was not an empty threat because he was working with Brad and Ben Nussbaum, the owners of AtomRain Inc. and GraphGrid Inc., to form GFI and fork Neo4j® EE.  *See id.*, Exhs. 22-23; *see also* Exh. 28 ("We're consolidating

1   support of the open source neo4j graph database distributions under a non-profit organization: Graph

2   Foundation"); Exh. 29 ("Our team: iGov Inc, GraphGrid [], and AtomRain []. We work together as

3   one company. We all are the founders of the Graph Foundation.").

4       On June 22, 2018, the Nussbaums incorporated GFI and Defendants immediately began to

5   promote what they called ONgDB. Ratinoff Decl., Exh. 30. Rather than develop ONgDB as an

6   independent fork based off an earlier open source version of Neo4j® EE, Defendants again stripped

7   the commercial restrictions out of the Neo4j Sweden Software License from Neo4j® EE version 3.4

8   and began promoting ONgDB as open source Neo4j® EE 3.4 under the AGPL. *See id.*, Exhs. 24-

9   26, 28; *see also* Exh. 3 at 28:25-29:11; Exh. 31 at 87:24-90:9. They did so under the false premise

10  that Sections 7 and 10 of the Neo4j Sweden Software License permitted a licensee to remove "further

11  restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder and

12  original licensor. *See id.*, Exh. 3 at 171:23-172:23. This contradicted what that license actually states

13  – that only a downstream licensee may remove unauthorized restrictions when placed by an upstream

14  licensee who redistributes the copyrightable program, not those placed by the copyright owner

15  offering the terms to the licensees. *See* Rathle Decl., Exh. 3 at §§ 7, 10.

16      Defendants knew that they could not replace the Neo4j Sweden Software License with the

17  APGL without Neo4j Sweden's prior authorization. The FSF even told Suhy on August 21, 2018

18  that "[t]he copyright holder on a work is the one with the power to enforce the terms of the license"

19  and "[i]f a work was previously available under a free license, and later that license is changed, users

20  can always use that earlier version under the terms of the free license." *See* Ratinoff Decl., Exh. 34.

21  GFI admitted as much on GitHub: ***The Graph Foundation can only change the license of source***

22  ***code where it holds the copyright***." Ratinoff Decl.*,* Exh. 35, Exh. 31 at 183:14-184:24; *see also* Exh.

23  36 ("We cannot change the AGPL license on any code where we don't hold a [sic] copy-right").

24      GFI also traded off the goodwill associated with Neo4j® Mark by copying the landing page

25  on Plaintiffs' GitHub repository without any overt reference to ONgDB. Dkt. No. 89, ¶ 18, Exh. 18;

26  Ratinoff Decl., Exh. 31 at 81:14-20. It was not until January 17, 2019 that GFI modified its landing

27  page by changing the title to "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone" and adding

28  references "ONgDB & Neo4j," but the content still remained almost identical to Plaintiffs' GitHub

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9

- 9 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

landing page and contained wide-spread misuse of the Neo4j® Mark.  *See* Dkt. No. 89, ¶¶ 19-21, Exhs. 19-21. Notably, GFI removed Plaintiffs' licensing notices, including the need for a commercial license, and replaced them with the misrepresentation that "ONgDB & ***Neo4j Enterprise*** consist of modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository." *Id.*, Exhs. 19-21 (emphasis added).

> On January 31, 2019, GFI posted a blog entry on its website making its intent clear:
>
> > We started Graph Foundation, Inc. … in June 2018 when we noticed Neo4j's position beginning to change and the implications of this for the community and ecosystem. The Graph Foundation is a nonprofit with 501(c)(3) status ***and its goal is to take over neo4j enterprise development*** …

*See* Ratinoff Decl., Exh. 37.  GFI further stated that it "decided on the name ONgDB (oh-n-gee-db) which stands for Open Native Graph DB but also ONgDB's Neo4j Graph DB," which it now claims was merely a joke made in bad taste.  *See id.*; *see also* Exh. 31 at 178:13-179:21.

This blog coincided with GFI's release of ONgGB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in the last beta version of Neo4j® EE 3.5 made available by Plaintiffs via GitHub.  *See* Ratinoff Decl., Exh. 38 at 6:22-7:1, 8:4-16:24; *see also* Rathle Decl., ¶ 29.  In order for Defendants to continue to call ONgDB "free and open source" Neo4j® EE, they again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL in 28 separate LICENSE.txt files. Ratinoff Decl., Exhs. 39-40; Dkt. No. 91 at 19:9-25; Exh. 31 at 159:3-10; Rathle Decl., ¶ 30.  Not only did this remove the Commons Clause to allow iGov, AtomRain and GraphGrid to commercially use and support ONgDB, but also stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor.[3]  *See* Ratinoff Decl., Exh. 39.

GFI did not make any other meaningful changes to its GitHub landing page for ONgDB until

---

[3] The Nussbaums also own GraphGrid and AtomRain, which share the same office and computers with GFI, and provide commercial training and consulting and support for users of ONgDB. Ratinoff Decl., Exhs. 52-53; Exh. 31 at 22:24-23:3, 31:5-32:19, 35:3-13, 57:18-58:21, 65:20-70:16, 194:14-17.  Like iGov, GraphGrid and AtomRain benefit from customers being able to use ONgDB for "free" and diverting available project funds to pay them for such services.  *See, e.g., id., see also* Exh. 28 ("If you are looking for a full shield of liability, we recommend using one of our supporters such as GraphGrid") and Exhs. 76, 134-135.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                    - 10 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

April 14, 2020 when it started to remove the Neo4j® Mark and Plaintiffs' URLs from that page. *Compare* GFI Dkt. No. 89, Exh. 22 *and* Exhs. 23-28.   However, GFI's landing page was still confusingly titled "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," still started off stating "Neo4j is the world's leading Graph Database," encouraged consumers to "Learn more on the Neo4j website," and continued to misuse the Neo4j® Mark throughout.  *Id.*, Exhs. 29-31. It was not until April 21, 2020 that GFI removed most references to the Neo4j® Mark and hyperlinks to Plaintiffs' website, but it still persisted on using Plaintiffs' catch phrase "Graphs for Everyone" and mislabeling the Neo4j® Platform as the "neo4j project."  *Id.,* Exhs. 32-33. GFI also continued to misleadingly claim that "ONgDB Enterprise Edition consists of modules from ONgDB Community Edition and modules licensed under AGPLv3 in this repository." *Id.*, Exh. 32; *see also* Ratinoff Decl., Exh. 41.

### G.     Defendants Promote ONgDB over Neo4j® EE Based on the False Premise that No Paid Commercial License from Plaintiffs is Necessary to Use ONgDB

In addition to their respective websites, Defendants spread misinformation based on their unauthorized alteration of the Neo4j Sweden Software License directly to potential customers and encouraged them to adopt ONgDB.  *See, e.g.,* Ratinoff Decl., Exhs. 42-47.   A common theme in these communications telling potential customers that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j® EE v3.5.x.  *See id.,* Exhs. 42-47; *see also* Exh. 126.   Another common theme was telling potential customers the FSF had determined that Commons Clause was invalid.  *See id.,* Exh. 48 ("The [FSF], which owns rights to AGPLv3 license and its use, reviewed the Commons Clause that had been added and determined that it was not valid."); *see also id.*, Exh. 28.  This was false because the FSF did not provide them with a legal opinion and GFI knew it had no right to change the license.  *See* Exhs. 34-36; Exh. 31 at 183:14-184:24, 207:10-210:8.

Defendants also told potential customers that legal counsel for the IRS had concluded that it was proper for them to have removed the Commons Clause and that ONgDB could be used without obtaining a paid commercial license from Plaintiffs.  *See, e.g.,* Ratinoff Decl., Exhs. 49-50.   When pressed by one customer, GFI was forced to admit that it had never received any such legal opinion from the IRS.  *Id.*, Exh. 51.  In fact, they have no first-hand knowledge of ***any*** meaningful legal

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9                                                   - 11 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   analysis performed by the IRS about the validity of the Commons Clause. *Id.*, Exh. 31 at 218:21-

2   220:24, 226:19-228:24, 266:18-269:22; Exh. 3 at 157:14-162:8.

3          Suhy also reached out on behalf of iGov to many of the same government agencies that he

4   had previously done so under the Partner Agreement. *See, e.g.,* Ratinoff Decl., Exh. 25 (Excella),

5   Exhs. 29, 54 (USAF), Exh. 45 (Sandia), Exh. 46 (Army); *see also* Dkt. No. 72 at ¶¶ 23-24. He even

6   encouraged the USAF to modify its open solicitation, which included the Neo4j® Platform as one of

7   the products listed, from "neo4j" to "neo4j/ONgDB" because Suhy pitched them as the same product

8   rather than two separate products. *Id.,* Exh. 54. Suhy went further by signing off on a response to a

9   RFQ where he certified iGov was "█████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████████████"

11  what was listed as "████████████████████████████████████████████████████

12  ████████" *Id.*, Exh. 55; Exh. 31 at 235:21-237:14, 240:22-243:22. This was false as Suhy knew that

13  Neo4j Sweden owned the copyright to source code for Neo4j® EE and never gave permission to

14  remove Commons Clause and offer it as ONgDB under the AGPL. *Id.,* Exh. 56 and Exh. 3 at 183:12-

15  183:1, 187:12-188:5, 189:1-191:3.

16         **H.     GFI Falsely Promotes ONgDB 3.5 as a "Drop In" Replacement for Neo4j® EE**

17         GFI also used its website to deceptively market ONgDB as the equivalent of commercially

18  licensed NEO4J® EE. Between May and September 2019, GFI promoted ONgDB as the "free and

19  open source Neo4j Enterprise project," and "a non-restrictive fork of Neo4j, the world's leading

20  Graph Database" via its webpage. *See* Ratinoff Decl., Exh. 57. GFI's website and GitHub landing

21  page also used virtually ***identical*** language from Neo4j's GitHub repository to describe ONgDB.

22  *Compare* Exhs. 57-58 *and* 59 (green highlight). Even after Plaintiffs filed suit over a year ago, GFI

23  continues to advertise ONgDB as being "licensed under AGPLv3 as a free and open source

24  alternative to currently available proprietary native graph offerings such as Neo4j Enterprise

25  Edition." *Id.,* Exh. 60. As discussed above, such claims are misleading because GFI impermissibly

26  replaced the Neo4j Sweden Software License with the generic AGPL.

27         GFI further claimed on its website for most of 2019 that "ONgDB distributions are licensed

28  under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9
- 12 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

distributions with the same version number." *See* Ratinoff Decl., Exh. 57. GFI's claim was misleading it admitted that ONgDB v3.5.4 is not 100% identical to official Neo4j® EE v3.5.4. *Id.*, Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:23. Rather, ONgDB is a patchwork of code from the last public beta, Neo4j® EE v3.5.0-RC1, and Neo4j® Community Edition held together by "glue code" authored by Suhy, Brad Nussbaum and other GFI contributors. *See id.* GFI is entirely dependent on what patches are made available in Neo4j® CE and sought to redirect users of official Neo4j® EE to GFI and identify bugs in the closed enterprise directory for Neo4j® EE. *See* Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:12.

By splicing together source code for ONgDB in that manner, GFI is creating software that is not of the same quality as if it were compiled by Plaintiffs. Rathle Decl. ¶¶ 31-33. This is because GFI does not have access to the same rigorous testing and build infrastructure for official Neo4j® software, which goes beyond what is built into Neo4j® CE. *See id.*; *see also* Ratinoff Decl., Exh. 3 at 216:2-218:6; Exh. 31 at 168:14-169:6. Further, since GFI introduced modifications to ONgDB in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases. *See* Rathle Decl., ¶ 34; *see also* Ratinoff Decl., Exh. 31 at 161:23-163:12. Indeed, Defendants had no way of knowing what Plaintiffs had modified or fixed in the source code for enterprise-only features after Plaintiffs closed off public access to that code in November 2018. Ratinoff Decl., Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9; Exh. 40.

