John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
Jeffrey M. Ratinoff, Bar No. 197241
jratinoff@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA 95113-2406

***mailing address:***
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:     (408) 998-4790

Attorneys for Plaintiffs
NEO4J, INC. and NEO4J SWEDEN AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GRAPH FOUNDATION, INC., an Ohio corporation, GRAPHGRID, INC., an Ohio corporation, and ATOMRAIN INC., a Nevada corporation,<br><br>　　　　　Defendants. | CASE NO. 5:19-cv-06226-EJD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE DEFENDANT GRAPH FOUNDATION INC.'S ANSWER TO FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:　　　February 11, 2021<br>Time:　　　9:00 a.m.<br>Location:　　Courtroom 4, 5th Floor<br>Judge:　　　Hon. Edward J. Davila |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

842\3664216.2

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF     5:19-CV-06226-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 11, 2021, at 9:00 a.m., Courtroom 4, 5th Floor, at the United States District Court located at 280 South First Street, San Jose, CA 95113 before the Honorable Edward J. Davila, Plaintiffs Neo4j, Inc. ("Neo4j USA") and will, and hereby do, move to strike with prejudice the Fifth Affirmative Defense for the Addition of the Commons Clause is a Breach of the AGPL asserted in Defendant Graph Foundation Inc.'s ("GFI") Answer to the First Amended Complaint (Dkt. No. 91) pursuant to Fed. R. Civ. P. 12(f) ("Rule 12(f)").

This motion is made pursuant to on the grounds that this defense is not legally cognizable, fails as a matter of law, and it violates the law of the case doctrine. GFI's defense is based on an untenable interpretation of the Neo4j Sweden Software License in relation to Neo4j Sweden's DMCA and Breach of License Agreement claims and Neo4j USA's false advertising claims. The Court previously rejected GFI's interpretation and adjudicated the meaning of the provisions of this license agreement cited in this defense in denying GFI's motion to dismiss Neo4j Sweden's DMCA and Breach of License Agreement claims. *See* Dkt. No. 88 at 5:2-11:5.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Declaration of Jeffrey M. Ratinoff, all records and pleadings on file in this action, and all other matters that the court may consider.

**REQUESTED RELIEF**

Neo4j USA respectfully requests that the Court strike the Fifth Affirmative Defense asserted in the Answer to the First Amended Complaint filed by GFI pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)") and applicable case law, and deny leave to amend as futile because additional pleading will not result in a sustainable defense.

/ / /

/ / /

/ / /

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3664216.2

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF          5:19-CV-06226-EJD

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III.   PROCEDURAL AND FACTUAL BACKGROUND .......................................... 2

    A.     Neo4j USA, Neo4j Sweden and the Neo4j® Graph Platform Software ................ 2

    B.     GFI and its Pirated ONgDB Software ................................................................ 4

    C.     Plaintiffs' Claims Based on Defendants' Distribution of GFI's Pirated ONgDB Software ........................................................................................... 6

    D.     The Court Denies GFI's Motion to Dismiss Neo4j Sweden's DMCA and Breach of the Neo4j Sweden Software License Claims ...................................... 7

    E.     GFI's Fifth Affirmative Defense ....................................................................... 9

IV.    APPLICABLE LEGAL STANDARDS FOR MOTIONS TO STRIKE ............................ 9

V.     REQUEST FOR JUDICIAL NOTICE ............................................................. 11

VI.    LEGAL ARGUMENT ....................................................................................... 12

    A.     GFI is Barred by the Law of the Case Doctrine From Reasserting its AGPL Arguments as an Affirmative Defense ........................................................ 12

    B.     GFI's Fifth Affirmative Defense Fails as Matter of Law Because Sections 7 and 10 of the Neo4j Sweden Software License Do Not Give a Licensee the Right to Remove or Alter Terms Added the Copyright Holder and Licensor ...... 13

    C.     The Court Should Deny Leave to Amend ....................................................... 18

VII.   CONCLUSION ................................................................................................. 18

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF    5:19-CV-06226-EJD

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Albrecht v. Lund*,
  845 F.2d 193 (9th Cir. 1988)..................................................................................... 18

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005)............................................................................... 16, 17

*Apple Inc. v. Psystar Corp.*,
  658 F.3d 1150 (9th Cir. 2011).................................................................................. 14

*In re Apple, AT & T iPad Unlimited Data Plan Litig.*,
  No. C-10-02553 RMW, 2012 WL 2428248 (N.D. Cal. June 26, 2012).................................. 11

*Artifex Software, Inc. v. Hancom, Inc.*,
  2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) ........................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................... 9, 10

*Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*,
  718 F.Supp.2d 1167 (N.D. Cal. 2010) ...................................................................... 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................... 9, 10

*Ben–Zvi v. Edmar Co.*,
  40 Cal.App.4th 468 (1995) .................................................................................. 13

*Cruz v. Bank of N.Y. Mellon*,
  2012 WL 2838957 (N.D. Cal. July 10, 2012).............................................................. 11

*Dion v. Fulton Friedman & Gullace LLP*,
  No. 11-2727 SC, 2012 WL 160221 (N.D. Cal. Jan. 17, 2012) ............................................ 10

*Fahrner-Miller Assocs., Inc. v. Mars Antennas & RF Sys., Ltd.*,
  2014 WL 6871550 (N.D. Cal. Dec. 4, 2014) ............................................................. 16

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993)............................................................................ 10, 11

*Hernandez v. County of Monterey*,
  306 F.R.D. 279 (N.D. Cal. 2015) ........................................................................ 10, 11

*Jacobsen v. Katzer*,
  535 F.3d 1373 (Fed. Cir. 2008)............................................................................... 14

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3664216.2

- ii -

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF     5:19-CV-06226-EJD

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)..................................................................................... 11

4

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir.200) (en banc)...................................................................... 18

5

6

*Low v. LinkedIn Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012) ....................................................................... 18

7

*MedioStream, Inc. v. Microsoft Corp.*,
749 F.Supp.2d 507 (E.D. Tex. 2010) ......................................................................... 17

8

9

*Micro Star v. Formgen Inc.*,
154 F.3d 1107 (9th Cir. 1998).................................................................................... 16

10

11

*Milenbach v. C.I.R.*,
318 F.3d 924 (9th Cir.2003)........................................................................................ 17

12

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
795 F.3d 997 (9th Cir. 2015)...................................................................................... 13

