Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney at Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
adron@adronlaw.com

Attorneys for defendants:
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br>Plaintiffs,<br>v.<br><br>PURETHINK LLC, a Delaware limited liability company, IGOV INC., a Virginia corporation, and JOHN MARK SUHY, an individual,<br>Defendants. | CASE NO. 5:18-CV-7182 EJD<br>CASE NO. 5:19-CV-06226-EJD<br><br>**DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT / NOTICE OF MOTION AND CROSS MOTION MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OR POINTS AND AUTHORITIES IN SUPPORT** |

### AND RELATED COUNTERCLAIMS

| | |
|---|---|
| NEO4J, INC., a Delaware corporation, and NEO4J SWEDEN AB, a Swedish corporation,<br>Plaintiffs,<br>v.<br>GRAPH FOUNDATION, INC., an Ohio corporation, GRAPHGRID, INC., an Ohio corporation, and ATOMRAIN INC., a Nevada corporation,<br>Defendants. | Date: March 25, 2021<br>Time: 9:00 a.m.<br>Dept. Courtroom 4, 5th floor<br>Judge: Hon. Edward J. Davila |

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

i

# TABLE OF CONTENTS

I.    Introduction ........................................................................................... 1

II.   Defendants' Notice of Cross Motion and Cross Motion ..................... 1

III.  Background Facts Germane to Phase 1. ............................................. 1

   A.   PureThink ...................................................................................... 3

   B.   The Falling out (IRS) .................................................................... 3

IV.   Statement Of Issues To Be Decided ................................................. 8

V.    Standard for Summary Judgment ..................................................... 8

VI.   Standing ............................................................................................ 10

VII.  Trade Mark Causes of Action .......................................................... 12

   A.   USA is not the owner of the Neo4j trademark and its registration does not
   mean USA owns the trademark to Neo4j. ........................................ 12

   B.   Defendants' Nominative Use is Non Infringing. .......................... 14

   C.   USA has not met its burden to show defendants' use is not nominative fair
   use. .................................................................................................... 15

VIII. Contract Liability Theory. ................................................................ 17

IX.   Licensee Estoppel ............................................................................ 20

   A.   USA is estopped to claim ownership in Sweden's Neo4J's Mark. ...... 21

X.    False Advertising Claims ................................................................. 21

   A.   False Designation Of Origin Claim Is Not Valid As ONgDB Is based on
   Neo4J. ............................................................................................... 21

B.    There are disputed issues of fact on Elements of the False Advertising claims. ............................................................................................ 22

C.    USA cannot show empirically that ONgDB is not a "Drop In" replacement for the commercial version. ...................................................... 23

D.    There is no false advertising based on the APGL ........................... 27

E.    The Material Purchasing Issue Is The Price ................................... 30

F.    Use of Content on the Github Site is Permitted ............................... 31

XI.    Permanent Injunction ............................................................................ 31

A.    Nominative Use Injunctions are Limited. ....................................... 33

XII.    Cross Motion for Summary Judgment .................................................. 33

A.    Trademark Infringment Claim ......................................................... 33

B.    False Advertising Claims ................................................................. 34

# TABLE OF AUTHORITIES

**Cases**

*American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999)................................................ 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................. 9, 10

*Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011) ........................................ 30

*Automotriz del Golfo De California S.A. de C.V. v. Resnick*, 47 Cal.2d 792 (1957) .. 18

*Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528 (9th Cir. 1985) ............................. 10

*Castrol, Inc., v. Quaker State Corp.*, 977 F.2d 57 (2d Cir. 1992) ............................... 25

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................... 9

*Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011).................... 10, 11

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d ll56 (9th Cir. 1992) ..................................... 9

*Creative Labs, Inc. v. Cyrix Corp.*, 1997 U.S. Dist. LEXIS 14492 (N.D. Cal., May 7, 1997) ........................................................................................................................ 26

*Dole Food Co. v. Patrickson,* 538 U.S. 468 (2003) .................................................... 14

*Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*, 343 F.2d 655 (7th Cir. 1965) ......... 20

*Eastman Kodak Co. v. Image Technical Services, Inc.* 504 U.S. 451 (1992) ............. 10

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008) ........................................ 20

*EFCO Corp. v. Symons Corp.*, 219 F.3d 734 (8th Cir. 2000)...................................... 26

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837 (9th Cir.1987)............ 6, 12

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F.Supp.2d 1013 (C.D. Cal. 2011) aff'd 738 F.3d 1085 (9th Cir. 2013) .......................................................................... 13, 21

*In re Wella A.G.*, 787 F.2d 1549 (Fed. Cir. 1986)....................................................... 14

*Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020)...................................... 19

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) .................................................. 30

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................... 10

*Musick v. Burke*, 913 F.2d 1390 (9th Cir. 1990) ......................................................... 9

*Navajo Air, LLC v. Crye Precision, LLC,* 318 F.Supp.3d 640 (S.D.N.Y. 2018) ......... 21

*New Kids on the Block v. News America Pub., Inc.,* 971 F.2d 302 (9th Cir. 1992) .... 15

*Pacific Supply Co-op. v. Farmers Union Central Exchange Inc.,* 318 F.2d 894 (9th

    Cir. 1963) ................................................................................................................. 21

*Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840 (9th Cir. 2004) ...................... 27

*Pizza Hut, Inc. v. Papa John's Intern., Inc.,* 227 F.3d 489 (5th Cir. 2000) ......... 22, 23

*Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) ............................ 16

*Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154 (1st Cir.1977) ................... 13

*Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190 (9th Cir. 2012) ....... 8, 13, 34

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,* 690 F.2d

    1235 (9th Cir. 1982) ................................................................................................. 9

*Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.,* 339 F.Supp. 973 (M.D. Tenn. 1971),

    aff'd 470 F.2d 975 (6th Cir. 1972) .......................................................................... 12

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir.1997) ............ 23, 26

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) .......................................................... 10

*Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301 (N.D. Cal. 1998) ...... 26

*Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171 (9th Cir. 2010) ....... passim

*Ultrapure Systems, Inc. v. Ham-Let Group,* 921 F.Supp. 659 (N.D. Cal. 1996) ........ 13

*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F.Supp.3d 816 (N.D. Cal.

    2015) ......................................................................................................................... 18

*United States v. Diebold, Inc.*, 369 U.S. 654 (1992) .................................................... 9

*United States v. Hays*, 515 U.S. 737 (1995) .............................................................. 10

*Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292 (4th Cir. 2017) ................................ 22

*Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350 (9th Cir. 1969) aff'd
   413 F.2d 1126 (9th Cir. 1969) .................................................................. 15

*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008) ............... 31, 32

*Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516 (1903)....................................... 7

**Statutes**

15 U.S.C. § 1051 et. seq ........................................................................ 13

15 U.S.C. § 1125........................................................................................ 23

16 C.F.R. § 14.15 ..................................................................................... 16

Cal. Bus. and Prof. Code § 16600 ........................................................... 19

Cal. Evid. Code § 622 ............................................................................... 21

USCS Fed. Rules Civ. Proc. 56............................................................... 8, 9

## I.    Introduction

This is defendants combined opposition to Plaintiff's Neo4J Inc.'s ("USA") motion for partial summary judgment and summary judgment, and cross motion for summary judgment on Plaintiff Neo4J Inc.'s First Causes of Action for Trademark Infringement, 15 U.S.C. 1114 and False Advertising and UCL claims in both cases. While Plaintiff Neo4J Sweden AB ("Sweden") is listed as a moving party, they are not a party to the 4 causes of action in Phase 1 and cannot bring the motion.

## II.    Defendants' Notice of Cross Motion and Cross Motion

Notice is hereby given that on March 25, 2021 at 9:00 a.m. before the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, 280 South First Street, San Jose, CA 95113, defendants will move for Summary Judgment under Federal Rule of Civil Procedure 56 against Neo4J, Inc.'s First Cause of Action for Trademark Infringement and the Second, Third, and Fourth Causes of Action for False Advertising and related State UCL claims in each case (Case No. 5:18-cv-07182-EDJ and Case No. 5:19-CV-06226-EJD).

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Defendant's responses to  Neo4J Inc.'s Separate Statement of Undisputed Facts attached as **Exhibit A**, Defendants' Separate Statement of Undisputed Facts attached as **Exhibit B**, the Declarations of Adron G. Beene, John Mark Suhy, John D. Pernick, and all pleadings records and files in the two related actions and such other evidence and argument as may be presented at the hearing on the motions.

## III.    Background Facts Germane to Phase 1.

Neo4j Sweden AB (FKA Network Engine for Objects in Lund AB) ("Sweden") was involved in developing a graph database called Neo4j.  Sweden then released

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

1

the software for free under the Free Software Foundation's open source GPL (Neo4j community) and AGPL (Neo4j Enterprise) licenses to the public.   Because Neo4j was free and open source, its adoption and use grew dramatically attracting 3rd parties who wanted to work with open source. Because it was open source it also attracted joint authors called contributors who helped further add to the software. It also led to over 2000 forks/derivatives of the Neo4j software.

As Neo4j's adoption grew, Sweden decided to monetize its efforts. However, instead of offering a support model by the founders of the Neo4J software, Sweden decided to license the software as a proprietary closed version which is a violation of the GPL and AGPL licenses.

Sweden set up Neo Technology, Inc. which changed its name to Neo4J, Inc. and licensed its software and trademarks on a non-exclusive basis to USA. (D Fact[1] 126) Although not the owner of the Neo4J trademark, USA improperly filed and obtained a registration for the Neo4J trademark.

Historically, the difference between the Neo4j Enterprise AGPL open source licensed distribution and the Neo4j Enterprise Commercially licensed distribution, was via legal terms.  There were not any physical differences in the software.   The commercial license put restrictions on the number of computer cpu cores and number of server instances that could be used.  The Neo4j Enterprise open source license had no such legal restrictions.

Neo4j Enterprise open source software under the AGPL license through version 3.4 are still in use, and available under the AGPL license terms to this day. Neo4j Enterprise versions 3.4 are also available under the AGPL License with the

---

[1] "D Fact" refers to defendants additional undisputed facts referenced in Defendants' Separate Statement of Undisputed Facts attached as **Exhibit B**

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

commons clause restriction aimed at preventing users from selling Neo4j. The services restriction is not about providing professional services but using the software as a service known as SaaS. Sweden then abandonded the open source community as Neo4j Enterprise source code was removed from the public GitHub repositories starting with version 3.5.0.

### A.    PureThink

USA signed PureThink as a reseller under a Solution Partner Agreement ("SPA"). PureThink had quick initial success selling Neo4j to the US government leading to PureThink being a trusted partner to USA in the US government space.

PureThink and USA then entered into an exclusivity agreement and PureThink designed and developed a government package that would streamline government procurements via sole source procurements and address requirements specific to the US government which were not provided with the standard Neo4j Enterprise commercial packages.  The new offering was called Neo4j Government Edition (AKA Neo4j Enterprise Government Edition)

In total - PureThink sold commercial packages to NSA, FBI, Sandia Laboratories, IRS, and almost DHS. Neo4j USA offered to hire Mr. Suhy to continue to run the Government Edition under the Neo4j USA umbrella as it was becoming very valuable. Mr. Suhy declined.

### B.    The Falling out (IRS)

USA had been trying to get the Internal Revenue Service to purchase a Neo4j Enterprise commercial license for over a year.  As the procurement deadline loomed - the IRS communicated that it was not interested in purchasing a commercial license with support because they needed a solution built and not support for something that was not built or ready for production.

1    Instead of losing the opportunity to work with the IRS, Suhy told USA that

2    he wanted to try another approach to be able to work with IRS.   The approach was

3    to build the solution IRS needed during the first year, so that the follow up years

4    could generate commercial license revenue. USA agreed, and Suhy / PureThink

5    entered into an agreement with USA and signed a contract with IRS for consulting

6    services to build out a solution for IRS.

7    As the initial contract was coming to an end, IRS was planning on pushing

8    the solution built under the consulting contract to production.  IRS had learned that

9    Neo4j Enterprise was available for free with no restrictions on cores or server

10   instances under the AGPL open source license.  The US government has set a policy

11   of using open source software to save taxpayer dollars. IRS asked Suhy about the

12   Neo4J open source license.

13   For clarity, as USA obfuscates the issue, Sweden licenses Neo4J as open

14   source under the GPL and APGL; USA does not. USA licenses Neo4j in object code

15   on a commercial basis based on its license with Sweden. Defendants in this case are

16   only involved in Sweden's open source version of Neo4J.

17   USA's sales team instructed Suhy to lie and tell IRS that they could not use

18   the open source licensed distribution in production.   On phone calls they indicated

19   that PureThink and USA would not make any revenue from licensing if IRS used

20   the open source license.   Suhy refused to lie to the IRS.

21   USA then directly contacted the IRS and told them they could not use Neo4j

22   Enterprise in production under the open source license.   Suhy refuted that

23   statement. USA's position was false and inconsistent with the AGPL. And USA

24   knows that the position is false and that the Neo4j Enterprise open sourced licensed

25

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR    4
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

version was preferred and did not have limitations on cluster instances or cores, that the commercial licensed version had.

USA retaliated against PureThink and Suhy in a campaign that included interference with PureThink clients and targeting Suhy personally. USA then terminated PureThink's partner agreement and exclusivity agreement based on claims that were allowed by the IRS PT/USA agreement.

USA told the Government that PureThink could not provide any services on the open source Neo4J database as the SPA had a three year bar after termination. As USA was terminating PureThink, Suhy set up a new company called iGov Inc to focus on offering only open source solutions to the government.

iGov set up as a new company to build and sell, with the plan to support open source software including Sweden's Neo4J open source software and eventually supported the government use of the open source version of Neo4J. iGov has explained on its website and blog why people should use the free open source version of Neo4J. USA wants to stop that, even though they know its true, so they can sell licenses for basically the same software.

Suhy and GFI then worked to ensure a version of open source software survived for all the users to have access to a proper copy of Neo4J in open source.

As more people learned that Neo4j Enterprise was open source, Sweden, which owns Neo4j, tried to add commercial restrictions to the public downloads of Neo4j enterprise on USA's websites and implemented measures to make it harder for users to build the software themselves.

When the measures to deter users failed, Neo4j Sweden then changed its AGPL license to add a commons clause preventing resale of the open source software even though the copyright holder says the AGPL cannot be altered and

licensees can remove the improper restrictions. And this is after all the users and joint authors relied on the AGPL agreement as third-party beneficiaries of the express terms of the AGPL.

Neo4j Sweden released new versions of Neo4j Enterprise with the modified AGPL license to attract new users, many of whom adopted it because it was open source. Finally, when that measure did not stop the enterprise licensed distribution adoption, Sweden finally abandoned releasing enterprise as open source code and has attempted to shut down all use.

By this lawsuit, USA seeks to stop the defendants from doing what they are allowed to do. They are allowed to support Neo4J open source software. They are allowed to make derivatives of Neo4J software licensed as open source software. They are allowed to use all content, which included documentation, Sweden puts on the GitHub repository and fork the Neo4J software. They are allowed to fairly use the Neo4J trademark owned by Sweden to identify to people the software they support and GFI's open source Neo4J fork called ONgDB. They are allowed to fairly use the Neo4J trademark for comparative advertisements to provide consumers the right to fairly decide whether it's worth it to pay for USA's "commercial" version or use a free version.

This motion is part of Phase 1 which is limited to Trademark issues and certain trademark defenses (Dkt. No. 68 pg. 3.)

Under the agreement to limit the issues in Phase 1, the Unclean Hand defense was reserved to Phase 2. (Dkt. No. 82 ¶3) The Unclean Hands defense is a significant defense against the Trademark and Lanham Act and UCL claims in this action and was reserved for Phase 2 because it is intertwined with the counterclaims and other defenses. See *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*

1   826 F.2d 837, 847 (9th Cir.1987). ("Unclean hands is a defense to a Lanham Act

2   infringement suit."); *Worden v. Cal. Fig Syrup Co.,* 187 U.S. 516, 528, 23 S.Ct. 161,

3   47 L.Ed. 282 (1903). All defenses must be considered before any final action may be

4   taken.

5       On September 28, 2020 Plaintiffs filed a Third Amended Complaint. (Dkt.

6   No. 90). The PT defendants filed a Third Amended Answer on October 19, 2020

7   (Dkt. No. 91) which they are allowed to do. Defendants asserted procedural issues

8   with the answer moving to strike the 7th affirmative defense (Cancellation of

9   Trademark Procured by Fraud) and the 9th Affirmative (Defense for Naked License

10  Abandonment of Trademark). (Dkt. No 93.) USA claims a party may not assert

11  affirmative defenses to a new complaint when they are dismissed with prejudice on

12  a prior complaint. That motion is set for hearing February 11, 2021. USA does not

13  challenge the affirmative defenses in this motion. But the evidence shows USA does

14  not own the Neo4J trademark and did not use the trademark before it existed. (D

15  Facts 125, 130) As USA paid Sweden under the License Agreement, there is a

16  strong inference the Lars Nordwall, the COO of USA, knew USA did not own the

17  Neo4J Trademark when he applied for the trademark claiming it did.  (D Facts 129,

18  130). He also knows USA did not use the trademark since 6/04/2006 which is before

19  USA was formed on July 7, 2011. (D Fact 130). USA provides no evidence that

20  Sweden controlled quality on Sweden's software the years before the software and

21  trademark was licensed to USA. (D Fact 131). While USA has mentioned the parent

22  controls the subsidiary concept on quality control, that is not accurate in this

23  relationship. The subsidiary, Sweden owns the mark and the software. This is not a

24  typical parent subsidiary downstream license or relationship. And the License

25  Agreement from Sweden to USA has no quality control provisions. (D Fact 132)

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

7

1  Sweden did not control quality with users of Neo4J and allowed them to use the

2  Neo4J trademark extensively without any quality controls.

3  **IV.    Statement Of Issues To Be Decided**

4         1. Whether there is a material fact whether USA owns the Neo4J mark which

5  is an element of its trademark claim.

6         2. Whether there is a disputed material fact whether defendants use of the

7  Neo4J mark is **not** nominative.

8         3. Whether there is a disputed issue of fact that USA has no standing on

9  claims regarding defendants' use of **Sweden**'s Neo4J trademark and software.

10        4. Whether there is a disputed material fact that ONgDB is not falsely

11 advertised and its origin is not falsely designating.

12        5. Whether there is a disputed material fact that consumers material decision

13 is based on **price** and not defendants representations.

14        6. Whether a permanent injunction may issue before all defenses and claims

15 are considered.

16        7. Whether a permanent injunction may issue preventing all nominative use

17 of the Neo4J mark.

18        8. Whether any injunction is proper given the public consequences.

19 **V.    Standard for Summary Judgment**

20        Because of the intensely factual nature of trademark disputes, summary

21 judgment is generally disfavored in the trademark arena. *Rearden LLC v. Rearden*

22 *Commerce, Inc.* (9th Cir. 2012) 683 F.3d 1190, 1202. Summary judgment is proper if

23 "the movant shows that there is no genuine dispute as to any material fact and the

24 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary

25 judgment is to be granted cautiously, with due respect for a party's right to have its

1  factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477

2  U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A

3  court must view the facts and draw inferences in the manner most favorable to the

4  non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron*

5  *Corp. v. Pennzoil Co.*, 974 F.2d ll56, 1161 (9th Cir. 1992). The moving party bears

6  the initial burden of demonstrating the absence of a genuine issue of material fact

7  for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323.