Finally, Defendants knew that ONgDB does not include every closed enterprise feature in the equivalent version of Neo4j® EE. Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. As a result, they deceived consumers into thinking they were downloading an exact copy of the same version of commercial-only releases of Neo4j® EE, which in actuality they were receiving an improperly licensed and inferior ONgDB product from a qualitative and feature standpoint. ***GFI even admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for Neo4j® EE and was unwilling to do the necessary testing to make such integration and compatibility guarantees because it became "too hard to demonstrate."*** *Id.*, Exh. 31 at 186:24-188:17, 188:23-189:23. GFI thus stopped calling ONgDB a drop-in replacement and removed those claims from its website in October 2019 shortly after Plaintiffs filed suit. *See id.*

Hopkins & Carley
Attorneys At Law
San Jose ● Palo Alto

842\3639184.9

- 13 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

I.      **iGov Uses the Neo4j® Mark to Promote ONgDB on its Websites and Falsely Claims that ONgDB is a "Drop In" Replacement for Neo4j® EE**

After GFI released ONgDB in July 2018, iGov continued to misuse the Neo4j® Mark on its website. It continued to use "https://igovsol.com/**neo4j**.html" as a URL address to promote ***ONgDB*** until it deactivated that page sometime after July 27, 2020. Ratinoff Decl., Exhs. 62-65; Exh. 13 at RFA No. 5. While iGov replaced this url with "https://igovsol.com/**graph**.html, the contents of the page remained the same. *Compare id.,* Exh. 65 *and* Exh. 66. iGov also used the neo4j@igovsol.com email address on its "neo4j.html" page (*id.*, Exhs. 63-64 [purple highlight]) and "downloads.html" page (*id.*, Exhs. 67-69 [purple highlight]) as means for consumers to inquire about ***ONgDB*** until sometime in July 2020. *See id.*, Exh. 13 at RFA Nos. 7-11. Likewise, GFI misled customers on its "downloads" page by using a "Download Neo4j Enterprise" hyperlink that redirects consumers to download links for ***ONgDB*** until July 27, 2020. *See id.*, Exh. 67 (red highlight); Exh. 13 at RFA Nos. 10, 14. However, iGov never stopped offering "commercial equivalent support packages for Neo4j Enterprise open source licensed distributions," and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on these pages. *See id.,* Exhs. 62-70 (yellow highlight).

In addition, iGov continues misrepresent that "ONgDB Enterprise," "Neo4j Enterprise" and "Neo4j Enterprise Edition" are open source and can be used for free under the AGPL. *See* Ratinoff Decl., Exhs. 62-74. iGov also continues to misrepresent that "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions." *Id.,* Exh. 71-74 (green highlight). Similarly, GFI instructed potential users of Neo4j® EE on its "neo4j" page to "simply download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number" and still does so on the successor "graph" page. *Id.,* Exhs. 63-66 (green highlight). Between July 5, 2019 and July 27, 2020, GFI described "ONgDB Enterprise 3.5.5" as a "Drop in replacement for Neo4j Core and Enterprise 3.5.5" on its "downloads" page. *Id.,* Exhs. 67-69 (green highlight). iGov ***still*** makes drop-in replacement claims for ONgDB v3.5.11 even though GFI ***confirmed*** that versions released after ONgDB v3.5.4 were no longer drop-in replacements for equivalent versions of Neo4j® EE. *Id.,* Exh. 74; Exh. 31 at 186:24-188:17, 188:23-189:23.

In addition, the PT Defendants operated www.graphstack.io to further promote the false

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9

- 14 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   equivalency between ONgDB and Neo4j® EE.  They admitted that "iGov Inc is the company behind

2   GraphStack" and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise

3   open source distributions for US government agencies."  Ratinoff Decl., Exh. 75.  This website also

4   contained statements that ONgDB "is a non-restrictive fork of Neo4j" and "a drop in replacement for

5   any Neo4j Enterprise (or community) distribution of the same version number." *See id.*  The PT

6   Defendants have made similar misrepresentations directly to potential customers, such as "[ONgDB]

7   is 100% open source and a drop in replacement for the same Neo4j version."  *See id.*, Exh. 43; *see*

8   *also* Exhs. 44-46, 76-77, 126.

9       **J.**    **Defendants Impermissibly Rely Upon Official Neo4j® Support Documentation**

10      GFI's efforts to steal the goodwill associated with the Neo4j® Mark is further evidenced by

11  the fact that it did not create its own support documentation for ONgDB.  *See* Ratinoff Decl., Exhs.

12  128-129 [RFA Nos. 81-84]. Instead, it has relied upon Neo4j USA's official documentation and used

13  hyperlinks on its website to redirect users to Plaintiffs' operation and developer manuals located on

14  Plaintiffs' website.  Dkt. No. 89, ¶¶ 3-8, 13-16; Ratinoff Decl., Exhs. 78-83. For example, GFI's

15  webpage for ONgDB v3.5.3 stated, "Look for 3.5 Operations manual here" with an embedded

16  hyperlink to https://neo4j.com/docs/operations-manual/3.5/.  Dkt. No. 89, ¶ 7; Ratinoff Decl., Exhs.

17  82-83. Similarly, GFI's website consistently directed users to ***Plaintiffs'*** change logs for each new

18  release of ONgDB until GFI finally started its own change log with ONgDB v3.5.16.  Dkt. No. 89,

19  ¶¶ 3-8; Ratinoff Decl., Exh. 84; Exhs. 128-129 [RFA Nos. 87, 92, 97, 103, 107, 110].

20      GFI employed similar misdirection on its GitHub repository.  At least up until April 14, 2020,

21  GFI's GitHub landing page prominently stated "To build the documentation see the Neo4j

22  documentation" with an embedded hyperlink "https://github.com/neo4j/neo4j-documentation/." Dkt.

23  No. 89, Exhs. 18-19, 23.  GFI's general document repository on GitHub also uses hyperlinks that

24  lead consumers to believe they are being directed to documentation provided by GFI.  *See* Dkt. No.

25  89, ¶¶ 9-16.  However, these hyperlinks redirect them to Neo4j USA's official documentation on

26  Neo4j USA's corporate website.  For example, the word "ONgDB 3.5" under the heading "LTS

27  release" contains an embedded hyperlink, https://neo4j.com/docs/operations-manual/3.5/, that

28  redirects users to Neo4j USA's copyrighted "The Neo4j Operations Manual v3.5" located on Neo4j

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9                                    - 15 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

USA's website. *Id.,* ¶¶ 9-10; Ratinoff Decl., Exhs. 82-83; Exh. 31 at 276:19-279:15, 284:2-285:18.

As indicated at the top of each of the forgoing manuals, they are copyrighted by Neo4j USA and subject to the License: Creative Commons 4.0, which contains a hyperlink to the Attribution-NonCommercial-ShareAlike 4.0 International Public License. *See* Ratinoff Decl., Exh. 85. Notably, this license expressly prohibits the use of Neo4j USA's documents for commercial purposes, which is exactly what Defendants were doing by using Plaintiffs' documentation to promote ONgDB as "drop in replacement" for commercially licensed Neo4j EE® and Defendants' related support and consulting services. *Id*.

iGov also does not use its own release notes and announcements in promoting ONgDB. Instead, it uses hyperlinks on its website to redirect consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whats-new-in-neo4j/) until they apparently removed those references sometime in July 2020. *See* Ratinoff, Exhs. 67-69 (blue highlight). The GraphStack website similarly used hyperlinks to redirect consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whats-new-in-neo4j/) in conjunction with encouraging consumers to download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise 3.5.3." Ratinoff Decl., Exh. 75; Exh. 13 [RFA Nos. 42-43].

**K.      Defendants Improperly Use the Neo4j® Mark to Promote ONgDB on Twitter**

On or about November 17, 2018, GFI claimed on Twitter that ONgDB v3.5 would "be a divergent but open source #AGPL release" of open source Neo4j® EE v3.5. Ratinoff Decl., Exh. 87. As detailed above, however, GFI did not develop ONgDB as legitimate, bona fide open source fork. Consequently, Defendants mislead consumers via Twitter that ONgDB was licensed under AGPLv3 as a free and open source equivalent of commercial-only licensed Neo4j® EE containing the same closed source code as equivalent versions thereof. *See, e.g., id.*, Exhs. 93, 97-104.

Defendants also impermissibly used the NEO4J® Mark as a hashtag "**#Neo4j**" to promote ONgDB. Ratinoff Decl., Exh. 31 at 233:17-237:21. GFI made a conscious decision to announce its new releases of ONgDB via Twitter using the format, "**#ONgDB (#FOSS#Neo4j** Enterprise) 3.5.x support release is out,**" with no attempt to differentiate ONgDB and Neo4j® EE as separate,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9

- 16 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

competing products.[4]  *Id.*, Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25.  GFI issued a similar tweets that used "**#Neo4j** Enterprise" and "**#ONgDB**" without *any* differentiation.  *Id.*, Exhs. 91, 93, 96.  As noted above, GFI used "**#Neo4j** Enterprise 3.5" to solicit end-users of *Neo4j®* *EE v3.5* to report bugs so that Defendants could identify bugs without actually doing the work and better mimic Plaintiff's potential fixes in ONgDB.  *Id.*, Exh. 61.  To make matters worse, the PT Defendants retweeted GFI's tweets increasing the number of potential customers that would receive those tweets or come across them in searches.  *See id.*, Exhs. 105-111.

### L.    Defendants' Misuse of the Neo4j® Mark and False Statements about ONgDB Have Diverted Customers to Defendants and Caused Actual Confusion

Defendants' strategy to siphon off the goodwill associated with the Neo4j® Mark quickly paid dividends.  By March 21, 2019 – only two months after the release of ONgDB v3.5.1 – GFI boasted on its website and via Twitter that "we have reached our 1,000th download of ONgDB 3.5, the Open Neo4j Enterprise project!" and was "a sign that we are succeeding in our mission."  *See* Ratinoff Decl., Exh. 112; *see also* Exh. 91.  By June 2020, GFI tallied over 10,000 downloads of ONgDB and as of December 2020 had over 14,000 downloads.  *See id.,* Exhs. 113-114.

Defendants' misinformation campaign also resulted in actual consumer confusion.  For example, users encountered compatibility issues with *ONgDB* and sought assistance from *Plaintiffs*:

> Do the terms of use for "neo4j Desktop" apply to the ONGDB server which I downloaded under AGPLv3 license? I read the Desktop terms carefully and they refer everywhere to "neo4j Desktop software". Has anybody encountered this issue? I am feeling really stupid for not thinking this through before downloading the Desktop Software, especially as database authentication keeps failing. Before I spend any more time troubleshooting, could someone indicate any features of Desktop that are really worth it (other than UI)? I am planning production, so the license is important to me.

*See* Ratinoff Decl., Exh. 115.  When Defendants learned of this confusion, they had audacity to joke about it rather than take remedial measures to ensure future consumer confusion over licensing and compatibility would not occur. *Id.,* Exh. 116.  GFI confirmed as much, testifying that the Neo4j® desktop tool was not compatible with or supported by ONgDB.  *Id.,* Exh 31 at 230:12-233:10.  iGov found this "interesting" because it showed that ONgDB was obtaining broader

---

[4] "FOSS" stands for free open source software. Ratinoff Decl., Exh. 31 at 233:17-234:3.

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9                                         - 17 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   consumer appeal in the marketplace than originally anticipated.  *Id.,* Exh. 3 at 207:12-209:3.

2         Consumers also have expressed uncertainty over Defendants' unauthorized modification to

3   the Neo4j Sweden Software License and justification for doing so.  *See* Ratinoff Decl., Exh. 49

4   ("there does not seem to be a resolution there certainly not from the Neo4j perspective, which defends

5   their use of both AGPL and the Commons Clause) (hyperlink leads to Exh. 117); Exh. 118 ("When

6   you say "ONgDB – this is a fully AGPL fork of the open source Neo4j Github repository" [] Is that

7   AGPLv3 [] from the FSF?  Is that the same AGPLv3 license referenced below regarding Neo4j

8   Enterprise from the Neo4j Github repository [] albeit with the 'additional sections' you mentioned?");

9   *see also* Exh. 119.  Defendants exacerbate these issues and cause further consumer confusion by

10  falsely equating ONgDB with commercially licensed Neo4j® EE.  *See, e.g., id.,* Exhs. 40, 55, 131,

11  133-134.  In the case of NextCentury and the Maryland Procurment Office (MPO), they ultimately

12  adopted ONgDB over Neo4j® EE after Defendants convinced them that it was not necessary to

13  obtain a commericial license from Plaintiffs.  *Id.*, Exhs. 48-49, 120.  Likewise, Defendants'

14  interchangeable use of "Neo4j Enterprise" and "ONgDB" in marketing ONgDB misleads consumers

15  into mistakenly believing that ONgDB and Neo4j® EE were one and the same.  *See, e.g.,* Exhs. 35,

16  40, 42-43, 46, 53, 55, 76, 100, 134.

17        Finally, consumers who have downloaded ONgDB rather than official Neo4j® EE have

18  experienced issues with ONgDB.  *See, e.g.,* Exh. 121 ("Unable to connect to Neo4j/ONgDB Browser

19  when port forwarding"); Exh. 122 ("ONgDB neoj not starting up"); Exh. 123 ("I also tried ONgdb

20  (neo4j) with different gremlin server versions"); Exh. 124 ("I'm having some difficulty loading a

21  Cypher file into Neo4J… note that I am using an recent ONGDB build, rather than straight Neo4J; I

22  do not believe this will make any substantial difference."); *see also* Exh. 133.  Rather than seek

23  assistance from GFI and ONgDB users, however, these consumers seek assistance from Plaintiffs on

24  GitHub and Neo4j® Platform users on Stack Overflow.  *See id.*  In one instance, Suhy even sent a

25  user to Neo4j USA's operations manual for assistance since GFI never developed its own support

26  documentation.  *See, e.g.,* Exh. 125.  Despite this lawsuit, Defendants remain undeterred in trading

27  off the Neo4j® Mark and falsely advertising ONgDB as free and open Neo4J® EE.