13

14

*Missouri ex rel. Koster v. Harris*,
847 F.3d 646 (9th Cir. 2017)...................................................................................... 18

15

16

*In re New Century*,
588 F.Supp.2d 1206 (C.D.Cal.2008) ......................................................................... 11

17

18

*Perez v. Gordon & Wong Law Group, P.C.*,
No. 11-CV-03323-LHK, 2012 WL 1029425 (N.D. Cal. Mar. 26, 2012) ................................ 10

19

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
352 F.Supp.2d 1048 (N.D. Cal. 2004) ....................................................................... 11

20

21

*Richardson v. United States*,
841 F.2d 993 (9th Cir.1988)....................................................................................... 12

22

23

*Sec. Investor Prot. Corp. v. Vigman*,
74 F.3d 932 (9th Cir.1996)..................................................................................... 12, 13

24

*Sidney-Vinstein v. A.H. Robins Co.*,
697 F.2d 880 (9th Cir. 1983) ..................................................................................... 10

25

26

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)...................................................................................... 11

27

28

Hopkins & Carley
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3664216.2

- iii -

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF          5:19-CV-06226-EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Storm Impact, Inc. v. Software of the Month Club,*
4     44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) ........................................ 16

5

*Telesaurus VPC, LLC v. Power,*
    623 F.3d 998 (9th Cir. 2010)...................................................................................... 18

6

*United States v. Lummi Indian Tribe,*
7     235 F.3d 443 (9th Cir.2000).......................................................................................12

8

*United States v. Park Place Assoc.,*
    563 F.3d 907 (9th Cir. 2009)......................................................................................12
9

*Universal Sales Corp. v. Cal., Press Mfg. Co.,*
10     20 Cal.2d 751 (1942) ................................................................................................17

11

*Van Buskirk v. CNN,*
12     284 F.3d 977 (9th Cir. 2002)......................................................................................12

13

*Wapato Heritage, L.L.C. v. United States,*
    637 F.3d 1033 (9th Cir. 2011)...................................................................................14
14

*Whittlestone, Inc. v. Handi–Craft Co.,*
15     618 F.3d 970 (9th Cir. 2010)......................................................................................11

16

*Wyshak v. City Nat'l Bank,*
17     607 F.2d 824 (9th Cir. 1979)......................................................................................10

18

*Zalkind v. Ceradyne, Inc.,*
    194 Cal.App.4th 1010 (2011) ............................................................................14, 15
19

**Statutes**
20

15 U.S.C.
21     § 1125(a) ......................................................................................................................6

22

17 U.S.C.
23     § 106 ..........................................................................................................................13
    § 201(b) .....................................................................................................................13
24     § 1202(b) ...................................................................................................................1, 7

25

Cal. Bus. & Prof. Code
    § 17200 et seq. .........................................................................................................1, 6
26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3664216.2

- iv -

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF      5:19-CV-06226-EJD

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

Cal. Civ. Code

4

§ 1636 ............................................................................................................................ 13

§ 1639 ............................................................................................................................ 13

5

§ 1641 ............................................................................................................................ 15

6

**Other Authorities**

7

Fed. R. Civ. Proc.

8 ................................................................................................................................... 10

8

8(b)(1) ............................................................................................................................ 9

8(c) ................................................................................................................................. 9

9

12(f) ............................................................................................................................... 10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF          5:19-CV-06226-EJD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Graph Foundation, Inc. ("GFI") was conceived of and formed as an alleged non-profit foundation to provide cover for pirating Plaintiffs' Neo4j® Enterprise Edition ("Neo4j® EE"). Neo4j® EE is a version of the Neo4j® graph database platform that was originally provided under the GNU Affero General Public License, version 3 ("AGPL"). Plaintiffs now only offer Neo4j® EE on a paid basis for commercial applications, which includes certain hosting and support services and otherwise unavailable proprietary modules.

In order to accomplish their scheme, GFI's founders and John Mark Suhy (a named defendant in the Related Case and the founder and owner of iGov, Inc., another named defendant in that related case) engaged in unauthorized self-help by removing copyright management information from the Neo4j Sweden Software License that accompanied 28 separate source code files, and then making the software available on GFI's GitHub repository as a "free" and "a non-restrictive fork" of Neo4j® EE. This information included notices that identify Neo4j Sweden AB as the copyright holder and licensor of Neo4j® EE, as well as terms and conditions for use of the work and other licensing information. It also includes the Commons Clause, which specifically restricts the commercial usage and exploitation of Neo4j® EE obtained on a source-available basis.

The First Amended Complaint ("FAC") alleges that GFI and Suhy intentionally altered and removed Neo4j Sweden's copyright management information and GFI knowingly distributed ONgDB in violation of 17 U.S.C. § 1202(b) of the Digital Millennium Copyright Act ("DMCA"). The FAC further alleges that GFI's actions breached the Neo4j Sweden Software License. These same allegations support, in part, Neo4j USA's false advertising claims asserted pursuant to Section 43(a) of the Lanham Act and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") that ONgDB is a free and open source version of Neo4j® EE.

GFI recently filed a motion to dismiss Plaintiffs' DMCA and breach of license claims based on the flawed legal theory that Sections 7 and 10 of the Neo4j Sweden Software License permitted a licensee to remove "further restrictions" imposed by the licensor. In denying the motion, the Court rejected GFI's interpretation of that license, finding that Neo4j Sweden as the owner of the

1   copyright in Neo4j® EE has the exclusive right to license that software on the terms of its choosing,

2   and the Neo4j Sweden Software License did not permit a licensee to remove any restrictions therein

3   imposed by Neo4j Sweden as the licensor.

4          Despite the Court's express findings, GFI re-asserted its failed legal arguments as its Fifth

5   Affirmative Defense to the FAC.   GFI once again misconstrues Section 7 as justification for

6   removing the Commons Clause and other copyright notices, terms and conditions from the Neo4j

7   Sweden Software License.   When Section 7 is read correctly and in the context of the entire

8   agreement, however, it only allows a downstream licensee to remove unauthorized restrictions

9   when placed by an upstream licensee who redistributes the copyrightable program, not those placed

10  by the copyright owner offering the terms to the licensees. Accordingly, the Court should strike

11  GFI's Fifth Affirmative Defense with prejudice because GFI's interpretation of the Neo4j Sweden

12  Software License is not legally viable as previously held by the Court.

13  **II.     STATEMENT OF ISSUES TO BE DECIDED**

14         1.      Whether GFI's Fifth Affirmative Defense for the Addition of the Commons Clause

15  is a Breach of the AGPL violates the law of the case doctrine.