8  When the non-moving party bears the burden of proving the claim or defense, the

9  moving party can meet its burden by pointing out that the non-moving party has

10 failed to present any genuine issue of material fact as to an essential element of its

11 case. See *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

12       Once the moving party meets its burden, the burden shifts to the opposing

13 party to set out specific material facts showing a genuine issue for trial. See *Liberty*

14 *Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome

15 of the suit under the governing law ...." *Id.* at 248. A party cannot create a genuine

16 issue of material fact simply by making assertions in its legal papers. *S.A. Empresa*

17 *de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238

18 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the

19 basis for the dispute. See *id.* The Court need not "comb the record" looking for other

20 evidence; it is only required to consider evidence set forth in the moving and

21 opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3);

22 *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The court

23 must view the evidence presented on the motion in the light most favorable to the

24 opposing party: "The evidence of the non-movant is to be believed, and all justifiable

25 inferences are to be drawn in his favor." [*Anderson v. Liberty Lobby, Inc.*, supra, 477

1    US at 255, 106 S.Ct. at 2513.  At the summary judgment stage, the nonmovant's

2    version of any disputed issue of fact is presumed correct. *Eastman Kodak Co. v.*

3    *Image Technical Services, Inc.* (1992) 504 US 451, 112 S.Ct. 2072. A person's state

4    of mind (motive, intent, knowledge, etc.) may be inferred from his or her conduct.

5    But summary judgment is improper where conflicting inferences can be drawn from

6    such conduct (i.e., where reasonable minds could disagree as to a person's motives,

7    etc.). See, *Braxton-Secret v. A.H. Robins Co.* (9th Cir. 1985) 769 F2d 528, 531

8    **VI.    Standing**

9         "The federal courts are under an independent obligation to examine their

10   own jurisdiction, and standing is perhaps the most important of the jurisdictional

11   doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995).

12        At an irreducible constitutional minimum, a plaintiff must show three

13   elements to establish standing. *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939,

14   956 (9th Cir. 2011). First, the plaintiff must have suffered an "injury in fact"—an

15   invasion of a legally protected interest which is concrete, particularized, and

16   imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S.

17   555, 560 (1992); see also *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548-49 (2016), as

18   revised (May 24, 2016). In Spokeo, the Supreme Court made clear that "concrete" is

19   not "necessarily synonymous with 'tangible,' " and indicated a "risk of real harm"

20   could satisfy the concreteness requirement. *Id.* at 1549. Second, there must be a

21   causal connection between the injury and the challenged conduct. Lujan, 504 U.S.

22   at 560. Third, it must be likely, as opposed to merely speculative, that the injury

23   will be redressed by a favorable decision. Id. Ultimately, a plaintiff, as the party

24   invoking federal jurisdiction, has the burden of establishing these elements. See id.

25   at 561. "Even if a claim satisfies the three elements of standing to sue for past

1   illegal conduct, to sustain standing for injunctive relief, a claimant must also

2   establish a 'real and immediate threat of repeated injury.' " *Chapman*, 631 F.3d at

3   956 (citing *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)

4   ).

5          Since USA does not own the Neo4J trademark, its lacks standing to bring an

6   infringement claim. Much of USA's claims actually revolve around defendants' use

7   and mention of **Sweden**'s open source software and trademark. Defendants do not

8   use or support USA's software. Defendants' mention of USA software is for

9   comparative advertisement which legally allowed fair use. USA cannot assert

10  claims based on Defendants use of Sweden's software and trademark. While USA

11  litters the pleadings and the motion with plaintiffs plural, the reference is false.

12  Plaintiff Sweden is not the plaintiff in the First, Second, Third, Fourth, Fifth, or

13  Sixth causes of Action. (Dkt No. 90). While USA asserts claims based on Sweden's

14  DCMA claims, USA is not the owner of the software (D Fact 125) and therefore has

15  no standing to assert the claim. This is also a phase 2 issue and premature to

16  address at this point.

17         None of defendants' conduct with respect to the use and Sweden's software is

18  germane to USA's claims. Use of Sweden's software is governed by AGPL license.

19  USA is not the licensor of the AGPL software and has no standing to assert claims

20  related to that license agreement. Sweden has declined to  asserted any compulsory

21  claims based on breach of the AGPL against defendants and has, necessarily,

22  waived them. Similarly, USA attempts to join all the defendants as one party or

23  groups of parties. They are not. Each defendant is independent and the claims may

24  not be maintained in a goulash.

25

1

## VII.    Trade Mark Causes of Action

2          Summary adjudication should not be granted to USA on the trademark

3     claims as there are at least disputed issues of fact showing USA is not the owner of

4     the Neo4J mark and defendants use of the mark is nominative.

5          To prove trademark infringement, a plaintiff must show ownership of a

6     protectable trademark and a likelihood of consumer confusion. *Fuddruckers, Inc. v.*

7     *Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir.1987). But when defendants use

8     is nominative, the consumer confusion test does not apply. The test is whether USA

9     can show defendants use is **not** nominative. *Toyota Motor Sales, U.S.A., Inc. v.*

10    *Tabari* (9th Cir. 2010) 610 F.3d 1171, 1182–1183. While defendants asserted

11    affirmative defenses on nomanitive use, the burden is actually on USA to show the

12    use is not nominative.

13    ### A.    USA is not the owner of the Neo4j trademark and its

14    ### registration does not mean USA owns the trademark to Neo4j

15          USA's registration does not create ownership of the Neo4J mark. Sweden

16    owns the Neo4j mark. (D Facts 125, 126, 127, 128) As only the owner of the mark

17    may bring a claim for trademark infringement, USA cannot meet the first element

18    of its Trademark Claims and its motion must be denied and summary judgment

19    granted in defendants favor.

20          Although USA has a registered mark, that does not mean they are the owner

21    of the Neo4J mark. Registration confers jurisdiction but the ownership right to a

22    trademark is not conferred by registration. *Schwinn Bicycle Co. v. Murray Ohio*

23    *Mfg. Co.* (M.D. Tenn. 1971) 339 F.Supp. 973, 979, aff'd (6th Cir. 1972) 470 F.2d 975

24

25

To prevail on its Lanham Act trademark claim, a plaintiff " 'must prove: (1) that it has a protectible ownership interest in the mark…." ; [citations omitted] *Rearden LLC v. Rearden Commerce, Inc.* (9th Cir. 2012) 683 F.3d 1190, 1202–1203

There is at least a factual dispute that USA does not have a protectible ownership interest in the Neo4J mark. (D Facts 126, 126, 127, 128, 129) Under the Lanham Act, while registration of a trademark creates a rebuttable presumption that the mark is valid, the presumption evaporates as soon as evidence of invalidity is presented. 15 U.S.C. § 1051 et seq. *Hokto Kinoko Co. v. Concord Farms, Inc.* (C.D. Cal. 2011) 810 F.Supp.2d 1013, 1022, aff'd (9th Cir. 2013) 738 F.3d 1085.

USA's presumption of ownership based on registration evaporates because of overwhelming evidence it does not own the Neo4J mark. The evidence shows Sweden owns the trademark and licensed the rights to the Neo4J trademark to USA. (D Facts 125, 126). And Sweden licensed the Neo4j mark to USA only on a non-exclusive basis. (D Fact 126). "Where the license is non-exclusive the licensee does not have standing to bring an infringement action." *Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154, 159–160 (1st Cir.1977). Also, USA lacks standing when provisions in the contract indicate that Sweden retains exclusive ownership of the mark. *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 623 (2nd Cir.1980). *Ultrapure Systems, Inc. v. Ham-Let Group* (N.D. Cal. 1996) 921 F.Supp. 659, 665. Sweden retained exclusive ownership of the mark in the License Agreement. (D Fact 127). Sweden has in fact made trademark applications claiming ownership of the Neo4J mark throughout the world further providing evidence of Sweden's ownership of the Neo4J mark. (D Fact 128). USA has paid Sweden royalties for the license. (D Fact 129). As there is at least a triable issue of fact whether USA owns the Neo4J mark, USA cannot establish the first element of its trademark claims

1    and the motion should be denied. Since the fact of ownership is not disputable,

2    summary judgment should, instead, be granted in defendants favor.

3        The related party concept does not save USA. The related party doctrine is

4    only for registration and only allows the "owner" of the trademark to use its

5    subsidiaries "use' of the mark in the application. *In re Wella A.G.* (Fed. Cir. 1986)

6    787 F.2d 1549, 1555. "A corporate parent which owns the shares of a subsidiary

7    does not, for that reason alone, own or have legal title to the assets of the subsidiary

8    …" *Dole Food Co. v. Patrickson* (2003) 538 U.S. 468, 475. Sweden owns the Mark,

9    not USA.

10       **B.    Defendants' Nominative Use is Non Infringing.**

11       Defendants have not infringed the Neo4J mark. Defendants used the Neo4J

12   name to identify the entities, the Sweden open source software they support and

13   used to fork ONgDB and for comparative advertising. This use is non-infringing fair

14   use of the Neo4J mark. "We've long held that such use of the trademark is a fair

15   use, namely nominative fair use. And fair use is, by definition, not infringement."

16   *Toyota Motor Sales, U.S.A., Inc. v. Tabari* (9th Cir. 2010) 610 F.3d 1171, 1175

17       This is not the case where defendants are using a mark close to the Neo4J

18   mark to identify a different product. Defendants are using the Neo4J mark to

19   identify USA, the commercial Neo4J software and Sweden's open source Neo4J

20   software.

21       Defendants are not attempting to capitalize on consumer confusion or to

22   appropriate the cachet of one product for a different one. They are identifying Neo4J

23   software products. Defendants have a freedom of speech to use the Neo4J mark.

24   "Such nominative use of a mark—where the only word reasonably available to

25   describe a particular thing is pressed into service—lies outside the strictures of

trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition; such use is fair because it does not imply sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News America Pub., Inc.* (9th Cir. 1992) 971 F.2d 302, 307–308

Defendants are permitted to advertise they provide services for Neo4J software product. *Volkswagenwerk Aktiengesellschaft v. Church* (9th Cir. 1969) 411 F.2d 350, 352, supplemented (9th Cir. 1969) 413 F.2d 1126. Defendants are permitted to comparatively advertise Neo4J software products. *Network Automation, Inc. v. Advanced Systems Concepts, Inc.* (9th Cir. 2011) 638 F.3d 1137, 1153. Defendants have a right to tell consumers they can use Sweden's Neo4J open source software for free instead of paying for USA's commercial license which USA advertises on its website as having the same great features as the open source software. (Beene Dec. Ex. 8)

## C.    USA has not met its burden to show defendants' use is not nominative fair use.

When the use is nominative, the plaintiff bears the burden of establishing that the use of the mark was not nominative fair use. *Toyota*, at 1182–1183. A defendant seeking to assert nominative fair use as a defense need only show that it used the mark to refer to the trademarked good… The burden then reverts to the plaintiff to show a likelihood of confusion. *Toyota,* at 1183. As Defendants use of Neo4J mark is to identify Neo4J software and the entities, the use is permissible nominative fair use.

1      Similarly, competitors may use a rival's trademark in advertising and other

2  channels of communication if the use is not false or misleading. The Federal Trade

3  Commission specifically supports comparative advertising. 16 C.F.R. §14.15.

4      The key issue on nominative fair use is whether the use suggests sponsorship

5  or endorsement of the trademark owner. *Toyota*, at 1179. Here there is a dispute

6  whether any of defendants' use suggests sponsorship or endorsement of Sweden (the

7  actual trademark owner). iGov pointedly states on its website: As iGov Inc. is not a

8  Neo4j Inc Partner, it is not prohibited from promoting open source Neo4j options

9  such as the OngDB fork." (*see* Defendants' Response to Fact 24).  Nothing in

10  defendants' nominative use suggests sponsorship or endorsement of either USA or

11  Sweden. "So long as the site as a whole does not suggest sponsorship or

12  endorsement by the trademark holder, such momentary uncertainty does not

13  preclude a finding of nominative fair use." *Toyota* at 1179. Here all the defendants'

14  websites, taken as a whole, do not suggest sponsorship or endorsement of the

15  trademark holder.

16      No defendant uses the Neo4J name as a company name or a domain name.

17  Use of Neo4J in metatags is nomantive. *Playboy Enterprises, Inc. v. Welles* (9th Cir.

18  2002) 279 F.3d 796, 803. Presumable this applies to twitter as well. A reasonable

19  consumer would not be confused that defendants' websites are a USA site or

20  sponsored by USA or Sweden. And the reasonable consumer in this context is a

21  person looking to obtain a sophisticated Neo4J database. The reasonable consumer

22  can determine if they want to pay USA for Neo4J software or obtain it for free in an

23  open source version. As there are many versions of Neo4J in open source, which is

24  permitted under the Github Terms of Service (Beene Dec. Ex. 9) and the AGPL

25  license, there is a disputed issue over whether any consumer is confused over the

sponsorship or endorsement of Sweden. Given the tone and tenor of defendants position with respect to USA charging money for what a person can get for free, no reasonable jury could find they sponsor defendants.

While USA contends people are confused because they sought assistance from USA, that is simply the process of an open source Neo4J user, perhaps wanting more support or the commercial product which is the natural process of the dual channel distribution model Sweden set up. Defendants object to consumer confusion evidence as Hearsay, FRE §802.

Consumers can get an open source version for free or can pay USA for support and an alleged better product. The forked free version of the software offers the reasonable consumers a competitive option. Trademarks are not swords to prevent competition; USA does not have the right to eliminate the right of free speech. Defendants are using Sweden's free version of Neo4J software to provide consumers the better option of using free software. Defendants efforts are not unfair. USA's attempts to shut defendants down is unfair. The nominative fair use doctrine is designed to prevent this type of abuse of the rights granted by the Lanham Act. *Toyota* at 1180.

## VIII.  Contract Liability Theory.

USA seeks to enforce an unlawful restrictive covenant barring PT, Suhy and iGov from using or supporting Sweden's open source software. USA cannot rely on the 36 month contract restrictions in §4.3.2 of the Solutions Partner Agreement ("SPA"). (The SPA is Ex. 4 to Ratinoff Dec.). The SPA terminated July 11, 2017 (Plaintiffs' Fact 7). The restrictions, invalid or not, expired July 11, 2020.

Suhy and iGov were not ever bound to the SPA under an alter ego theory. The SPA was not assignable without consent unless to a parent or subsidiary or

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

17

through a merger or sale of all or substantially all assets or stock. SPA 10.4 There is a dispute whether consent was asked for or given to assign the agreement to Suhy or iGov and there is no evidence of the exceptions to consent. (D Fact 9; Suhy Dec. ¶61).  And the alter ego doctrine is fundamentally misapplied by USA.

An individual can be liable for the action of a company and deemed an alter ego of a corporation if: (1) there is a unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone. *Automotriz Del Golfo De California S.A. de C.V. v. Resnick*, 47 Cal.2d 792, 796, 306 P.2d 1 (1957) Alter Ego liability is to hold an individual or entity liable for the actions of the company. The alter ego doctrine does not bind the individual or another entity to an agreement. Contrary to USA's suggestion, there was no finding the defendant was bound by the agreement in *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.* (N.D. Cal. 2015) 108 F.Supp.3d 816, 826. In the pleading case, the defendant was alleged to be liable for the company's breach of contract on an alter ego theory. This does not mean or imply that unlawful restrictive contract terms may be applied to Suhy or iGov. Alter Ego liability would only apply to liability for the acts of PT-if there where any. Suhy and iGov are free to use open source software without restrictions. The facts supporting Alter Ego theory are disputed too.

There is a dispute on the unity of interest element (*see* Defendants' responses to Plaintiffs' Facts 10, 11) iGov did not use PT's computers, the website format was because that was the format Suhy was familiar with. There was no sale of assets or merger either. The fact they are at the same location operated by the same person is because Suhy is an individual who set up the two different entities and operates

them. Individuals and the entities they operate are not alter egos because of that fact.

There is a dispute on the second element of whether an inequitable result is achieved if Suhy and iGov are not made signatories to the PSA. Suhy and iGov deal in Sweden's open source version of Neo4J. As Sweden is the owner of Neo4j software and trademark, USA has no right to prevent third parties or anyone from dealing with Sweden's software and trademark. There is nothing inequitable about Suhy and iGov supporting licensee's use of Sweden's open source software. If there is an issue on the AGPL, that will be addressed in Phase 2 and it is Sweden's concern, not USA. USA cannot simply side step this issue by trying to enforce a patently unlawful contract restriction.

The §4.3.2 restriction in the SPA preventing a person or entity from using or supporting Sweden's open source software in unlawful as it violates California Business and Professions Code § 16600. Initially, the restriction is far too long at 36 months SPA 4.3.2 There is no geographic limitations. The term also seeks to prevent PT from dealing in all versions of Sweden's Neo4J open source software when the AGPL freely allows anyone to use the software. (D Fact 136) The purpose of USA' restriction is to prevent any terminated partner from supporting Sweden's open source version of Neo4J. (D Fact 137).  Even the commons clause addition to the AGPL, valid or not, does not prevent professional services. (D Facts 155, 156) Thus, the SPA restriction is solely to reduce the people who can support Sweden's free software so USA can reduce competition and sell the same software for money. The restriction is patently invalid against Suhy. And the restriction is unlawful against PT or iGov as "This restriction harms competition far more than it helps rendering the restriction invalid." *Ixchel Pharma, LLC v. Biogen, Inc.,* (2020) 9

Cal.5th 1130, 1150. USA asserted the unlawful restriction to stop PT from getting business from the IRS. (D Fact 138) USA's use of an unlawful restriction is absolutely against public policy and supports a claim for interference with prospective economic advantage. *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937 (2008). PT, Suhy and iGov's supporting the open source software is not inequitable. USA's efforts to have and enforce an illegal covenant is unconscionable. Equity should never enforce such an agreement.

The termination of the trademark license to PT does not mean PT cannot use Sweden's trademarks or engage in nominative use of the Neo4J trademark. The SPA trademark license allowed PT to use USA's sublicensed trademark rights for selling USA's "commercial" software. PT is not using the Neo4J mark to sell USA's commercial software. (D Fact 139) PT is not violating the terminated license. PT is using the Neo4J mark which Sweden owns, to reference the companies and software products. This is not infringement, it is nominative use.

## IX. Licensee Estoppel

USA's claim all three PT defendants cannot attack the ownership of the mark based on licensee estoppel. As discussed above, Suhy and iGov are nor bound by the PSA. There is no dispute that USA terminated the SPA. Licensee estoppel only applies for the duration of the license. See *Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*, 343 F.2d 655, 658 (7th Cir. 1965) ("[A]n estoppel by a licensee to deny the validity of licensor's trademark expires with the license.") While a licensee, PT could not challenge USA's trademark rights. That does not mean they cannot challenge ownership after termination particularly for conduct that is after termination of the license having nothing to do with the license. A trademark license, once terminated, is not a permanent bar to challenges to the trademark on any claim made.

Finally, the doctrine of licensee estoppel is equitable in nature and not subject to rigid application. Estoppel may not be used to enforce a contract that contravenes public policy. *Navajo Air, LLC v. Crye Precision, LLC* (S.D.N.Y. 2018) 318 F.Supp.3d 640, 650–651, as amended (Aug. 2, 2018). As discussed above, the restricions violate the law. Equity should not allow USA to evade its jurisdictional requirement of trade mark ownership by estoppel.

### A.    USA is estopped to claim ownership in Sweden's Neo4J's Mark.

The proper use of licensee estoppel is to estop USA from claiming it owns the Neo4J mark when it is a licensee. The recitals in the License Agreement that USA owns all the intellectual property related to Neo4J, is conclusively presumed true. California Evidence Code §622. (The License Agreement is governed by California law). USA agreed Sweden owns the intellectual property, including marks for Neo4J. (D Fact 140) Under licensee estoppel, USA may not dispute that Sweden owns the Neo4J mark and they may not claim USA is the owner of the Neo4J mark. *Pacific Supply Co-op. v. Farmers Union Central Exchange Inc.* (9th Cir. 1963) 318 F.2d 894, 908.