28

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9
- 18 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

### III.    THE CLAIMS AND DEFENSES SUBJECT TO PLAINTIFFS' MOTION

Plaintiffs move for partial summary judgment on Neo4j USA's Lanham Act and related UCL claims against Defendants for: (1) trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin and false advertising, 15 U.S.C. § 1125(a); (3) federal unfair competition, 15 U.S.C. § 1125(a); and (4) state unfair competition in violation of Cal. Bus. Prof. Code §§ 17200 et seq.  PT Dkt. No. 82, 90 at ¶¶ 99-133; GFI Dkt. Nos. 63, 65 at ¶¶ 78-111.  Plaintiffs also move for summary judgment on Defendants' nominative fair use defenses.  PT Dkt. Nos. 82, 91; GFI Dkt. Nos. 63, 91.

### IV.    APPLICABLE MOTION FOR SUMMARY JUDGMENT STANDARDS

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party bears the ultimate burden of proof at trial, it must prove each essential element of the claims upon which it seeks judgment based on undisputed facts that are sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.  *Online Glob., Inc. v. Google LLC*, 387 F.Supp.3d 980, 984–85 (N.D. Cal. 2019).  Where the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by … pointing out … that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim or defense. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.  The non-moving party does not meet this burden by showing

Hopkins & Carley
Attorneys At Law
San Jose • Palo Alto

842\3639184.9

- 19 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

2   *Corp.*, 475 U.S. 574, 586 (1986).  Rather, it must come forward with admissible evidence to satisfy

3   the burden.  Fed. R. Civ. P. 56(c); *see Hal Roach Studios, Inc. v. Feiner & Co., Inc.*, 896 F.2d 1542,

4   1550 (9th Cir. 1990).  "If the nonmoving party's 'evidence is merely colorable or is not significantly

5   probative," then summary judgment may be granted."  *Online Glob., Inc.*, 387 F.Supp.3d at 985

6   (citation omitted); *see also Anderson*, 477 U.S. at 248-49.

7   **V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF NEO4J**
    **USA ON ITS TRADEMARK INFRINGEMENT CLAIMS AND AGAINST**
8   **DEFENDANTS ON THEIR NOMINATIVE FAIR USE DEFENSE**

9       **A.    Legal Standards for Trademark Infringement and Nominative Fair Use**

10      Neo4j USA moves for partial summary judgment on its causes of action for trademark

11  infringement and unfair competition in violation of 15 U.S.C. §§ 1114, 1125(a)(1).  PT Dkt. No. 90

12  at ¶¶ 99-111, 120-126; GFI Dkt. No. 65 at ¶¶ 78-90, 99-105.  To prevail on its claim under 15 U.S.C.

13  § 1114, Neo4j USA must prove (1) an ownership interest in a protectable mark; and (2) that

14  Defendants' use of the mark is likely to cause consumer confusion.  *Network Automation, Inc. v.*

15  *Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).  These elements also apply to

16  Neo4j USA's cause of action for unfair competition under 15 U.S.C. § 1125(a)(1). *See Brookfield*

17  *Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999).  Likewise, an

18  "an action for unfair competition under [Section 17200] is 'substantially congruent' to a trademark

19  infringement claim under the Lanham Act." *Acad. of Motion Picture Arts & Scis. v. Creative House*

20  *Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (citation omitted).  This is because the

21  "ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks."

22  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

23      Registration of a mark is prima facie evidence of the validity of the mark, the registrant's

24  ownership of the mark, and the registrant's exclusive right to use the mark in connection with the

25  goods specified in the registration. *See* 15 U.S.C. § 1115(a).  "When proof of registration is

26  uncontested, the ownership interest element of a trademark infringement claim is met."  *Pom*

27  *Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).  Neo4j USA bases its trademark

28  claims on Registration No. 4,784,280 for the word mark "NEO4J."  Ratinoff Decl., Exh. 1.

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9                                    - 20 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1  Importantly, Neo4j USA's exclusive right to use the Neo4j® Mark covers all design variations of the

2  word because it was registered as a standard character mark.  *See Pom Wonderful*, 775 F.3d at 1124.

3  Since the Court struck Defendants' trademark validity defenses with prejudice, there is no basis for

4  them to challenge the Neo4j® Mark.  As a result, Neo4j USA meets the first element.

5          Normally, Neo4j USA would need to establish the second element of consumer confusion

6  by engaging in the 8-factor analysis under *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th

7  Cir.1979).  A defendant may avail himself of the nominative fair use defense if "the use of the

8  trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one

9  product for a different one."  *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 308–09

10  (9th Cir. 1992).  Thus, the *Toyota* test replaces the *Sleekcraft* test as the proper measure of consumer

11  confusion.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010).  In order

12  to rely upon nominative fair use, (1) defendant's product must be one not readily identifiable without

13  use of plaintiffs' trademark; (2) only so much of that mark may be used as is reasonably necessary to

14  identify defendant's product; and (3) defendant must do nothing that would, in conjunction with the

15  mark, suggest sponsorship or endorsement by the trademark holder.  *Id.* at 1175–76.  A defendant

16  seeking to assert nominative fair use as a defense "need only show that it used the mark to refer to

17  the trademarked good."  *Id.* at 1182-83. The burden then reverts to plaintiff to show consumers are

18  likely to believe that use of a mark is sponsored or endorsed by a trademark holder. *Id.*

19      **B.      The PT Defendants' Non-ONgDB Related Infringement of the Neo4j® Mark**

20          The PT Defendants cannot assert a nominative fair use of the Neo4j® Mark on their websites

21  due to PureThink's status as a former licensee.   In a dispute between a licensee and former licensor

22  there is no need to compare the marks or products.  *See Hollywood Athletic Club v. GHAC–CityWalk*,

23  938 F.Supp. 612, 614–15 (C.D.Cal.1996).  In this situation, courts recognize that an ex-licensee's

24  continued use of a trademark alone establishes a likelihood of consumer confusion.  *See, e.g. State of*

25  *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) ("courts

26  have held that an ex-licensee's continued use of a trademark is enough to establish likelihood of

27  confusion"); *2Die4Kourt v. Hillair Capital Mgmt., LLC*, 2016 WL 4487895, at *6 (C.D. Cal. Aug.

28  23, 2016), *aff'd*, 692 F. App'x 366 (9th Cir. 2017) ("once a license agreement is terminated, the former

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                          - 21 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

licensee cannot continue using the mark"); *Sun Microsystems v. Microsoft Corp*., 999 F.Supp. 1301, 1311 (N.D.Cal.1998) ("[w]here a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion"); *Bunn-O-Matic Corp. v. Bunn Coffee Service, Inc.*, 88 F.Supp.2d 914 at 922 (C.D. Ill. 2000) (likelihood of confusion exists as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license).

Here, it undisputed that PureThink had a license to use the Neo4j® Mark to market and resell licenses and support services for Neo4j® EE, and agreed to cease using the mark in that manner upon termination.  Ratinoff Decl., Exh. 4 at §§ 4.1, 7.3.  It is also undisputed PureThink continued to use the Neo4j® Mark after Neo4j USA terminated the Partner Agreement as detailed above. *See supra* Section II.E.  It wrongly used the Neo4j® Mark on its website to funnel customers to iGov to obtain "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *See* Ratinoff Decl., Exh. 14.  It also promoted "Neo4j Enterprise" as genuine Neo4j® EE despite being compiled by Suhy and not being of the same quality if it were compiled and tested by Plaintiffs. *See id.*, Exh. 16; Rathle Decl., 19-26, 31-34.

iGov used the Neo4j® Mark in the same manner on its website and made similar misleading statements.  *See, e.g.,* Ratinoff Decl., Exhs. 15-18, 21, 62-64, 67-69.  iGov went further by using the Neo4j® Mark as a URL address, in the email address "**neo4j@igovsol.com**" for users to request more information about Neo4j® Software *from iGov* and repeatedly using "Government Packages for Neo4j" and "Neo4j Enterprise" to describe Suhy and iGov's patchwork binaries of Neo4J® EE. *See id.* (purple highlight). The PT Defendants also repeatedly touted their prior relationship with Neo4j USA and claimed to be "the developer of the retired Neo4j Government Edition."  *See id.*

The PT Defendants knew these uses were unauthorized since the same trademark guidelines they had agreed to be bound by prohibited the use of the Neo4j® Mark with anything other than "the software in the exact binary form that it is distributed by [Neo4j], without modification of any kind." *See* Ratinoff Decl., Exh. 4 at § 4.1; Rathle Decl., ¶¶ 15-16, Exh. 5.  Likewise, these guidelines prohibited the use of the Neo4j® Mark "in a web page title, titletag, metatag, or other manner with the intent or the likely effect of influencing search engine rankings or results listings." *Id.*  Thus, there

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9
- 22 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   is no question that any reasonable trier of fact would find the aforementioned uses of the Neo4j®

2   Mark by an ex-licensee would create consumer confusion over the PT Defendants being endorsed by

3   or affiliated with Plaintiffs, and that their recompiled "Neo4j Enterprise" was identical to official

4   Neo4j® EE or otherwise endorsed by Plaintiffs.  *See Wetzel's Pretzels, LLC v. Johnson*, 797

5   F.Supp.2d 1020, 1028 (C.D. Cal. 2011) ("[c]ontinued use by former ... licensee of the mark

6   constitutes a fraud on the public, since they are led to think that the continuing user is still connected

7   with the trademark owner"); *see also Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F.Supp.3d 1136, 1143

8   (N.D. Cal. 2015) (not fair use because defendant's use of Adobe's marks was not intended to describe

9   Adobe's product, but rather to make it appear that the software was sanctioned by Adobe for sale and

10   distribution).  Thus, the PT Defendants indisputably have infringed the Neo4j® Mark.

11       Suhy and iGov cannot escape liability for infringement as an ex-licensee simply because they

12   were never a Neo4j Solution Partner.  Under Section 10 of the Partner Agreement, PureThink agreed

13   that all contractual restrictions would apply to any successor-in-interest, assign, and acquirer of

14   substantially all of its assets.  Ratinoff Decl., Exh. 4.  Suhy told Neo4j and then bragged on the PT

15   Defendants' websites that they formed iGov to circumvent the restrictions imposed by the Partner

16   Agreement.  *See, e.g., id.,* Exhs. 11, 14-15; *see also* Exh. 3 at 46:12-16.  Suhy is sole owner and

17   employee of both entities, used the same website template, and initially used the same offices and

18   support telephone number for both entities. *See id.* Exh. 3 at 21:23-22:22, 23:16-18, 37:3-38:16, 39:6-

19   40:23, 47:20-49:8, 52:9-11.  Suhy also used both his iGov and PureThink email accounts to solicit

20   customers that he had previously contacted under the Partner Agreement.  *See, e.g., id.,* Exhs. 19, 25,

21   29, 45-46, 54; and Dkt. No. 72 at ¶¶ 23-24.  iGov even took over PureThink's business relationship

22   with the IRS without skipping a beat.  *See id.* Exh. 3 at 53:4-54:25; Exh. 127.  Thus, it is indisputable

23   that PT Defendants acted as unified infringers of the Neo4j® Mark.

24       Controlling California law does not permit an individual or entity to circumvent its legal

25   obligations by fraudulently forming a purportedly separate, entity.  *Automotriz Del Golfo De*

26   *California S.A. de C.V. v. Resnick*, 47 Cal.2d 792, 796 (1957); *Ultratech, Inc. v. Ensure NanoTech*

27   *(Beijing), Inc.*, 108 F.Supp.3d 816, 826-27 (N.D. Cal. 2015) (enforcing confidentiality protections

28   personally against corporate president who started competing business; noting, "it would be plainly

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9                                    - 23 -

1    inequitable" for corporate president to escape personal liability for breach of a contract).  Rather,

2    California law treats such related entities as alter egos, each bound by the same obligations and each

3    responsible for the others unlawful conduct.  *See SEC v. Rose Fund, LLC*, 2013 WL 1345, at *2 (N.D.

4    Cal. Apr. 2, 2013) (finding alter ego liability when defendant was the sole officer, agent, and

5    signatory for two companies).  Consequently, iGov is equally bound by the Partner Agreement, and

6    equally liable as an ex-licensee for infringing the Neo4j® Mark.