16         2.      Whether GFI's Fifth Affirmative Defense for the Addition of the Commons Clause

17  is a Breach of the AGPL is a legally viable defense.

18         3.      Whether the Court should grant GFI leave to amend its Fifth Affirmative Defense

19  or strike it with prejudice.

20  **III.    PROCEDURAL AND FACTUAL BACKGROUND**

21         **A.      Neo4j USA, Neo4j Sweden and the Neo4j® Graph Platform Software**

22         Neo4j, Inc. ("Neo4j USA") is the company behind the number one graph platform for

23  connected data, marketed and sold under the trademark Neo4j®.  FAC, ¶ 2.  The Neo4j® graph

24  database platform helps organizations make sense of their data by revealing how people, processes

25  and digital systems are interrelated.  *Id.*   This connections-first approach powers intelligent

26  applications tackling challenges such as artificial intelligence, fraud detection, real-time

27  recommendations and master data.  *Id.*

28         Neo4j USA boasts the world's largest dedicated investment in native graph technology.

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3664216.2                                    - 2 -
NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF            5:19-CV-06226-EJD

1    FAC, ¶ 3.  It has more than 400 commercial customers, including global enterprises like Comcast,

2    Cisco, and UBS who use the Neo4j® graph database platform to create a competitive advantage

3    from connections in their data.  *Id.*  Neo4j USA also does substantial business with a number of

4    agencies within the United States Government.  *Id.*

5         Neo4j Sweden AB ("Neo4j Sweden") is a wholly owned subsidiary of Neo4j USA.  FAC,

6    ¶ 4.  It is the owner of all copyrights related to the Neo4j® graph database platform, including the

7    source code, and has licensed said copyrights to Neo4j USA in connection with the making, use,

8    creation of derivative works, sale, offer to sell, importation, performance, display, reproduction and

9    distribution of the copyrighted material, and the sublicensing of such rights in the United States.

10   *Id.*  The Neo4J® graph database platform is published and distributed with copyright management

11   information ("CMI") that includes the title of the work, terms and conditions for use of the work,

12   and other identifying information about the copyright owner, Neo4j Sweden.  *Id.*, ¶¶ 66-68, 114-

13   115, Exh. 36.  These conspicuous displays referencing Neo4j Sweden as the copyright owner are

14   present throughout the source code for the Neo4j® graph database platform along with information

15   about the terms and conditions for the use of these copyrighted works constitute CMI.  *See id*

16        Prior to November 2018, Plaintiffs' business model was to offer a free open source version

17   of the Neo4j® graph database platform, its primary software offering, Neo4j® Community Edition

18   ("Neo4j® CE"), under the GNU General Public License version 3 ("GPL") license.  FAC, ¶ 30.

19   This edition is limited in its feature set and offers no end-user support.  *Id.*  Users requiring

20   additional features for more advanced commercial operation, together with support, licensed use of

21   the Neo4j® graph database platform through Neo4j® Enterprise Edition ("Neo4j® EE") under

22   commercial terms.  *Id.*

23        Plaintiffs originally offered Neo4j® EE under both a paid-for commercial license and the

24   AGPL with the necessary copyright management information identifying Neo4j Sweden as the

25   copyright owner and licensor of the underlying work, the title of the work.  FAC, ¶ 31; Declaration

26   of Jeffrey M. Ratinoff in Support of Motion to Strike ("Ratinoff Decl."), ¶ 3 and Exh. 1.  This notice

27   also provided terms of use for the copyrighted work and that a licensee must abide by the terms

28   thereof or obtain a commercial license from Neo4j Sweden.  A commercial license to Neo4j® EE

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3664216.2
- 3 -
NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF          5:19-CV-06226-EJD

entitled the purchaser to use it in a proprietary setting with industry standard terms, receive support or professional services from Neo4j USA, and the right to receive software updates, which included feature updates, bug fixes and assistance. FAC, ¶ 31. Purchasing a commercial license at a fair price supported the continued development and improvement of Neo4j® EE and the Neo4j® graph database platform, including the Community Edition software. *Id.*

In May 2018, Plaintiffs released Neo4j® EE version 3.4, which they continued to offer under a proprietary commercial license. FAC, ¶ 32. However, Neo4j Sweden replaced the AGPLv3 with a stricter license, which included the terms of the AGPLv3 with additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). *See id.; see also* Ratinoff Decl., ¶ 4, Exh. 2. This new license, while allowing code to be publicly viewable and used within a certain limited scope of usage, is generally recognized in the software industry not to qualify as open source, as it prohibits all third-party resale and certain services activity. *Id.* Neo4j Sweden, as copyright holder of the Neo4j® graph database platform, exercised its right to amend the terms of further releases of Neo4j® EE from the AGPLv3 to the Neo4j Sweden Software License to prevent third parties, such as Defendants, from monetizing such software while not contributing back to the companies who are producers of the software. *Id.*

In November 2018, Plaintiffs officially released version 3.5 of Neo4j® EE solely under a commercial license, while they continued to offer the Community Edition under a version of the GPL. FAC, ¶ 33. This meant that Plaintiffs were no longer publishing source code for Neo4j® EE under any open source license. This was done to simplify its licensing model, as well as prevent bad actors, such as Defendants, from willfully altering and misrepresenting the Neo4j Sweden Software License, and then profiting by providing commercial support services in closed, proprietary projects.

## B. GFI and its Pirated ONgDB Software

GFI purports to be a not-for-profit open source software development company that offers graph database platform software, ONgDB, which competes with the Neo4j® graph database platform. FAC, ¶ 5. GFI was formed in response to Plaintiffs' decision to only offer Neo4j® EE under a commercial license. *Id.*, ¶¶ 6, 35.