### X.    False Advertising Claims

### A.    False Designation Of Origin Claim Is Not Valid As ONgDB Is based on Neo4J.

To establish a false designation of origin claim, Plaintiff must show: (1) the defendants used a false designation of origin; (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of defendants' goods or services by another person; and (4) that plaintiff has been or is likely to be damaged. See 15 U.S.C. § 1125(a).

*Hokto Kinoko Co. v. Concord Farms, Inc.* (C.D. Cal. 2011) 810 F.Supp.2d 1013, 1039, aff'd (9th Cir. 2013) 738 F.3d 1085

1    Here there is an issue of fact on the false designation of origin element as

2    ONgDB is a fork of Sweden's open source software licensed under the AGPL. (D

3    Fact 149) The designation of origin is, therefore, not false. USA even admits, the

4    open source version has the same great features as the commercial version (D Fact

5    145). A jury can certainly determine if the origin is properly stated.

6    **B.      There are disputed issues of fact on Elements of the False**

7    **Advertising claims.**

8    A prima facie case of false advertising under section 43(a) requires the

9    plaintiff to establish:

10    (1) A false or misleading statement of fact about a product;
   (2) Such statement either deceived, or had the capacity to deceive a
   substantial segment of potential consumers;

11    (3) The deception is material, in that it is likely to influence the consumer's
   purchasing decision;

12    (4) The product is in interstate commerce; and

13    (5) The plaintiff has been or is likely to be injured as a result of the statement
   at issue.

14    *Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495

15    [citations omitted]

16    [F]ailure to establish any one" of these five elements is "fatal" to a plaintiff's

17    claim. *Id.* And importantly, [Plaintiff] must be able to point to at least one challenged statement

18    that satisfies all five Lanham Act requirements; as the parties agree, a Lanham Act claimant may

19    not mix and match statements, with some satisfying one Lanham Act element and some

20    satisfying others. *Verisign, Inc. v. XYZ.COM LLC* (4th Cir. 2017) 848 F.3d 292, 299 (Summary

21    Judgment for defendant affirmed where statements were opinions or harmless puffery)

22

23    In order to obtain monetary damages or equitable relief in the form of an

24    injunction, "a plaintiff must demonstrate that the commercial advertisement or

25    promotion is either literally false, or that [if the advertisement is not literally false,]

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

22

it is likely to mislead and confuse consumers." [Citations omitted] *Pizza Hut, Inc.,* at

495

> Essential to any claim under 15 U.S.C. 1125 section - 43(a) of the
> Lanham Act is a determination of whether the challenged statement is
> one of fact—actionable under  section 43(a)—or one of general
> opinion—not actionable under section 43(a). Bald assertions of
> superiority or general statements of opinion cannot form the basis of
> Lanham Act liability. [Citations omitted] Rather the statements at
> issue must be a "specific and measurable claim, capable of being
> proved false or of being reasonably interpreted as a statement of
> objective fact." [Citations omitted] *Coastal Abstract Serv., Inc. v. First
> Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir.1999); see also American
> Council, 185 F.3d at 614 (stating that "a Lanham Act claim must be
> based upon a statement of fact, not of opinion"). As noted by our court
> in Presidio: "[A] statement of fact is one that (1) admits of being
> adjudged true or false in a way that (2) admits of empirical
> verification." *Presidio*, 784 F.2d at 679; see also *Southland Sod Farms
> v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir.1997)(stating that in
> order to constitute a statement of fact, a statement must make "a
> specific and measurable advertisement claim of product superiority").

*Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495–496

### C.    USA cannot show empirically that ONgDB is not a "Drop In" replacement for the commercial version.

USA argues that Defendants' description of certain versions of ONgDB as

"drop-in replacement" for certain versions of Neo4j EE is false advertising. Given

the general nature of the statement, it an opinion. USA makes two arguments in

their effort to establish falsity, one technological opinion and one contractual. Both

arguments fail.

Technologically, USA argues that describing ONgDB as a drop-in

replacement is false advertising because, according to USA, ONgDB was not of the

same quality and did not include all of the same features as Neo4j EE. That is a

misleading matter of opinion which does not satisfy the legal requirements.

Defendants made no statements about ONgDB's quality.  Quality has nothing to do

with whether a user can share data and queries on different versions of Neo4J

database. Nor did Defendants claim that ONgDB had the exact same features as Neo4j EE.  They just described ONgDB as a "drop-in replacement."  Brad Nussbaum explained what was meant by that description, and how its accuracy was verified, during his deposition:

> I think we provided an explanation of this. Drop-in, I think as everybody understands it in development, you know, essentially functions equivalently from one version to another. So if you took a Neo4j Enterprise version, let's say 3.5.4, the database format that it creates would work with ONgDB 3.5.4, so you can essentially write your data, and with Neo4j Enterprise, you can use that same data with ONgDB.

Nussbaum Depo., 158:7-14[2]

> Drop-in replacement refers more to compatibility of features, so we were able to take a Neo4j 3.5.4 version, create a database and just show that it worked with ONgDB at that same version. So I think that's exactly what we described, and I think that's exactly what we did.

Nussbaum Depo., 160:9-14.

In a truck analogy, different engines will drop in and replace the original engine. The drop in engine will connect to the existing chassis, transmission and other drive components. One engine can be a factory new engine, the other can be a rebuilt or even used engine found on craigslist. The truck will run with any of the drop in engines. USA is arguing that they added wifi and a special muffler to their truck so the engine is not a drop-in replacement. But adding bells and whistles, which not everyone wants, to the truck does not alter the drop in ability of an engine to run the truck. People are free to pay millions of dollars for USA's added availability if they want to. But the truck will drive with either engine. ONgDB is a drop in replacement for the functions required to operate the database. While

---

[2] True and correct copies of the cited pages of the deposition of Brad Nussbaum are attached as Exhibit A to the Declaration of John D. Pernick ("Pernick Decl.") filed herewith.

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

24

1  plaintiffs may attempt to disrupt the ability, defendants have not heard any

2  ONgDB user claim the software is not drop in.

3      Significantly, USA has not presented any evidence that, technologically,

4  ONgDB does not function as a drop-in replacement for Neo4j EE.  None of the

5  statements on which USA's false advertising claims are based either explicitly or

6  implicitly represent that tests or studies were conducted to support the statements.

7  Consequently, USA has the burden of presenting affirmative evidence that

8  Defendants' description of ONgDB as a "drop-in replacement" are false.  See, e.g.,

9  *Castrol, Inc., v. Quaker State Corp.*, 977 F.2d 57, 62-63 (2d Cir. 1992).  And they

10  must prove that falsity with empirical evidence. *Presidio*, at 679. USA has failed to

11  meet that burden.

12      All USA provides is the declaration of Philip Rathle, Neo4j USA's Vice

13  President of Products, who describes the various tests that are performed on USA's

14  commercial software and claims that because of the testing and other work USA

15  performs, he believes that ONgDB is of inferior quality and has an increased

16  potential for instability and compatibility issues.  Rathle Decl., ¶¶ 29-34.  Based on

17  that, Mr. Rathle opines that ONgDB 3.5.9 is not the "exact equivalent in both

18  function and quality as the same version of official Neo4j(r) EE v3.5.9, and this

19  would be true for any other version of ONgDB 3.5.x that Graph Foundation claims

20  to be the equivalent version of Neo4j EE v3.5.x."  Rathle Decl., ¶ 32

21      But Rathle did not actually test a version of ONgDB to determine if the

22  database format created by a version of Neo4j EE would work with the version of

23  ONgDB with the same version number.  Indeed, Rathle did no actual testing of

24  ONgDB at all. This lack of a test is significant. ONgDB is freely available. USA can

25  test both engines to see if they worked. Rathle's lack of statements on testing

DEFENDANTS' CONSOLIDATED, COMBINED OPPOSITION/MOTION FOR
SUMMARY JUDGMENT
CASE NO. 5:18-cv-7182 EJD

available databases implies the tests were made and USA did not like the results so they instead rely on conjecture instead of emperical results.  Defendants no longer have access to the commercial version which is why GFI no longer guarantee they test out. However, there is no evidence that ONgDB is *not* a drop in replacement. Instead of providing a demonstrable test, Rathlehe merely opines that ONgDB is not the "exact equivalent in both function and quality" as Neo4j EE.  But Defendants have never distributed any advertising or other statement claiming that it was. Drop in replacement is simply not "a specific and measurable advertisement claim of product superiority" *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1145 (9th Cir.1997). The statement is to general and not actionable.

This is in stark contrast to each of the cases cited by USA: *Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301 (N.D. Cal. 1998), *EFCO Corp. v. Symons Corp.,* 219 F.3d 734 (8th Cir. 2000), and *Creative Labs, Inc. v. Cyrix Corp.*, 1997 U.S. Dist. LEXIS 14492 (N.D. Cal., May 7, 1997). In each case, the plaintiff actually tested the defendant's product and presented evidence showing that the defendant's statements about its product was false.  Here, USA conducted no testing of ONgDB to determine whether it operated as a drop-in replacement of Neo4j EE.  Instead, USA ask the Court to just accept their assumption that because Neo4j undergoes significant testing and the creators of ONgDB do not have complete information about Neo4j EE, ONgDB could not be a drop-in replacement.  There is no basis for the Court to accept that assumption and for the Court to do so on summary judgment would be entirely improper.

Defendants do not contend Sweden's open source and free software is exactly the same as USA's costly version. Defendants say nothing about quality controls. But both database engines for the versions are derived from the same source:

Sweden's Neo4J software. So they are drop in replacements. USA even concedes the two versions have the same features when they compared the open source version to the commercial versions on their website [Community Edition is open source while Enterprise is "commercial"]. Referring to Enterprise USA stated: "The same great features as Community Edition…" (D Fact 145; Beene Dec Ex. 8) Given this admission, there is a dispute whether USA will be able to convince a jury of this.

**D.    There is no false advertising based on the APGL**

Contractually, USA's argument is based on their interpretation of the Neo4J Sweden Software License.  USA is not a party to that agreement. In order to obtain summary judgment based on the interpretation of a contract, the contractual language at issue cannot be susceptible to more than one reasonable interpretation. "Where contractual language is susceptible to more than one reasonable interpretation, summary judgment is ordinarily improper because 'differing views of the intent of the parties will raise genuine issues of material fact.'" *Pardi v. KaiserPermanente Hospital, Inc.*, 389 F.3d 840, 848 (9th Cir. 2004) (quoting *San Diego Gas & Electric Co. v. Canadian Hunter Mktg Ltd.*, 132 F. 3d 1303, 1307 (9th Cir. 1997).

Here, the contractual issue is whether Section 7 of the Neo4J Sweden Software License permits GFI, as the "licensee" to remove the Commons Clause language.  Section 7 states:  "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term."  To determine what is allowed under Section 7, it is necessary to review the definitions set out in the Neo4J Sweden Software License.

First, the Neo4J Sweden Software License defines the phrase "This License" as follows: "'This License' refers to version 3 of the GNU Affero General Public License." Neo4J Sweden Software License, Section 0. Thus, crucially, "This License" is defined as the AGPLv3 license, not the Neo4j Sweden Software License. This alone supports the validity of defendants' reference to the AGPL license. In other words, in the Neo4J Sweden Software License, the term "This License" means the AGPLv3 license without the Commons Clause. Neo4j Sweden could have changed this definition when it distributed software under the Neo4J Sweden Software License, but it did not.

Second, the Neo4J Sweden Software License defines "you" as the "licensee." Neo4J Sweden Software License, Section 0 ("Each licensee is addressed as 'you'.) In the First Amended Complaint, Neo4j Sweden specifically alleges that GFI received the Neo4j EE software files at issue as a licensee under the Neo4J Sweden Software License. First Amended Complaint, ¶ 120.

Third, Section 7 of the Neo4J Sweden Software License states: "If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term." Neo4J Sweden Software License, Section 7. Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term."

The Neo4J Sweden Software License states that the software is "subject to the terms of the GNU AFFERO GENERAL PUBLIC LICENSE Version 3, with the Commons Clause . . ." Therefore, the Neo4J Sweden Software License has a notice

stating that the software is governed by the AGPLv3 license plus a further restriction, i.e. the Commons Clause.  Because the Neo4J software, i.e. "the Program", contained a notice stating that it is governed by "this License" (the AGPLv3 license) along with a term that is a further restriction (the Commons Clause), then, under Section 7, GFI as the licensee, i.e. "you", may remove that term. Removal of the Commons Clause is expressly permitted under the terms of the Neo4J Sweden Software License.

Importantly, USA does not offer an alternative interpretation of Section 7. And there is no interpretation that would not conflict with the express terms of the Neo4J Sweden Software License.  They do not explain how, if "the License" is defined as the AGPLv3 license, a licensee would not be permitted to remove a further restriction such as the Commons Clause from the Neo4J Sweden Software License.

USA may argue that "This License" should be read as "the Neo4J Sweden Software License" instead of being read as it is defined.  But that is not the language of the Neo4J Sweden Software License.  Indeed, in its communications with Defendants, the Free Software Foundation, the copyright holder for the AGPLv3 license, confirmed the interpretation that a licensee may remove further restrictions when they are added to an AGPLv3 license.  "All other non-permissive additional terms are considered "further restrictions" within the meaning of section 10. If the Program as you received it, or any part of it, contains a notice stating that it is governed by this License along with a term that is a further restriction, you may remove that term." Pernick Decl., Exh. B.

Because there is a reasonable interpretation of the Neo4J Sweden Software License that permits GFI, as the "licensee," to remove the Commons Clause term, summary judgment based on USA's offered interpretation would be improper.

Therefore, because the interpretation of Section 7, and GFI's right to remove the Commons Clause from the Neo4J Sweden Software License, cannot be decided on summary judgment, then USA cannot establish, on summary judgment, that Defendants' statements regarding ONgDB being a free and open source fork of Neo4J Enterprise were false.

USA contends the Sweden was free to control licensing conditions citing *Apple Inc. v. Psystar Corp.,* 658 F.3d 1150, 1159 (9th Cir. 2011) *Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008). While the statement is true,  Sweden chose to control is license under the AGPL license model. And, the AGPL, by its terms, allows a licensee to remove restrictive terms. If Sweden did not want the Common Clause removed, they could have used a different license form. They chose to use the well-known AGPL license form and USA cannot complain of the impact of the terms Sweden choose.

### E.    The Material Purchasing Issue Is The Price

If the statement is shown to be misleading, the plaintiff must also introduce evidence of the statement's impact on consumers, referred to as materiality. *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir.1999). Defendants made no false claims based on pricing. Yet USA concedes customers chose ONgDB based on pricing **alone**. Dkt. No. 98, p. 2:12-13; p. 32:6-10. They must admit this; its obvious. Information Analysis Incorporated's GSA price list has a $500,000 bid for a Neo4J term license. (Beene Dec. Exhibit 5, p.1.) Since the government has no concern over the common clause-as

they do not sell the software- they can decide to pay $500,000 for a term license or get a unlimited perpetual right to use a free open source fork. There is no evidence the purchasing decisions were based on representation about the Drop in capability or the license terms. There is likewise no evidence that purchaser would have paid for a commercial Neo4J version of the software given the availability of free ONgDB or other forks of Neo4J. If purchasers decide to pay money for database software, they can then look at alternative commercial options. As there is no evidence the representations by defendants were material, they are not actionable.

### F.    Use of Content on the Github Site is Permitted

USA complains of use of its documentation. But any user of open source software from Sweden's Neo4J GitHub repository are allowed to use all content on the site. This is permitted under the GitHub license. (D Fact 147.; Beene Dec. Ex. 9) Sweden elected to use a free GitHub repository to distribute the open source version of Neo4J. Sweden's election to use a free repository comes with obligations to allow users to use all content on that site. The content USA complains of, such as documentation,  is linked on the GitHub site and by the terms of Sweden's agreement with Github, all users have the right to use the content. As there is a dispute of fact whether defendants may use the content Sweden posted on its GitHub repository, USA has no right to complain of such use or block it.

## XI.    Permanent Injunction

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. [Citations omitted] *Winter v. Natural Resources Defense Council, Inc.* (2008) 555 U.S. 7, 20. The difference between a preliminary

1  and permanent injunction is likelihood of success is not an issue on a permanent

2  injunction. While USA seeks a permanent injunction, they cannot until phase 2 is

3  completed.

4      USA has requested a broad permanent injunction with 25 requests including

5  one with 8 subparts. (Dkt. No. 98-4). First, USA's request for permanent injunction

6  is premature until all affirmative defenses and claim are considered in phase 2.

7  They have yet to succeed on all claims. Second, the request is overbroad seeking an

8  injunction far beyond USA's licensed rights in the Neo4J trademark and the false

9  advertising claims. Essentially, USA wants to shut defendants down with when it

10  does not own the trademark and there is no false advertising. An injunction is never

11  awarded as a matter of right. *Winter*, at 24.  The court should pay particular regard

12  for the public consequences. *Winter,* at 24.

13      USA does not want the public or the US government to know that you can get

14  the same software for free so they can force people to pay them for the software.

15  They want to keep defendants from tell consumers they can use free software.

16  Under the AGPL, licensees are allowed to make copies and make derivatives of

17  Neo4J. They have that right under the GitHub agreement too. Under the fair use

18  standards, people can use the Neo4J name to identify the software, they can explain

19  that USA is selling what you can get for free. They can explain that the open source

20  version is supported to combat USA's false statements they are not. USA can tell

21  people the AGPL does not allow restrictions which by its terms may be removed.

22  USA can throw over a thousand of pages at defendants, but these fundamental

23  rights may not be stopped.

24      USA does not have the right on the merits to an injunction, and given the

25  public consequences no injunction should issue. In *Winter*, the District Court issued

an injunction which was affirmed by the 9th Circuit. The injunction was vacated because the consideration of the public interest was not taken into account. USA seeks an injunction to prevent defendants from telling the public there is a free resource for Neo4J software. The USA government should not waste taxpayer dollars to use software that is available for free. It is against the public benefit to remove the free version out of the consumers decision by silencing defendants with an injunction.

### A.    Nominative Use Injunctions are Limited.

An injunction may only cover the specific harm alleged. *Toyota*, at 1172. USA has not shown that any of defendants' use is not nominative. USA may not prevent free speech with an overbroad trademark injunction. In *Toyota*, the district court enjoined the defendant from using "any ... domain name, service mark, trademark, trade name, meta tag or other commercial indication of origin that includes the mark LEXUS." This overbroad injunction was vacated in *Toyota*. The overbroad injunction vacated in *Toyota* is only part of the demand in USA's overreaching, overboard, vague and improper demand in USA's [Proposed] Permanent Injunction against Defendants (Dkt. No. 98-4). For these reasons, the injunction should be denied.

## XII.    Cross Motion for Summary Judgment

### A.    Trademark Infringement Claims

To prevail on its Lanham Act trademark claim, a plaintiff must prove they have an ownership interest in the mark and defendant infringed. *Rearden LLC v. Rearden Commerce, Inc.* (9th Cir. 2012) 683 F.3d 1190, 1202–1203. The simple fact is USA does not own the Neo4J mark. As USA does not own the Neo4J trademark, it cannot prove the first element of its Trademark infringement claims against

defendants. Alternatively, as discussed above, defendants fairly used the Neo4J mark nominatively and such use is not infringing.  As USA cannot prove at least one of the two elements of its trademark infringement claim, summary judgment should be granted in defendants' favor.