7         Even if Suhy and iGov did not operate as PureThink's alter egos, they still cannot claim

8    nominative fair use of the Neo4j® Mark.  The PT Defendants cannot establish the first *Toyota* prong

9    because they did not use the Neo4j® Mark to describe Plaintiffs' products.  "To qualify for a fair use

10   defense, the use must not 'create an improper association between a mark and a new product' but

11   must, instead, 'merely identify the trademark holder's products.'" *Horphag Research Ltd. v. Garcia*,

12   475 F.3d 1029, 1037–38 (9th Cir. 2007) (internal citation omitted); *accord Playboy Enterprises, Inc.*

13   *v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030 (9th Cir. 2004).  Rather than calling their

14   patchwork version of "Neo4j Enterprise" something else as required by the guidelines, they made the

15   calculated decision to "appropriate the cachet of" the Neo4® Mark to pass off their inferior "Neo4j

16   Enterprise" packages and related support services.  *See Horphag*, 475 F.3d at 1038.

17        The evidence is also indisputable that PT Defendants prominently used the Neo4j® Mark on

18   iGov's website far beyond what was reasonably necessary.  Indeed, their use of the Neo4j® Mark in

19   iGov's email address and URL address does nothing to comparatively advertise their lesser copies of

20   Neo4j® EE.  *See Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*, 2010 WL 2104239, at

21   *6 (W.D. Wash. May 19, 2010) (use of plaintiff's HENDRIX mark in defendants' URL addresses

22   and business names does not describe Plaintiffs' product but rather Defendants' own product-the

23   marketing and licensing of Jimi Hendrix related goods).  It was also unnecessary as iGov's website

24   contains  two  far  less  prominently  featured  email  addresses,  "info@igovsol.com"  and

25   "support@igovsol.com," at the bottom of various iGov webpages.  *See, e.g.,* Ratinoff Decl., Exhs.

26   15, 63-64.  Likewise, the only reason for the PT Defendants to use the Neo4j® Mark in one of iGov's

27   URLs is to make it more likely that the web page will be "hit" in a search for "Neo4j" and the higher

28   on the list of "hits" the web page will appear.  *See Brookfield*, 174 F.3d at 1045.  This is not fair use.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                    - 24 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   *See id.* at 1066; *see also Experience Hendrix*, 2010 WL 2104239, at *6.

2          Finally, the PT Defendants calling their patched together binaries "Neo4j Enterprise" and

3   bundling of support services as the "Government Package for Neo4j" strongly suggests sponsorship

4   and endorsement by Neo4j USA.  To be sure, they repeatedly assure potential customers both on

5   iGov's website and direct solicitation via email that their version of  "Neo4j Enterprise" was the

6   "same official Neo4j Github Repositories as Neo4j Inc uses for their paid commercial licensed

7   builds" except distributed under an open source license.  *See, e.g.*, Ratinoff Decl., Exhs. 15, 18-19,

8   21.  This would lead any trier of fact to find that a reasonable consumer would assume it is getting

9   official Neo4j® EE for free, when in fact, it is receiving an unlicensed, lesser quality build of that

10  software.  Thus, the Court should grant partial summary judgment in favor of Neo4j USA on its

11  trademark infringement claims based on Defendants' non-ONgDB related use of the Neo4j® Mark.

12          **C.        Defendants Did Not Fairly Use the Neo4j® Mark in Promoting ONgDB**

13         Defendants' extensive use of the Neo4j® Mark in conjunction with marketing ONgDB

14  v3.5.x does not amount to nominative fair use and instead amounts to a concerted effort to

15  "appropriate the cachet of one product for a different one."  *New Kids on the Block*, 971 F.2d at 308-

16  309; *Horphag*, 475 F.3d at 1038.  As an initial matter, ONgDB can be readily identified as "Open

17  Native Graph Database" without use of Neo4j® Mark. *See* Ratinoff Decl., Exh. 31 at 27:17-29:9,

18  178:13-179:25, Exhs. 86, 88.  Nonetheless, Defendants will argue that describing ONgDB as a fork

19  of Neo4j® EE is necessary to explain the origin of ONgDB.  This argument is untenable because

20  they ***extensively*** used the Neo4j® Mark (albeit without proper trademark usage and notices) on their

21  websites, in direct solicitations to customers and on GFI's Github repository far beyond what was

22  reasonably necessary to describe ONgDB as a divergent fork of Neo4j® EE, and most often to

23  impermissibly promote ONgDB.  *See Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019

24  WL 1586776, at *5 (N.D. Cal. Apr. 12, 2019) ("[i]n nominative fair use, the defendant uses the

25  trademarked term not to describe its product but to describe the plaintiff's [product]").

26         As detailed above in Section II.F., GFI initially copied the landing page on Plaintiffs' GitHub

27  repository without any overt reference to ONgDB.  At the time that Plaintiffs filed suit, GFI's ONgDB

28  repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software,

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                            - 25 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used

2    "Neo4j" *instead* of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59.  This does not amount

3    to fair use because GFI is using the Neo4j® Mark to refer to and promote ONgDB and not carefully

4    identify Plaintiffs' product.  *See Horphag*, 475 F.3d at 1037-38.

5          The continued use of the Neo4j® Mark on iGov's website as (1) an URL address for a page

6    promoting *ONgDB*; (2) an email address for customers to obtain more information about *ONgDB*;

7    and (3) a hyperlink to redirect consumers to download *ONgDB* also does not qualify as nominative

8    fair use.  *See, e.g.,* Ratinoff Decl., Exhs. 62-65, 67-69; Exh. 13 [RFA Nos. 10-11, 14].  This is because

9    they are using the Neo4j® Mark to promote ONgDB and create an improper association with

10   Plaintiffs and that mark.  *See Horphag,* 475 F.3d at 1037–38; *Playboy*, 354 F.3d at 1030; *Experience

11   Hendrix*, 2010 WL 2104239, at *6.  This is also far more than what is necessary to simply identify

12   ONgDB as a fork of Neo4j® EE.  *See id.*

13         Likewise, Defendants' (1) conspicuous use of "neo4j," "neo4j enterprise" and "Neo4j

14   Enterprise" without proper trademark notices; (2) use of embedded "Neo4j" links to Neo4j USA's

15   website and GitHub repository; (3) hyperlinking to Plaintiffs' build instructions, support

16   documentation and change logs containing the Neo4j® Mark rather than creating and hosting their

17   own with the ONgDB name; and (4) interchangeable use of "Neo4j Enterprise" and "ONgDB" to

18   promote ONgDB on their websites goes well beyond what is reasonably necessary to identify GFI's

19   ONgDB products as a fork of Neoj4® EE.  *See supra* Sections II.I. and II.J.; *see also* Ratinoff Decl.,

20   Exhs. 37, 57-58, 62-70, 75; Dkt. No. 89, ¶¶ 3-16.  Any reasonable trier of fact would find Defendants'

21   extensive use of the Neo4j® Mark to be the misappropriation of the associated goodwill and imply

22   endorsement by Neo4j USA and confusion over the source of ONgDB.  *See Horphag,* 475 F.3d at

23   1037–38; *Playboy*, 354 F.3d at 1030; *Experience Hendrix*, 2010 WL 2104239, at *6.

24         Perhaps the most *unfair* use of the Neo4j® Mark has been via GFI's Twitter account.  *See

25   supra* Section II.K.  It is undisputed that GFI used a hastag, **#Neo4j** that consists of nothing more

26   than the Neo4j® Mark with a "#" before the Mark.  *See, e.g.,* Ratinoff Decl., Exhs. 1, 89-96.  GFI

27   prominently used the Neo4j® Mark as a hashtag to announce its new releases of ONgDB without

28   differentiating ONgDB and Neo4j® EE as separate, competing products: "**#ONgDB (#FOSS#Neo4j**

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                                - 26 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

Enterprise) 3.5.x support release is out." *See, e.g., id.*, Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25, 246:5-249:2.    GFI issued a similar tweet that stated "**#ONgDB**, Open **#Neo4j** Enterprise," and in at least one instance tweeted as if ONgDB and Neo4j® EE were the same thing: "Our **#ONgDB/#Neo4j** Enterprise CI server is up and running builds…." *Id.,* Exhs. 91, 93.    In another instance, GFI did not even refer to "Neo4j Enterprise" and simply used **#Neo4j** to promote ONgDB without reference to Neo4j® EE: "Latest **#ONgDB** apoc 3.5.0.8 procedure release is out. https://github.com/graphfoundatio... **#Neo4j."** *Id.*, Exh. 96.

None of these tweets qualify as nominative fair use. *See Align Tech.,* 2019 WL 1586776, at *5 (defendants' use of plaintiffs' mark as hashtags does not qualify as nominative because defendant used the marks to refer to its own product); *see also Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1009 (9th Cir. 2001) (defendant was not entitled to the nominative fair use defense when it used a photograph of the plaintiffs in its catalog for the purpose of selling its own goods rather than in order to refer to the plaintiffs for any purpose).    To be sure, GFI ***admitted*** that it intentionally used the Neo4j® Mark as a hashtag "to inform users about ONgDB" and to make it more likely that potential customers would come across ONgDB in conducting searches in relation to Neo4j® EE.    Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14-243:21.    It is this exact function of hashtags that does not amount to fair use. *See Align Tech.*, 2019 WL 1586776, at *7 (recognizing that defendants' use of plaintiff's mark as hashtags was not fair use because it would result in defendants' ads to come up in response to consumer's searches using plaintiffs' mark).

GFI's use of the Neo4j® Mark as a hashtag fails the second prong of nominative fair use test because it constitutes use of that mark, more than that which is reasonably necessary to identify GFI's product. *See Align Tech.*, 2019 WL 1586776, at *6 (holding that use of plaintiff's mark in hashtags was not reasonably necessary to identify defendant's product).    To be sure, GFI admitted that it could have referred to "Neo4j Enterprise" without using the Neo4j® Mark as a hashtag to identify the product. *See* Ratinoff Decl., Exh. 31 at 236:4-15.    It also conceded that it could have used a format where it described ONgDB as being a fork of Neo4j® EE rather than simply inserting "**#Neo4j** Enterprise" with "**#ONgDB**." *See id*., Exh. 31 at 243:23-245:12; Exh. 93.

Finally, it cannot be said that GFI did nothing that would suggest sponsorship or endorsement

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                              - 27 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

by Neo4j USA. Rather, GFI's use of the Neo4j® Mark as hashtag "will inspire a mistaken belief on the part of the consumers that the speaker is ***sponsored or endorsed*** by the trademark holder." *Toyota*, 610 F.3d at 1176 (emphasis added); *see also Public Impact, LLC v. Boston Consulting Group, Inc.*, 169 F. Supp. 3d 278, 295 (D. Mass 2016) (use of competitor's mark in social media hashtag "likely" to confuse "even a sophisticated consumer").  As confirmed by GFI, the intended audience for the Neoj4® Mark as a hashtag are users of Neo4j® EE, and as result, there is a strong implied association between Plaintiffs and ONgDB.  *See Align Tech.*, 2019 WL 1586776, at *7.  Accordingly, Defendants have not engaged in the fair use of the Neo4j® Mark on Twitter and have infringed on the Neo4j® Mark by using it as a hashtag.[5]

## VI.    NEO4J USA IS ENTITLED TO SUMMARY JUDGMENT ON ITS FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN CLAIMS

### A.    Applicable Legal Standards for False Advertising Claims Under the Lanham Act and California's UCL

A false advertising claim under Section 1125(a)(1)(B) of the Lanham Act requires proof that (1) Defendants made a false statement of fact about a product in a commercial advertisement, (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience, (3) the deception is material, (4) Defendants caused the false statement to enter interstate commerce, and (5) Neo4j USA has been or is likely to be injured as a result of the false statement.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).   Similarly, a claim for false designation of origin under Section 1125(a)(1)(A) requires proof that Defendants: (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question.  *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F.Supp.3d 1156, 1170 (N.D. Cal. 2015).

Proof establishing these Lanham Act claims will also establish Neo4j USA's UCL claim.

---

[5] While *Toyota* makes clear that the fair use test replaces the *Sleekcraft* for determining trademark infringement, some courts have used the latter to assist in determining consumer confusion after finding that a defendant cannot rely upon nominative fair use. *See, e.g., Align Tech.*, 2019 WL 1586776, at *7.  As detailed *infra* in Section IV.C., these factors favor a finding that consumers are likely to be confused by Defendants' use of the Neo4j® Mark.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                          - 28 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   *See Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (UCL claims are "substantially

2   congruent to claims made under the Lanham Act").  As discussed below, Neo4j USA is entitled to

3   partial summary judgment on its false advertising claims and an injunction to restrain Defendants

4   from further misconduct.  Neo4j USA intends to separately seek to prove-up its actual damages

5   suffered once it obtains discovery from GraphGrid and AtomRain about their support of customers

6   using ONgDB, and also seek trebling of those damages and its attorneys' fees.

7           **B.      Defendants' Engaged in False Advertising in the Promotion of ONgDB**

8           Defendants' representations concerning ONgDB constitute commercial advertising or

9   promotion for Lanham Act purposes if they are (1) commercial speech; (2) made in commercial

10  competition with the plaintiff; (3) for the purpose of influencing consumers to buy their goods or

11  services and (4) sufficiently disseminated to the relevant purchasing public. *Coastal Abstract Serv.*

12  *Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).  More informal types of promotion,

13  such as statements made via websites, emails and social media qualify a commercial advertisement.