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3664216.2                                                                 - 4 -
NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF          5:19-CV-06226-EJD

GFI offers ONgDB graph database software, which is compiled from a patchwork of source code from older versions of official Neo4j® graph database platform software, and includes source code authored by the Nussbaums and Suhy, while mischaracterized by GFI as the open source equivalent to Plaintiffs' commercial-only releases of Neo4j® EE. FAC, ¶¶ 42-43. By compiling source code in this manner, GFI created software that is not of the same quality as if it were compiled by Neo4j USA. *Id.*, ¶ 44. As a result, GFI is misleading consumers into believing they are downloading an exact copy of Plaintiffs' current commercial-only releases of Neo4j® EE from Graph Foundation's website, which in actuality they are receiving an inferior product that is not a true "drop in" replacement. *Id.*

GFI also misleadingly claims that "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition." FAC, ¶¶ 36-37. GFI statements are misleading because ONgDB is not entirely based on open source version of the Neo4j® graph database platform as it continues to claim. *Id.* This is because GFI and Suhy copied 28 Neo4j® EE source code files and their associated LICENSE.txt files (consisting of the Neo4j Sweden Software License) to GFI's GitHub repository, and modifying or removing CMI associated therewith. *Id.*, ¶ 67.

Specifically, without Neo4j Sweden's authorization, Suhy removed the following licensing information and copyright attribution from the header of the Neo4j Sweden Software License (hereinafter the "Notice Provision") with GFI's encouragement and approval:

> NOTICE
>
> This package contains software licensed under different licenses, please refer to the NOTICE.txt file for further information and LICENSES.txt file for full license texts.
>
> Neo4j Enterprise object code can be licensed independently from the source code under separate commercial terms. Email inquiries can be directed to: licensing@neo4j.com. More information is also available at: https://neo4j.com/licensing/
>
> The software ("Software") is developed and owned by Neo4j Sweden AB (referred to in this notice as "Neo4j") and is subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE, Version 3, with the Commons Clause as follows:

FAC, ¶¶ 67-68 and Exh. 36; *see also* Ratinoff Decl., Exh. 2.

In addition, Suhy also removed the following provision from the end of the Neo4j Sweden Software License without Neo4j Sweden's authorization:

> "Commons Clause" License Condition
>
> The Software is provided to you by the Licensor under the License, as defined below, subject to the following condition. Without limiting other conditions in the License, the grant of rights under the License will not include, and the License does not grant to you, the right to Sell the Software.  For purposes of the foregoing, "Sell" means practicing any or all of the rights granted to you under the License to provide to third parties, for a fee or other consideration, a product or service that consists, entirely or substantially, of the Software or the functionality of the Software. Any license notice or attribution required by the License must also include this Commons Cause License Condition notice.

FAC, ¶¶ 67-68 and Exh. 36; *see also* Dkt. No. 75-2, Exh 2.  GFI acted in concert with and encouraged Suhy to alter the terms of the Neo4j Sweden Software License by removing protections Neo4j Sweden as copyright owner included in licensing its work, and republishing these source code files on GFI's Github repository for ONgDB.  *Id.*

After Suhy's removal and alteration of Neo4j Sweden's CMI, these 28 LICENSE.txt files and other such modifications became part of various versions of GFI's ONgDB software.  FAC, ¶ 69.  Thereafter, GFI publicly distributed the files via GFI's GitHub repository for ONgDB, and actively encouraged and solicited third parties to download the source code files with the altered licenses from GFI's website.  *See, e.g.*, FAC, ¶ 69 *and* Exhs. 5-6, 10-11, 21-22, 25-26, 31.

## C.     Plaintiffs' Claims Based on Defendants' Distribution of GFI's Pirated ONgDB Software

Neo4j USA asserts federal false advertising claims pursuant to 15 U.S.C. § 1125(a) and state unfair competition in violation of Cal. Bus. Prof. Code §§ 17200 et seq. as its Second and Third Causes of Action, respectively, against GFI.  FAC, ¶¶ 91-105.  These claims are based, in part, on GFI promoting its ONgDB as free and open source Neo4j® EE offered under the AGPL, which is false because Defendants replaced the Neo4j Sweden Software License with the AGPL in contravention of its terms and Neo4j Sweden's exclusive right as a copyright holder.

Plaintiffs' Fifth Cause of Action alleges that Defendants violated Section 1202(b) of the

Digital Millennium Copyright Act (DMCA) by the Nussbaums (acting agents of Defendants) actively encouraging and approving Suhy's removal and alteration of Neo4j Sweden's CMI in at least 28 separate source code files via GFI's GitHub repository.  FAC, ¶¶ 112-115.  GFI further violated the DMCA by intentionally distributing these altered source code files as part of GFI's ONgDB software via its website and Github repository with the knowledge that the Neo4j® CMI has been removed therefrom without the authorization of Neo4j Sweden.  *Id.*  Defendants continue to promote and distribute altered versions of Neo4j® EE with the knowledge that doing so would induce, enable, facilitate, or conceal an infringement of Neo4j Sweden's rights under the DMCA. *See id.,* ¶ 116.

Based on these same facts, Neo4j Sweden asserts the Sixth Cause of Action for Breach of License Agreement.  *See* FAC, ¶¶ 118-128.  Neo4j Sweden further alleges that GFI breached Sections 4 and 5 of the Neo4j Sweden Software License, which requires that Neo4j Sweden's copyright notices be printed or displayed when the code is run on any and all copies of the works subject to the Neo4j Sweden Software License.  *See* FAC, ¶ 124.

### D.    The Court Denies GFI's Motion to Dismiss Neo4j Sweden's DMCA and Breach of the Neo4j Sweden Software License Claims

GFI's initial response to the FAC was moving to dismiss Plaintiffs' DMCA and breach of license claims.  *See* Dkt. No. 75.  GFI first argued that these claims failed because certain sections of the Neo4j Sweden Software License expressly grant them the right to remove the CMI at issue. *See* Dkt. No. 88 at 5:23-26.  In particular, GFI argued that Section 7 prohibited Neo4j Sweden from adding restrictions such as the commons clause beyond those set out in the underlying AGPL license itself.  *Id.* at 5:27-6:4; *see also* Dkt. No. 75 at 5:10-17, 12:4-18.  GFI further argued that Section 10 allegedly prohibited Neo4j Sweden as the licensor from imposing further restrictions.  Dkt. No. 75 at 5:17-19, 12:4-18.

In opposition, Plaintiffs pointed out that Section 10 of the Neo4j Sweden Software License expressly states that a *licensee* may not impose any further restrictions, not the licensor as argued by GFI.  Dkt. No. 80 at 16:16-27.  Thus, when Section 7 is read correctly with Section 10 and other defined terms, Section 7 only allows a downstream licensee to remove unauthorized restrictions when placed

1    by an upstream licensee who redistributes the copyrightable program, not those placed by the copyright

2    owner offering the terms to the licensees.  *Id.* at 16:28-18:12.  Plaintiffs further argued that GFI's

3    strained interpretation went against Neo4j Sweden's express intent of precluding others from

4    commercially benefiting from the software and nullifying the entire purpose of a license agreement

5    by negating Neo4j Sweden's exclusive right to license its copyrighted source code files under the

6    terms of its choosing.  *Id.* at 18:13-19:21.