### B.    False Advertising Claims

An element of the false advertising claims is that the deception is material, in that it is likely to influence the consumer's purchasing decision. All the hodgepodge claims USA makes are not material to a database consumers purchasing decision. USA concedes consumers decide to adopt free open source software over commercial software because of price **alone**. Dkt. No. 98, p. 2:12-13; p. 32:6-10. Consumers of sophisticated databases do not read a website and decide to save $500,000 based on what the website says. There is no evidence they do. This point is obvious. Databases are complex, require sophisticated operations to load, migrate data, create queries and analysis results. Consumers can download ONgDB for free and decide if it fits there needs. They can evaluate USA's commercial Neo4J and see if its worth the money. As that is the buying process, with price the material difference, USA has no material facts to support the required element of a material deception. Accordingly, summary judgment should be granted against USA's False Advertising and UCL claims against defendants in both cases.

Dated: January 15, 2021

          _____/s/ Adron G. Beene_____
          Adron W. Beene SB# 129040
          Adron G. Beene SB# 298088
          Attorney At Law
          Attorney for Defendants
          PURETHINK LLC,
          IGOV INC.,
          and JOHN MARK SUHY

1

2
Dated:  January 15, 2021                    BERGESON, LLP

3
                                            By:___/s/ John D. Pernick_____
                                                  John D. Pernick
4
                                            Attorneys for Defendant
5                                           GRAPH FOUNDATION, INC.

6

7                                  **Filer's Attestation**

8
I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of
this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all
9
signatories hereto concur in this filing.

10
Dated: January 15, 2021

11       _____/s/ Adron G. Beene_____
          Adron W. Beene SB# 129040
12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT A**

**DEFENDANTS' RESPONSE TO NEO4J INC.'S CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants' object to Neo4j Inc's Separate Statement of Undisputed Material Facts as it violates this Court's Standing Order for Civil Cases dated May 3, 2019, Section V. B, as it is 20 pages long which is more than the 15-page limit and is not a short and concise statement of material facts. Furthermore, there is no attestation that: "I attest that the evidence cited herein fairly and accurately supports or disputes the facts asserted." As required under the Standing Order.  And they could not so attest as, for example, many of the excerpts in Mr. Nussbaum's deposition cited are not included in Exhibit 31 to Mr. Ratinoff's 1198-page declaration.

Instead, the Separate Statement it is used to burden defendants and this Court with many immaterial facts in violation of the Standing Order and FRCP Rule 1. Defendants request Neo4j Inc.'s Separate Statement be stricken for violation of the Standing Order and the motion be denied.

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Trademark Infringement Against the PT Defendants and Their Nominative Fair Use Defense** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | Fact 1: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark").  Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | **DISPUTED:** Neo4j is not the owner, assignee, or exclusive licensee of the Neo4j mark, and therefore its ownership of U.S. Trademark Registration No. 4,784,280 is disputed. Declaration of Adron G. Beene ("Beene Dec."), Ex. 1 at §2.1.1., 2 and 3. |
| 2. The PT Defendants impermissibly used the Neo4j® Mark after Neo4j USA terminated the Partner Agreement | Fact 2: On September 30, 2014, Purethink and Neo4j USA entered into the Neo4j Solution Partner Agreement ("Partner Agreement"). Ratinoff Decl., Exh. 4. | **DISPUTED:** The PT defendants use of the Neo4J trademark is nominative to identify NEO4J as a company and the Neo4J software and for comparative advertisement.  Declaration of John Mark Suhy ("Suhy Dec.") ¶2, |
| | Fact 3: Under the Partner Agreement, PureThink was granted a non-exclusive, non-transferable limited license to, *inter alia*, use the Neo4j® Mark solely to market and resell commercial licenses to Neo4j® Enterprise Edition ("Neo4j® EE") and related support services in exchange for shared revenue for the licenses that it resold. *Id.*, Exh. 4 at § 4.1; Exh. 3 at 60:10-61:17, 67:25-69:11. | **UNDISPUTED** |
| | Fact 4: PureThink further agreed to the terms of the limited license under the Partner Agreement to use the Neo4j® Mark in accordance | **UNDISPUTED** |

**EXHIBIT A**

1

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | with Neo4j USA's "then-current trademark usage guidelines." *Id.*, Exh. 4 at § 4.1. | |
| | **Fact 5:** The Partner Agreement was subject to a 1-year term, and would automatically renew at additional 1-year periods subject to the notice and termination provision therein, thereby incorporating whatever was the operative trademark guidelines at that time. Ratinoff Decl., Exh. 4 at §7.1; Exh. 3 at 67:18-24.  As a result of the renewal provision, PureThink became bound by the October 13, 2015 version of Neo4j USA's trademark guidelines as of September 30, 2016. *See* Rathle Decl., ¶ 16, Exh. 5. | **UNDISPUTED** |
| | **Fact 6:** All rights and licenses to Neo4j® Software and the Neo4j® Mark would terminate upon the expiration or termination, and upon such an event, PureThink agreed to "cease using any trademarks, service marks and other designations of Plaintiffs." Ratinoff Decl., Exh. 4 at §7.3. | **UNDISPUTED** |
| | **Fact 7:** On July 11, 2017, Neo4j terminated the Partner Agreement thereby requiring PureThink to "cease using [Neo4j's] trademarks, service marks, and other designations…and remove from PureThink's website(s) marketing materials, [Neo4j's] trademarks and tradenames, including, without limitation, Neo4j" as required by Agreement. Ratinoff Decl., Exh. 12. | **DISPUTED**: Moving Party's reference to [Neo4j] is vague and misleading as the Partner Agreement provides "will cease using any trademarks, service marks and other designations of the *other party*" emphasis added. Ratinoff Decl., Exh. 4 at §7.3. Neo4J USA is not the owner, assignee or exclusively licensee of the mark and lacks standing to assert the mark. Beene Dec., Ex. 1. |
| | **Fact 8:** PureThink continued to use the Neo4j® Mark without Neo4j USA's authorization to send customers to iGov to obtain "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise." *See* Ratinoff Decl., Exh. 14. It also promoted "Neo4j Enterprise" as genuine Neo4j® EE despite being compiled by Suhy. *See id.*, Exh. 16. | **DISPUTED:**   The PureThink references are to Sweden's open source versions of Neo4J and proper nominative use of Sweden's mark. Suhy Dec. ¶3 |
| | **Fact 9:** Under the Partner Agreement, PureThink agreed that all contractual restrictions would apply to any successor-in-interest, assign, and acquirer of substantially all of its assets. Ratinoff Decl., Exh. 4 at § 10. | **UNDISPUTED** |
| | | **Additional Facts** |
| | | Under the Partner Agreement, assignment of the agreement, outside of a successor in interest required |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | consent of Neo4J USA. Ratinoff Decl., Exh. 4 at §7.3. No evidence of consent to the assignment exists. Suhy Dec. ¶61. |
| | **Fact 10:** Suhy and PureThink formed iGov on or about June 23, 2017 to circumvent the restrictions in Section 4.3.1 of the Partner Agreement. Ratinoff Decl., Exhs. 10-11, 14-15, 17-19; PT Dkt. No. 22, ¶¶ 18-19; *see also* Exh. 3 at 46:12-16, PT Dkt. No. 72 at 8:22-25, 9:15-23. | **DISPUTED:** iGov was formed as a separate entity by Suhy for several reasons. Suhy Dec. ¶4., Beene Dec. Ex. 4 at 45:4-47:5. The restrictions are for purposes of non-competition and void. Suhy Dec. ¶4. |
| | **Fact 11:** Suhy is sole owner and employee of PureThink and iGov, used the same website template, and initially used the same offices and support telephone number for both entities. Ratinoff, Decl, Exh. 3 at 21:23-22:22, 23:16-18, 37:3-38:16, 39:6-40:23, 47:20-49:8, 52:9-11. | **DISPUTED** - PureThink and iGov used the same office address for a mailing address until iGov could setup a new office.  iGov did not "use" the office address other than for correspondence.<br><br>The support telephone number is a 3rd party number that neither PureThink or iGov owned.  The website template used was a commercial template. PureThink and iGov purchased the same template because Suhy was familiar with it. iGov did not use PT's computers.  Suhy Dec. ¶5. |
| | **Fact 12:** Suhy used both his iGov and PureThink email accounts to solicit customers that he had previously contacted under the Partner Agreement.  Ratinoff, Decl., Exhs. 19, 25, 29, 45-46, 54. | **DISPUTED:** All new business development was done using iGov Inc emails (Exhibit 19, 46, and 54). Exhibit 25, 29 were discussions and not solicitations.)<br>The only entity who was a customer listed in this fact was Sandia National Laboratories.  They were a customer of PureThink and the communication was through PureThink. (See Ratinoff, Decl. Exhibit 45). The solicitations were for use of Sweden's open source Neo4J. Suhy Dec. ¶6. |
| | **Fact 13:** iGov took over PureThink's business relationship with the IRS. Ratinoff, Decl, Exh. 3 at 53:4-54:25; Exh. 127. | **DISPUTED:** USA interfered with PT's potential business with the IRS. iGov did not take over PT's potential business relationship with the IRS. Suhy Dec. ¶7., Exhibit 1 |
| | **Fact 14:** The PureThink Defendants ("PT Defendants") claimed to be "the developer of the retired Neo4j Government Edition" in close connection with touting their prior relationship with Neo4j USA. Ratinoff Decl., Exhs. 15-19, 21, 62-64. | **DISPUTED:** Suhy and PureThink did develop the Neo4j Government Edition. the PT Defendants do not "tout" PT's prior relationship; they said it was terminated.   Suhy Dec. ¶8 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | |
| | **Fact 15:** iGov used the Neo4j® Mark on its website without authorization to promote "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise," and related support services. *See* Ratinoff Decl., Exhs. 15-18, 21, 62-64. | **DISPUTED:** A nominative use does not require authorization. iGov references Sweden's Neo4J mark to reference Sweden's open source software called Neo4J to describe the software and uses USA's company name and products to identify them in comparative advertisement. Suhy Dec. ¶9 |
| | **Fact 16:** iGov's other unauthorized uses of the Neo4j® Mark on its website included: (1) using "https://igovsol.com/**neo4j**.html" as a URL to promote "Government Development Packages for **Neo4j**"; (2) prominently displaying a "Request Procurement Document Package" link with "**mailto:neo4j@igovsol.com**" embedded that creates an email addressed thereto upon activation; (3) encouraging consumers to obtain more information by sending an email to "**neo4j@igovsol.com**"; (4) using "Government Packages for Neo4j" and "Neo4j Enterprise" to describe iGov's patchwork binaries of Neo4J® EE; and (5) touting PT Defendants' prior relationship with Neo4j USA and to be "the developer of the retired Neo4j Government Edition." Ratinoff Decl., Exhs. 15-18, 21, 62-64, 67-69. | **DISPUTED:** Objection this is not a fact; it is argument. A nomantive use does not require authorization. USA does not own the trademark. D Fact . Beene Dec Exhibit 1,2,3. (4) "Government Packages for Neo4j" and "Neo4j Enterprise" were used to describe the government packages iGov provided support for around the free and open source neo4j database. Neo4j® Mark was never used.<br>The email address is for Sweden's open source Neo4j for inquires for that product. The email address was discontinued in the hopes USA would discontinue this litigation.<br>"Neo4j Enterprise" is needed to distinguish between the open source "Neo4j Community" and "Neo4j Enterprise" distributions, both of which are built when compiling the Neo4j source code.<br>iGov does not "tout" PT's prior relationship; they said it was terminated. Suhy Dec. ¶10 |
| | **Fact 17:** iGov continues to offer "Neo4j enterprise open source licensed distributions" and interchangeability referring to "ONgDB Enterprise" and "Neo4j Enterprise" on its website. Ratinoff Decl., Exhs. 62-70 (highlighted in yellow). | **DISPUTED:** iGov offers support for both Neo4j Enterprise open source licensed distributions, and ONgDB Enterprise open source distributions. Neo4j Enterprise distributions below 3.5 are still in use and available to the public.<br><br>iGov no longer offers distributions from it's website and only recommends ONgDB Enterprise |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | distributions. iGov links to the GraphFoundation download page. Suhy Dec. ¶11 |
| 3. The PT Defendants used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | **Fact 18:** After Graph Foundation ("GFI") released ONgDB in July 2018, iGov continued to use "https://igovsol.com/neo4j.html" as a URL address to promote ONgDB until it deactivated that page sometime after July 27, 2020. Ratinoff Decl., Exhs. 62-65; Exh. 13 at RFA No. 5. While iGov replaced this url with "https://igovsol.com/graph.html," the contents of the page remained the same. *Compare id.*, Exh. 65 *and* Exh. 66. | **UNDISPUTED** |
| | **Fact 19:** iGov used the neo4j@igovsol.com email address on its "neo4j.html" page (*id.*, Exhs. 62-65) and "downloads.html" page (*id.*, Exhs. 67-69) as means for consumers to inquire about ONgDB until sometime in July 2020. Ratinoff Decl., Exh. 13 at RFA Nos. 7-11. | **DISPUTED:** iGov used neo4j@igovsol.com and neo4j.html as a way to inquire about iGov support services and support for the neo4j open source database. 'neo4j' is Sweden's Github repository name for the official Sweden open source Neo4j repository. It was not just a means for consumers to inquire about ONgDB but of the services and support around open source neo4j and ongdb open source license support. Suhy Dec. ¶12 |
| | **Fact 20:** GFI used a "Download Neo4j Enterprise" hyperlink on its "downloads" page to redirect consumers to download links for ONgDB until July 27, 2020. Ratinoff Decl., Exhs. 66-68 (highlighted in red), Exh. 13 at RFA Nos. 10, 14. | **UNDISPUTED** |
| | **Fact 21:** iGov continues to promote "ONgDB Enterprise," "Neo4j Enterprise" and "Neo4j Enterprise Edition" versions 3.5.x as open source Neo4j® EE that can be used for free under the AGPL. Ratinoff Decl., Exhs. 62-74. | **DISPUTED:** Neo4j Enterprise and ONgDB Enterprise are open source and free to use under the open source AGPL license.<br><br>After versions 3.4.x – the term Neo4j Enterprise Edition was not applicable as Neo4j Inc stopped contributing to the enterprise code.<br><br>iGov does not promote Neo4j Enterprise Edition 3.5.x as being open source.<br><br>Many of the exhibits are showing the same page over and over from different snapshot dates but with |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | matching content giving the illusion that there were more pages than existed.<br><br>ONgDB 3.5.5 is a drop in replacement for Neo4j 3.5.5 (Community and Enterprise commercial.)<br><br>After reading this - iGov realizes that the next line needs to have the grammar cleaned up to say: "**The AGPLv3 Open Source License, has** no limitations on causal cluster instances, cores or production usage"<br><br>Suhy Dec. ¶13 |
| | Fact 22: iGov operated www.graphstack.io to further promote ONgDB using the Neo4j® Mark, and that "iGov Inc offers production support packages for Neo4j / ONgDB Enterprise open source distributions for US government agencies." Ratinoff Decl., Exh. 75. | **DISPUTED:** GraphStack is a graph development stack aimed at building out large scale AI and graph solutions. GraphStack is to promote iGov software packages and solution development, not specifically Neo4j. Both Neo4j and ONgDB will drop into GraphStack – so using the names is important to explain that GraphStack will work with both. Suhy Dec. ¶14 |
| | Fact 23: The GraphStack website used hyperlinks to redirect consumers to Neo4j USA's official release notes and "What's New" page in conjunction with encouraging consumers to download ONgDB as an alleged "[d]rop in replacement for Neo4j Core and Enterprise 3.5.3." Ratinoff Decl., Exh. 75; Exh. 13 [RFA Nos. 42-43]. | **UNDISPUTED** |
| 4. The PT Defendants knew their uses of the Neo4j® Mark were unauthorized and violated Neo4j USA's Trademark Guidelines | Fact 24: The trademark guidelines the PT Defendants had agreed to be bound by in the Partner Agreement prohibited the use of the Neo4j® Mark: (1) with anything other than "the software in the exact binary form that it is distributed by [Neo4j], without modification of any kind;" and (2) "in a web page title, titletag, metatag, or other manner with the intent or the likely effect of influencing search engine rankings or results listings." Ratinoff Decl., Exh. 4 at § 4.1; Rathle Decl., ¶¶ 15-16, Exh. 5; see also Exh. 4 at §7.1; Exh. 3 at 67:18-24 | **DISPUTED:** The Partner Agreement terminated on July 11, 2017 (Fact 7 above). Suhy and iGov are not parties to the Partner agreement. The PT defendants have not used USA's disputed trademark to market, sell or service and USA products. All marketing and services are limited to Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. Suhy Dec. ¶15 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 5. The PT Defendants did not use the Neo4j® Mark to describe Plaintiffs' products | **Fact 25:** The PT Defendants used the Neo4j® Mark to promote their "Government Package for Neo4j" and "Government Development Package with Neo4j Enterprise" rather than comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 14-18, 21, 62-65. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>All exhibits referenced except for exhibit 14 (15, 16, 17, 18, 21, 62-65 ) are all for iGov Inc sites are iGov sites, but have been incorrectly referenced in this fact as being PT Defendants. Suhy Dec. ¶17 |
| | **Fact 26:** The PT Defendants often used the Neo4® Mark to promote ONgDB instead of to comparatively describe Plaintiffs' Neo4j® EE. Ratinoff Decl., Exhs. 62-74; Exh. 13 [RFA Nos. 4-11, 14]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16 |
| | **Fact 27:** The PT Defendants used the Neo4j® Mark on iGov's website as (1) an URL address for a page promoting their "Neo4j Enterprise" packages and ONgDB; (2) an email address for customers to obtain more information about their "Neo4j Enterprise" packages while referring to ONgDB; and (3) a hyperlink to redirect consumers to download ONgDB. Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. 16 |
| 6. Defendant's product was readily identifiable without use of plaintiffs' trademark | **Fact 28:** Rather than naming their version of Neo4j® EE something else without using the Neo4j® Mark, the PT Defendants used the mark to name and promote their "Neo4j Enterprise" packages and while referring to ONgDB, as well as using the Neo4j® Mark to offer related | **DISPUTED:** PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | support services for ONgDB.   Ratinoff Decl., Exhs. 14-18, 62-65, 67-69; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16 <br><br> When Sweden's  Neo4j open source code is compiled from the official Sweden Neo4j Github repository - it creates 2 distributions called "Neo4j Community" and "Neo4j Enterprise".  Enterprise is a standard term for software used for business as in an "Enterprise" is a generic identifier.  Suhy Dec. ¶18 |
| | Fact 29: Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, the PT Defendants used the mark to promote ONgDB and related support services for ONgDB.  Ratinoff Decl., Exhs. 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14]. | DISPUTED:  Objection this is not a fact its argument.  ONgDB is a fork of Sweden's open source Neo4j and nominatively identified as such. Suhy Dec. ¶19 |
| 7. The PT Defendants prominently used the Neo4j® Mark beyond what was reasonably necessary | Fact 30: The PT Defendants extensively used the Neo4j® Mark (without proper trademark usage and notices) on their website, and in direct solicitations beyond describing "Neo4j Enterprise" packages and ONgDB as a forks of Neo4j® EE.  Ratinoff Decl., Exhs. 14-18, 24-26, 42-47, 62-65, 67-74; Exh. 13 [RFA Nos. 4-11, 14, 33-34]. | DISPUTED:  PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16 |
| 8. The PT Defendant's use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA | Fact 31:   The PT Defendants claimed that (a) "By default, all Government Packages for Neo4j now comes with Neo4j Enterprise included under it's open source license!" [Ratinoff Decl., Exhs 14-15]; (b) "The packages on this page are compiled by iGov Inc using the official Neo4j source code repositories located at https://github.com/neo4j" [id., Exh. 16]; (c) "US Federal Government Packages for Neo4j Solutions" [id., Exh. 17]; (d) "Government Development Packages for Neo4j" [id.]; (5) "iGov Inc is now the only US Federal contractor providing Neo4j Enterprise binaries packaged with it's [sic] free Open Source license!" [id., Exh. 18]; (e) "Get the open source licensed Neo4j Enterprise distributions we package for our government customers" [id., Exh. 21]; (f) "We compile and packaged the open source licenced [sic] distributions from the same official Neo4j | DISPUTED Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20 <br><br> All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Github Repositories as Neo4j Inc uses for their paid commercial licensed builds" [*id.*]; (g) "I manage the Neo4j Enterprise open source distributions used by the Treasury, DHS, etc. If you don't know about Neo4j - here is their website: http://neo4j.com" [*id.*, Exh. 26]. *See also id.*, Exhs. 19-20, 62-66. | GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | Fact 32:  The PT Defendants also claimed on iGov's website that (a) "We only focus on only supporting 100% free and open source ONgDB Enterprise & Neo4j Enterprise open source licensed distributions." [Ratinoff Decl., Exh. 66]; (b) "ONgDB Enterprise is a drop In replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.*]; (c) "The distributions we package for the federal government and community as a whole are drop in replacements for Neo4j Enterprise commercial packages you download from neo4j.com" [*id.*]; and (d) "ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5.  All ONgDB and Neo4j Enterprise AGPL distributions can be used in production, in closed source projects, and with no limitations on # of cores or causal cluster instances." [*id.*, Exh. 74]. *See also, id.* at Exhs. 62-65, 71-73. | **DISPUTED:** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20<br><br>All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16<br><br>The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | Fact 33:  The PT Defendants solicited customers about ONgDB stating that (a) "I can explain why the foundation was created and how we package Neo4j Enterprise (We call ONgDB) distributions that are being adopted at IRS…" [Ratinoff Decl., Exh. 24]; (b) "the Graph Foundation was setup to ensure Neo4j/ONgDB remains free and open.  It is Neo4j | **DISPUTED:** Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Core + Enterprise feature set added back in, so it is drop in replacement for a Neo instance of the same version. (Ex: 3.5.5)" [*id.*, Exh. 44]; (c) "ONgDB (Open Native Graph Database): Neo4j Enterprise OSS distribution downloads 3.5.8 will be up next week" and "ONgDB 3.5.8 is a drop-in replacement for Neo4j Enterprise 3.5.8" [*id.*, Exh. 46]; (d) "We compile Neo4j branded distributions for agencies who added Neo4j branded distributions instead of ONgDB branded distributions to their white lists. We have all versions of the Neo4j branded distributions up to 3.5 available" [*id.*,]; and (e) "Neo4j Enterprise open source distribution licenses and basic support. Aka: ONGDB" [*id.*, Exhs. 55, 131]. *See also, id.* Exhs. 43, 47, 54. | by USA. Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20  <br><br> All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16  <br><br> The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21 |
| | Fact 34: In its promotion of ONgDB software, iGov used hyperlinks on its website to redirect consumers to Neo4j USA's official release notes (https://neo4j.com/release-notes/neo4j-3-5-5/) and "What's New" page (https://neo4j.com/whats-new-in-neo4j/) until it removed those references sometime in July 2020. *See* Ratinoff, Exhs. 67-69 (highlighted in blue). | DISPUTED: Because ONgDB is a fork of Neo4j which the core code is unmodified, the release notes and whats new page are relevant and provide important information. Suhy Dec. ¶22  <br><br> Objection this fact does not suggest sponsorship or endorsement by Neo4J USA. USA claim is misleading. PT and iGov websites, taken as a whole do not suggest sponsorship or endorsement by USA. Suhy does not have a website. PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶20  <br><br> All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to USA and its products are for comparative advertisement. Suhy Dec. ¶16