14  *See Healthport Corp. v. Tanita Corp. of Am.*, 563 F.Supp.2d 1169, 1178 (D. Or. 2008), *aff'd*, 324

15  F.App'x 921 (Fed. Cir. 2009) (holding that statements made on website were advertisements placed

16  into interstate commerce); *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F.Supp.2d 975, 982 (N.D. Cal.

17  2008) (likelihood of success on interstate commerce element met where defendant had disseminated

18  the misleading statement via email and on its website).  To demonstrate falsity of such a

19  representation, Plaintiffs "may show that the statement was literally false, either on its face or by

20  necessary implication, or that the statement was literally true but likely to mislead or confuse

21  consumers." *Southland Sod*, 108 F.3d at 1139.

22          Defendants have made the following misrepresentations in the advertisement and promotion

23  of ONgDB in interstate commerce via their websites and Twitter: (1) "ONgDB distributions are

24  licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial

25  licensed distributions with the same version number" [Ratinoff Decl., Exh. 57]; (2) "ONgDB and

26  Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under

27  the AGPLv3" [*id.*, Exh. 58]; (3) "ONgDB distributions are licensed under AGPLv3 as a free and

28  open source alternative to currently available proprietary native graph offerings such as Neo4j

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9                                          - 29 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1   Enterprise Edition" [*id.,* Exhs. 60, 113-114]; (4) "download ONgDB Enterprise as a drop in

2   replacement for an existing commercial licensed distribution of the same version number." [*id.,* Exhs.

3   62-66]; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages

4   downloaded from Neo4j.com" [*id.,* Exhs. 62-66, 71]; (6) "ONgDB Enterprise 3.5.5…. Drop in

5   replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on

6   causal cluster instances, cores, or production usage" [*id.,* Exhs. 67-69; *see also* Exh. 75]; (7) "ONgDB

7   is a drop in replacement for the Neo4j Community and Enterprise branded distributions" [*id.*, Exh.

8   72-74 (green highlight)]; (8) "[ONgDB] is an open source fork of #Neo4j" [*id.*, Exh. 93]; (9) "You

9   can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free

10  and open." [*id.,* Exh. 98; *see also* Exhs. 99-104, 108]. The PT Defendants also misrepresented on

11  iGov's website that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is

12  released only under the standard AGPLv3 open source license that is managed by the free software

13  foundation." *See id.,* Exhs. 67-70; *see also* Exh. 21.

14      It is undisputed that these statements about ONgDB were made in commercial competition

15  with Plaintiffs. Defendants actively encourage actual and potential users of commercially licensed

16  Neo4j® EE to adopt ONgDB for free and pay iGov and GraphGrid for support services instead of

17  Plaintiffs based on such statements. *See* Ratinoff Decl., Exhs. 23, 28-29, 42-55, 76-77, 126, 134-

18  135. These statements are also false on their face or by necessary implication for two reasons.

19      First, ONgDB is neither free, nor open source Neo4j® EE. The Neo4j Sweden Software

20  License did not permit Defendants to remove the commercial restrictions imposed by the Commons

21  Clause and replace that license with a "pure" AGPL. This is confirmed by the plain language of the

22  license. Section 10 states: "You may not impose any further restrictions on the exercise of rights

23  granted or affirmed under this License." Rathle Decl., Exh. 3. Section 7 states: "[i]f the Program as

24  you received it, or any part of it, contains a notice stating that it is governed by this License along

25  with a term that is a further restriction, you may remove that term." *Id.* Importantly, the AGPLv3

26  defines "you" as the licensee, not the licensor. *Id.,* Exh. 3 at § 0 ("Each licensee is addressed as

27  'you'"). Thus, read correctly, Sections 7 and 10 did not prohibit Neo4j Sweden as the copyright

28  holder and *licensor* from adding the Commons Clause. *See* GFI Dkt. No. 88 at 5:23-8:9.

Any other reading would nullify the entire purpose of a license agreement by negating Neo4j Sweden's exclusive right to license Neo4j® EE under the terms of its choosing. *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) ("copyright owners may … use their limited monopoly to leverage the right to use their work on the acceptance of specific conditions"); *Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("[c]opyright holders who engage in open source licensing have the right to control the modification and distribution of copyrighted material"). To be sure, GFI admitted on GitHub that only the copyright holder may change its license. *See* Ratinoff Decl.*,* Exh. 35, Exh. 31 at 183:14-184:24; *see also* Exh. 36. The FSF told Suhy the same and he never obtained a legal opinion before removal. *Id.*, Exh. 34.

Second, ONgDB is not a true drop-in replacement for equivalent versions of Neo4j® EE. This is because ONgDB contained source code files that were wrongly licensed under the AGPL in violation of Neo4j Sweden's copyright. *See Sun Microsystems*, 999 F.Supp. at 1301 (preliminarily enjoining Microsoft from advertising its product as "JAVA Compatible" where Microsoft, in violation of its license agreement with Sun, advertised its product as compatible, even though it failed to meet agreed-upon compatibility standards). In addition, as detailed in Section II.H., actual and potential users of ONgDB v3.5.x were not getting software that was of the same quality as Neo4j® EE or included all of the same features as Neo4j® EE. *See* Rathle Decl., ¶¶ 14, 19-22, 29-34. GFI even admitted that it could not describe ONgDB as drop-in replacement after version 3.5.4. Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. Yet, the PT Defendants continue to make such false statements for later versions of ONgDB. This amounts to false advertising. *See, e.g., EFCO Corp. v. Symons Corp.*, 219 F.3d 734 (8th Cir. 2000) (defendant was proven to have falsely claimed that its product was compatible and interchangeable with plaintiff's product); *Creative Labs, Inc. v. Cyrix Corp.*, 1997 WL 337553 (N.D. Cal. 1997) (finding that if 2 to 8 percent of products that function properly with plaintiff's product do not function with defendant's claimed "compatible" product, then defendant's claim of compatibility is false).

There is also no dispute that these statements have the tendency to deceive potential users of the parties' competing software products and the deception is material because they were intentionally made by Defendants. *Southland Sod*, 108 F.3d at 1146 ("'[p]ublication of deliberately

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO

842\3639184.9

- 31 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; 5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

false comparative claims gives rise to a presumption of actual deception and reliance'") (internal (citation omitted).  Likewise, actual deception and reliance are presumed in "false *comparative* advertising cases, where it is reasonable to presume that every dollar defendant makes has come directly out of plaintiff's pocket." *TrafficSchool.com, Inc. v. Edriver, Inc*., 653 F.3d 820, 831 (9th Cir. 2011) (emphasis in original).

Here, Defendants made these misrepresentations to convince customers to adopt ONgDB *over* Neo4j® EE.  Since Defendants misrepresented ONgDB as a *free* version of Neo4j® EE licensed under the APGL, there is no doubt that this was material to potential customers.  *See Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1106-1107 (9th Cir. 2013) (recognizing under the UCL that price is material to purchasing decisions).  To be sure, customers chose ONgDB over Neo4j® EE for this reason.  *See, e.g.,* Ratinoff Decl., Exhs. 47-49, 120 (Next Century); Exh. 53 (Tufin); Exh. 3 at 54:17-55:1, 224:13-23, 227:3-8, Exh. 38 at 23:14-24:4, Exh. 127 (IRS); Exh. 3 at 142:15-144:20 (DHS) *see also* Exh. 31 at 197:21-24; Exhs. 100, 114 (14,000 downloads), 134-135.  Defendants' deception is also material to customers' purchasing decisions because chosing ONgDB over Neo4j® EE unknowingly exposes them copyright infringement liability.

Finally, it is indisputable that Plaintiffs have been injured as a result of the above false advertisements, and are entitled to injunctive relief.  This is because commercial injury is generally presumed "when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." *TrafficSchool.com*, 653 F.3d at 826; *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1393 (2014) ("diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising"); *Southland Sod,* 108 F.3d at 1145–46 ("even if Plaintiffs had failed to raise a triable issue as to causation and injury, their Lanham Act claim would still be viable to the extent it sought an injunction").  Nonetheless, there is undisputed evidence that Defendants' false statements diverted sales from Neo4j USA.  *See, e.g.*, Ratinoff Decl., Exhs. 47-50, 53, 120, 127; Exh. 3 at 53:4-54:25, 224:13-23; Broad Decl., ¶¶ 20-24.  Indeed, Neo4j USA lost multi-year deal with Next Century/MPO adopting ONgDB, amounting to over $2.2 million in lost revenue.  Broad Decl., ¶¶ 22-24, Exhs. 12-13.

None of the customers that adopted ONgDB over Neoj4® EE could have legally done so but

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9

- 32 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

1    for Defendants' removal of the commercial restrictions imposed by the Neo4j Sweden Software

2    License.  The Court should thus grant partial summary judgment in favor of Neo4j USA on its

3    Lanham Act false advertising claim and mirror California UCL claim.

4          **C.    Defendants Engaged in the False Designation of Origin in Promoting ONgDB**

5          The evidence establishing Defendants' statements amounting to false advertising in violation

6    of Section 1125(a)(1)(B) supports the Court granting summary judgment in favor Neo4j USA on its

7    false designation of origin claim under Section 1125(a)(1)(A).  Again, it is indisputable that

8    Defendants' representations concerning ONgDB being free and open source Neo4j® EE under the

9    AGPL were made in commerce and were false and misleading thereby establishing the first two

10   elements.  As for the third, "[t]he test for likelihood of confusion is whether a 'reasonably prudent

11   consumer' in the marketplace is likely to be confused as to the origin of the good or service."

12   *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

13         In order to make this determination, courts will use the *Sleekcraft* factors to assist in the

14   analysis: (1) strength of the mark; (2) relatedness of the goods; (3) similarity of sight, sound and

15   meaning, (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser

16   care, (7) intent, and (8) likelihood of expansion.  *See Obesity Research Inst., LLC v. Fiber Research*

17   *Int'l, LLC*, 165 F. Supp. 3d 937, 949-50 (S.D. Cal. 2016).  However, [w]here the use of a name or

18   mark is identical to that of the plaintiff on the very same goods and services for which the plaintiff

19   uses the name or mark, that alone can be 'case-dispositive' before a full balancing of the *Sleekcraft*

20   factors." *AECOM Energy & Constr., Inc. v. Ripley*, 348 F.Supp.3d 1038, 1052 (C.D. Cal. 2018).

21         Here, it is undisputed that the Neo4j® Mark is inherently distinctive and Plaintiffs have used

22   it in commerce since 2007, and as a result has gained strong brand recognition via various awards

23   and recognition in the graph database software market (factor 1).  *See* Broad Decl., ¶¶ 2-19, Exhs. 1-

24   11. There is also no dispute concerning the relatedness of the goods and the similarity of sight, sound

25   and meaning because Defendants promote ONgDB *as being Neo4j® EE* except that they are free

26   and licensed without restrictions under the AGPL (factors 2-3).  *See Cisco Sys., Inc. v. Shenzhen*

27   *Usource Tech. Co.*, 2020 WL 5199434, at *8 (N.D. Cal. Aug. 17, 2020).  And, Defendants' use of

28   the Neo4j® Mark to promote Plaintiffs' software with an improperly modified copyright license

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                                      - 33 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

shows that they intend to copy them and confuse the public (factor 7). *See id.* The undisputed evidence also shows that Defendants have targeted the same customer base via the internet, and in particular the government sector where the PT Defendants bid against Plaintiffs (factors 5 & 8). *See, e.g.,* Ratinoff Decl., Exhs. 14-15, 18, 25, 29, 37, 45-55, 57, 60-61, 65-66, 76-77, 120, 127, 130-132.

Finally, as detailed above in Section II.L., there is evidence of actual consumer confusion over ONgGB properly licensed under the AGPL and a true drop-in replacement for official Neo4® EE without the restrictions imposed by the Neo4j Sweden Software License (factor 4). Accordingly, the Court should also grant summary judgment in favor of Neo4j USA on its false designation of origin claim and enjoin Defendants from engaging in further misconduct.

## VII. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

The Lanham Act vests the Court with the "power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of the trademark owner. 15 U.S.C. § 1116(a); *see Century 21 Real Estate LLC v. Ed/Var Inc.*, 2014 WL 3378278, at *6 (N.D. Cal. July 10, 2014) (issuing a permanent injunction after granting summary judgment on plaintiff's Lanham Act claims); *AECOM*, 348 F. Supp. 3d at 1061-62 (same). To obtain an injunction, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014).

If the Court does not enjoin Defendants, Neo4j USA will suffer irreparable injury from the ongoing damage to its goodwill as a result of their deceptive tactics in marketing ONgDB. S*ee Herb Reed Enters., LLC v. Florida Entertainment Management*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm"); *Sun Microsystems*, 999 F. Supp. at 1311 ("a plaintiff demonstrates a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable injury if injunctive relief is not granted"). As detailed above, there is compelling evidence that Neo4j USA has suffered a loss to control over the Neo4j® brand and associated goodwill as result of Defendants' unauthorized

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto

842\3639184.9

- 34 -

PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

"relicensing" of Neoj4® EE under the AGPL and falsely calling ONgDB a free and unrestricted drop-in replacement for official Neo4j® EE.  It is also clear that Defendants will continue to do so unless enjoined by the Court.  Further, the balance of hardships favors Neo4j USA.  *See Diller v. Barry Driller, Inc.*, 2012 WL 4044732, at \*10 (C.D. Cal. Sept. 10, 2012) ("no hardship to cease intentionally infringing someone else's trademark rights"); *Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, 2014 WL 4679001, at \*13 (C.D. Cal. Sept. 18, 2014) ("There is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law.").