7           The Court took the motion under submission without oral argument and issued its ruling on

8    November 21, 2020, denying GFI's motion to dismiss the DMCA and breach of license claims.

9    Dkt. No. 88.  The Court first rejected GFI's argument that Plaintiffs were not permitted to alter the

10   form AGPL "as Defendants are not entitled to enforce the FSF's copyright."  *Id.* at 6:5-18.  The Court

11   next held that neither Section 7 nor Section 10 of the Neo4j Sweden Software License permit a licensee

12   such as GFI to remove the Commons Clause and other CMI:

13                  Section 10 of the AGPLv3, which is incorporated into the Neo4J
                    Sweden Software License, states: "You may not impose any further
14                  restrictions on the exercise of rights granted or affirmed under this
                    License." [] Section 7 states: "[i]f the Program as you received it, or
15                  any part of it, contains a notice stating that it is governed by this
                    License along with a term that is a further restriction, you may
16                  remove that term." *Id*. § 7. Defendants argue that these provisions
                    mean that "there can be no liability for removing the further licensing
17                  restrictions which Neo4j incorporated into the license," namely the
                    Commons Clause. [] As Plaintiffs point out, however, the AGPLv3
18                  defines "you" as the licensee, not the licensor. Ex. 1 at § 0 ("Each
                    licensee is addressed as 'you'"). ***Thus, read correctly, Sections 7 and***
19                  ***10 prohibit a licensee from imposing further restrictions, but do not***
                    ***prohibit a licensor from doing so.***
20

21   *Id.* at 6:19-7:9 (emphasis added).

22          The Court further held that "it would be contrary to principles of contract and copyright law

23   to interpret these provisions as limiting Neo4J Sweden's exclusive right to license its copyrighted

24   software under terms of its choosing."  Dkt. No. 88 at 7:10-8:1.  As a result, the Court "reject[ed]

25   the notion that the terms drawn from the AGPLv3, on which the Neo4j Sweden Software License

26   is based, somehow limit the rights of Neo4j Sweden to include the Commons Clause or any other

27   additional restriction in its own copyright license."  *Id.* at 8:1-4.

28   / / /

E.    **GFI's Fifth Affirmative Defense**

On November 30, 2020, GFI filed its Answer to the FAC.  *See* Dkt. No. 91.  GFI's Fifth Affirmative Defense for "The Addition of the Commons Clause is a Breach of the AGPL" inexplicably asserted the same legal arguments made in its unsuccessful motion to dismiss as an affirmative defense:

> The open source license by Neo4J Sweden AB, the AGPL, is a license copyrighted by the Free Software Foundation. The beginning of the AGPL provides a copyright notice.
>
> > Copyright (C) 2007 Free Software Foundation, Inc. <http://fsf.org/>
> >
> > Everyone is permitted to copy and distribute verbatim copies of this license document, but changing it is not allowed.
> >
> > By its terms, the license may not be changed.
>
> Neo4J Sweden AB's attempt to change the AGPL license violates its terms.  The licensee is protected from this violation under the terms of the license: "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, **you may remove that term**." [Emphasis added]. §7 AGPL.
>
> Defendant had the express right to remove any improper terms and such removal prevented further infringement of the APGL license's terms.

*Id.* at 13:12-23 (emphasis in original).  As discussed in detail below, this defense should be stricken as it echoes the same theories upon which GFI previously moved to dismiss Plaintiffs' DMCA and breach of license claims.

## IV.    APPLICABLE LEGAL STANDARDS FOR MOTIONS TO STRIKE

Federal Rule of Civil Procedure 8(b)(1) requires a party to "state in short and plain terms its defenses to each claim asserted against it."  Federal Rule of Civil Procedure 8(c) similarly requires that a party "affirmatively state any avoidance or affirmative defense."  The Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) set a heightened "plausibility" pleading standard for complaints.

Courts in this District have held that this heightened pleading standard articulated in *Twombly* and *Iqbal* applies to affirmative defenses.  *See Perez v. Gordon & Wong Law Group,*

1   *P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012) (collecting

2   cases); *see also Hernandez v. County of Monterey*, 306 F.R.D. 279, 283 (N.D. Cal. 2015)

3   (recognizing that "[m]ost district courts in this circuit agree that the heightened pleading standard

4   of *Twombly* and *Iqbal*...is now the correct standard to apply to affirmative defenses").  "This

5   standard 'serve[s] to weed out the boilerplate listing of affirmative defenses which is commonplace

6   in most defendants' pleadings where many of the defenses alleged are irrelevant to the claims

7   asserted.'" *Perez*, 2012 WL 1029425 at *8.  It "is also consistent with *Iqbal's* admonition that fair

8   notice pleading under Rule 8 is not intended to give parties free license to engage in unfounded

9   fishing expeditions on matters for which they bear the burden of proof at trial." *Id*. (citing *Iqbal*,

10  556 U.S. at 678–79).  Thus, "[w]hile a defense need not include extensive factual allegations in

11  order to give fair notice, bare statements reciting mere legal conclusions may not be sufficient." *Id*.

12  (internal quotation marks omitted).  In order to satisfy Rule 8's pleading requirements, "a

13  defendant's pleading of affirmative defenses must put a plaintiff on notice of the underlying factual

14  bases of the defense." *Id*. (citing *Dion v. Fulton Friedman & Gullace LLP*, No. 11-2727 SC, 2012

15  WL 160221, at *2 (N.D. Cal. Jan. 17, 2012)).

16      A motion to strike brought pursuant to Rule 12(f) serves "to avoid the expenditure of time

17  and money that must arise from litigating spurious issues by dispensing with those issues prior to

18  trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also Fantasy, Inc.*

19  *v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

20  Thus, a defense may be stricken pursuant to Rule 12(f) as insufficient if it fails to give plaintiff "fair

21  notice" of the defense.  *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *accord*

22  *Barnes v. AT & T Pension Benefit Plan–Nonbargained Program*, 718 F.Supp.2d 1167, 1170 (N.D.

23  Cal. 2010) (holding "defense is insufficiently pled if it fails to give the plaintiff fair notice of the

24  nature of the defense").