The statements provided on the websites that PT "has ceased their partnership with Neo Technology" Ratinoff Decl. Exh. 14, that PT "has ceased their partnership with Neo4j Inc." *Id.* Exhs. 15, 17, 19, certainly reflects a total lack of sponsorship or endorsement. Suhy Dec. ¶21

The Sweden GitHub repository for open source Neo4J provides content including USA's documentation. Under the GitHub Terms of Services, all users may use all content. Referring licensees to such documentation is permissive. Nevertheless, when Neo4j Inc complained - the links were removed. Suhy Dec. ¶23 |
| 8. The PT Defendant's use of the Neo4j® Mark caused actual consumer confusion | <u>Fact 35</u>: The PT Defendant's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues.  Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | **DISPUTED:** Objection, the evidence is hearsay and there is no showing the use of the Name Neo4J caused consumer confusion. Consumers choose ONgDB because of price. This fact is conceded by Plaintiffs. Dkt. 98, p. 2:12-13; p. 32:6-10

PureThink and iGov did not use the USA's disputed Neo4j mark for promotion of USA's products. Suhy Dec. ¶24

All promotions have been to marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶16

Exhibit 115:  Shows an anonymous user named "stephanie" asking about trying to use ONgDB with |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Neo4j Desktop, it does not mention a specific version or anything more. There is no way of knowing if there was a "compatibility" issue, in fact the issue could have been caused because of an incorrect version number and could have occurred with Neo4j Enterprise distributions packaged by Neo4j. Furthermore, USA responds and in no way explains or tells the user that ONgDB is not even provided by them. The omissions in Neo4j's response would actually cause confusion because they are not saying anything about ONgDB being a 3rd party product. The confusion is caused by USA and Sweden's dual channel marketing of commercial and open source software through two different companies with the same name. Exhibit 116 is simply forwarding this post to Brad Nussbaum. Suhy Dec. ¶25 |
| | <u>Fact 36</u>: Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" in marketing ONgDB misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same. *See, e.g.,* Exhs. 35, 40, 42-44, 46, 53, 55, 76, 100, 130-131, 134-135. | **DISPUTED:** Defendants only used "Neo4j Enterprise" and "ONgDB" in descriptive manners. Furthermore defendants focused on educating consumers, not misleading them. Specific versions of Neo4j and ONgDB had no difference in source code before enterprise source was closed. Suhy Dec. ¶25<br><br>Even for those distributions, defendants made all the facts clear and never misled consumers. The inference drawn is not supported by the evidence:<br>**Exhibit 35:** shows no confusion or misleading of customers. The user is asking a question on the ongdb github issue list and the content does not lead to any confusion.<br>**Exhibit 40:** Exhibit 40 clearly shows that there is no confusion as the user was asking about compiling the binaries himself. There is nothing in the exhibit supporting that this user was mislead. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "where can I find the source of the binaries you provide? could you provide instructions on how to build your binaries myself?" **Exhibit 42:** Exhibit 42 shows actually shows that iGov is helping Perspecta Engineering Inc understand the differences between Neo4j and ONgDB.  Originally Perspecta had reached out to iGov and iGov responded explaining the facts and differences.   The statements in exhibits are true and not misleading. Suhy Dec. ¶27 |
| | **Fact 37:** The PT Defendant's use of the Neo4j® Mark to promote ONgDB as free open source and falsely it with commercially licensed Neo4j® EE created actual customer confusion.  Ratinoff Decl., Exh. 48-49, 117-120, 130-131, 134-135. | **DISPUTED:**  Defendants only used "Neo4j Enterprise" and "ONgDB" in descriptive manners.  Furthermore defendants focused on educating consumers, not misleading them.  Specific versions of Neo4j and ONgDB had no difference in source code before enterprise source was closed.  Suhy Dec. ¶25

Even for those distributions, defendants made all the facts clear and never misled consumers. The inference drawn is not supported by the statement:

**Exhibit 35:** shows no confusion or misleading of customers.   The user is asking a question on the ongdb github issue list and the content does not lead to any confusion.

**Exhibit 40:**  Exhibit 40 clearly shows that there is no confusion as the user was asking about compiling the binaries himself. There is nothing in the exhibit supporting that this user was mislead. "where can I find the source of the binaries you provide? could you provide instructions on how to build your binaries myself?" **Exhibit 42:** Exhibit 42 shows actually shows that iGov is helping Perspecta Engineering Inc |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | understand the differences between Neo4j and ONgDB.  Originally Perspecta had reached out to iGov and iGov responded explaining the facts and differences.  The facts in exhibit are true and not misleading.  Suhy Dec. ¶27 |
| | **Fact 38:** Consumers who have downloaded ONgDB rather than official Neo4j® EE have experienced technical issues with ONgDB.  Ratinoff Decl., Exh. 121-124, 133. In one instance, Suhy sent a user to Neo4j USA's operations manual for assistance. *Id.,* Exh. 125. | DISPUTED: Mr. Suhy believes that the technical issues could be caused by Neo4j Core code that it does not modify or simply because an end-user did not read the instructions on configuring a specific feature.  Mr Suhy is not aware of a bug fix for this issue indicating it could have just been user error. The inference drawn is not supported by the statement:  In many of the exhibits Neo4j tries to show a problem, but does not show any proof that the problem was simply user error or configuration or an analysis of what the problem was.

Exhibit 121 does not give enough information to identify if there is a technical issue, and furthermore the user from the exhibit said that they figured out the problem on their own indicating it was user error.

Exhibit 122 seems to indicate that a plugin or misconfiguration of the JVM is the problem.

Exhibit 123 indicates that the user is using ONgDB 3.2.3 which would have had the same source code as the Neo4j Enterprise branded distribution. Furthermore it seems that the issue was with the a 3rd party plugin called "tinker pop" and therefore was not even specific to Neo4j or ONgDB.  Because the source code for Neo4j and ONgDB was the same for that specific 3.2.3 version - if there was a technical issue - then it would have also been present in the Neo4j Enterprise 3.2.3 version as well. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | USA charges customers and provides technical support for its commercial Neo4J products because consumers have technical issues with their "commercial" Neo4J products as well. Technical issues with software is not indicative of any difference in the software.  Suhy Dec.  ¶28 |
| **Claim 2: Trademark Infringement Against Graph Foundation Inc.** | | |
| 1. Plaintiff Neo4j Inc. ("Neo4j USA") owns a protectable trademark | Fact 39: Neo4j USA is the owner of U.S. Trademark Registration No. 4,784,280 for the word mark "NEO4J" covering the goods and services in International Classes, 009, 035, 041, 042 and 045 (the "Neo4j® Mark").  Declaration of Jeffrey M. Ratinoff, ("Ratinoff Decl."), Exh. 1. | **DISPUTED:** Neo4j is not the owner, assignee, or exclusive licensee of the Neo4j mark, and therefore its ownership of U.S. Trademark Registration No. 4,784,280 is disputed. Beene Dec, Exh. 1 at §2.1.1., 2 and 3. |
| 3.  GFI used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | Fact 40:  Defendants copied the code, removed the commercial restrictions imposed by the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28-29, 37, 62, 86; *see also* Exh. 3 at 28:25-29:11, 171:23-172:23, 199:22-200:20; Exh. 31 at 87:24-90:9. | **DISPUTED:** Suhy did not remove commercial restrictions imposed by Neo4j.  He only followed the instructions of the License.txt copyright holder (free software foundation) making it verbatim.  The commons clause restrictions were still in effect and referenced in 1000s of files which Mr Suhy did not modify because the other files were copyrighted to Neo4j Sweden.  Following the rules for the License.txt file did not remove any restrictions on the software. Suhy Dec.  ¶29 |
| | Fact 41: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB.  GFI Dkt. No. 89, ¶ 18, Exh. 18; Ratinoff Decl., Exh. 31 at 81:14-20. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits.  GFI Dkt. No. 89, Exh. 18. |
| | Fact 42: On January 17, 2019, GFI modified its landing page by changing the title to "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," adding references "ONgDB & Neo4j" and that "ONgDB & *Neo4j Enterprise* consist of modules from Neo4j Community Edition and modules licensed under AGPLv3 in this repository," but the content | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | still remained almost identical to Plaintiffs' GitHub landing page and contained wide-spread misuse of the Neo4j® Mark.  Dkt. No. 89, ¶¶ 19-21, Exhs. 19-21 (emphasis added). | **DISPUTED** that the landing page contained "wide-spread misuse" of the Neo4® Mark.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | Fact 43:  On April 14, 2020, GFI started to remove the Neo4j® Mark and Neo4j USA's URLs from that page.  *Compare* GFI Dkt. No. 89, Exh. 22 *and* Exhs. 23-28.  However, GFI's landing page was still titled "ONgDB - Neo4j Enterprise Fork: Graphs for Everyone," still started off stating "Neo4j is the world's leading Graph Database," encouraged consumers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout. *Id.*, ¶¶ 29-31 Exhs. 29-31. | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.

**DISPUTED** that the landing page used the Neo4® Mark.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | Fact 44:   On April 21, 2020, GFI removed instances of the Neo4j® Mark and hyperlinks to Neo4j USA's website, but still used Plaintiffs' catch phrase "Graphs for Everyone" and mislabeling the Neo4j® Platform as the "neo4j project."  GFI Dkt. No. 89, Exhs. 32-33. | **UNDISPUTED** that GFI's landing page was modified and that the modified page contained the quoted language.

**DISPUTED** that the "neo4j project" is mislabeling.  The term "neo4j project" is used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | Fact 45: Rather than create its support documentation for ONgDB, GFI relied upon Neo4j USA's official documentation and used hyperlinks on its website to redirect users to Plaintiffs' official documentation, including Neo4j USA's copyrighted operation and developer manuals, located on its website.  Dkt. No. 89, ¶¶ 3-8, 13-16, Exhs. 3-8, 13-16; Ratinoff Decl., Exhs. 78-83, Exh. 129 [RFA Nos. 81-84, 88-89, 93-94, 98-100, 104, 108, 111, 123-126, 130-136]. | **UNDISPUTED** |
| | Fact 46: GFI's website directed users to ***Plaintiffs'*** change logs for each new release of ONgDB until GFI finally started its own change log with ONgDB v3.5.16.  Dkt. No. 89, ¶¶ 3-8, Exhs. 3-8; Ratinoff Decl., Exh. 84; Exh. 129 [RFA Nos. 87, 92, 97, 103, 107, 110]. | **UNDISPUTED** |
| | Fact 47: Up until April 14, 2020, GFI's GitHub landing page stated "To build the documentation see the Neo4j documentation" with an | **UNDISPUTED** |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | embedded hyperlink: https://github.com/neo4j/neo4j-documentation/. Dkt. No. 89, Exhs. 18-19, 23. | |
| | **Fact 48:** GFI's document repository on GitHub also uses hyperlinks that send consumers to Neo4j USA's official documentation on Neo4j USA's corporate website. Dkt. No. 89, ¶¶ 9-16; Ratinoff Decl., Exhs. 82-83; Exh. 31 at 276:19-279:12, 284:2-285:18; Exhs. 128-129 [RFA Nos. 81-84, 115-126]. | **UNDISPUTED** |
| | **Fact 49:** The Neo4j USA developer and operation manuals are copyrighted by Neo4j USA and subject to the License: Creative Commons 4.0, which contains a hyperlink to the Attribution-NonCommercial-ShareAlike 4.0 International Public License, which expressly prohibits the use of Plaintiffs' documents for commercial purposes. Ratinoff Decl., Exh. 85, Exh. 31 at 286:1-288:13. | **UNDISPUTED** |
| | **Fact 50:** GFI used the Neo4j® Mark in the title tags of webpages on its website featuring ONgDB. Ratinoff Decl., Exhs. 128-129 [RFA Nos. 85-86, 90-91, 95-96, 101-102, 105-106]. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | **Fact 51:** GFI did not seek or obtain Neo4j USA's authorization to use the Neo4j® Mark on GFI's website and GitHub repository in the foregoing manner. Ratinoff Decl., Exh. 31 at 181:6-182:3, Exh. 129 [RFA Nos. 5-9, 22-26, 69, 71, 73-76, 78]. | **UNDISPUTED** |
| | **Fact 52:** GFI used the Neo4j® Mark as a hashtag (#Neo4j) in tweets published from GFI's Twitter Account to promote ONgDB. Ratinoff Decl., Exhs. 89-92, 95-96, Exhs. 128-129 [RFA Nos. 149-150, 157-158, 165-166, 173-174, 181-182, 187-188]. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| **4. GFI's ONgDB product was readily identifiable without the Neo4j® Mark** | **Fact 53:** ONgDB can be readily identified as such or as "Open Native Graph Database" without use of the Neo4j® Mark. Ratinoff Decl., Exh. 31 at 27:17-29:9, 172:23-173:16, 175:5-20, 176:7-19, 178:13-179:25. | **DISPUTED:** ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 54**: GFI issued tweets promoting ONgDB without using the Neo4j® mark or the mark as hashtag. Ratinoff Decl., Exhs. 86, 88. | **UNDISPUTED** |
| 4. GFI did not use the Neo4j® Mark to describe Plaintiffs' Neo4j® products | **Fact 55**: GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and gratuitously used the Neo4j® Mark to describe and promote its own software. *See supra* Facts 41-44. | **DISPUTED**: ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | **Fact 56**: At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for the Neo4j® Platform, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" *instead* of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**: The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base." There is not a reference to ONgDB and Neo4j being one in the same. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | <u>Fact 57:</u> Rather than independently promoting ONgDB as a graph database software without use of Neo4j® Mark, GFI used the mark to promote ONgDB on its website and GitHub repository. *See supra* Facts 41-52. | **DISPUTED**: ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.   ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | <u>Fact 58:</u>  GFI used a hashtag, **#Neo4j** that consists of nothing more than the Neo4j® Mark with a "#" before the mark to promote ONgDB on social media.  Ratinoff Decl., Exhs. 1, 89-96 and Exh. 31 at 233:17-237:21. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. |
| | <u>Fact 59:</u> GFI chose the following format that relied on using the Neo4j® Mark as a hashtag to announce its new releases of ONgDB: "**#ONgDB (#FOSS#Neo4j** Enterprise) 3.5.x support release is out," with no attempt to differentiate ONgDB and Neo4j® EE as separate, competing products.[1]   Ratinoff Decl., Exhs. 89, 92, 94-95; Exh. 31 at 233:17-236:15, 240:12-241:25, 246:5-249:2. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" and the hashtag "#Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element.<br>Further, as is shown in the cited exhibits, each announcement contained the following statement distinguishing ONgDB from Neo4j EE:  "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." |
| | <u>Fact 60:</u> GFI issued a tweet that stated "**#ONgDB**, Open **#Neo4j** Enterprise," and in another instance "Our **#ONgDB**/**#Neo4j** Enterprise CI server is up and running builds...." Ratinoff Decl., Exhs. 91, 93. | **UNDISPUTED**-that the cited tweets contain the quoted language. |

---

[1] "FOSS" stands for free open source software. Ratinoff Decl., Exh. 31 at 233:17-234:3.

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | **DISPUTED** – that the cited language is the only language in the tweets. Exh. 93 contains the following additional language distinguishing ONgDB from Neo4j EE: "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." And "What is ONgDB: Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |
| | Fact 61: GFI used "**#Neo4j** Enterprise 3.5" to solicit end-users of official Neo4j® EE v3.5 to report bugs to GFI so that it could identify bugs in the closed enterprise directory for Neo4j® EE and attempt to mimic such fixes in ONgDB.  Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:13 | **DISPUTED** The hashtag "#Neo4j" was used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project where to report enterprise issues on open source.  Ratinoff Decl., Exh. 31 at 170:11-22. |
| | Fact 62: GFI used **#Neo4j** to promote ONgDB without reference to Neo4j® EE: "Latest **#ONgDB** apoc 3.5.0.8 procedure release is out. https://github.com/graphfoundatio... **#Neo4j**." Ratinoff Decl., Exh. 96. | **UNDISPUTED** – that the language appears on the exhibit.