Finally, the public interest is served by enjoining Defendant from using the Neo4j® Mark and making false statements about ONgDB being free and open source software under the AGPL. *See Stark v. Diageo Chateau & Estate Wines Co.*, 907 F.Supp.2d 1042, 1067 (N.D. Cal. 2012) ("Preventing consumer confusion serves the public interest"); *accord Cisco Sys.*, 2020 WL 5199434, at \*9.  Likewise, the public interest favors an injunction because there has been actual confusion.  *See Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009) ("[t]he public has an interest in avoiding confusion between two companies' products").  It would be further served by preventing Defendants from inducing unsuspecting customers to use improperly licensed software in violation of Neo4j Sweden's copyright.

## VIII.  CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court (1) grant partial summary judgment in favor of Neo4j USA on its Lanham Act and UCL claims and against Defendants on their nominative fair use defense; (2) enter a permanent injunction as set forth in the proposed order filed herewith; (3) allow for follow-up party and third party discovery related to Neo4j's damages; and (4) schedule further proceedings for Plaintiffs to prove up their damages and/or the disgorgement of Defendants' ill-gotten gains from their infringement.

Dated:  December 11, 2020                    HOPKINS & CARLEY
                                             A Law Corporation


                                             By:   */s/ Jeffrey M. Ratinoff*
                                             Jeffrey M. Ratinoff
                                             Attorneys for Plaintiffs
                                             NEO4J, INC. and NEO4J SWEDEN AB

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO

842\3639184.9                    - 35 -
PLAINTIFFS' CONSOLIDATED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;  5:18-CV-07182-EJD AND 5:19-CV-06226-EJD

**EXHIBIT A**

**NEO4J INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Trademark Infringement Against the PT Defendants and Their Nominative Fair Use Defense** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | <u>Fact 1</u>: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, and 045 (the "Neo4j® Mark"). Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | |
| 2. The PT Defendants impermissibly used the Neo4j® Mark after Neo4j USA terminated the Partner Agreement | <u>Fact 2</u>: On September 30, 2014, Purethink and Neo4j USA entered into the Neo4j Solution Partner Agreement ("Partner Agreement"). Ratinoff Decl., Exh. 4. | |
| | <u>Fact 3</u>: Under the Partner Agreement, PureThink was granted a non-exclusive, non-transferable limited license to, *inter alia*, use the Neo4j® Mark solely to market and resell commercial licenses to Neo4j® Enterprise Edition ("Neo4j® EE") and related support services in exchange for shared revenue for the licenses that it resold. *Id.*, Exh. 4 at § 4.1; Exh. 3 at 60:10-61:17, 67:25-69:11. | |
| | <u>Fact 4</u>: PureThink further agreed to the terms of the limited license under the Partner Agreement to use the Neo4j® Mark in accordance with Neo4j USA's "then-current trademark usage guidelines." *Id.*, Exh. 4 at § 4.1. | |
| | <u>Fact 5</u>: The Partner Agreement was subject to a 1-year term, and would automatically renew at additional 1-year periods subject to the notice and termination provision therein, thereby incorporating whatever was the operative trademark guidelines at that time. Ratinoff Decl., Exh. 4 at §7.1; Exh. 3 at 67:18-24. As a result of the renewal provision, PureThink became bound by the October 13, 2015 version of Neo4j USA's trademark guidelines as of September 30, 2016. *See* Rathle Decl., ¶ 16, Exh. 5. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 6: All rights and licenses to Neo4j® Software and the Neo4j® Mark would terminate upon the expiration or termination, and upon such an event, PureThink agreed to "cease using any trademarks, service marks and other designations of Plaintiffs."  Ratinoff Decl., Exh. 4 at §7.3. | |
| | Fact 7: On July 11, 2017, Neo4j terminated the Partner Agreement thereby requiring PureThink to "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement. Ratinoff Decl., Exh. 12. | |
| | Fact 8: PureThink continued to use the Neo4j® Mark without Neo4j USA's authorization to send customers to iGov to obtain "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise."  *See* Ratinoff Decl., Exh. 14.  It also promoted "Neo4j Enterprise" as genuine Neo4j® EE despite being compiled by Suhy.  *See id.*, Exh. 16. | |
| | Fact 9: Under the Partner Agreement, PureThink agreed that all contractual restrictions would apply to any successor-in-interest, assign, and acquirer of substantially all of its assets.  Ratinoff Decl., Exh. 4 at § 10. | |
| | Fact 10: Suhy and PureThink formed iGov on or about June 23, 2017 to circumvent the restrictions in Section 4.3.1 of the Partner Agreement. Ratinoff Decl., Exhs. 10-11, 14-15, 17-19; PT Dkt. No. 22, ¶¶ 18-19; *see also* Exh. 3 at 46:12-16, PT Dkt. No. 72 at 8:22-25, 9:15-23. | |
| | Fact 11: Suhy is sole owner and employee of PureThink and iGov, used the same website template, and initially used the same offices and support telephone number for both entities. Ratinoff, Decl, Exh. 3 at 21:23-22:22, 23:16-18, 37:3-38:16, 39:6-40:23, 47:20-49:8, 52:9-11. | |
| | Fact 12: Suhy used both his iGov and PureThink email accounts to solicit customers that he had previously contacted under the Partner Agreement.  Ratinoff, Decl., Exhs. 19, 25, 29, 45-46, 54. | |
| | Fact 13: iGov took over PureThink's business relationship with the IRS. Ratinoff, Decl, Exh. 3 at 53:4-54:25; Exh. 127. | |

842\3658210.3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 14: The PureThink Defendants ("PT Defendants") claimed to be "the developer of the retired Neo4j Government Edition" in close connection with touting their prior relationship with Neo4j USA. Ratinoff Decl., Exhs. 15-19, 21, 62-64. | |
| | Fact 15: iGov used the Neo4j® Mark on its website without authorization to promote "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise," and related support services. *See* Ratinoff Decl., Exhs. 15-18, 21, 62-64. | |
| | Fact 16: iGov's other unauthorized uses of the Neo4j® Mark on its website included: (1) using "https://igovsol.com/**neo4j**.html" as a URL to promote "Government Development Packages for **Neo4j**"; (2) prominently displaying a "Request Procurement Document Package" link with "**mailto:neo4j@igovsol.com**" embedded that creates an email addressed thereto upon activation; (3) encouraging consumers to obtain more information by sending an email to "**neo4j@igovsol.com**;" (4) using "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's patchwork binaries of Neo4J® EE; and (5) touting PT Defendants' prior relationship with Neo4j USA and to be "the developer of the retired Neo4j Government Edition." Ratinoff Decl., Exhs. 15-18, 21, 62-64, 67-69. | |
| | Fact 17: iGov continues to offer "Neo4j enterprise open source licensed distributions" and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on its website.   Ratinoff Decl., Exhs. 62-70 (highlighted in yellow). | |
| 3.  The PT Defendants used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | Fact 18:  After Graph Foundation ("GFI") released ONgDB in July 2018, iGov continued to use "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that page sometime after July 27, 2020.  Ratinoff Decl., Exhs. 62-65; Exh. 13 at RFA No. 5.  While iGov replaced this url with "https://igovsol.com/graph.html," the contents of the page remained the same. *Compare id.*, Exh. 65 *and* Exh. 66. | |
| | Fact 19:  iGov used the neo4j@igovsol.com email address on its "neo4j.html" page (*id.*, Exhs. 62-65) and "downloads.html" page (*id.*, Exhs. 67-69) as means for consumers to inquire about ONgDB until sometime in July 2020.  Ratinoff Decl., Exh. 13 at RFA Nos. 7-11. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 20:** GFI used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020.  Ratinoff Decl., Exhs. 66-68 (highlighted in red), Exh. 13 at RFA Nos. 10, 14. | |
| | **Fact 21:** iGov continues to promote "ONgDB Enterprise," "Neo4j Enterprise" and "Neo4j Enterprise Edition" versions 3.5.x as open source Neo4j® EE that can be used for free under the AGPL.  Ratinoff Decl., Exhs. 62-74. | |
| | **Fact 22:** iGov operated www.graphstack.io to further promote ONgDB using the Neo4j® Mark, and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies."  Ratinoff Decl., Exh. 75. | |
| | **Fact 23:** The GraphStack website used hyperlinks to redirect consumers to Neo4j USA's official release notes and "What's New" page in conjunction with encouraging consumers to download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise 3.5.3." Ratinoff Decl., Exh. 75; Exh. 13 [RFA Nos. 42-43]. | |
| 4. The PT Defendants knew their uses of the Neo4j® Mark were unauthorized and violated Neo4j USA's Trademark Guidelines | **Fact 24:**  The trademark guidelines the PT Defendants had agreed to be bound by in the Partner Agreement prohibited the use of the Neo4j® Mark: (1) with anything other than "the software in the exact binary form that it is distributed by [Neo4j], without modification of any kind;" and (2) "in a web page title, titletag, metatag, or other manner with the intent or the likely effect of influencing search engine rankings or results listings." Ratinoff Decl., Exh. 4 at § 4.1; Rathle Decl., ¶¶ 15-16, Exh. 5; *see also* Exh. 4 at §7.1; Exh. 3 at 67:18-24 | |
| | | |
| 5. The PT Defendants did not use the Neo4j® Mark to describe Plaintiffs' products | **Fact 25:** The PT Defendants used the Neo4j® Mark to promote their "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise" rather than comparatively describe Plaintiffs' Neo4j® EE.  Ratinoff Decl., Exhs. 14-18, 21, 62-65. | |
| | **Fact 26:** The PT Defendants often used the Neo4® Mark to promote ONgDB instead of to comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 62-74; Exh. 13 [RFA Nos. 4-11, 14]. | |