25      Rule 12(f) also permits a court to strike from an answer matter that is immaterial, i.e., "that

26  which has no essential or important relationship to the claim for relief or the defenses being plead,"

27  or matter that is impertinent, i.e., that which does not pertain, and is not necessary, to the issues in

28  question. *Fantasy*, 984 F.2d at 1527.  Motions to strike made on these grounds "should not be

1    granted unless the matter to be stricken clearly could have no possible bearing on the subject of the

2    litigation" or "unless prejudice would result to the moving party from denial of the motion." *Platte*

3    *Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004) (citations omitted).

4    "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district

5    court." *Cruz v. Bank of N.Y. Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing

6    *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

7         For a court to grant a motion to strike, the grounds "must appear on the face of the pleading

8    under attack or from matters of which the court may take judicial notice. *In re Apple, AT & T iPad*

9    *Unlimited Data Plan Litig.*, No. C-10-02553 RMW, 2012 WL 2428248, at *2 (N.D. Cal. June 26,

10   2012); *accord In re New Century*, 588 F.Supp.2d 1206, 1220 (C.D.Cal.2008). "With a motion to

11   strike, just as with a motion to dismiss, the court should view the pleading in the light most

12   favorable to the nonmoving party." *Platte Anchor Bolt*, 352 F.Supp.2d at 1057.  The Court may

13   also consider matters of which the Court takes judicial notice.  *Lee v. City of Los Angeles*, 250 F.3d

14   668, 688–89 (9th Cir. 2001).  However, the Court need not accept as true allegations contradicted

15   by judicially noticeable facts, or by exhibits attached to or incorporated in the pleading.  *Sprewell*

16   *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Affirmative defenses are insufficient

17   as a matter of law where there are no questions of fact, any questions of law are clear and not in

18   dispute, and under no set of circumstances could the defense succeed." *Hernandez v. Cty. of*

19   *Monterey*, 306 F.R.D. 279, 284-85 (N.D. Cal. 2015).

20   **V.    REQUEST FOR JUDICIAL NOTICE**

21        Plaintiffs respectfully request that the Court take judicial notice of Exhibit 1 to the Ratinoff

22   Declaration, which is a copy of the GNU Affero General Public License ("AGPL") referenced in

23   GFI's Fifth Affirmative Defense.  Plaintiffs also respectfully request that the Court take judicial

24   notice of Exhibit 2 to the Ratinoff Declaration, which is a copy of the Neo4j Sweden Software

25   License that forms the basis for Plaintiffs' DMCA and Breach of Licensing Agreement claims to

26   which GFI asserts its Fifth Affirmative Defense.  Since these licenses are referenced in the parties'

27   respective pleadings and are the subject of GFI's Fifth Affirmative Defense, the Court may rely

28   upon the doctrine of incorporation by reference to consider them in ruling on this Motion.  *See Van*

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3664216.2                               - 11 -

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF          5:19-CV-06226-EJD

*Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).  In addition, the Court previously granted judicial notice of the AGPL and the Neo4j Sweden Software License.  *See* Dkt. No. 88 at 7:18-27.

## VI.   LEGAL ARGUMENT

### A.   GFI is Barred by the Law of the Case Doctrine From Reasserting its AGPL Arguments as an Affirmative Defense

GFI's Fifth Affirmative Defense is primarily based on the theory that GFI can justify the removal of the Commons Clause from the Neo4j Sweden Software license because Plaintiffs were not permitted to alter the form license agreement under the terms of the FSF copyright over the form AGPL.  As noted above, the Court expressly rejected this identical argument made in GFI's motion to dismiss because (1) Plaintiffs' claims are based on the more restrictive Neo4j Sweden Software License, not the form AGPL; and (2) "Defendants are not entitled to enforce the FSF's copyright."  Dkt. No. 88 at 6:5-18.

GFI's attempt to revive this third-party copyright theory violates the "law of the case" doctrine.  Under this doctrine, it is well recognized that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *United States v. Park Place Assoc.*, 563 F.3d 907, 925 (9th Cir. 2009); *see also Richardson v. United States*, 841 F.2d 993, 996 (9th Cir.1988) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.")  For the law of the case doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in the previous disposition."  *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir.2000).  Further, under the law of the case doctrine, a party may neither "revisit theories that it raises but abandons," nor "offer up successively different legal or factual theories that could have been presented in a prior request for review."  *Sec. Investor Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir.1996) (quotations and citations omitted).

As detailed above, the legal issue of whether GFI could enforce FSF's copyright as a means to justify its removal of the Common Clause was fully litigated via GFI's motion to dismiss.  *See* Dkt. No. 75 at 3:1-16, 5:1-9; Dkt. No. 80 at 14:9-15:9; Dkt. No. 82 at 5:7-10.  More importantly, the Court expressly rejected GFI's assertion that it had standing to do so.  Dkt. No. 88 at 6:5-18.

Likewise, GFI fully argued that Sections 7 and 10 of the AGPL and the Neo4j Sweden Software License permitted a licensee to remove "further restrictions" imposed by the licensor. Again, the Court expressly rejected GFI's interpretation of both licenses, finding that Neo4j Sweden had every right to add the Commons Clause as the copyright owner and original licensor of Neo4j® EE, and GFI had no right to remove that clause as a licensee. *Id.* at 6:19-8:4. As a result, there is no justification for GFI ignoring the law of the case doctrine by re-alleging these arguments as affirmative defenses that were previously considered and rejected by the Court. *See, e.g., Vigman*, 74 F.3d at 937 (stating that the law of the case doctrine prevents a litigant from "offer[ing] up successively different legal or factual theories that could have been presented in a prior request for review"). The Court should therefore strike GFI's Fifth Affirmative Defense with prejudice.

**B.    GFI's Fifth Affirmative Defense Fails as Matter of Law Because Sections 7 and 10 of the Neo4j Sweden Software License Do Not Give a Licensee the Right to Remove or Alter Terms Added the Copyright Holder and Licensor**

As detailed above, GFI's Fifth Affirmative Defense is based on the erroneous assumption that the FSF's copyright in the original AGPL, a form agreement upon which the Neo4j Sweden Software License is based, and allege intent in creating that license, somehow gives them the right to remove the Notice Provision and the Commons Clause. *See* Dkt. No. 91 at 13:13-18. This is legally untenable because third parties, such as Defendants or Suhy, do not have standing to enforce FSF's copyright. *See* 17 U.S.C. §§ 106, 201(b); *see also Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) (only the copyright owner, assignee or an exclusive licensee of a right enumerated by §106 has standing to bring an infringement action based on that right).