**DISPUTED** – that there is no reference to Neo4j EE.  To the contrary, Exhibit 96 tweet contains the following language <u>distinguishing ONgDB from Neo4j EE:</u>  "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." |
| | Fact 63: GFI admitted intentionally used the Neo4j® Mark as a hashtag "to inform users about ONgDB" and to make it more likely that potential customers would come across ONgDB in conducting searches in relation to Neo4j® EE.  Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | **DISPUTED** – GFI did not use the Neo4j Mark.  GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project.  Ratinoff Decl., Exh. 31 at 236:3-11 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 7. GFI prominently used the Neo4j® Mark beyond what was reasonably necessary | **Fact 64:** GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits.  GFI Dkt. No. 89, Exh. 18.  The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
|  | **Fact 65:** At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**:  The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base."  There is not a reference to ONgDB and Neo4j being one in the same.  ONgDB is a fork of the open source Neo4 database.  It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions.   ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | Fact 66: GFI's (1) use of "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) use of embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) hyperlinking to Plaintiffs' build instructions, support documentation and change logs all containing the Neo4j® Mark rather than creating and hosting their own with the ONgDB name; and (4) interchangeable use of "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and GitHub goes beyond what is reasonably necessary to identify ONgDB as a fork of Neoj4® EE. *See supra* Facts 41-51, 56-58; *see also* Ratinoff Decl., Exhs. 37, 57-58; Dkt. No. 89, ¶¶ 3-16. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore GFI only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | Fact 67: GFI used the Neo4j® Mark as a hashtag, **#Neo4j**, to promote ONgDB rather than to merely describe ONgDB as a fork of Neo4j® EE. *See supra* Facts 59-64. | **DISPUTED** GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. Ratinoff Decl., Exh. 31 at 236:3-11. GFI's tweets referenced in Facts 59-64 <u>contained the following additional language distinguishing ONgDB from Neo4j EE:</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." See Responses to Facts 59-64. And Exhibit 93 also states: "What is ONgDB: Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |
| | Fact 68: GFI admitted that it could have referred to "Neo4j Enterprise" without using the Neo4j® Mark as a hashtag to identify the product. Ratinoff Decl., Exh. 31 at 236:4-15. | **DISPUTED** the cited testimony contains no such admission. The testimony is only that it is possible |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to write a tweet without a hashtag. GFI did not use the Neo4j Mark. GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. Ratinoff Decl., Exh. 31 at 236:3-11 |
| | **Fact 69:** GFI It also conceded that it could have used a format where it described ONgDB as being a fork of Neo4j® EE rather than simply inserting "#Neo4j Enterprise" with "#ONgDB." See id., Exh. 31 at 243:23-245:12; Exh. 93. | **DISPUTED** the cited testimony relates to a different type of tweet that still used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. |
| 8. GFI's use of the Neo4j® Mark suggested sponsorship or endorsement by Neo4j USA | **Fact 70:** GFI copied the landing page on Plaintiffs' GitHub repository without any overt reference to ONgDB and despite making modifications continued to use the Neo4j® Mark on its GitHub repository beyond merely describing ONgDB as a fork of Neo4j® EE. *See supra* Facts 41-55; *see also* Dkt. No. 89 at ¶¶ 17-33, Exhs. 17-33. | **DISPUTED** The referenced GFI GitHub repository page expressly describes ONgDB as follows: ONgDB (Open Native Graph DB) - Neo4j fork with enterprise code base. ONgDB integrates Neo4j Open Core commits. GFI Dkt. No. 89, Exh. 18. The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark

If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | See also Responses to Facts 41-55. |
| | Fact 71: At the time that Plaintiffs filed suit, GFI's ONgDB repository still strongly resembled the landing page for Plaintiffs repository for Neo4j® Software, and repeatedly referred to "ONgDB & Neo4j" as if they were one and the same, and even used "Neo4j" instead of "ONgDB." *Compare* Ratinoff Decl., Exh. 58 *and* Exh. 59. | **DISPUTED**: The GFI ONgDB depository page attached as Exhibit 58 starts with "ONgDB (Open Native Graph DB) – Neo4j fork with enterprise code base." There is not a reference to ONgDB and Neo4j being one in the same. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore ONgDB only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked. |
| | Fact 72: GFI (1) used "neo4j," "neo4j enterprise" and "Neo4j Enterprise" without proper trademark notices; (2) used embedded "Neo4j" links to Neo4j USA's website and GitHub repository; (3) stated on its GitHub repository for ONgDB for customers to "Learn more on the Neo4j website," and continued to use the Neo4j® Mark throughout that repository; (4) hyperlinked to Plaintiffs' build instructions, support documentation and change logs on GFI's website and GitHub repository all containing the Neo4j® Mark; (5) interchangeably used "Neo4j Enterprise" with "ONgDB" to promote ONgDB on its website and Github repository; and (6) used the Neo4j® as a hashtag on Twitter to promote ONgDB. *See supra* Facts 42-43, 56-70. | **DISPUTED** The Neo4j® Mark was never used, only the words neo4j and "Neo4j" were used to describe the fact that ONgDB is a fork of Neo4j which is an important descriptive element. ONgDB is a fork of the open source Neo4 database. It's important to explain this fact to potential end-users and is an important descriptive fact to show it is a drop in replacement for neo4j distributions. ONgDB does not modify the neo4j core code, and is therefore a superset of neo4j core and it's important to communicate this to potential end-users. Furthermore GFI only uses the descriptive term neo4j - it does not use the Neo4j® Mark<br><br>If Neo4j was not referenced then end-users would have no idea to what ONgDB forked |
| | Fact 73: GFI's intended audience in using the Neoj4® Mark as a hashtag were users of Neo4j® EE. Ratinoff Decl., Exh. 31 at 174:14-176:19, 236:4-11, 237:9-239:7, 242:14- 243:21. | **DISPUTED** the cited testimony contains no such admission. The testimony is only that it is possible |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | to write a tweet without a hashtag. GFI did not use the Neo4j Mark. GFI used the hashtag "#Neo4j" was used to inform users in the neo4j community that ONgDB was available as a fork of Neo4j which is an important descriptive element and to inform users who wanted to participate in the open source project. Ratinoff Decl., Exh. 31 at 236:3-11 |
| 9. GFI's use of the Neo4j® Mark caused actual consumer confusion | <u>Fact 74:</u> GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | **DISPUTED** – The cited emails are hearsay and do not establish compatibility issues. Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application. Ratinoff Decl., Exh. 31 at 232:5-25. Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | <u>Fact 75:</u> GFI lead consumers to believe that ONgDB and Neo4j® EE were one and the same. *See, e.g.,* Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | **DISPUTED**: Defendants consistently present ONgDB as an alternative to Neo4j EE. As is set out above, in numerous statements, on the GFI website and on Twitter, GFI describes ONgDB as "an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." Ratinoff Decl., Exhs. 89, 92, 94, 95. GFI has also described, on its website, the distinction between ONgDB and the Neo4j EE software distributed by Neo4j, Inc., while also disassociating itself from Neo4j, Inc. Open Native Graph DB (ONgDB) is a fork of the neo4j project that continues development of the neo4j enterprise code base as a fully open source project after Neo4j, Inc. Open Core Shift that closed ongoing development and removed existing source code. Ratinoff Decl., Exh. 66. . |
| | <u>Fact 76:</u> GFI's use of the Neo4j® Mark to promote ONgDB as free open source and falsely comparing it with commercially licensed Neo4j® EE created actual customer confusion, and diverted sales from Neo4j USA, | **DISPUTED**: Plaintiffs present no evidence of a single person or entity that would have made that choice. Indeed, the evidence Plaintiffs provide with |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | including the IRS and Next Century/MPO.  Ratinoff Decl., Exh. 48-50, 117-120, 127, 131, 134-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| **Claim 3: False Advertising Against GFI and the PT Defendants** | | |
| 1. Defendants made a false statement of fact about a product in a commercial advertisement, which is (a) commercial speech; (b) made in commercial competition with Neo4j USA; (c) for the purpose of influencing consumers to buy their goods or services; and (d) sufficiently disseminated to the relevant purchasing public | **Fact 77:** Defendants made the following false statements interstate commerce via their websites and Twitter: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number" [Ratinoff Decl., Exh. 57]; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3" [*id.,* Exh. 58]; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition" [*id.,* Exhs. 60, 113-114]; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number." [*id.,* Exhs. 62-66]; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" [*id.,* Exhs. 62-66, 71]; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" [*id.,* Exhs. 67-69, 75]; (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions" [*id.,* Exh. 72-74]; (8) "[ONgDB] is an open source fork of #Neo4j" [*id.,* Exh. 93]; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." [*id.,* Exh. 98-104, 108]. | DISPUTED: Objection none of the evidence cited supports the alleged fact they are false. The legal standard is not correct. See, *Pizza Hut, Inc. v. Papa John's Intern., Inc.* (5th Cir. 2000) 227 F.3d 489, 495. The statements are all true: (1) "ONgDB distributions are licensed under AGPLv3 as a free and open drop-in replacements of Neo4j Enterprise commercial licensed distributions with the same version number"; (2) "ONgDB and Neo4j Enterprise consists of modules from Neo4j Community Edition and modules licensed under the AGPLv3"; (3) "ONgDB distributions are licensed under AGPLv3 as a free and open source alternative to currently available proprietary native graph offerings such as Neo4j Enterprise Edition"; (4) "download ONgDB Enterprise as a drop in replacement for an existing commercial licensed distribution of the same version number."; (5) "ONgDB Enterprise is a drop in replacement for Neo4j Enterprise commercial packages downloaded from Neo4j.com" ; (6) "ONgDB Enterprise 3.5.5…. Drop in replacement for Neo4j Core and Enterprise 3.5.5. AGPLv3 Open Source License, no limitations on causal cluster instances, cores, or production usage" (7) "ONgDB is a drop in replacement for the Neo4j Community and Enterprise branded distributions"; (8) |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | "[ONgDB] is an open source fork of #Neo4j"; and (9) "You can use the ONgDB fork of Neo4j which adds enterprise code back into Neo4j core. It is 100% free and open." Suhy Dec. ¶30 |
| | **Fact 78:** The PT Defendants also stated on iGov's website that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLV3 open source license that is managed by the free software foundation." Ratinoff Decl., Exhs. 67-70; *see also* Exh. 21. | <u>DISPUTED:</u> The PT Defendants did not all say this. Only iGov's website stated: that "[Neo4j Enterprise] is 100% free and open source" and "Neo4j Enterprise is released only under the standard AGPLv3 open source license that is managed by the free software foundation." Defendants do not sell ONgDB, ONgDB is licensed under AGPL and AGPL is an open source license for free software. Suhy Dec. ¶31, Ratinoff Decl. Exh. 39, 11:635-638<br><br>ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Pernick Dec. Ex. B |
| | **Fact 79:** Defendants actively encourage actual and potential users of commercially licensed Neo4j® EE to adopt ONgDB and obtain support services from iGov and GraphGrid instead of Plaintiffs. Ratinoff Decl., Exhs. 23, 28-29, 40, 42-54, 76-77, 126, 134-135. | **DISPUTED:** None of the evidence cited identifies any party that would have used Neo4j EE. Further, Plaintiffs present no evidence that they competed with GraphGrid or provided similar services. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Plaintiffs are misidentified as if they both do the same thing. Sweden is not a party to the cause of action. Sweden licenses the open source software USA does not. See APGL license. USA does not support open source software licensed by Sweden. Suhy Dec. 32 |
| | **Fact 80:** Neo4j Sweden is the owner of all copyrights in Neo4j® CE and Neo4j® EE, including the source code and has licensed said copyrights to Neo4j USA.  Rathle Decl., ¶¶ 3-4. | **UNDISPUTED** |
| | **Fact 81:** Plaintiffs released Neo4j® EE v3.4 under a license that which included the terms from the AGPLv3 and additional restrictions provided by the Commons Clause ("Neo4j Sweden Software License"). Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | **DISPUTED:**  Neo4J USA did no such thing. Neo4J Sweden release the open source software, not Neo4J USA. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33 |
| | **Fact 82:** The Neo4j Sweden Software License, while still allowing code to be publicly viewable and used within a certain licensed scope, prohibits commercial resale and certain commercial support services. Rathle Decl., ¶¶ 11-12, Exhs. 2-3. | **DISPUTED:**   Versions of Neo4j Enterprise open source distributions using AGPL only have no terms mentioning these prohibitions.  When the commons clause was added to AGPL, Sweden did not change license forms and used the AGPL form which bars additions and also allows licensees to remove non-permissive additional restriction. AGPL §7. Ratinoff Decl. Exh. 39, 6:331-7:393

Furthermore - the commons clause does not use the word "commercial". It only uses the word "sell". Ratinoff Decl. Exh. 39, 25:681-693

The author of the commons clause clarifies the intention and meaning of the commons clause as well. Support services are not barred as they do not consist entirely or substantially of the Software or Functionality of the Software as limited in the commons clause. The restriction of services is using the software as a service as in a SaaS implementation. Suhy Dec. ¶34 Ex. 2 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 83:** After Plaintiffs released Neo4j® EE v3.4, the PT Defendants downloaded Neo4j's source code from Neo4j's GitHub repository, removed the commercial restrictions imposed by the Neo4j Sweden Software License, and began promoting it "free and open source" Neo4j Enterprise and offering commercial support services.  Ratinoff Decl., Exh. 3 at 171:23-172:23, 199:22-200:20; Exh. 21. | DISPUTED:  USA did no such thing. Sweden release the open source software not USA. Ratinoff Decl. 39, 25:11-13 Suhy Dec. ¶33 <br> Suhy only removed the commons clause as allowed in the AGPL §7. Ratinoff Decl. Exh. 39, 6:331-7:393 <br> Suhy did not remove any commercial restrictions. He simply ensured the LICENSE.txt file was verbatim as required by the copyright holder of the LICENSE.txt files : the free software foundation. Suhy did not modify any other files, and the commons commercial restrictions were still in effect.   Following the FSF copyright instructions for the AGPL License.txt file did not remove any restrictions from the distribution - as the restrictions were documented across the repository.  Following the rules for just the specific files did not remove legal terms from the distributions. Suhy Dec. ¶35 |
| | **Fact 84:** Rather than develop ONgDB as an independent fork based off an earlier open source version of Neo4j® EE, Defendants stripped the commercial restrictions out of the Neo4j Sweden Software License from Neo4j® EE version 3.4 and began promoting ONgDB as the open source equivalent of Neo4j® EE 3.4 under the AGPL.  Ratinoff Decl., Exh. 24-26, 28; *see also* Exh. 31 at 87:24-90:9. | DISPUTED:  PT, Suhy, and iGov Inc did not use the term "equivalent" in any references.   For Neo4j Enterprise versions below 3.5 - ONgDB was equivalent in features as it used the same unmodified source code.  So this statement would be true for specific versions of Neo4j and ONgDB.  PT, Suhy, and iGov always used the term drop in replacement which does not mean the features are all equivalent. <br><br> Furthermore - ONgDB is a current fork of Neo4j open source software licensed from Sweden, it pulls in all the Neo4j community commits from the official repository regularly keeping it up to date. This is allowed under the AGPL. Suhy Dec. ¶36 |
| | **Fact 85:** Plaintiffs officially released Neo4j® EE v.3.5 solely under a commercial license in November 2018, and were no longer publishing | DISPUTED:  PT, Suhy, and iGov Inc did not use the term "equivalent" in any references.   For Neo4j |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | source code for Neo4j® EE on GitHub under any open source license. Rathle Decl., ¶ 13, Exh. 4. | Enterprise versions below 3.5 - ONgDB was equivalent in features as it used the same unmodified source code.  So this statement would be true for specific versions of Neo4j and ONgDB.  PT, Suhy, and iGov always used the term drop in replacement which does not mean the features are all equivalent.  Furthermore - ONgDB is a current fork of Neo4j open source software licensed from Sweden, it pulls in all the Neo4j community commits from the official repository regularly keeping it up to date.  This is allowed under the AGPL. Suhy Dec. ¶36 |
| | **Fact 86:** Prior to its official release, Plaintiffs published several beta versions of Neo4j® EE v3.5 via their GitHub repository subject to the Neo4j Sweden Software License, with Neo4j® v3.5.0-RC1 being the last pre-release version available to Defendants via GitHub.  Rathle Decl., ¶ 14; *see also* Ratinoff Decl., Exh. 31 at 158:18-159:20. | **DISPUTED:**  USA did not release version on GitHub. Only Sweden released the open source Neo4J software under the AGPL license. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33<br><br>There are no pre-release terms in the GitHub repository.  It's possible that a pre-release agreement was added to the compiled packages - but that would be in the actual download of the package, not the GitHub source code as they state. Furthermore - enterprise code was not available in v3.5.0-RC1 but it was available in 3.5.0-beta03. Suhy Dec. ¶37<br><br>Also - the License.txt files for the above mentioned releases clearly shows the license as being AGPL, complete with the AGPL preamble - and does not say anything about a "Neo4j Sweden Software License" Decl. Exh. 39, 12-13 |
| | **Fact 87:** GFI's release of ONgGB v3.5.1, which contained at least 182 source code files that had only been previously released under the Neo4j Sweden Software License in the last beta version of Neo4j® EE 3.5 made available by Plaintiffs via GitHub.  Ratinoff Decl., Exh. 38 at 6:22-7:1, 8:4-16:24; *see also* Rathle Decl., ¶ 29. | Disputed. USA does not release the open source software. Ratinoff Decl. Exh. 39, 25:11-13 Suhy Dec. ¶33 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | Fact 88: In order for Defendants to call ONgDB "free and open source" Neo4j® EE, they again replaced the more restrictive Neo4j Sweden Software License with a generic copy of the AGPL and stripped out valid legal notices identifying Neo4j Sweden as the copyright holder and licensor in 28 LICENSE.txt files. Ratinoff Decl., Exhs. 39-40; Dkt. No. 91 at 19:9-25; Exh. 31 at 159:3-10; Rathle Decl., ¶ 30. | DISPUTED: The AGPL license.txt file is copyrighted to the free software foundation. Suhy followed the guidance from the free software foundation relating to the license being verbatim. By following the FSF copyright guidance he did not remove the legal terms from the distribution as a whole. There are 1000s of Neo4j files in the repository which clearly state the commons clause is still part of the license. I.E. Using the verbatim AGPL license content as instructed by the Free software foundation did not remove the commons license in any way as it was stated in many other places. There is no obligation to repeat Sweden's copyright notice on every file. And Sweden owns the copyright (undisputed Fact 80 above) USA has not standing to argue about the copyright notice. Phase 1 does not address the DCMA claim. Suhy Dec. ¶38 |
| | Fact 89: The Neo4j Sweden Software License did not permit a licensees such as Defendants to remove "further restrictions," i.e. the Commons Clause, imposed by Neo4j Sweden as the copyright holder and original licensor. Rathle Decl., Exh. 3 at §§ 7, 10; GFI Dkt. No. 88 at 5:23-8:9. | DISPUTED: Suhy only worked on the License.txt file which he believes is copyrighted to the Free software foundation. When Suhy replaced the file with verbatim - it was following the copyright holder's instructions. All the other files which Neo4j held the copyright for were not modified by Suhy and clearly stated that the commons clause was there. Suhy Dec. ¶35