4

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 27: The PT Defendants used the Neo4j® Mark on iGov's website as (1) an URL address for a page promoting their "Neo4j Enterprise" packages and ONgDB; (2) an email address for customers to obtain more information about their "Neo4j Enterprise" packages while referring to ONgDB; and (3) a hyperlink to redirect consumers to download ONgDB.  Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | |
| 6. Defendant's product was readily identifiable without use of plaintiffs' trademark | Fact 28: Rather than naming their version of Neo4j® EE something else without using the Neo4j® Mark, the PT Defendants used the mark to name and promote their "Neo4j Enterprise" packages and while referring to ONgDB, as well as using the Neo4j® Mark to offer related support services for ONgDB.   Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | |
| | Fact 29: Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, the PT Defendants used the mark to promote ONgDB and related support services for ONgDB.  Ratinoff Decl., Exhs. 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14]. | |
| 7. The PT Defendants prominently used the Neo4j® Mark beyond what was reasonably necessary | Fact 30: The PT Defendants extensively used the Neo4j® Mark (without proper trademark usage and notices) on their website, and in direct solicitations beyond describing "Neo4j Enterprise" packages and ONgDB as a forks of Neo4j® EE.  Ratinoff Decl., Exhs. 14-18, 24-26, 42-47, 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | |
| 8. The PT Defendant's use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA | Fact 31:   The PT Defendants claimed that (a) "By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's open source license!" [Ratinoff Decl., Exhs 14-15]; (b) "The packages on this page are compiled by iGov Inc using the official Neo4j source code repositories located at https://github.com/neo4j" [id., Exh. 16]; (c) "US Federal Government Packages for Neo4j Solutions" [id., Exh. 17]; (d) "Government Development Packages for Neo4j" [id.]; (5) "iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's [sic] free Open Source license!" [id., Exh. 18]; (e) "Get the open source licensed Neo4j Enterprise distributions we package for our government customers" [id., Exh. 21]; (f) "We compile and packaged the open source licenced [sic] distributions from the same official Neo4j | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Github Repositories as Neo4j Inc uses for their paid commercial licensed builds" [*id*.]; (g) "I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. If you don't know about Neo4j - here is their website: http://neo4j.com" [*id.*, Exh. 26]. *See also id.*, Exhs. 19-20, 62-66. | |
| | Fact 32:  The PT Defendants also claimed on iGov's website that (a) "We only focus on only supporting 100% free and open source ONgDB Enterprise & Neo4j Enterprise open source licensed distributions." [Ratinoff Decl., Exh. 66]; (b) "ONgDB Enterprise is a drop In replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.*]; (c) "The distributions we package for the federal government and community as a whole are drop in replacements for Neo4j Enterprise commercial packages you download from neo4j.com" [*id.*]; and (d) "ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5.  All ONgDB and Neo4j Enterprise AGPL distributions can be used in production, in closed source projects, and with no limitations on # of cores or causal cluster instances." [*id.*, Exh. 74]. *See also, id.* at Exhs. 62-65, 71-73. | |
| | Fact 33:  The PT Defendants solicited customers about ONgDB stating that (a) "I can explain why the foundation was created and how we package Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS…" [Ratinoff Decl., Exh. 24]; (b) "the Graph Foundation was setup to ensure Neo4j/ONgDB remains free and open.  It is Neo4j Core + Enterprise feature set added back in, so it is drop in replacement for a Neo instance of the same version. (Ex: 3.5.5)" [*id.*, Exh. 44]; (c) "ONgDB (Open Native Graph Database): Neo4j Enterprise OSS distribution downloads 3.5.8 will be up next week" and "ONgDB 3.5.8 is a drop-in replacement for Neo4j Enterprise 3.5.8" [*id.*, Exh. 46]; (d) "We compile Neo4j branded distributions for agencies who added Neo4j branded distributions instead of ONgDB branded distributions to their white lists. We have all versions of the Neo4j branded distributions up to 3.5 available" [*id.*,]; and (e) "Neo4j Enterprise open source distribution licenses and basic support. Aka: ONGDB" [*id.*, Exhs. 55, 131]. *See also, id.* Exhs. 43, 47, 54. | |
| | Fact 34:  In its promotion of ONgDB software, iGov used hyperlinks on its website to redirect consumers to Neo4j USA's official release notes   (https://neo4j.com/release-notes/neo4j-3-5-5/)   and   "What's New" page (https://neo4j.com/whats-new-in-neo4j/) until it removed | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | those references sometime in July 2020. *See* Ratinoff, Exhs. 67-69 (highlighted in blue). | |
| 8. The PT Defendant's use of the Neo4j® Mark caused actual consumer confusion | <u>Fact 35:</u> The PT Defendant's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | |
| | <u>Fact 36:</u> Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" in marketing ONgDB misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same. *See, e.g.,* Exhs. 35, 40, 42-44, 46, 53, 55, 76, 100, 130-131, 134-135. | |
| | <u>Fact 37:</u> The PT Defendant's use of the Neo4j® Mark to promote ONgDB as free open source and falsely it with commercially licensed Neo4j® EE created actual customer confusion. Ratinoff Decl., Exh. 48-49, 117-120, 130-131, 134-135. | |
| | <u>Fact 38:</u> Consumers who have downloaded ONgDB rather than official Neo4j® EE have experienced technical issues with ONgDB. Ratinoff Decl., Exh. 121-124, 133. In one instance, Suhy sent a user to Neo4j USA's operations manual for assistance. *Id.,* Exh. 125. | |
| **Claim 2: Trademark Infringement Against Graph Foundation Inc.** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | <u>Fact 39:</u> Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark"). Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | |
| 3. GFI used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | <u>Fact 40:</u> Defendants copied the code, removed the commercial restrictions imposed by the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source Neo4j® EE 3.4 under the AGPL. Ratinoff Decl., Exh. 24-26, 28-29, 37, 62, 86; *see also* Exh. 3 at 28:25-29:11, 171:23-172:23, 199:22-200:20; Exh. 31 at 87:24-90:9. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | <u>Fact 41:</u> GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB.  GFI Dkt. No. 89, ¶ 18, Exh. 18; Ratinoff Decl., Exh. 31 at 81:14-20. | |
| | <u>Fact 42:</u> On January 17, 2019, GFI modified its landing page by changing the title to "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," adding references "ONgDB & Neo4j" and that "ONgDB & ***Neo4j Enterprise*** consist of modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository," but the content still remained almost identical to Plaintiffs' GitHub landing page and contained wide-spread misuse of the Neo4j® Mark.  Dkt. No. 89, ¶¶ 19-21, Exhs. 19-21 (emphasis added). | |
| | <u>Fact 43:</u>  On April 14, 2020, GFI started to remove the Neo4j® Mark and Neo4j USA's URLs from that page.  *Compare* GFI Dkt. No. 89, Exh. 22 *and* Exhs. 23-28.  However, GFI's landing page was still titled "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," still started off stating "Neo4j is the world's leading Graph Database," encouraged consumers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout. *Id.*, ¶¶ 29-31Exhs. 29-31. | |
| | <u>Fact 44:</u>   On April 21, 2020, GFI removed instances of the Neo4j® Mark and hyperlinks to Neo4j USA's website, but still used Plaintiffs' catch phrase "Graphs for Everyone" and mislabeling the Neo4j® Platform as the "neo4j project."  GFI Dkt. No. 89, Exhs. 32-33. | |
| | <u>Fact 45:</u> Rather than create its support documentation for ONgDB, GFI relied upon Neo4j USA's official documentation and used hyperlinks on its website to redirect users to Plaintiffs' official documentation, including Neo4j USA's copyrighted operation and developer manuals, located on its website.  Dkt. No. 89, ¶¶ 3-8, 13-16, Exhs. 3-8, 13-16; Ratinoff Decl., Exhs. 78-83, Exh. 129 [RFA Nos. 81-84, 88-89, 93-94, 98-100, 104, 108, 111, 123-126, 130-136]. | |
| | <u>Fact 46:</u> GFI's website directed users to ***Plaintiffs'*** change logs for each new release of ONgDB until GFI finally started its own change log with ONgDB v3.5.16.  Dkt. No. 89, ¶¶ 3-8, Exhs. 3-8; Ratinoff Decl., Exh. 84; Exh. 129 [RFA Nos. 87, 92, 97, 103, 107, 110]. | |
| | <u>Fact 47:</u> Up until April 14, 2020, GFI's GitHub landing page stated "To build the documentation see the Neo4j documentation" with an | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | embedded hyperlink: https://github.com/neo4j/neo4j-documentation/. Dkt. No. 89, Exhs. 18-19, 23. | |
| | <u>Fact 48:</u> GFI's document repository on GitHub also uses hyperlinks that send consumers to Neo4j USA's official documentation on Neo4j USA's corporate website.  Dkt. No. 89, ¶¶ 9-16; Ratinoff Decl., Exhs. 82-83; Exh. 31 at 276:19-279:12, 284:2-285:18; Exhs. 128-129 [RFA Nos. 81-84, 115-126]. | |
| | <u>Fact 49:</u> The Neo4j USA developer and operation manuals are copyrighted by Neo4j USA and subject to the License: Creative Commons 4.0, which contains a hyperlink to the Attribution-NonCommercial-ShareAlike 4.0 International Public License, which expressly prohibits the use of Plaintiffs' documents for commercial purposes.  Ratinoff Decl., Exh. 85, Exh. 31 at 286:1-288:13. | |
| | <u>Fact 50:</u> GFI used the Neo4j® Mark in the title tags of webpages on its website featuring ONgDB. Ratinoff Decl., Exhs. 128-129 [RFA Nos. 85-86, 90-91, 95-96, 101-102, 105-106]. | |
| | <u>Fact 51:</u> GFI did not seek or obtain Neo4j USA's authorization to use the Neo4j® Mark on GFI's website and GitHub repository in the foregoing manner.  Ratinoff Decl., Exh. 31 at 181:6-182:3, Exh. 129 [RFA Nos. 5-9, 22-26, 69, 71, 73-76, 78]. | |
| | <u>Fact 52:</u> GFI used the Neo4j® Mark as a hashtag (#Neo4j) in tweets published from GFI's Twitter Account to promote ONgDB.  Ratinoff Decl., Exhs. 89-92, 95-96, Exhs. 128-129 [RFA Nos. 149-150, 157-158, 165-166, 173-174, 181-182, 187-188]. | |
| 4. GFI's ONgDB product was readily identifiable without the Neo4j® Mark | <u>Fact 53:</u> ONgDB can be readily identified as such or as "Open Native Graph Database" without use of the Neo4j® Mark.  Ratinoff Decl., Exh. 31 at 27:17-29:9, 172:23-173:16, 175:5-20, 176:7-19, 178:13-179:25. | |
| | <u>Fact 54:</u> GFI issued tweets promoting ONgDB without using the Neo4j® mark or the mark as hashtag.  Ratinoff Decl., Exhs. 86, 88. | |
| 4. GFI did not use the Neo4j® Mark to describe Plaintiffs' Neo4j® products | <u>Fact 55:</u> GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and gratuitously used the Neo4j® Mark to describe and promote its own software.  *See supra* Facts 41-44. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 56:** At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for the Neo4j® Platform, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" *instead* of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | |
| | **Fact 57:** Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, GFI used the mark to promote ONgDB on its website and GitHub repository. *See supra* Facts 41-52. | |
| | **Fact 58:** GFI used a hashtag, **#Neo4j** that consists of nothing more than the Neo4j® Mark with a "#" before the mark to promote ONgDB on social media. Ratinoff Decl., Exhs. 1, 89-96 and Exh. 31 at 233:17-237:21. | |
| | **Fact 59:** GFI chose the following format that relied on using the Neo4j® Mark as a hashtag to announce its new releases of ONgDB: "**#ONgDB** (**#FOSS#Neo4j** Enterprise) 3.5.x support release is out," with no attempt to differentiate ONgDB and Neo4j® EE as separate, competing products.[1]  Ratinoff Decl., Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25, 246:5-249:2. | |
| | **Fact 60:** GFI issued a tweet that stated "**#ONgDB**, Open **#Neo4j** Enterprise," and in another instance "Our **#ONgDB**/**#Neo4j** Enterprise CI server is up and running builds…." Ratinoff Decl., Exhs. 91, 93. | |
| | **Fact 61:** GFI used "**#Neo4j** Enterprise 3.5" to solicit end-users of official Neo4j® EE v3.5 to report bugs to GFI so that it could identify bugs in the closed enterprise directory for Neo4j® EE and attempt to mimic such fixes in ONgDB. Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:13 | |
| | **Fact 62:** GFI used **#Neo4j** to promote ONgDB without reference to Neo4j® EE: "Latest **#ONgDB** apoc 3.5.0.8 procedure release is out. https://github.com/graphfoundatio... **#Neo4j**." Ratinoff Decl., Exh. 96. | |
| | **Fact 63:** GFI admitted intentionally used the Neo4j® Mark as a hashtag "to inform users about ONgDB" and to make it more likely that potential customers would come across ONgDB in conducting searches | |

---

[1] "FOSS" stands for free open source software. Ratinoff Decl., Exh. 31 at 233:17-234:3.