Moreover, the terms of the Neo4j Sweden Software License and their intent are not determined by FSF because it is not the actual licensor of Neo4j® EE, and not a party to the Neo4j Sweden Software License. *See* Cal. Civ. Code §§ 1636, 1639; *see also Ben–Zvi v. Edmar Co*., 40 Cal.App.4th 468, 475 (1995) ("contract must be interpreted to give effect to the mutual, expressed intention of the parties… [and] their mutual intention is to be determined, whenever possible, from the language of the writing alone"). Thus, GFI's second attempt to enforce a third party's copyright remains contrary to controlling law. *See* Dkt. No. 88 at 6:5-18.

Likewise, as previously recognized by the Court, GFI's interpretation of the AGPL and the

1    Neo4j Sweden Software License is simply wrong.  *See* Dkt. No. 88 at 6:19-8:4.  GFI maintains the

2    untenable position that Section 10 states that the licensor may not impose any further restrictions

3    on the exercise of rights granted or affirmed under this license.  Read correctly, however, Section

4    10 states that "***You*** may not impose any further restrictions on the exercise of the rights granted or

5    affirmed under this License."  *See* Ratinoff Decl., Exh. 2 at § 10 (emphasis added).  This is a critical

6    distinction because the Neo4j Sweden Software License defines "you" as the ***licensee***, not the

7    ***licensor***.  *See id.* at § 0 ("Each licensee is addressed as 'you'").  In other words, Section 10 expressly

8    prohibits a ***licensee*** from imposing further restrictions, but does not prohibit Neo4j Sweden as the

9    ***licensor*** of the ***Program***, not the license itself, from doing so.  *See id.* at § 0.

10       GFI's interpretation of Section 10 thus runs contrary to the express definition of "you" in

11    the agreement.  *See* Dkt. No. 88 at 6:24-7:2.  It also results in the absurdity of "you" meaning both

12    the licensor (Neo4j Sweden) and the licensee (GFI), which is impermissible.  *See Zalkind v.*

13    *Ceradyne, Inc.*, 194 Cal.App.4th 1010, 1027 (2011) ("the meaning of a contract must be derived

14    from reading the whole of the contract, with individual provisions interpreted together, in order to

15    give effect to all provisions and to avoid rendering some meaningless"); *accord Wapato Heritage,*

16    *L.L.C. v. United States*, 637 F.3d 1033, 1039 (9th Cir. 2011).  Indeed, it would nullify the entire

17    purpose of the license agreement by negating Neo4j Sweden's exclusive right to license its

18    copyrighted source code files under the terms of its choosing.  *See Apple Inc. v. Psystar Corp.*, 658

19    F.3d 1150, 1159 (9th Cir. 2011) ("copyright owners may choose to simply exclude others from

20    their work" or "use their limited monopoly to leverage the right to use their work on the acceptance

21    of specific conditions"); *see also Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008)

22    ("[c]opyright holders who engage in open source licensing have the right to control the modification

23    and distribution of copyrighted material").

24       GFI's allegation that Section 7 granted it permission to remove additional restrictions added

25    by the original licensor, i.e. Neo4j Sweden, fares no better.  *See* Dkt. No. 88 at 13:18-23.  In making

26    this claim again, GFI cites to the clause "If the Program as you received it, or any part of it, contains

27    a notice stating that it is governed by this License along with a term that is a further restriction, you

28    may remove that term." *Id.*  This clause, however, cannot be read in isolation.  Rather, it must be

put in context within the surrounding clauses in Section 7 and the Neo4j Sweden Software License. *See* Cal. Civ. Code. § 1641; *Zalkind*, 194 Cal.App.4th at 1027.  Notably, the excerpt cited by GFI is preceded by the following in Section 7:

> Notwithstanding any other provision of this License, ***for material you add to a covered work***, ***you*** may (if authorized by the copyright holders of that material) supplement the terms of this License with terms
>
> a) Disclaiming warranty or limiting liability differently from the terms of sections 15 and 16 of this License; or
>
> b) Requiring preservation of specified reasonable legal notices or author attributions in that material or in the Appropriate Legal Notices displayed by works containing it; or
>
> c) Prohibiting misrepresentation of the origin of that material, or requiring that modified versions of such material be marked in reasonable ways as different from the original version; or
>
> d) Limiting the use for publicity purposes of names of licensors or authors of the material; or
>
> e) Declining to grant rights under trademark law for use of some trade names, trademarks, or service marks; or
>
> f) Requiring indemnification of licensors and authors of that material by anyone who conveys the material (or modified versions of it) with contractual assumptions of liability to the recipient, for any liability that these contractual assumptions directly impose on those licensors and authors.
>
> All other non-permissive additional terms are considered "***further restrictions***" within the meaning of section 10.  If the Program as ***you*** received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a ***further restriction***, you may remove that term.

*See* Ratinoff Decl., Exh. 2 at § 7 (emphasis added).

When read in full, Section 7 clearly governs the actions of ***licensees*** alone, ergo the repeated use of the defined term "you" and the fact that subject matter of Section 7 pertains to what additional permissions and restrictions ***licensees*** may place on a covered work when adding source code and redistributing it as required by the license.  In particular, the sentence relied upon by GFI is immediately preceded by a sentence stating that a licensee who adds material to the original work may add any of the six enumerated "additional restrictions" and that any other terms "non-permissive additional terms" are "further restrictions" ***as defined by Section 10***.  The clause relied

1   upon by GFI also uses the term "further restriction," and must be read in a consistent matter with

2   this term as defined by the license.  *See Fahrner-Miller Assocs., Inc. v. Mars Antennas & RF Sys.,*

3   *Ltd.*, 2014 WL 6871550, at *1 (N.D. Cal. Dec. 4, 2014) (the "cardinal principle" of contract

4   interpretation is that "a document should be read to give effect to all its provisions and to render

5   them consistent with each other").  As noted above, Section 10 makes clear that only **licensees** are

6   precluded from adding further restrictions.  Thus, reading these provisions together, makes clear

7   that Section 7 only allows a downstream licensees to remove "further restrictions" placed by an

8   upstream licensee that has added to the original work, which do not fall within the six enumerated

9   additional terms.  *See* Dkt. No. 88 at 7:2-9.