Following the copyright holder's instructions for the License.txt file did not remove restrictions as these were mentioned in many other files in the github repository. Suhy Dec. ¶35 |
| | Fact 90: Defendants knew that they could not unilaterally replace the Neo4j Sweden Software License with the APGL without authorization. Ratinoff Decl., Exhs. 34-36, Exh. 31 at 183:14-184:24, 207:10-210:8. | DISPUTED: Suhy did not replace the Neo4j Software License - He only followed the instructions given by the AGPL license copyright holder to make the actual license verbatim. The Neo4j Sweden |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Software License was still in effect as the commons clause was mentioned in many other neo4j files which Neo4j Inc owned the copyright for. Suhy Dec. ¶35 |
| | **Fact 91:** Defendants' statements that ONgDB v3.5.x was "100% free and open" with no limitations or restrictions imposed by commercial licensed Neo4j® EE v3.5.x and the like were false because they knew that Neo4j Sweden owned the copyright for Neo4j® EE and never gave permission to remove Commons Clause and offer it as ONgDB under the AGPL.    Ratinoff Decl., Exh. 55-56; Exh. 3 at 183:12-183:1, 187:12-188:5, 189:1-191:3, 235:21-237:14, 240:22-243:22. | DISPUTED: Suhy only acted on License.txt files who's copyright is owned by the free software foundation.  Furthermore - Suhy only made AGPL license.txt files verbatim as the free software foundation required.  The commons clause was referenced and defined in almost every one of the thousands of enterprise code headers - all of which were left untouched by Suhy. Suhy Dec. ¶35 |
| | **Fact 92:** The Nussbaums also own GraphGrid and AtomRain, which share the same office and computers with GFI, and provide commercial training and consulting and support for users of ONgDB, and benefit from customers being able to use ONgDB for "free" and diverting available project funds to pay them for such services.  Ratinoff Decl., Exhs. 52-53; Exh. 31 at 22:24-23:3, 31:5-32:19, 35:3-13, 57:18-58:21, 65:20-70:16, 194:14-17; *see also* Exh. 28 ("If you are looking for a full shield of liability, we recommend using one of our supporters such as GraphGrid") and Exhs. 76, 134-135. | DISPUTED: GFI does not "share the same office" with GraphGrid and AtomRain.  GFI uses 111 South Buckeye Street for receiving mail and 111 Buckeye Street is leased by AtomRain and is used by AtomRain and GraphGrid for business activities.  Nussbaum Depo., 65:18-67:3. Pernick Dec. Ex. A |
| | **Fact 93:** Defendants removed the Commons Clause without Neo4j Sweden's authorization as the copyright holder in an attempt to allow iGov, AtomRain and GraphGrid to commercially use and support ONgDB.  Ratinoff Decl., Exh. 23-26, 28-29, 39, 76-77, 126, 134-135; Exh. 3 at 28:25-29:11; Rathle Decl., ¶¶ 29-30. | DISPUTED:  The free software foundation owns the copyright for the AGPL License.txt file and clearly states that the license must be verbatim.  Suhy Dec. 35. Suhy's commit message for the changes to the license files to be in line with FSF requirements clearly states the reason for the change. Suhy Dec. 47. Furthermore - the commons clause does not say anything about commercial use and support, the commons clause author Heather Meaker clarifies the commons clause in her article and states they do not cover professional services: Suhy Dec. ¶34 Ex. 2 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 94:** ONgDB v3.5.1 and later versions are not 100% identical to equivalent version numbers of Neo4j® EE. Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:2. Rather, ONgDB is a patchwork of code from the last public beta, Neo4j® EE 3.5.0-RC1, and Neo4j® Community Edition held together by "glue code" authored by Suhy, Brad Nussbaum and other GFI contributors. *See id.* | UNDISPUTED: ONgDB 3.5 and later versions are not 100% identical to equivalent Neo4j enterprise versions and that claim was never made.<br><br>DISPUTED: ONgDB is not a "patchwork" or "glue" of code - it has been proven in large production deployments. After the enterprise code was closed - Suhy and other contributors continued it's development. The enterprise code came from Neo4j - so it is calling the code it developed a patchwork of code. Suhy Dec. ¶39 |
| | **Fact 95:** By splicing together source code for ONgDB in that manner, GFI is creating software that is not of the same quality as if it were compiled by Plaintiffs because GFI does not have access to the same rigorous build infrastructure for official Neo4j® Software, which goes beyond what is built into Neo4j® CC and carries out tens of thousands of functional, performance, load, stress, and other tests to ensure quality. Rathle Decl. ¶¶ 31-34; Ratinoff Decl., Exh. 31 at 168:14-169:6. | **UNDISPUTED**: GFI does not have access to Neo4j software build infrastructure and ONgDB 3.5 and later versions are not 100% identical to equivalent Neo4j enterprise versions and that claim was never made.<br>**DISPUTED**: That GFI does not do its own quality testing of ONgDB. To the contrary, GFI conducts about 64,000 tests for each build. Nussbaum Depo., 166:18-168:13. |
| | **Fact 96:** GFI is dependent on what patches are made available in Neo4j® CE and sought to redirect users of official Neo4j® EE to GFI and identify bugs in the closed enterprise directory for Neo4j® EE. Ratinoff Decl., Exh. 61, Exh. 31 at 161:23-163:12, 169:13-172:12. | UNDISPUTED – GFI uses information from users of Neo4j software to identify bugs and uses open source patches made available in Neo4j CE.<br><br>DISPUTED – GFI is not dependent on information about Neo4j EE bugs to develop ONgDB. To the contrary, GFI is no longer developing ONgDB versions as drop in replacements for Neo4j EE (and does not describe versions after 3.5.4 as such. Indeed, GFI has developed ONgDB 3.6 even though there is no Neo4j EE 3.6 and is developing ONgDB 4 independent from Neo4j EE 4. Nussbaum Depo., 190:17-191:6. |
| | **Fact 97:** Since GFI introduced modifications and patches to ONgDB 3.5.x in an attempt to keep pace with the closed Neo4j® EE releases, | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility. |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | the potential for stability and compatibility issues with ONgDB increases. Rathle Decl., ¶ 34; Ratinoff Decl., Exh. 31 at 161:23-163:12. | **UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE |
| | **Fact 98:** Defendants had no way of knowing this after Plaintiffs closed off public access to the source code for enterprise-only features in November 2018 and had no visibility into Neo4j Sweden's proprietary testing and patches. Ratinoff Decl., Exh. 31 at 158:18-160:5; Exh. 3 at 223:1-224:9; Exh. 40; Rathle Decl., ¶¶ 31-34. | **DISPUTED:** Defendants are not sure what "this" means in the context of this statement. If it is referencing Fact 97 then it would be true.<br><br>Furthermore, defendants believe that the older approach for the enterprise features (which include the tests) is more stable and higher quality than newer re-implementations. See GitHub bug tickets. Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software. Suhy Dec. ¶40 |
| | **Fact 99:** Defendants knew that ONgDB 3.5.x does not include every closed enterprise feature in equivalent Neo4j® EE 3.5.x. Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | **UNDISPUTED:** Defendants did know that ONgDB did not include every closed enterprise feature and did not ever say that the 2 were equivalent. The defendants used the term "Drop in replacement" which has nothing to do with feature by feature equivalency. |
| | **Fact 100:** GFI admitted that ONgDB v3.5.4 is not 100% identical to official Neo4j® EE v3.5.4. Ratinoff Decl., Exh. 31 at 158:18-163:5, 163:13-165:6; Exh. 3 at 124:2-126:23. | **UNDISPUTED:** ONgDB 3.5.4 is not 100% identical to equivalent Neo4j enterprise versions and that claim was never made. |
| | **Fact 101:** GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees because it became "too hard to demonstrate." Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility.<br><br>**UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE. Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software. Suhy Dec. ¶40 |
| | **Fact 102:** As a result, Defendants were leading consumers to believe they were downloading an exact copy of the same version of commercial-only releases of NEO4J® EE, which in actuality they were | DISPUTED: Suhy, PureThink and iGov never lead consumers into believing they were downloading an exact copy of the same commercial only releases. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | receiving an inferior ONgDB product that was not a true "drop in" replacement. *See supra* Facts 80-101. | For versions when the enterprise code was present and no modifications were made in the source code - defendants made clear that Neo4j did not compile the code, even though the code was the same for Neo4j Enterprise and ONgDB. The defendants knew that knowledgeable users only needed to know specific facts such as the code being unchanged in specific versions. Furthermore ONgDB is a drop in replacement for Neo4j community and enterprise for all versions including 3.5. Drop in replacement has nothing to do with feature parity.<br><br>Suhy believes that the original code for causal clustering and other features is actual superior to the feature rewrites Neo4j Inc made when it closed the Neo4j Enterprise code in 3.5<br><br>To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Suhy has not been advised by any user of ONgDB that is it incompatible with Neo4J commercial software.  Suhy Dec. ¶40 |
| | **Fact 103**: Neo4j® EE has been subject to trademark policies and guidelines published on Plaintiffs' website, which along with the terms of the GPL, AGPL and Neo4j Sweden Software License, made clear that to the extent any authorized modifications are made to Neo4j® Software, such modified software should indicate so and no longer bear the Neo4j® Mark.  Rathle Decl., ¶¶ 15-18. Exhs. 5-7. | DISPUTED:  Those terms were only recently added.  Furthermore - Neo4j Inc never provided us with trademark policies and these policies were not found on their websites until recently. Furthermore - The neo4j word is only used in a descriptive manner.  The Neo4j® Mark was not used. Suhy Dec.41 USA trademark policies only cover its limited license to the trademark covering the commercial version of Neo4J. See Beene Dec. Exhibit 1. |
| 2.  Defendants' statements actually deceive or has the tendency to deceive a substantial segment of its audience | **Fact 104**: Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE, and pay iGov, Graph Grid and/or AtomRain for related consulting and support services. *See supra* Facts 78-80, 83-84, 86-93. | **DISPUTED:**  The statements referenced are true. The statements made by Suhy and iGov were made to educate the community about ONgDB and Neo4j. Furthermore - the word drop-in replacement was used which is still true for all versions of ONgDB. The term "drop in replacement/equivalent" not used in combination the way Neo4j fact suggests.  The term "drop in replacement" was used on its own. Suhy Dec.42 To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | <u>Fact 105:</u> Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others.  Ratinoff Decl., Exhs. 35, 40, 48-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | DISPUTED: the representations made about being a drop-in replacement are true.  The term "drop in replacement/equivalent" was not used together in the manner Neo4j referenced.  Only the term "drop-in replacement" was used. Suhy Dec.42

To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br><br>Neo4j and ONgDB are highly technical products and the end-users who use them are knowledgeable about the technology.<br><br>Furthermore, defendants focused on educating the community with facts.  In the case of the IRS - defendants laid out the facts including differences, license, features, and future of ONgDB were all taken into consideration.<br><br>The agencies mentioned in this fact would not have have been effected by the commons clause restriction as they are using ONgDB for their projects and not creating or selling anything. Suhy Dec. 42<br><br>Plaintiffs present no evidence of a single person or entity that would have made that choice.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| 3. Defendants' deception is material | **Fact 106:** Defendants' false statements that ONgDB is a drop-in replacement/equivalent to paid-for, commercial licensed Neo4® EE was material to potential consumers' purchasing decision because Defendants were offering it for free under the AGPL, and unbeknownst to consumers, in violation of the Neo4j Sweden Software License and Neo4j Sweden's copyright. *See supra* Facts 78-93. | DISPUTED:  ONgDB is a drop-in replacement for any Neo4j (community or enterprise) with the same version number.  ONgDB is a superset of Neo4j Core.  Furthermore:  the term "drop-in replacement/equivalent" was not used together as Neo4j says in the fact. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | **Fact 107:** Defendants intentionally made the false statements publicly on their website and on Twitter that ONgDB is a "free and open" drop-in replacement/equivalent under the AGPL to convince customers to adopt ONgDB over Neo4j® EE. *See supra* Facts 78-93. | DISPUTED: The statements mentioned are true statements, not false. Suhy and iGov clearly state that there are no limitations to cores and causal clustering - free and open would still apply to the AGPL with commons clause as all the terms in AGPL are still present. Had Neo4j removed some terms from AGPL - then it may be harder to use the term free and open

Furthermore: the term "drop-in replacement/equivalent" was not used together as Neo4j says in the fact.

To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393 The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| 4. Defendants caused the false | **Fact 108:** Defendants' false statements entered interstate commerce through the internet via their websites and Twitter, as well as emails | DISPUTED: Defendants statements were / are true. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| statement to enter interstate commerce | sent to consumers.  Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| 5. Neo4j USA has been or is likely to be injured as a result of the false statement | Fact 109: Defendants' false statements diverted sales from Neo4j USA. Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Broad Decl., ¶¶ 20-24; Exhs. 12-13. | DISPUTED:  Defendants statements were / are true. To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br><br>Plaintiffs present no evidence of a single person or entity that would have made that choice.  Indeed, the evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| | Fact 110: Neo4j USA lost multi-year deal with the IRS.  Broad Decl., ¶¶ 20-21. | DISPUTED:  PureThink lost a multi-year deal with IRS, not Neo4j USA.  Suhy Dec. ¶7, Ex. 1  Furthermore - IRS created a competitive procurement  which Neo4j or Resellers could have competed on.  Mr. Suhy is not aware of Neo4j Inc or other resellers providing competitive responses to the procurement. Suhy Dec. ¶49 |
| | Fact 111: Neo4j USA lost multi-year deal with Next Century/MPO adopting ONgDB, amounting to over over $2.2 million in lost revenue. Broad Decl., ¶¶ 22-24, Exhs. 12-13. | DISPUTED:  Mr Suhy is not aware of Neo4j USA having a multi-year deal with Next Centry / MPO which it could have lost in the first place.<br><br>The evidence Plaintiffs provide with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| **Claim 4: False Designation of Origin  Against GFI and the PT Defendants** | | |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| 1. used in commerce any word, false designation of origin, false or misleading description, or representation of fact | **Fact 112:** Defendants' false and misleading statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were made in commerce through the internet via their websites and Twitter, as well as emails sent to consumers. Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114; *see also* Facts 78-80. | DISPUTED:  The statements made are not misleading or false.   ONgDB is a drop in replacement for Neo4j distributions.   ONgDB is free and open - it has no limitations on number of cores, number of cluster instances, etc - while Neo4j Enterprise commercial packages have legal terms limiting these features making them not free and open.<br><br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
|  | **Fact 113:**  Defendants' statements that ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading because Defendants did not have the right to replace the Neo4j Sweden Software License with the AGPL.  *See* Facts 78-93. | DISPUTED:  ONgDB is a free and open drop-in replacement.  iGov or Suhy talk about free and open meaning that there were no limitations on the number of cores or cluster instances. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Furthermore - Neo4j Sweden still uses the AGPL license with the AGPL preamble. They added the commons clause restriction which defendants question - but they added this to the AGPL license which is known as a free and open source license. Had they removed the preamble or just copied the terms they liked from the AGPL into a new license then the story may be different.<br><br>To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A |
| | Fact 114:  Defendants' statements ONgDB is a "free and open" drop-in replacement under the AGPL for equivalent versions of paid-for commercially licensed Neo4® EE were false and misleading because ONgDB was not of the same quality as if it were compiled by Plaintiffs. Rathle Decl. ¶¶ 19-22, 29-34; Ratinoff Decl., Exh. 3 at 216:2-218:6; Exh. 31 at 161:23-163:12, 168:14-169:6. | DISPUTED:  These statements are true. They are also not misleading.  ONgDB is a superset of Neo4j as it forks and does not modify the core code.  All versions of ONgDB (even 3.5 ) are drop in replacements for neo4j community and enterprise versions of the same version number. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | If different people compile the same code using the same build configuration - then there will not be any quality differences between the 2 compiled distributions.  In fact - Neo4j does not technically compile their code, the build system they use from atlassian does the job.  It should be noted that the GFI build system also uses atlassian tooling and automation.<br><br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br><br>When ONgDB and Neo4j Enterprise share the same code base - the compiled distributions are identical from a functionality and feature perspective.  Only the metadata timestamps of the compile time differ which has no effect on the quality. |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | ONgDB ensures that the same JVM and other parameters are used as the Neo4j compiled binaries - there are no quality differences because of the fact that the source code across versions using the same code are the same. |
| | **Fact 115:** Since GFI introduced modifications to ONgDB in an attempt to keep pace with the closed Neo4j® EE releases, the potential for stability and compatibility issues with ONgDB increases. *See* Rathle Decl., ¶¶ 29-24; *see also* Ratinoff Decl., Exh. 31 at 158:18-160:5, 161:23-163:12; Exh. 3 at 223:1-224:9; Exh. 40. | DISPUTED: GFI does not modify the core code it keeps in sync from the Neo4j official GitHub repository. The same can be said about Neo4j - and historically they have had many stability and other issues across different releases. ONgDB skipped over some 4.x releases as it waited for Neo4j Inc to address issues and tickets relating to the releases before GFI felt it was stable enough to upgrade. GFI conducts about 64,000 tests for each build. Nussbaum Depo., 166:18-168:13. |
| | **Fact 116:** ONgDB does not include every closed enterprise feature in the equivalent version of Neo4j® EE. Ratinoff Decl., Exh. 38 at 2:12-17, 4:15-22, 5:4-6:21; Exh. 3 at 127:19-128:17. | DISPUTED: Versions of Neo4j Enterprise below 3.5 had the same code and therefore has every equivalent feature of the corresponding ONgDB version that did not change the source code. Only ONgDB 3.5 and higher do not include every enterprise feature and defendants don't claim that ongdb 3.5 and above have every feature.<br><br>See fact 32.<br>ONgDB (AKA ONgDB Enterprise) 3.5.11 is Neo4j 3.5.11 Core + the enterprise features Neo4j Inc removed from the code base as of v3.5. This shows we are not saying we have every feature - the features are only the ones removed from the code base as of v3.5 |
| | **Fact 117:** GFI admitted that after ONgDB v3.5.4, it could not "reliably guarantee that it was a drop-in replacement" for the same version number of Neo4j® EE and was unwilling to do the testing to make such integration and compatibility guarantees. Ratinoff Decl., Exh. 31 at 186:24-188:17, 188:23-189:23. | **DISPUTED** – GFI conducts tests on ONgDB to ensure its quality and compatibility.<br><br>**UNDISPUTED** GFI has not verified that ONgDB versions after 3.5.4 are drop in replacements for the equivalent version of Neo4j EE |
| 2. which is likely to cause confusion or mistake, or to | | |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| deceive, as to sponsorship, affiliation, or the origin of the goods or services in question. | | |
| (a) strength of the mark | The Neo4j® Mark is inherently distinctive and Plaintiffs have used it in commerce since 2007, and as a result has gained strong brand recognition via various awards and recognition in the graph database software market.  Broad Decl., ¶¶ 2-19, Exhs. 1-11. | **DISPUTED**: The word Neo4J is used to describe various software versions and companies, so it is not distinct, and the recognition is not as a company brand but as a type of graph database widely distributed on GitHub under open source licenses. Suhy Dec. 50 |
| (b) relatedness of the goods and similarity of sight, sound and meaning | Defendants promote ONgDB as Neo4j® EE except that they are free and licensed without restrictions under the AGPL.  Ratinoff Decl., Exhs. 18, 21, 25, 29, 42-46, 49-51, 54-55, 57-58, 60, 62-66, 67-70, 72-74, 93, 99-104, 108, 113-114. | DISPUTED:  The website content clearly says that there are no restrictions in usage of cores or number of instances, something the commercial edition enforced via legal terms.  These features have no usage restrictions in ONgDB.  Exhibit 19 states:  "**They have no restrictions on the number of cluster instances or cores** that the commercial licensed packages impose!"  Exhibit 42 states: "More agencies are adopting it as they learn about it. ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, all 100% free and open, with no **limits on cores or cluster instances** that 'commercial subscriptions' impose.  Exhibit 43 states:  1. You do not have to pay any licensing fees for the software you requested. Neo4j Enterprise < 3.5 and ONgDB (Open Native Graph Database) Enterprise (all versions) are available to use 100% free, in production.  Exhibit 43 states: |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | More agencies are adopting ONgDB over Neo4j as they learn that it is just the free and open Neo4j enterprise alternative.<br>ONgDB takes Neo4j core (which is open source) and adds enterprise features into it, **all 100% free and open, with no limits on cores or cluster instances that 'commercial subscriptions' impose.**<br><br>The exhibits cited do not support the proposition. To the contrary, GFI consistently uses <u>language distinguishing ONgDB from Neo4j EE such as</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." See Responses to Facts 59-64. And Exhibit 93 also states: "What is ONgDB: Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |
| (c) evidence of actual confusion; | <u>Fact 118</u>: Defendants' interchangeable use of "Neo4j Enterprise" and "ONgDB" misleads consumers into mistakenly believing that ONgDB and Neo4j® EE were one and the same. Ratinoff Decl., Exhs. 35, 40, 42-44, 46-47, 53, 55-58, 76, 100, 130-131, 134-135. | **DISPUTED:** Defendants to do mislead consumers about ONgDB and Neo4j Enterprise. The statements are true for some versions of Neo4j Enterprise and ONgDB. Defendants clearly communicate what ONgDB is, what it's origin is. GFI consistently uses <u>language distinguishing ONgDB from Neo4j EE such as</u> "ONgDB is an open source fork of Neo4j Enterprise that is developed and released under AGPLv3 by The Graph Foundation." See Responses to Facts 59-64. And Exhibit 93 also states: "What is ONgDB: Open Native Graph DB is an open source fork of #Neo4j, that picks up prior to Neo4j, Inc.'s removal of enterprise code from the main Github repository." |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | Defendants have never mislead and tried to confuse people into thinking ONgDB is just another name for Neo4j Enterprise.  In fact defendants work hard at educating the community about the facts.<br>The cited emails are hearsay and do not establish compatibility issues.  Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application.  Ratinoff Decl., Exh. 31 at 232:5-25.  Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | <u>Fact 119:</u> Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL caused actual confusion over Defendants' unauthorized modification to the Neo4j Sweden Software License and justification for doing so. *See* Ratinoff Decl., Exhs. 40, 49, 55, 118-119, 131, 133-134. | DISPUTED: the statements made are not misrepresentations.   ONgDB is a drop in replacement of Neo4j community and enterprise versions with the same version number. ONgDB is a superset of Neo4j and does not modify the Neo4j core code.  Furthermore - the combined term "drop-in replacement/equivalent" is not used.<br>To the contrary, the statements are true.  First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement.  With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect.  Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br>The cited emails are hearsay and do not establish compatibility issues. Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application. Ratinoff Decl., Exh. 31 at 232:5-25. Nothing in the email demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | Fact 120: GFI's use of the Neo4j® Mark to promote ONgDB resulted in customers choosing ONgDB over Neo4j® EE and encountering compatibility issues. Ratinoff Decl., Exh. 115-116; Exh 31 at 230:12-233:10; Exh. 3 at 207:12-209:3. | To the contrary, the statements are true. First, ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum. Nussbaum Depo., 158:7-14, 160: 9-14. Pernick Dec. Ex. A. Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Pernick Dec. Ex. B Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states: "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term." Ratinoff Decl. Exh. 39, 6:331-7:393  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. Pernick Dec. Ex. A<br>The cited emails are hearsay and do not establish compatibility issues. Rather, Exhibit 115 demonstrates an attempt to use a desktop tool inappropriately with a server application. Ratinoff Decl., Exh. 31 at 232:5-25. Nothing in the email |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | demonstrates that there would be any compatibility issues when ONgDB is used as a server application. |
| | Fact 121: Consumers chose ONgDB over Neo4j® EE based on Defendants' misrepresentations about ONgDB being "free and open" drop-in replacement/equivalent under the AGPL, including NextCentury and the MPO, Tufin, the IRS, Department of Homeland Security (DHS) and others.  Ratinoff Decl., Exhs. 35, 40, 47-51, 53, 100, 120, 127, 133-135; Exh. 3 at 54:17-55:1, 142:15-144:20, 224:13-23, 227:3-8, Exh. 31 at 191:15-24, 194:23-25, 195:13-18, 196:22-197:24; Exh. 38 at 23:14-24:4; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | DISPUTED:  USA concedes consumers decided to use ONgDB because it was free. Dkt. 98, p. 2:12-13; p. 32:6:10.