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | in relation to Neo4j® EE.  Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | |
| 7. GFI prominently used the Neo4j® Mark beyond what was reasonably necessary | Fact 64: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | |
| | Fact 65: At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | |
| | Fact 66: GFI's (1) use of "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) use of embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs all containing the Neo4j® Mark rather than creating and hosting their own with the ONgDB name; and (4) interchangeable use of "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and GitHub goes beyond what is reasonably necessary to identify ONgDB as a fork of Neoj4® EE.  *See supra* Facts 41-51, 56-58; *see also* Ratinoff Decl., Exhs. 37, 57-58; Dkt. No. 89, ¶¶ 3-16. | |
| | Fact 67:  GFI used the Neo4j® Mark as a hashtag, **#Neo4j**, to promote ONgDB rather than to merely describe ONgDB as a fork of Neo4j® EE.  *See supra* Facts 59-64. | |
| | Fact 68:  GFI admitted that it could have referred to "Neo4j Enterprise" without using the Neo4j® Mark as a hashtag to identify the product. Ratinoff Decl., Exh. 31 at 236:4-15. | |
| | Fact 69:  GFI It also conceded that it could have used a format where it described ONgDB as being a fork of Neo4j® EE than simply inserting "#Neo4j Enterprise" with "#ONgDB."  See id., Exh. 31 at 243:23-245:12; Exh. 93. | |
| 8. GFI's  use of the Neo4j® Mark suggested | Fact 70: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| sponsorship or endorsement by Neo4j USA | repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | |
| | Fact 71: At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | |
| | Fact 72: GFI (1) used "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) used embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) stated on its GitHub repository for ONgDB for customers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout that repository; (4) hyperlinked to Plaintiffs' build instructions, support documentation and change logs on GFI's website and GitHub repository all containing the Neo4j® Mark; (5) interchangeably used "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and Github repository; and (6) used the Neo4j® as a hashtag on Twitter to promote ONgDB. *See supra* Facts 42-43, 56-70. | |
| | Fact 73: GFI's intended audience in using the Neoj4® Mark as a hashtag were users of Neo4j® EE. Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | |
| 9. GFI's use of the Neo4j® Mark caused actual consumer confusion | Fact 74: GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | |
| | Fact 75: GFI lead consumers to believe that ONgDB and Neo4j® EE were one and the same. *See, e.g.,* Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | |
| | Fact 76: GFI's use of the Neo4j® Mark to promote ONgDB as free open source and falsely comparing it with commercially licensed Neo4j® EE created actual customer confusion, and diverted sales from Neo4j USA, including the IRS and Next Century/MPO. Ratinoff Decl., Exh. 48-50, 117-120, 127, 131, 134-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 3: False Advertising Against GFI and the PT Defendants** | | |
| 1. Defendants made a false statement of fact about a product in a commercial advertisement, which is (a) commercial speech; (b) made in commercial competition with Neo4j USA; (c) for the purpose of influencing consumers to buy their goods or services; and (d) sufficiently disseminated to the relevant purchasing public | <u>Fact 77:</u> Defendants made the following false statements interstate commerce via their websites and Twitter: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number" [Ratinoff Decl., Exh. 57]; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3" [*id.*, Exh. 58]; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition" [*id.,* Exhs. 60, 113-114]; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number." [*id.,* Exhs. 62-66]; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.,* Exhs. 62-66, 71]; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" [*id.,* Exhs. 67-69, 75]; (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions" [*id.,* Exh. 72-74]; (8) "[ONgDB] is an open source fork of #Neo4j" [*id.,* Exh. 93]; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." [*id.,* Exh. 98-104, 108]. | |
| | <u>Fact 78:</u> The PT Defendants also stated on iGov's website that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation." Ratinoff Decl*., Exhs. 67-70; see also* Exh. 21. | |
| | <u>Fact 79:</u> Defendants actively encourage actual and potential users of commercially licensed Neo4j® EE to adopt ONgDB and obtain support services from iGov and GraphGrid instead of Plaintiffs. Ratinoff Decl., Exhs. 23, 28-29, 40, 42-54, 76-77, 126, 134-135. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 80:  Neo4j Sweden is the owner of all copyrights in Neo4j® CE and Neo4j® EE, including the source code and has licensed said copyrights to Neo4j USA.  Rathle Decl., ¶¶ 3-4. | |
| | Fact 81: Plaintiffs released Neo4j® EE v3.4 under a license that which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | |
| | Fact 82: The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibits commercial resale and certain commercial support services. Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | |
| | Fact 83: After Plaintiffs released Neo4j® EE v3.4, the PT Defendants downloaded Neo4j's source code from Neo4j's GitHub repository, removed the commercial restrictions imposed by the Neo4j Sweden Software License, and began promoting it "free and open source" Neo4j Enterprise and offering commercial support services.  Ratinoff Decl., Exh. 3 at 171:23-172:23, 199:22-200:20; Exh. 21. | |
| | Fact 84: Rather than develop ONgDB as an independent fork based off an earlier open source version of Neo4j® EE, Defendants stripped the commercial restrictions out of the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source equivalent of Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28; *see also* Exh. 31 at 87:24-90:9. | |
| | Fact 85: Plaintiffs officially released Neo4j® EE v.3.5 solely under a commercial license in November 2018, and were no longer publishing source code for Neo4j® EE on GitHub under any open source license. Rathle Decl., ¶ 13, Exh. 4. | |
| | Fact 86: Prior to its official release, Plaintiffs published several beta versions of Neo4j® EE v3.5 via their GitHub repository subject to the Neo4j Sweden Software License, with Neo4j® v3.5.0-RC1 being the last pre-release version available to Defendants via GitHub.  Rathle Decl., ¶ 14; *see also* Ratinoff Decl., Exh. 31 at 158:18-159:20. | |
| | Fact 87: GFI's release of ONgGB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in the last beta version of Neo4j® EE 3.5 | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | made available by Plaintiffs via GitHub.  Ratinoff Decl., Exh. 38 at 6:22-7:1, 8:4-16:24; *see also* Rathle Decl., ¶ 29. | |
| | Fact 88: In order for Defendants to call ONgDB "free and open source" Neo4j® EE, they again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in 28 LICENSE.txt files. Ratinoff Decl., Exhs. 39-40; Dkt. No. 91 at 19:9-25; Exh. 31 at 159:3-10; Rathle Decl., ¶ 30. | |
| | Fact 89: The Neo4j Sweden Software License did not permit a licensees such as Defendants to remove "further restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder and original licensor.  Rathle Decl., Exh. 3 at §§ 7, 10; GFI Dkt. No. 88 at 5:23-8:9. | |
| | Fact 90: Defendants knew that they could not unilaterally replace the Neo4j Sweden Software License with the APGL without authorization. Ratinoff Decl., Exhs. 34-36, Exh. 31 at 183:14-184:24, 207:10-210:8. | |
| | Fact 91: Defendants' statements that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j® EE v3.5.x and the like were false because they knew that Neo4j Sweden owned the copyright for Neo4j® EE and never gave permission to remove Commons Clause and offer it as ONgDB under the AGPL.    Ratinoff Decl., Exh. 55-56; Exh. 3 at 183:12-183:1, 187:12-188:5, 189:1-191:3, 235:21-237:14, 240:22-243:22. | |
| | Fact 92: The Nussbaums also own GraphGrid and AtomRain, which share the same office and computers with GFI, and provide commercial training and consulting and support for users of ONgDB, and benefit from customers being able to use ONgDB for "free" and diverting available project funds to pay them for such services.  Ratinoff Decl., Exhs. 52-53; Exh. 31 at 22:24-23:3, 31:5-32:19, 35:3-13, 57:18-58:21, 65:20-70:16, 194:14-17; *see also* Exh. 28 ("If you are looking for a full shield of liability, we recommend using one of our supporters such as GraphGrid") and Exhs. 76, 134-135. | |
| | Fact 93: Defendants removed the Commons Clause without Neo4j Sweden's authorization as the copyright holder in an attempt to allow iGov, AtomRain and GraphGrid to commercially use and support ONgDB.  Ratinoff Decl., Exh. 23-26, 28-29, 39, 76-77, 126, 134-135; Exh. 3 at 28:25-29:11; Rathle Decl., ¶¶ 29-30. | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | Fact 94: ONgDB v3.5.1 and later versions are not 100% identical to equivalent version numbers of Neo4j® EE. Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:2. Rather, ONgDB is a patchwork of code from the last public beta, Neo4j® EE 3.5.0-RC1, and Neo4j® Community Edition held together by "glue code" authored by Suhy, Brad Nussbaum and other GFI contributors. *See id.* | |
| | Fact 95: By splicing together source code for ONgDB in that manner, GFI is creating software that is not of the same quality as if it were compiled by Plaintiffs because GFI does not have access to the same rigorous build infrastructure for official Neo4j® Software, which goes beyond what is built into Neo4j® CC and carries out tens of thousands of functional, performance, load, stress, and other tests to ensure quality. Rathle Decl. ¶¶ 31-34; Ratinoff Decl., Exh. 31 at 168:14-169:6. | |
| | Fact 96: GFI is dependent on what patches are made available in Neo4j® CE and sought to redirect users of official Neo4j® EE to GFI and identify bugs in the closed enterprise directory for Neo4j® EE. Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:12. | |
| | Fact 97: Since GFI introduced modifications and patches to ONgDB 3.5.x in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases. Rathle Decl., ¶ 34; Ratinoff Decl., Exh. 31 at 161:23-163:12. | |
| | Fact 98: Defendants had no way of knowing this after Plaintiffs closed off public access to the source code for enterprise-only features in November 2018 and had no visibility into Neo4j Sweden's proprietary testing and patches. Ratinoff Decl., Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9; Exh. 40; Rathle Decl., ¶¶ 31-34. | |
| | Fact 99: Defendants knew that ONgDB 3.5.x does not include every closed enterprise feature in equivalent Neo4j® EE 3.5.x. Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | |
| | Fact 100: GFI admitted that ONgDB v3.5.4 is not 100% identical to official Neo4j® EE v3.5.4. Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:23. | |
| | Fact 101: GFI admitted that after ONgDB 3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate." Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | |
| | Fact 102: As a result, Defendants were leading consumers to believe they were downloading an exact copy of the same version of commercial-only releases of NEO4J® EE, which in actuality they were receiving an inferior ONgDB product that was not a true "drop in" replacement. *See supra* Facts 80-101. | |
| | Fact 103: Neo4j® EE has been subject to trademark policies and guidelines published on Plaintiffs' website, which along with the terms of the GPL, AGPL and Neo4j Sweden Software License, made clear that to the extent any authorized modifications are made to Neo4j® Software, such modified software should indicate so and no longer bear the Neo4j® Mark. Rathle Decl., ¶¶ 15-18. Exhs. 5-7. | |
| 2. Defendants' statements actually deceive or has the tendency to deceive a substantial segment of its audience | Fact 104: Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE, and pay iGov, Graph Grid and/or AtomRain for related consulting and support services. *See supra* Facts 78-80, 83-84, 86-93. | |
| | Fact 105: Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others. Ratinoff Decl., Exhs. 35, 40, 48-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | |
| 3. Defendants' deception is material | Fact 106: Defendants' false statements that ONgDB is a drop-in replacement/equivalent to paid-for, commercial licensed Neo4® EE was material to potential consumers' purchasing decision because Defendants were offering it for free under the AGPL, and unbeknownst to consumers, in violation of the Neo4j Sweden Software License and Neo4j Sweden's copyright. *See supra* Facts 78-93. | |
| | Fact 107: Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop- | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
|  | in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE. *See supra* Facts 78-93. |  |
| 4. Defendants caused the false statement to enter interstate commerce | <u>Fact 108:</u> Defendants' false statements entered interstate commerce through the internet via their websites and Twitter, as well as emails sent to consumers. Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. |  |
| 5. Neo4j USA has been or is likely to be injured as a result of the false statement | <u>Fact 109:</u> Defendants' false statements diverted sales from Neo4j USA. Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. |  |
|  | <u>Fact 110:</u> Neo4j USA lost multi-year deal with the IRS. Broad Decl., ¶¶ 20-21. |  |
|  | <u>Fact 111:</u> Neo4j USA lost multi-year deal with Next Century/MPO adopting ONgDB, amounting to over over $2.2 million in lost revenue. Broad Decl., ¶¶ 22-24, Exhs. 12-13. |  |
| **Claim 4: False Designation of Origin  Against GFI and the PT Defendants** |  |  |
| 1. used in commerce any word, false designation of origin, false or misleading description, or representation of fact | <u>Fact 112:</u> Defendants' false and misleading statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were made in commerce through the internet via their websites and Twitter, as well as emails sent to consumers. Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114; *see also* Facts 78-80. |  |
|  | <u>Fact 113:</u> Defendants' statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading because Defendants did not have the right to replace the Neo4j Sweden Software License with the AGPL. *See Facts 78-93.* |  |
|  | <u>Fact 114:</u> Defendants' statements ONgDB is a "free and open" replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading because |  |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | ONgDB was not of the same quality as if it were compiled by Plaintiffs. Rathle Decl. ¶¶ 19-22, 29-34; Ratinoff Decl., Exh. 3 at 216:2-218:6; Exh. 31 at 161:23-163:12, 168:14-169:6. | |
| | <u>Fact 115:</u>  Since GFI introduced modifications to ONgDB in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases.  *See* Rathle Decl., ¶¶ 29-24; *see also* Ratinoff Decl., Exh. 31 at 158:18-160:5, 161:23-163:12; Exh. 3 at 223:1-224:9; Exh. 40. | |
| | <u>Fact 116:</u>  ONgDB does not include every closed enterprise feature in the equivalent version of Neo4j® EE.  Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | |
| | <u>Fact 117:</u>  GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees.  Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | |
| 2. which is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. | | |
| (a) strength of the mark | The Neo4j® Mark is inherently distinctive and Plaintiffs have used it in commerce since 2007, and as a result has gained strong brand recognition via various awards and recognition in the graph database software market.  Broad Decl., ¶¶ 2-19, Exhs. 1-11. | |
| (b) relatedness of the goods and similarity of sight, sound and meaning | Defendants promote ONgDB as Neo4j® EE except that they are free and licensed without restrictions under the AGPL.  Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | |
| (c) evidence of actual confusion; | <u>Fact 118:</u> Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" misleads consumers into mistakenly believing that ONgDB | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | and Neo4j® EE were one and the same. Ratinoff Decl., Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | |
| | <u>Fact 119:</u> Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL caused actual confusion over Defendants' unauthorized modification to the Neo4j Sweden Software License and justification for doing so. *See* Ratinoff Decl., Exhs. 40, 49, 55, 118-119, 131, 133-134. | |
| | <u>Fact 120:</u> GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB over Neo4j® EE and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | |
| | <u>Fact 121:</u> Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others. Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 224:13-23, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Exh. 38 at 23:14-24:4; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | |
| (d) marketing channels and likelihood of expansion | <u>Fact 122:</u> Defendants continue to target the same potential users of graph database platforms and software and use the same channels via the internet. *See, e.g.,* Ratinoff Decl., Exhs. 14-15, 18, 25, 29, 37, 45-55, 57, 60-61, 65-66, 76-77, 118-119, 120, 127, 130-132, 134-135. | |
| | <u>Fact 123:</u> Neo4j USA and the PT Defendants competed for the same contracts in the government sector. Ratinoff Decl., Exhs. 42-51, 54-55, 100, 120, 127, 130-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | |
| (e) intent | <u>Fact 124:</u> Defendants' use of the Neo4j® Mark to promote Plaintiffs' software with an improperly modified copyright license shows that they intend to copy them and confuse the public. *See supra* Facts 78-102. | |