10      Further, GFI's strained interpretation that licensees may alter or remove terms from the

11  Neo4j Sweden Software License goes against Neo4j Sweden's express intent of precluding others

12  from commercially benefiting from the software and the express language of terms such as the

13  Commons Clause.  *See* FAC, ¶ 121 ("the grant of rights under the License will not include, and the

14  License does not grant to you, the right to Sell the Software"); *see also* FAC, ¶ 32 ("Neo4j Sweden

15  added the Commons Clause to the license for Neo4j® EE to prevent third parties… from

16  monetizing such software while not contributing back to the companies who are producers of the

17  software").  A licensor's intent to limit the commercialization of its software generally should be

18  given effect as intended by the **licensor**, not the licensee.  *See Altera Corp. v. Clear Logic, Inc.*,

19  424 F.3d 1079, 1091 (9th Cir. 2005); *see also Micro Star v. Formgen Inc.*, 154 F.3d 1107 (9th Cir.

20  1998) (term in a license allowing users of a computer game to develop enhancements, but barring

21  the resale of the enhancements for a profit, was enforceable); *Storm Impact, Inc. v. Software of the

22  Month Club*, 44 U.S.P.Q.2d 1441, 1997 WL 566378 (N.D. Ill. 1997) (distribution for commercial

23  purposes was infringement where terms of license limited use to non-commercial purposes).

24      The Ninth Circuit's holding in *Altera* is instructive.  In that case, Altera distributed

25  programmable logic devices (PLDs) and licensed software to program the chips.  *Id.* at 1081.  The

26  accompanying license provided that customers may use "Programs for programming logic devices

27  manufactured by Altera and sold by Altera."  *Id.*  Clear Logic encouraged Altera's customers to

28  develop their designs with Altera's software and then to send the bitstream files to Clear Logic.  *Id.*

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto

842\3664216.2                                  - 16 -

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF          5:19-CV-06226-EJD

1    at 1082.  Whether Clear Logic could be held liable for intentionally interfering with the Altera

2    license by inducing customers to breach the license terms turned on what the word "use" meant.

3    *Id.* at 1090-91.  Clear Logic argued that the term "use" referred to the use of the software itself, not

4    the bitstream output.  *Id.*  The Ninth Circuit rejected defendant's narrow interpretation, finding that

5    Altera's intent was clear from the language in the license agreement, and that the "use" clause

6    "sought to prevent competitors from benefitting from its software." *Id.* at 1091.

7         Here, Neo4j Sweden made its post-May 2018 Neo4j® EE software available on the

8    condition that licensees abided by ***all*** the terms of the Neo4j Sweden Software License.  When GFI

9    downloaded Neo4j® EE software and made copies thereof available via its website and own

10   GitHub repository, it agreed to be bound by the ***entirety*** of Neo4j Sweden Software License,

11   including the commercial restrictions imposed by the Commons Clause.  *See* FAC, ¶¶ 30-32, 43-

12   44, 67, 115, 118-120.  As a result, GFI cannot unilaterally alter the terms of the Neo4j Sweden

13   Software License without breaching it.  *See MedioStream, Inc. v. Microsoft Corp.*, 749 F.Supp.2d

14   507, 519 (E.D. Tex. 2010) (plaintiff adequately pled a claim for breach of the GLP by alleging,

15   *inter alia*, that defendant had accepted all of its terms and conditions for copying, distributing, and

16   modifying the covered software by downloading copies and incorporating it in commercially

17   distributed products); *accord Artifex Software, Inc. v. Hancom, Inc.*, 2017 WL 1477373, at *3 (N.D.

18   Cal. Apr. 25, 2017) (citing same).

19        Finally, the Commons Clause should be harmonized with the balance of the Neo4j Sweden

20   Software License.  Aside from its obligation to ascertain whether a contract is clear or ambiguous,

21   a Court has a duty to construe a contract to avoid a forfeiture, if at all possible. *Milenbach v. C.I.R.*,

22   318 F.3d 924, 936 (9th Cir.2003) ("[w]here there are two possible interpretations of a contract, one

23   that leads to a forfeiture and one that avoids it, California law requires the adoption of the

24   interpretation that avoids forfeiture, if at all possible"); *accord Universal Sales Corp. v. Cal., Press

25   Mfg. Co.*, 20 Cal.2d 751, 771 (1942).  As detailed above, accepting Defendants' interpretation of

26   Sections 7 and 10 would result in a forfeiture of Neo4j Sweden's right to license the Neo4j® graph

27   database platform as it sees fit.  Thus, the Court should once again summarily reject Defendants'

28   erroneous interpretation of these sections and strike GFI's Fifth Affirmative Defense.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

842\3664216.2

- 17 -

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF          5:19-CV-06226-EJD

1

### C.    The Court Should Deny Leave to Amend

When dismissing a claim or defense, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.200) (en banc) (internal quotes and citation omitted).  Nonetheless, a court should not grant leave to amend "where doing so would be an exercise in futility." *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1033 (N.D. Cal. 2012).  The Court may deny leave to amend "if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010); *accord Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (holding that an "amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense'") (citation omitted).  Likewise, the Court should deny leave to amend where the facts are not in dispute, and the sole issue is a matter of substantive law.  *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

As discussed above, GFI's Fifth Affirmative Defense is based on the same flawed interpretation of the Neo4j Sweden Software License and the erroneous position that it has standing to enforce the FSF's copyright.  Recasting these arguments as an affirmative defense does not change the fact that the Court rejected these legal theories in ruling on GFI's motion to dismiss.  Thus, granting GFI further leave to amend would be futile.  Accordingly, the Court should strike GFI's Fifth Affirmative Defenses with prejudice and deny GFI leave to amend its answer.

### VII.    CONCLUSION

For the reasons set forth herein, Neo4j USA respectfully requests that the Court grant this Motion to Strike GFI's Fifth Affirmative Defense with prejudice, and to deny leave to amend.

Dated:  January 7, 2021

HOPKINS & CARLEY
A Law Corporation

By:*/s/ Jeffrey M. Ratinoff*
John V. Picone III
Jeffrey M. Ratinoff
Attorneys for Plaintiffs
NEO4J, INC. and NEO4J SWEDEN AB

NEO4J'S MOTION TO STRIKE GRAPH FOUNDATION, INC.'S ANSWER TO FIRST AMENDED
COMPLAINT; MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF          5:19-CV-06226-EJD