Price is the material concern on the purchase,  not the license or drop in capability. This is obvious in the analysis. Consumers can test whether the software is drop in and review the license. As users of ONgDB do not sell the software, whether the commons clause is valid or not has no impact. Under the AGPL, if you use the open source software internally, as for example what the IRS does, there is no issue with the commons clause. Consumers do not face any copyright infringement claim from Sweden as they are licensed under the AGPL. Suhy Dec. ¶44

The terms mentioned are not misrepresentations about ONgDB.  They are true.
Defendants do not use the term "drop-in replacement/equivalent".  ONgDB is free and open - it still contains all the AGPL terms that make it so. All the agencies listed use ONgDB for free. Furthermore - the commons clause would have no effect on the agencies mentioned from Mr Suhy's knowledge. Suhy Dec. ¶43

Plaintiffs present no evidence of a single person or entity that would have made that choice based on the statements in defendants' websites.

Most people do not make million dollar decision to decide on the use of a database from website statements.  Indeed, the evidence Plaintiffs provide |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | | with respect to New Century, their one purported concrete example, is an email exchange showing that New Century had no response to Neo4j, Inc.'s proposal even though New Century stated in its email that it understood the issues regarding ONgDB's "legal viability."  Broad Decl., Exh. 13. |
| (d) marketing channels and likelihood of expansion | Fact 122: Defendants continue to target the same potential users of graph database platforms and software and use the same channels via the internet.  *See, e.g.,* Ratinoff Decl., Exhs. 14-15, 18, 25, 29, 37, 45-55, 57, 60-61, 65-66, 76-77, 118-119, 120, 127, 130-132, 134-135. | UNDISPUTED:  Objection this fact does not support the claim. Because ONgDB is an unmodified fork of Neo4j Core code, and a superset of Neo4j Core - then anyone who is currently using Neo4j commercial or open source distributions can switch over to ONgDB.   In other words - people that use Neo4j are the people who would want to switch to ONgDB if they wanted enterprise features with no limitations on cores or cluster instances for free. Suhy Dec. ¶45 |
| | Fact 123: Neo4j USA and the PT Defendants competed for the same contracts in the government sector.  Ratinoff Decl., Exhs. 42-51, 54-55, 100, 120, 127, 130-135; Broad Decl., ¶¶ 20-24, Exhs. 12-13. | DISPUTED:  To Mr Suhy's knowledge, Neo4j USA does not directly respond to contracts.  Neo4j partners bid on a contracts. Purthink has no contracts with the government. Igov does not license software to the government. Suhy Dec. ¶46 |
| (e) intent | Fact 124: Defendants' use of the Neo4j® Mark to promote Plaintiffs' software with an improperly modified copyright license shows that they intend to copy them and confuse the public. *See supra* Facts 78-102. | DISPUTED:  Defendants do not use the Neo4j® Mark, they use the neo4j word in a descriptive manner.  Suhy Dec. ¶41 Defendants aim at educating the public not causing confusion. Mr. Suhy did not modify any copyrighted content which is owned by USA, it only updated Sweden's  License.txt file which the free software foundation owns the copyright for under the express terms of the AGPL.  Suhy Dec. ¶29  Furthermore - when Suhy made the AGPL license verbatim - the commit message clearly states the intention: |

**EXHIBIT A**

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
|  |  | The commit which replaced the modified License.txt file copyrighted to the FSF has a commit message which clarifies the intent of replacing the modified license with the verbatim. **"Updated the LICENSE.txt file to be pure AGPL as to not violate the fsf copyright and to be in line with the AGPL license."** ONgDB is a drop in replacement as explained in the deposition of Brad Nussbaum.  Nussbaum Depo., 158:7-14, 160: 9-14.  Plaintiffs have presented no evidence that ONgDB does not operate as a drop in replacement. With respect to ONgDB being free and open, again, Plaintiffs argument that the removal of the Commons Clause language from the Neo4J Sweden Software License was improper is incorrect. Substituting the matching language for the defined terms in this provision, Section 7 of the Neo4J Sweden Software License states:  "If the Program as [GFI] received it, or any part of it, contains a notice stating that it is governed by [the AGPLv3 license] along with a term that is a further restriction, [GFI] may remove that term."  The cited deposition testimony also demonstrates GFI's belief in the truth of these statements. |

**EXHIBIT A**

**<u>Attestations</u>**

I attest that the evidence cited by defendants John Mark Suhy, Purethink, LLC and iGov, Inc. herein fairly and accurately supports or disputes the facts asserted.

Dated: 1/15/2021

<u>/s/ Adron G. Beene</u>
Adron G. Beene

I attest that the evidence cited by defendants Graph Foundation, Inc. herein fairly and accurately supports or disputes the facts asserted.

Dated: 1/15/2021

<u>/s/ John D. Pernick</u>
John D. Pernick

**<u>FILER'S ATTESTATION</u>**

I, Adron G. Beene, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with N.D. Cal. Civil Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

Dated: January 15, 2021

        */s/ Adron G. Beene*
Adron W. Beene SB# 129040
Adron G. Beene SB# 298088
Attorney At Law
1754 Technology Drive, Suite 228
San Jose, CA 95110
Tel: (408) 392-9233
Fax: (866) 329-0453
adron@adronlaw.com

Attorney for Defendants
PURETHINK LLC, a Delaware limited
liability company, IGOV INC., a Virginia
corporation, and JOHN MARK SUHY

**EXHIBIT A**

**EXHIBIT B**

**<u>DEFENDANTS' CONSOLIDATED SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS</u>**

| <u>Claim or Defense</u> | <u>Moving Party's Undisputed Facts/Supporting Evidence</u> | <u>Opposing Parties' Response/Supporting Evidence</u> |
|---|---|---|
| **Claim 1: Neo4J USA's Trademark Infringement Claim** | | |
| Plaintiff Neo4j Inc. ("USA") Does not own a protectable trademark in Neo4J which is a required element of a trademark claim | <u>Fact 125:</u> **USA Fka, Neo Techonolgy, Inc. does not own the trademark to Neo4J. Neo4J Sweden AB, Fka Network Engine for Objects in Lund AB) ("Sweden") owns the trademark to Neo4J.** Beene Dec ¶ 2-7 Exhibits 1, (recital 1, Section 1.6. (b), 1.7, 2.1 (non-exclusive license) Article 3 (Reservation of Rights [to Sweden]) 2 Royalty report on license, 3 (Sweden Neo4J trademark applications and registrations). Dkt. No 56 ¶91 (Neo Technologies, Inc. was incorporated in July 7, 2011 and changed its name to Neo4j, Inc. on August 7, 2017) | |
| | <u>Fact 126:</u> Sweden licensed its Neo4J software and trademarks on a **non-exclusive basis** to USA. Beene Dec ¶ 2-7 Exhibits 1, (recital 1, Section 1.6. (b), 1.7, 2.1 (non-exclusive license) Article 3 (Reservation of Rights [to Sweden]) 2 Royalty report on license, 3 (Sweden Neo4J trademark applications and registrations). | |
| | <u>Fact 127:</u> Sweden retained exclusive ownership of the mark in the license agreement. Beene Dec ¶ 2-7 Exhibit 1, (recital 1, Section 1.6. (b), 1.7, Article 3 (Reservation of Rights [to Sweden]) | |
| | <u>Fact 128:</u> Sweden has in fact made trademark applications claiming ownership of the Neo4J mark throughout the world further providing evidence of Sweden's ownership of the Neo4J mark. Beene Dec ¶ 7, Exhibit 3. | |
| | <u>Fact 129:</u> USA has paid Sweden royalties for the license. Beene Dec ¶ 6, Exhibits 2. | |
| Fraud on the PTO defense | <u>Fact 130:</u> Lars Nordwall, as the COO of USA, knew USA did not own the NEO4J trademark and did not use the trademark since 6/04/2006 which is before USA was formed on July 7, 2011.  Beene Dec. Ex. 6 (NEO4J trademark application, principle register) and Dkt. No 56 ¶91 (Neo Technologies, Inc. was incorporated in July 7, 2011 and changed its name to Neo4j, Inc. on August 7, 2017) | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| Naked license defense | Fact 131: USA provides no evidence that Sweden controlled quality on Sweden's software the years before the software and trademark was licensed to USA. Declaration of John Mark Suhy (Suhy Dec.) ¶51. | |
| | Fact 132: The License Agreement from Sweden to USA has no quality control provisions. Beene Dec ¶ 2-7 Exhibit 1 (no quality control provision in license agreement.) | |
| Defendants did not infringe on USA's limited trademark license when referring to the open source software | Fact 133: Sweden is the licensor of the open source version of Neo4J under the AGPL and the owner of the Neo4J trademark. Fact 125 and Ratinoff Dec. Ex 39 at 25:11-13 | |
| Defendants use of Neo4J was nominative which is not infringing. | Fact 134: Defendants references Sweden's Neo4J mark to reference Sweden's open source software called Neo4J to describe the software and uses USA's company name and products to identify them in comparative advertisement. Suhy Dec. ¶9 | |
| Defendants use of Neo4J does not suggest sponsorship or endorsement | Fact 135 Defendants websites, taken as a whole do not suggest sponsorship or endorsement by USA.  Suhy does not have a website. Defendants did not use the USA's disputed Neo4j mark for promotion of USA's products. All promotions have been for marketing and service Sweden's open source Neo4J software and derivatives of such software as permitted under the GitHub Terms of Service and the AGPL. References to USA and its products are for comparative advertisement. Suhy Dec. ¶9, 16 | |
| PT defendants engaged in no conduct leading to an inequitable result to support Alter Ego Liability | Fact 136: The Partner Agreement seeks to prevent PT from dealing in all versions of Sweden's Neo4J open source software when USA is not the licensor under the AGPL and the AGPL freely allows anyone to use the software. Fact 133; Suhy Dec. ¶52 | |
| | Fact 137: The purpose of USA' restriction in the Partner Agreement is to prevent any terminated partner from supporting Sweden's open source version of Neo4J which is unlawful. Suhy Dec. ¶4, 53 | |
| | Fact 138: USA wrongfully and successfully asserted the unlawful restriction to interfere with PT efforts to get business from the IRS. Suhy Dec. ¶7, 54, Ex. 1 | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| The PT Defendants did not used the Neo4j® Mark without Neo4j USA's authorization to promote ONgDB | <u>Fact 139:</u> The PT defendants are not using the Neo4J mark to sell USA's commercial software. Suhy Dec. ¶31 | |
| | <u>Fact 140:</u> USA agreed Sweden owns the intellectual property, including marks for Neo4J. Fact 125. | |
| | <u>Fact 141:</u> Here there is an issue of fact on the false designation of origin element as ONgDB is a fork of Sweden's open source software licensed under the AGPL. Suhy Dec. ¶19 | |
| | <u>Fact 142:</u> USA even admits, the open source version has the same great features as the commercial version. Suhy Dec. ¶55; Beene Dec. Ex. 8 | |
| | <u>Fact 143:</u> Whether ONgDB is a "drop in" replacement for USA's "commercial" Neo4J software, is a disputed issue of fact. | |
| | <u>Fact 144:</u> Data and queries, the key function of a databases, from either version work on both versions. Suhy Dec. ¶56 | |
| ONgDB is a Drop in replacement to versions of Neo4J | <u>Fact 145:</u> USA, in its website, stated that its commercial Enterprise version of Neo4J has "same great features" as the open source version of Neo4j.  Suhy Dec. ¶55, Ex 3 | |
| | <u>Fact 146:</u> ONgBD allows users of other versions of Neo4J (including older versions of commercial and open source) to drop in the files from the same version number and operate the same data and run queries on it, which is the core functionality of a database. Defendants have not heard of any consumer suggest otherwise. Suhy Dec. ¶57 | |
| Use of USA documentation is licensed Content and is not actionable on any claim. | <u>Fact 147:</u> Any user of open source software from Sweden's Neo4J GitHub repository are allowed to use all content on the site. This is permitted under the GitHub Terms of Service.  GitHub Terms of service A. 4 definition of Content and ¶ D 5 license. (including "You may grant further rights…" inferring rights to End Users under the GitHub license may **not** be limited.) Suhy Dec. ¶58 Beene Dec. Ex. 9. | |
| Defendants product and services are not readily identifiable without use of the Neo4J trademark | <u>Fact. 148:</u> Neo4J is a type of database that must be identified so consumers looking for the database may find it. Defendants properly used Neo4J to identify companies and products in marketing and | |

EXHIBIT B                                                                                      3

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| | comparative advertisements to provide knowledgeable consumers with information for fair competition. Suhy Dec. ¶2, 59 | |
| **2. False Advertising Claims 2nd, 3rd and 4th causes of action.** | | |
| ONgDB is based on the open source version of Neo4J licensed under the AGPL and is free. | Fact 149: ONgDB is a free fork of Neo4J software licensed under the Sweden's AGPL. Suhy Dec. ¶36 | |
| | Fact 150: The AGPL is a free open source license. AGPL Preamble, Ratinoff Dec. Ex. 39, 1-2 | |
| Consumer did not materially rely on the defendants' representations to determine to use ONgDB software for free instead of paying USA money for a commercial version of Neo4J. | Fact 151: Sophisticated consumers of databases make purchase decisions based on price. Suhy Dec. ¶44; USA concedes consumers decided to use ONgDB because it was free. Dkt. 98, p.2:12-13 p. 32:6:10. Information Analysis Incorporated's GSA price list has a $500,000 bid for a Neo4J term license. (Beene Dec. Exhibit 5, p.1.) Beene Dec Ex. 7 | |
| An ONgDB licensee that only internally uses the software does not violate the commons clause- valid or not. | Fact 152: The common clause, valid or not, only restricts licensees from selling the software. It does not prevent a licensee from internally using the software. Ratinoff Dec. Ex 39 at 25:11-13, Suhy Dec. ¶36, 60, Ex. 2 | |
| | Fact 153: Not all versions of Sweden's open source software are subject to the common clause. Suhy Dec. ¶61 | |
| | Fact 154: A licensee who wants to sell an open source Neo4J fork, may do so with a prior version of Neo4j where the license does not include the added common clause if they have concerns of the validity of the commons clause. Suhy Dec. ¶62 | |

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Parties' Response/Supporting Evidence |
|---|---|---|
| The commons clauses added to the AGPL does not bar professional services. | Fact 155: Even if valid, the commons clause only bars services that "consists, entirely or substantially of the Software or the functionality of the Software."  Ratinoff Dec. Ex 39 at 25:681-693 | |
| | Fact 156: Professional services to support a licensee of open source Neo4j do not "consists, entirely or substantially of the Software or the functionality of the Software."  Ratinoff Dec. Ex 39 at 25:681-693, Suhy Dec. ¶36, 60, Ex.2 | |

## Attestation

I attest that the evidence cited by herein fairly and accurately supports or disputes the facts asserted. Dated:

1/15/2021

/s/ Adron G. Beene
  Adron G. Beene

EXHIBIT B                                                                5